**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| Plaintiff, | ) | Case No. 09-CV-1775 |
| | ) | |
| v. | ) | Judge William J. Hibbler |
| | ) | |
| THE NUTMEG GROUP, LLC, | ) | Magistrate Judge Ashman |
| RANDALL GOULDING, | ) | |
| DAVID GOLDING, | ) | |
| Defendants, | ) | |
| | ) | |
| DAVID GOULDING, INC., | ) | |
| DAVID SAMUEL, LLC, | ) | |
| FINANCIAL ALCHEMY, LLC, | ) | |
| PHILLY FINANCIAL, LLC, | ) | |
| SAM WAYNE, and ERIC IRRGANG, | ) | |
| Relief Defendants. | ) | |

# RECEIVER'S SECOND INTERIM REPORT

Leslie J. Weiss, not individually, but as court-appointed Receiver ("Weiss" or the "Receiver") of Defendant, The Nutmeg Group, LLC ("Nutmeg") files this Second Interim Report which covers the period of October 1 through November 30, 2009 (the "Reporting Period").

The purpose of this Second Interim Report is to provide the Court and all interested parties with a description of the nature of the Receiver's activities, investigations, analysis, conclusions, recommendations to date, and the revenues generated and/or collected by her, and the Receivership Estate (the "Estate") expenses incurred[1] during the Reporting Period.

## Introduction

On August 6, 2009, at the request of the U.S. Securities and Exchange Commission (the "SEC"), this Court entered an Order Appointing Receiver over The Nutmeg Group, LLC. (the "Order") in which the Receiver was appointed as receiver for The Nutmeg Group LLC and the funds it managed. The Order provided that the Receiver should oversee all aspects of Nutmeg's operations and business which includes, but is not limited to serving as general partner and investment adviser to Nutmeg/AdZone, LP, Nutmeg/Tropical, LP, Nutmeg/Startech II, LP, Nutmeg/Image Globe, LP, Nutmeg/Nanobac, LP, Nutmeg/MiniFund LLLP, Nutmeg/MiniFund II LLLP, Nutmeg Lightining Fund I, LLLP, Numeg October 2005, LLLP, Nutmeg/Michael Fund, LP, Nutmeg Fortuna Fund, LLLP, Nutmeg/Patriot Fund, LLLP and Nutmeg/Mercury Fund, LLLP (collectively, the "Funds").

[1] The Receiver and her counsel will submit their requests for reimbursement of fees and expenses in separate pleadings as well as expenses and fees of Crowe Horwath LLP and the forensic computer consultants.

The Order required the Receiver to take control of all the Funds and to liquidate or manage them as was prudent under the circumstances, to investigate other assets belonging to Nutmeg and take control of them. The Order also required the Receiver to determine the identity of the Funds' limited partners, amounts invested by the limited partners and to determine the payouts to limited partners and communicate, as necessary, with the limited partners. To carry out these tasks, the Receiver was authorized to obtain information gathered and analysis performed by Crowe Horwath LLP ("Crowe") and to retain the law firm of Barnes & Thornburg LLP to assist in carrying out her duties.

In the four months since the Receiver was appointed, she has reviewed the assets purported to be in each Fund and in Nutmeg; reviewed certain litigation in which Nutmeg or the Funds are involved; investigated other claims allegedly belonging to Nutmeg and some of the Funds, sent out demand letters in connection with some of these claims and is attempting to determine whether the pursuit of such claims is economically justified by determining whether the persons against whom Nutmeg and the Funds have claims are sufficiently liquid and whether Nutmeg and the Funds are likely to prevail with respect to such claims; changed the authorized signatory to the Receiver on all known bank and brokerage accounts; opened a bank account at JP Morgan Chase in the name of the Receiver and begun liquidating certain of the securities of Nutmeg and the Funds. The Receiver has requested Court approval of a contingency arrangement with William Shure, a litigation attorney in Chicago for the pursuit of various claims the Receiver believes belong to Nutmeg and the Funds. The Receiver has written two letters that were sent to all known investors and has spoken to many of the investors, personally. The

Receiver has spoken to a number of parties that may be interested in purchasing some of the illiquid assets of the Estate or in assisting the Receiver liquidate such assets.

**Actions Taken by the Receiver**

As stated in the Receiver's first report, on September 2, 2009, the Receiver and counsel visited the Nutmeg premises and the Receiver took into her possession all paper files pertaining to Nutmeg and the Funds that were located at the Nutmeg office as of September 2, 2009. Through the assistance of forensic computer consultants, Elijah Technologies, Ltd. ("Elijah"), the Receiver obtained twenty hard drives, two thumb drives and copies of ten Gmail Accounts (collectively, the "Electronic Data"). Because the Receiver had no further use for the Nutmeg premises and the rent was in arrears, the Receiver abandoned the premises to the landlord during the month of September 2009. The Receiver did not believe there was sufficient value in any of the furniture or equipment to attempt a sale of it. Subsequently, Randall Goulding has asserted that there was a computer left at the premises that had information concerning investors that the Receiver needed to retain. The landlord's attorney has possession of the computer and is in the process of transferring possession to the Receiver. In order to conserve funds of the Estate, the Electronic Data has been given to the Securities and Exchange Commission ("SEC") to organize and put into readable format. The SEC is putting the Electronic Data into Concordance (document management software), which the SEC has said it will available to the Receiver.

***Other Data Received***

The Receiver received paper files and a hard drive with electronic documents from Ryan Goulding, CPA, which the Receiver has been told contains all of Mr.

Goulding's documents relating to Nutmeg and the Funds. Ryan Goulding, a son of Randall Goulding, acted as the accountant for Nutmeg and the Funds. The Receiver has just started to review the paper documents. The electronic documents from Ryan Goulding are being processed by the SEC.

***Review of Assets of the Funds and the Sale of Assets***

As described in the Receiver's first report, the files obtained from Nutmeg included certain Fund files containing various assets such as convertible notes, promissory notes, warrants, and stock certificates. The Receiver completed her initial review of each of those files and interviewed Randall Goulding concerning each of them prior to filing her first report. Accordingly to Mr. Goulding, most of the companies in which Nutmeg and the Funds invested are either failed companies or companies that to date have not achieved the objectives of their business plans. Since the date of the Receiver's first report, the Receiver has discovered a few additional assets belonging to Nutmeg and the Funds, including a 2006 Acura TL (the "Acura"), 9,000,000 shares of Real American Brands, and 7,000,000 shares of Taj Systems, Inc. The Receiver's attorney has demanded that Mr. Goulding return the Acura to her; however, he has not done so. The Receiver has filed a motion seeking Court approval to have the Acura repossessed and sold.

The Receiver remains uncertain as to the value of the assets of Nutmeg and the Funds, but has spent considerable amounts of time trying to understand the valuations Nutmeg had placed on these assets. The Receiver has determined that the valuations attributed to these assets prior to her appointment did not accurately reflect the market value of such assets and significantly overvalued them. The Receiver also has been

unable to locate sufficient documentation in Nutmeg's files to determine conclusively that the entity in whose name the asset is titled is the actual beneficial owner of the asset. Accordingly, the Receiver has not verified the actual ownership of each asset listed and needs additional accounting and financial information to do so.  There are no primary back-up documents evidencing for the investments made by Nutmeg and the Funds, such as copies of checks, wire transfer receipts for investments and copies of stock certificates. The facts and circumstances surrounding each investment, many of which facts are not clear from the documents in the file, will impact the value of the assets.  In addition, the current financial condition of each company in which Nutmeg and the Funds invested will affect the value of the applicable investment.  Only a minority of the companies in which Nutmeg and the Funds invested appear to be reporting companies, so the financial condition of many of the companies is not publicly filed.  In some cases the Receiver does not have original documents in her possession and has been advised by Randall Goulding that Nutmeg never had possession of the original documents.  For some investments, there are subscription documents and deal term sheets; however, many of these investments were made in traunches and it is difficult to determine from the documents in the file exactly how much Nutmeg (or a Funds) actually invested in each company investment.  The only records of the investments are charts and spreadsheets prepared by Randall Goulding, which are not in and of themselves sufficient to verify the investment histories of the Funds.  The SEC has ordered copies of many of the primary documents needed to verify the transactions from the banks and brokerage firms at which Nutmeg and the relief defendants held the Funds' assets, which the SEC has agreed to share with the Receiver at some point in time.  While the Receiver expects such

documents to permit additional verification of monies in and out of the accounts of Nutmeg, and others, this process will be lengthy and still may not reveal sufficient information.   As such, the principal amount set forth on any convertible note or promissory note does not necessarily reflect the amount that is actually due from the lender to the borrower and does not indicate the collectability of the note.

Similarly, the current market price of a stock does not necessarily reflect the amount that the relevant Fund would receive upon sale of such stock or that a sufficiently liquid market exists for such stock to be sold.  In addition, a substantial amount of the stock in the brokerage accounts is restricted either under the securities laws or by contract, which renders those shares illiquid until such time as the restriction can be lifted.  The Receiver is attempting to lift the restrictions on some of the shares.  This process is proving to be quite difficult.  Some of the restrictions cannot be lifted because the companies are not reporting companies and the securities have not been held long enough by Nutmeg or the Funds.  Other companies have been shell companies at some point in the past (or currently), which makes lifting the restrictions more difficult or impossible.  For example, the Receiver submitted paperwork in early October to remove the restrictions on the securities of four different issuers.  Despite repeated calls to the broker involved, the process has not been completed and the restrictions have not been lifted.  However, it appears that these securities will be liquid once the restrictions are lifted. The Receiver has continued to instruct the brokers at Aegis Capital and Westpark Capital, the firms that are holding securities belonging to the Funds, to sell the securities held at their firms when they can prudently do so; however, the broker at Aegis has advised the Receiver on numerous occasions during October and November that there has

not been much liquidity for sub-penny micro-caps stocks during those months. The securities at Westpark that are not restricted have been sold. The balance are restricted by contract. As those securities become freely tradable, they are sold. To date, the Receiver has received approximately $234,762.36 from the sale of these securities. These funds remain in the brokerage account of the respective Funds in whose name the securities were titled.

The Receiver is also looking into renegotiating the transactions for a few investments of the Funds that can be converted into securities that she believes can be sold. However, the Receiver's experience dealing with the CEO's of some of the portfolio companies has not been particularly fruitful. The CEO's she has called appear to be operating out of their homes and in general, do not respond to phone calls or requests for information in a timely manner. The SEC has assisted the Receiver on several occasions by urging these individuals to cooperate with the Receiver. There are several more situations in which the Receiver intends to request the same assistance from the SEC. The Receiver believes that the multiple lawsuits and other claims made by Randall Goulding against many of the portfolio companies for breaching their obligations constitute ample evidence of the types of people she is dealing with. This lack of responsiveness on the part of the issuers makes the process more expensive. Nevertheless, she has made some progress in this regard and will continue to contact such individuals as necessary.

The majority of the assets of Nutmeg and the Funds are in the form of convertible notes and to a lesser extent non-marketable Series B Preferred Stock. A substantial portion of the notes are in default and the majority of the issuers do not appear to be

financially stable companies. The Receiver may send default notices to these companies or may seek to negotiate directly with the issuers or both, but does not want to initiate a course of action until she has more information. Her investigation continues.

***Third-Party Assistance***

The Receiver is in the process of trying to find a third party to assist in the valuation these assets and the determination of how to maximize their value. The Receiver has spoken to several parties that purchase securities of sub-penny micro-cap companies and others who may assist in managing the portfolio. The Receiver has the names of other third parties that she will contact about this task. The Receiver believes that she may be able to negotiate an arrangement that will involve payments based upon a success fee or a straight percentage of proceeds received, which may benefit the Estate more than charging for services on an hourly basis or other compensation arrangements that require substantial cash payments upfront. The Receiver is not seeking to engage any persons that were working with Nutmeg or Randall Goulding previously because of obvious conflicts of interest.

***Bank Accounts Obtained***

The Receiver obtained control over certain bank accounts, at National City, from Nutmeg and the Funds. The Receiver is now the sole signatory for each of the following bank accounts ("Bank Accounts"):

| **Account Name** | **Bank** | **Account Number** | **Amount** |
|---|---|---|---|
| | | | |
| The Nutmeg Group, LLC | JP Morgan Chase Bank | 836537076 | $11,097.40 |

| | | | |
|---|---|---|---|
| The Nutmeg Lightening Fund | National City | 985554664 | 2,196.32 |
| Nutmeg October 2005 | National City | 985554672 | 1,343.84 |
| Nutmeg/Nanobac, L.P. | National City | 987413814 | 8,324.60 |
| Nutmeg MiniFund II, LLLP | National City | 985555675 | 1,059.70 |
| Michael Fund LLLP | National City | 985554680 | 23,952.09 |
| Nutmeg Fortuna Fund LLLP | National City | 985554699 | 21,750.07 |
| Nutmeg MiniFund, LLLP | National City | 985554656 | 0.50 |
| Nutmeg Patriot Fund LLLP | National City | 985554658 | 22,914.47 |

The SEC has sent a subpoena to National City requesting that National City provide copies of certain transaction records involving the Bank Accounts, which will assist the Receiver in analyzing the Bank Accounts. The SEC has sent subpoenas to numerous other banks requesting copies of checks and other documents relating to Nutmeg, the Relief Defendants and the Funds. The Receiver anticipates that the SEC will make certain of those documents available to her and that such documents will assist the Receiver understand the flow of funds in this matter, including the use of the capital invested by the various investors in the Funds. To date, the Receiver and Crowe have only had access to bank account statements and not to the supporting documents, such as wire transfer information and copies of checks. The Receiver does not yet have enough information to determine the amount of capital deposited into the accounts of Nutmeg and the Funds nor the amounts transferred out of those accounts. Nor does the Receiver have sufficient information or documentation to determine the amount of funds deposited with the Relief Defendants and the manner in which such funds were used.

The Receiver has opened a separate bank account at JPMorgan Chase into which she has deposited certain funds she has recovered for Nutmeg. The monies that have been received by the Funds upon the liquidation of certain securities in various brokerage accounts remain in those brokerage accounts.

***Brokerage Accounts***

The Receiver has taken control of all of the brokerage accounts known to her in the name of Nutmeg and the Funds. To date, the Receiver has obtained control over the following accounts:[2]

| **Account Name** | **Broker** | **Account Number** | **Stated Value** |
|---|---|---|---|
| | | | |
| The Nutmeg Group, LLC | Aegis Capital Corp. | 57010141 | $1,421.50 |
| | WestPark Capital | 53667015 | 65.03 |
| | ViewTrade (as of 8/12/2009) | 49361942 | -13,186.59 |
| The Nutmeg Group, LLC #2 | Aegis Capital Corp. | 57010291 | 208.35 |
| Nutmeg Lightning Fund | Aegis Capital Corp. | 57010144 | 1,286.88 |
| Nutmeg October 2005 | Aegis Capital Corp. | 57010206 | 3,067.71 |
| Nutmeg MiniFund II, LLP | Aegis Capital Corp. | 57010175 | 4,668.07 |
| | WestPark Capital, Inc | 62783062 | 4,862.37 |
| Michael Fund LLLP | Aegis Capital Corp. | 57010139 | 23,494.86 |
| Nutmeg Fortuna Fund LLP | Aegis Capital Corp. | 57010142 | 42,616.00 |

[2] The values listed on the brokerage accounts do not necessarily reflect the amount that would be realized upon sale of the securities. See discussion of securities in this report.

| Nutmeg MiniFund, LLLP | Aegis Capital Corp. | 57010174 | 46,527.19 |
|---|---|---|---|
| Nutmeg Patriot Fund LLP | Aegis Capital Corp. | 57010143 | 10,401.20 |
| | WestPark Capital, Inc. | 45250786 | 1,645.50 |
| The Nutmeg/Mercury Fund, LLLP | Aegis Capital Corp. | 57010099 | 137,909.34 |
| | WestPark Capital, Inc. | 73927604 | 326,537.25 |
| | Glendale Securities Inc. | 87015087 | 22.60 |
| Nutmeg Image Globe Fund LLP | Aegis Capital Corp. | 57010140 | 90.89 |

Copies of the current brokerage statements are attached as Exhibit A.

***Correspondence with Investors***

The Receiver sent an initial letter to all known investors on or about September 22, 2009 and an update on or about November 16, 2009. A copy of the first letter was filed with the Receiver first report. A copy of the second letter is attached as Exhibit B to this report. The Receiver has the names and contact information for approximately 325 investors in the Funds. The Receiver established a dedicated email account for investors to use in communicating with her. The Receiver and her staff have had numerous conversations with individual investors concerning Nutmeg and its Funds and their investments in them and continue to talk to investors on a regular basis. The Receiver has requested information from the investors about their investments, including the amounts invested and amounts returned to them, if any. She has received various documentation and materials from approximately 96 or 31% of the investors she contacted and is in the process of reviewing those responses.

***Litigation***

As stated above, many of the convertible notes and promissory notes held by Nutmeg and the Funds are currently in default. According to Randall Goulding, many of these companies have failed businesses and are currently shells. The Receiver has determined that Randall Goulding customarily prepared complaints seeking judgments against these companies in an attempt to gain control over the shells. He would then participate in locating a new business to put into the shell. The complaints were prosecuted with the services of Fred Harbecke, an attorney. In many cases judgments were obtained by default and it is doubtful whether there is any ability to collect on the judgments. The following judgments exist:

| ***Caption*** | ***Court Pending*** | ***Status*** |
| --- | --- | --- |
| Financial Alchemy, LLC v. Solar Night Industries, Inc., Case No. 07 L 3984 | Law Division, Circuit Court of Cook County | Judgment entered on 12/18/2008 against Solar Night Industries, Inc. in the amount of $205,651.58, consisting of principal in the amount of $151,557.76 and interest in the amount of $54,093.82 and the costs of suit. Receiver is investigating whether the judgment can be sold. |
| The Nutmeg Group, LLC, Financial Alchemy, LLC, Philly Financial, LLC, David S. | Circuit Court of Cook County, County Department, | Judgment entered in favor of Financial Alchemy in the amount of $538,964.00 against RMD. Judgment |

| ***Caption*** | ***Court Pending*** | ***Status*** |
|---|---|---|
| Goulding, Howard Salamon, Salamon Brothers, LLC and Richard E. Goulding v. RMD Entertainment Group, Inc. and Giorgio C. Costonis, Case No. 06 L 8867 | Suburban Law Division | entered in favor of Howard Salamon in the amount of $46,310.75 against RMD. Judgment entered in favor of The Nutmeg Group in the amount of $1,386,352.35 against RMD. Judgment Receiver is entered in favor of Philly Financial in the amount of $993,446.51 against RMD. Judgment entered in favor of David S. Goulding in the amount of $12,925.73 against RMD. Judgment entered in favor of Richard E. Goulding in the amount of $69,037.63 against RMD. Judgment is entered in favor of The Nutmeg Group in the amount of $52,711.65 against Giorgio C. Costonis. The Receiver is investigating whether judgments can be sold or whether collection agency could assist in collection. |
| Financial Alchemy, LLC v. | Circuit Court of | Judgment entered (jointly and |

| *Caption* | *Court Pending* | *Status* |
|---|---|---|
| Medical Services International, Inc. and Robert Talbot, Case No. 06 L 1178 | Cook County, Law Division | severally) against Robert Talbot and Medical Services International in the amount of $955,124.31 plus costs. The Receiver is investigating the collectability of the judgment |

The Receiver is attempting to determine whether there is merit in seeking the assistance of a contingency collection firm to collect the judgments. The Receiver has been told by one collection firm that these judgments are not collectible. However, it is possible that the Receiver may be able to negotiate to receive stock in some of these companies that may have tradable stock.

The Receiver has determined that the following cases exist:

| *Caption* | *Court Pending* | *Status* | *Damages Sought* |
|---|---|---|---|
| Nutmeg Mercury Fund, LLLP v. Cinemaya Media Group, Inc., Case No. 08 L 011636 | Law Division, Circuit Court of Cook County | Barnes & Thornburg attended a status hearing on 11/2/09. The matter has been continued until January 11, 2010. No one has appeared on behalf of Cinemaya | $61,168.98 for Breach of Contract |

| ***Caption*** | ***Court Pending*** | ***Status*** | ***Damages Sought*** |
|---|---|---|---|
| | | Media. Default judgment has been entered against defendant. Plaintiff needs to prove up damages. | |
| Financial Alchemy, LLC v. America Asia Petroleum Corp., Case No. 07 L 6863 | Law Division, Circuit Court of Cook County | Claims have been assigned to Nutmeg. Barnes and Thornburg appeared on October 23, 2009. The case has been continued until January 13, 2010. | $229,837 for Breach of Contract, Unjust enrichment, Common Law Fraud |
| The Nutmeg Group, LLC v. Alex H. Edwards, Escape Velocity, Nanobac Pharmaceuticals and John D. Stanton, Case No. 06 L 010990 | Circuit Court of Cook County, Law Division | Barnes & Thornburg appeared for status on November 17, 2009. The case has been continued until January 29, 2010. The only defendant | Complaint seeks damages in the amount of $6,577,547.74 for Breach of Contract (Count I), $1,597,917 for Breach of Contract (Count II – Plead in |

| ***Caption*** | ***Court Pending*** | ***Status*** | ***Damages Sought*** |
|---|---|---|---|
| | | represented by Counsel is Nanobac Pharmaceuticals. | the alternative), and $$1,633,000 for Breach of Contract (Count III – Plead in the alternative) |
| The Nutmeg/Mercury Fund, LLLP v. Jack Freedman and H3 Enterprises, Inc., Case No. 07 L 013898 | Circuit Court of Cook County, Law Division | Barnes & Thornburg appeared on November 6, 2009. Neither defendant appeared. A default judgment has been entered. Plaintiff needs to prove up damages. The case was continued until January 8, 2010. | Plaintiff is seeking approximately $100,000. Settlement talks have broken down over the issue of the type of release to be given to Jack Freedman. |
| The Nutmeg Group, L.L.C. v. Uniphyd Corporation, n/k/a International Business Ventures Group, Inc., | Circuit Court of Cook County, Law Division | Plaintiff The Nutmeg Group filed an amended complaint naming Nutmeg Uniphyd as the proper | Default judgment entered for $3,737.064. |

| ***Caption*** | ***Court Pending*** | ***Status*** | ***Damages Sought*** |
|---|---|---|---|
| Case No. 08 L 011635 | | plaintiff. Randall Goulding agreed to withdraw this amended complaint BUT HAS NOT DONE SO. Barnes & Thornburg appeared on November 23, 2009. Defendant did not appear. Default judgment has been entered. Damaged need to be proved-up. The case has been continued until January 29, 2010. | |

The Receiver's counsel has filed an appearance in each of these cases. The Receiver's counsel has continued most of these cases to give the Receiver and her counsel time to determine whether or not to pursue these cases. In each case, the Receiver must determine that the economic benefit that is likely to be achieved from

prosecuting the subject case must exceed the projected cost of pursuing the case. It is likely the Receiver will determine that, given the cost of litigation, many of these cases are not worth pursuing.

***Review of Crowe Preliminary Findings***

The Receiver has reviewed reports setting forth the preliminary findings of Crowe Horwath and has met with Mari Reidy and Catherine Wu of Crowe in an effort to obtain a full understanding of its investigation to date. Copies of Crowe's preliminary reports are attached as Exhibit C to this report. Crowe's initial forensic investigation focused on the Mercury Fund, which commenced operations in the beginning of 2007. Crowe's reports indicate that fees paid by the Mercury Fund to Nutmeg were greater than the amounts that should have been paid. The reports also indicate that Crowe was unable to verify that all of the monies contributed to the Mercury Fund were used for investments of the Mercury Fund and not diverted elsewhere. One of the reasons that Crowe was not able to complete its investigation of the Mercury Fund was that it did not have access to certain financial documents, such as copies of checks written by Nutmeg or a check register for Nutmeg. The SEC has sent National City a subpoena to obtain these documents. The other reason is the lack of complete and accurate information available from the records of Nutmeg. Crowe's investigation of the valuations Nutmeg attributed to the Mercury Funds assets demonstrates that Nutmeg materially over valuated those assets.

***Discovery***

Because this Estate has very limited cash assets, the Receiver is coordinating discovery with the SEC and various defendants and relief defendants. To date the parties

have entered into a Discovery Plan which has been agreed to by all parties and provides for the scope and timing of certain discovery. The Receiver has subpoenaed documents from Ryan Goulding, a son and an accountant for Nutmeg and the Funds. (See explanation above.) The Receiver has sent subpoenas to certain parties against whom the receiver believes she has claims on behalf of Nutmeg and the Funds for the return of finder's fees. In addition, the Receiver has requested bank account statements and brokerage account statements and other financial information from each of the Relief Defendants, except for Samuel Wayne. Complete documents responsive to such requests have not been turned over to the Receiver; however, the SEC has sent out subpoenas to multiple financial institutions in an attempt to obtain such information.

***Liquidity Concerns***

Nutmeg and the Funds have limited liquid assets. Accordingly, the Receiver has very limited resources available to use in the continuation of her work. As a result, the Receiver is trying to find ways to engage the assistance of third parties that will not involve upfront outlays of cash. The lack of liquidity is the reason the Receiver intends to rely to a substantial extent, on the discovery the SEC conducts in its case with respect to Nutmeg and the Funds and that Crowe has not started to review Funds other than the Mercury Fund. Similarly, the lack of liquid assets is the reason the Receiver wants to engage an attorney to pursue various claims belonging to Nutmeg and the Funds on a contingency basis and is looking for assistance managing the assets of Nutmeg and the Funds pursuant to an arrangement that does not involve substantial upfront cash payments, as explained in more detail in other sections of this report.

## CONCLUSION

The Receiver intends to continue investigating the assets held by the Funds to determine whether additional assets exist and which assets can be liquidated for the benefit of the Estate. The Receiver will continue to review the materials sent to her by the investors in the Funds. The Receiver also expects to receive and then review substantial amounts of information from discovery requests sent to various banks, brokerage firms and portfolio companies by the SEC that will assist the Receiver determine whether there are amounts that are due to the Funds or Nutmeg that are in the hands of third parties. The Receiver expects to have an attorney engaged on a contingency basis initiate action with respect to certain claims belonging to Nutmeg and the Funds in the near future. The Receiver also intends to continue to solicit proposals from third parties who may assist her manage the illiquid investments and/or purchase some of the illiquid investments belonging to the Estate.

Respectfully submitted,

Leslie J. Weiss,

Receiver for The Nutmeg Group, LLC

By: ______________________

Leslie J. Weiss

Leslie J. Weiss (ARDC # 6183619)
BARNES & THORNBURG LLP
1 North Wacker Drive, Suite 4400
Chicago, Illinois 60606
(312) 357-1313

CHDS01 LWEISS 574051v2

# EXHIBIT A

Account Overview | Help | Contact Us | Logoff

Account Info | Online Documents | Quotes | Adv Quotes | Research | Acct Services

## Account Overview

Mon, 30 Nov 2009 12:07:03 pm EST

**Account**

45250786 (NUTMEG PATRIOT FUND, LLP)

**U.S. Markets are Open**

**Last Login: Mon Nov 23 12:51:50 CST 2009**

**There is no activity in your current account.**

### Account Summary

| Name | Number | Trade Date Balance | Market Value of Securities | Money Market Funds | Total Account Value |
|---|---|---|---|---|---|
| | 53667015 | $ 0.00 | $ 0.00 | $ 65.03 | $ 65.03 ✓ |
| | 62783062 | $ 0.00 | $ 0.00 | $ 4,862.37 | $ 4,862.37 ✓ |
| | 73927604 | $ 0.00 | $ 190,075.17 | $ 136,462.08 | $ 326,537.25 ✓ |
| NUTMEG PATRIOT FUND, LLP | 45250786 | $ 0.00 | $ 0.00 | $ 1,645.50 | $ 1,645.50 ✓ |
| **Total** | | **$ 0.00** | **$ 190,075.17** | **$ 143,034.98** | **$ 333,110.15** |

### Rep Information

| | |
|---|---|
| Name / ID | HENRY HOPKINS HOUSTON III / W111 |
| Phone | 3108439300 |
| Email | |
| Address | 1900 AVE OF THE STARS, STE 310<br>LOS ANGELES, CA 90067 |

### Market Indices

| Index | Last | Change |
|---|---|---|
| DJ INDUSTR AVERAGE | 10276.75 | -33.17 |
| NYSE COMPOSITE | 7040.71 | -29.38 |
| AMEX MAJOR MARKET INDEX | 1141.13 | -3.21 |
| NASDAQ COMPOSITE | 2123.95 | -14.49 |
| S&P 500 INDEX | 1087.53 | -3.96 |
| S&P 100 INDEX AMERICAN-STYLE | 507.30 | -1.68 |

**Money Assets**




Money Market (42.94%)
Market Value (57.06%)

**Security Assets**



Equities (100.00%)

Copyright © 2004-2006 WestPark Capital, Inc. All Rights Reserved.
Business Disruption Plan

Quote data provided by Automated Financial Systems Corp.
NYSE and AMEX quotes are delayed by at least 20 minutes. All other quotes are delayed by at least 15 minutes.

You can download the latest compatible browsers here.

## Balances & Positions

Mon, 30 Nov 2009 12:08:20 pm EST

**Account**

73927604

### Balance Summary

| | | | |
|---|---|---|---|
| **Total Account Value** | $ 326,537.25 | **Trading Cash** | $ 136,462.08 |
| **Market Value of Securities** | $ 190,075.17 | **Available Cash** | $ 136,462.08 |
| **Money Market Funds** | $ 136,462.08 | | |

### Balance Detail

| Account Type | Trade Date Balance | Market Value | Equity | Total Account Value |
|---|---|---|---|---|
| Cash | $ 0.00 | $ 190,075.17 | $ 190,075.17 | $ 190,075.17 |
| Margin | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Short | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Fund Balance | $ 0.00 | $ 0.00 | $ 0.00 | $ 136,462.08 |
| Total | $ 0.00 | $ 190,075.17 | $ 190,075.17 | $ 326,537.25 |

### Assets

| Symbol | Description | Quantity | Price | Start of Day | Current Value | Today's G/L | Account | Proportion |
|---|---|---|---|---|---|---|---|---|
| **Money Funds** | | | | | **$ 136,462.08** | | | **41.79%** |
| | NO DESCRIPTION AVAILABLE (DLD) | | $ 1.00 | | $ 136,461.52 | | | 41.79% |
| INT | Accrued Interest | | $ 1.00 | | $ 0.56 | | | 0.00% |
| **Equities** | | | | **$ 190,203.39** | **$ 190,075.17** | **($ 128.22)** | | **58.21%** |
| NIV | NIVS INTELLLIMEDIA TECH | 4,274 | $ 2.20 | $ 9,531.02 | $ 9,402.80 | ($ 128.22) | CASH | 2.88% |
| 2871907 | NIVS INTELLIMEDIA RSTKD | 81,019 | $ 2.23 | $ 180,672.37 | $ 180,672.37 | | CASH | 55.33% |
| **Total Assets** | | | | | **$ 326,537.25** | | | **100.00%** |

View Bar Charts

Copyright © 2004-2006 WestPark Capital, Inc. All Rights Reserved.
Business Disruption Plan

Quote data provided by Automated Financial Systems Corp.
NYSE and AMEX quotes are delayed by at least 20 minutes. All other quotes are delayed by at least 15 minutes.

You can download the latest compatible browsers here.

# Balances & Positions

Mon, 30 Nov 2009 12:07:52 pm EST

**Account**

53667015

## Balance Summary

| | | | |
|---|---|---|---|
| **Total Account Value** | $ 65.03 | **Trading Cash** | $ 65.03 |
| **Market Value of Securities** | $ 0.00 | **Available Cash** | $ 65.03 |
| **Money Market Funds** | $ 65.03 | | |

## Balance Detail

| Account Type | Trade Date Balance | Market Value | Equity | Total Account Value |
|---|---|---|---|---|
| Cash | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Margin | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Short | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Fund Balance | $ 0.00 | $ 0.00 | $ 0.00 | $ 65.03 |
| Total | $ 0.00 | $ 0.00 | $ 0.00 | $ 65.03 |

## Assets

| Symbol | Description | Quantity | Price | Start of Day | Current Value | Today's G/L | Account | Proportion |
|---|---|---|---|---|---|---|---|---|
| **Money Funds** | | | | | **$ 65.03** | | | **100.00%** |
| | NO DESCRIPTION AVAILABLE (DLD) | | $ 1.00 | | $ 65.03 | | | 100.00% |
| **Total Assets** | | | | | **$ 65.03** | | | **100.00%** |

View Bar Charts

Copyright © 2004-2006 WestPark Capital, Inc. All Rights Reserved.
Business Disruption Plan

Quote data provided by Automated Financial Systems Corp.
Quotes are real time. Quote times are Eastern Time Zone (EST/EDT). Real time quotes are deducted from your quote bank.

You can download the latest compatible browsers here.

## Balances & Positions

Mon, 30 Nov 2009 12:08:09 pm EST

**Account**

62783062

### Balance Summary

| | | | |
|---|---|---|---|
| **Total Account Value** | $ 4,862.37 | **Trading Cash** | $ 4,862.37 |
| **Market Value of Securities** | $ 0.00 | **Available Cash** | $ 4,862.37 |
| **Money Market Funds** | $ 4,862.37 | | |

### Balance Detail

| Account Type | Trade Date Balance | Market Value | Equity | Total Account Value |
|---|---|---|---|---|
| Cash | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Margin | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Short | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Fund Balance | $ 0.00 | $ 0.00 | $ 0.00 | $ 4,862.37 |
| Total | $ 0.00 | $ 0.00 | $ 0.00 | $ 4,862.37 |

### Assets

| Symbol | Description | Quantity | Price | Start of Day | Current Value | Today's G/L | Account | Proportion |
|---|---|---|---|---|---|---|---|---|
| **Money Funds** | | | | | **$ 4,862.37** | | | **100.00%** |
| | NO DESCRIPTION AVAILABLE (DLD) | | $ 1.00 | | $ 4,862.35 | | | 100.00% |
| INT | Accrued Interest | | $ 1.00 | | $ 0.02 | | | 0.00% |
| **Total Assets** | | | | | **$ 4,862.37** | | | **100.00%** |

View Bar Charts

Copyright © 2004-2006 WestPark Capital, Inc. All Rights Reserved.
Business Disruption Plan

Quote data provided by Automated Financial Systems Corp.
Quotes are real time. Quote times are Eastern Time Zone (EST/EDT). Real time quotes are deducted from your quote bank.

You can download the latest compatible browsers here.

## Balances & Positions

Mon, 30 Nov 2009 12:08:01 pm EST

**Account**
45250786 (NUTMEG PATRIOT FUND, LLP)

  

### Balance Summary

| | | | |
|---|---|---|---|
| **Total Account Value** | $ 1,645.50 | **Trading Cash** | $ 1,645.50 |
| **Market Value of Securities** | $ 0.00 | **Available Cash** | $ 1,645.50 |
| **Money Market Funds** | $ 1,645.50 | | |

### Balance Detail

| Account Type | Trade Date Balance | Market Value | Equity | Total Account Value |
|---|---|---|---|---|
| Cash | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Margin | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Short | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Fund Balance | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,645.50 |
| Total | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,645.50 |

### Assets

| Symbol | Description | Quantity | Price | Start of Day | Current Value | Today's G/L | Account | Proportion |
|---|---|---|---|---|---|---|---|---|
| **Money Funds** | | | | | **$ 1,645.50** | | | **100.00%** |
| | NO DESCRIPTION AVAILABLE (DLD) | | $ 1.00 | | $ 1,645.49 | | | 100.00% |
| INT | Accrued Interest | | $ 1.00 | | $ 0.01 | | | 0.00% |
| **Total Assets** | | | | | **$ 1,645.50** | | | **100.00%** |

View Bar Charts

Copyright © 2004-2006 WestPark Capital, Inc. All Rights Reserved.
Business Disruption Plan

Quote data provided by Automated Financial Systems Corp.
Quotes are real time. Quote times are Eastern Time Zone (EST/EDT). Real time quotes are deducted from your quote bank.

You can download the latest compatible browsers here.


AEGIS CAPITAL CORP.

**Investor**
- Account Balances
- Account Positions
- Account History
- Portfolios
- Realized Gains/Losses
- E-Documents

**Trading**
- Open Orders
- Today's Activity

**Markets**
- Watch List
- Quotes

- Logoff
- Main Menu
- User Settings
- Help

Monday, November 30, 2009 11:50:41 AM EST
(Last successful login was on
Monday, November 23, 2009 1:46:01 PM EST )
Quotes are delayed at least 20 minutes

Quick Quote [ ] Go
Symbol Lookup

637 NEW MESSAGES

**Householding Summary**

| Account | Cash | Securities | Total Value |
|---|---|---|---|
| 57010099 NUTMEG MERCURY | U$ $66,508.55 | $71,400.79 | $137,909.34 |
| 57010139 NUTMEG/MICHAEL FUND | U$ ($7.49) | $23,502.35 | $23,494.86 |
| 57010140 NUTMEG/IMAGE FUND | U$ $1.00 | $89.89 | $90.89 |
| 57010141 THE NUTMEG GROUP | U$ $1,421.50 | $0.00 | $1,421.50 |
| 57010142 NUTMEG/FORTUNA FUND | U$ $37,829.52 | $4,786.48 | $42,616.00 |
| 57010143 NUTMEG/PATRIOT FUND | U$ $1,122.49 | $9,278.71 | $10,401.20 |
| 57010144 NUTMEG/LIGHTNING FUND | U$ ($76.12) | $1,363.00 | $1,286.88 |
| 57010174 NUTMEG MINI FUND LLLP | U$ $3,519.89 | $43,007.30 | $46,527.19 |
| 57010175 NUTMEG MINI FUND II LLLP | U$ ($1.40) | $4,669.47 | $4,668.07 |
| 57010206 NUTMEG OCTOBER | U$ $3,067.71 | $0.00 | $3,067.71 |
| 57010291 NUTMEG #2 | U$ $0.00 | $208.35 | $208.35 |
| **Total Account Value** | | | $271,691.99 |

DJIA
NASDAQ
2,152
2,139
2,136
2,123
11
1
3
as of 11:50am ET, 11/30/2009

**Market Summary**

| | | | |
|---|---|---|---|
| DJIA | ↓ | 10,267.30 | -42.62 |
| NASDAQ | ↓ | 2,120.79 | -17.65 |

**Selected Stocks**

Quotes supplied by Comstock, a division of Interactive Data Corp.
As your agreement for the receipt and use of market data provides,
the securities markets (1) reserve all rights to the market data that they make available;
(2) do not guarantee that data; and (3) shall not be liable for any loss due to either their negligence or to any cause beyond their reasonable control.


AEGIS CAPITAL CORP.

**Investor**
- Account Balances
- Account Positions
- Account History
- Portfolios
- Realized Gains/Losses
- E-Documents

**Trading**
- Open Orders
- Today's Activity

**Markets**
- Watch List
- Quotes

- Logoff
- Main Menu
- User Settings
- Help

## Select Account

Active Currency U$ >>

## Account Balances

NUTMEG MERCURY (57010099)

Monday, November 30, 2009 11:36:33 AM EST

637 NEW MESSAGES

| Account Balance Details | Balances |
|---|---|
| **Total Account Equity*** | $137,909.34 |
| **Funds available for cash trades** | $66,508.55 |
| **Funds available for margin trades** | $0.00 |
| **Cash** | |
| Cash | $0.00 |
| Money Market Funds | $66,508.55 |
| Interest Earned | $0.00 |
| Margin Balance | $0.00 |
| Short Balance | $0.00 |
| **Total** | $66,508.55 |
| **Securities*** | |
| Cash Market Value | $71,400.79 |
| Margin Market Value | $0.00 |
| Short Market Value | $0.00 |
| **Total** | $71,400.79 |
| **Money Locked by Open/Pending Orders** | |
| Cash | $0.00 |
| Margin | $0.00 |

* Does not include options.


AEGIS CAPITAL CORP.

**Investor**
- Account Balances
- Account Positions
- Account History
- Portfolios
- Realized Gains/Losses
- E-Documents

**Trading**
- Open Orders
- Today's Activity

**Markets**
- Watch List
- Quotes

- Logoff
- Main Menu
- User Settings
- Help

## Select Account

Active Currency U$ >>

## Account Balances

NUTMEG/MICHAEL FUND (57010139)

Monday, November 30, 2009 11:46:54 AM EST

637 NEW MESSAGES

| Account Balance Details | Balances |
|---|---|
| **Total Account Equity*** | $23,494.86 |
| **Funds available for cash trades** | $0.00 |
| **Funds available for margin trades** | $0.00 |
| **Cash** | |
| Cash | ($7.49) |
| Money Market Funds | $0.00 |
| Interest Earned | $0.00 |
| Margin Balance | $0.00 |
| Short Balance | $0.00 |
| **Total** | ($7.49) |
| **Securities*** | |
| Cash Market Value | $23,502.35 |
| Margin Market Value | $0.00 |
| Short Market Value | $0.00 |
| **Total** | $23,502.35 |
| **Money Locked by Open/Pending Orders** | |
| Cash | $0.00 |
| Margin | $0.00 |

* Does not include options.

 AEGIS CAPITAL CORP.

**Investor**
Account Balances
Account Positions
Account History
Portfolios
Realized Gains/Losses
E-Documents
**Trading**
Open Orders
Today's Activity
**Markets**
Watch List
Quotes

Logoff
Main Menu
User Settings
Help

## Select Account

Active Currency U$ >>

## Account Balances

NUTMEG/IMAGE FUND (57010140)
Monday, November 30, 2009 11:47:10 AM EST

637 NEW MESSAGES

| Account Balance Details | Balances |
|---|---|
| **Total Account Equity*** | $90.89 |
| **Funds available for cash trades** | $1.00 |
| **Funds available for margin trades** | $0.00 |
| **Cash** | |
| Cash | $0.00 |
| Money Market Funds | $1.00 |
| Interest Earned | $0.00 |
| Margin Balance | $0.00 |
| Short Balance | $0.00 |
| **Total** | $1.00 |
| **Securities*** | |
| Cash Market Value | $89.89 |
| Margin Market Value | $0.00 |
| Short Market Value | $0.00 |
| **Total** | $89.89 |
| **Money Locked by Open/Pending Orders** | |
| Cash | $0.00 |
| Margin | $0.00 |

* Does not include options.


AEGIS CAPITAL CORP.

**Investor**
- Account Balances
- Account Positions
- Account History
- Portfolios
- Realized Gains/Losses
- E-Documents

**Trading**
- Open Orders
- Today's Activity

**Markets**
- Watch List
- Quotes

- Logoff
- Main Menu
- User Settings
- Help

## Select Account

Active Currency U$ >>

## Account Balances

THE NUTMEG GROUP (57010141)

Monday, November 30, 2009 11:47:33 AM EST

637 NEW MESSAGES

| Account Balance Details | Balances |
|---|---|
| **Total Account Equity*** | $1,421.50 |
| **Funds available for cash trades** | $1,421.50 |
| **Funds available for margin trades** | $0.00 |
| **Cash** | |
| Cash | $0.00 |
| Money Market Funds | $1,421.50 |
| Interest Earned | $0.00 |
| Margin Balance | $0.00 |
| Short Balance | $0.00 |
| **Total** | $1,421.50 |
| **Securities*** | |
| Cash Market Value | $0.00 |
| Margin Market Value | $0.00 |
| Short Market Value | $0.00 |
| **Total** | $0.00 |
| **Money Locked by Open/Pending Orders** | |
| Cash | $0.00 |
| Margin | $0.00 |

* Does not include options.

 **Investor**

- Account Balances
- Account Positions
- Account History
- Portfolios
- Realized Gains/Losses
- E-Documents

**Trading**

- Open Orders
- Today's Activity

**Markets**

- Watch List
- Quotes

- Logoff
- Main Menu
- User Settings
- Help

## Select Account

Active Currency U$ >>

## Account Balances

NUTMEG/FORTUNA FUND (57010142)

Monday, November 30, 2009 11:47:47 AM EST

637 NEW MESSAGES

| Account Balance Details | Balances |
|---|---|
| **Total Account Equity*** | $42,616.00 |
| **Funds available for cash trades** | $37,829.52 |
| **Funds available for margin trades** | $0.00 |
| **Cash** | |
| Cash | $0.00 |
| Money Market Funds | $37,829.52 |
| Interest Earned | $0.00 |
| Margin Balance | $0.00 |
| Short Balance | $0.00 |
| **Total** | $37,829.52 |
| **Securities*** | |
| Cash Market Value | $4,786.48 |
| Margin Market Value | $0.00 |
| Short Market Value | $0.00 |
| **Total** | $4,786.48 |
| **Money Locked by Open/Pending Orders** | |
| Cash | $0.00 |
| Margin | $0.00 |

* Does not include options.


**Investor**
- Account Balances
- Account Positions
- Account History
- Portfolios
- Realized Gains/Losses
- E-Documents

**Trading**
- Open Orders
- Today's Activity

**Markets**
- Watch List
- Quotes

- Logoff
- Main Menu
- User Settings
- Help

## Select Account

Active Currency U$ >>

## Account Balances

NUTMEG/LIGHTNING FUND (57010144)

Monday, November 30, 2009 11:48:17 AM EST

637 NEW MESSAGES

| Account Balance Details | Balances |
| --- | --- |
| **Total Account Equity*** | $1,286.88 |
| **Funds available for cash trades** | $0.00 |
| **Funds available for margin trades** | $0.00 |
| **Cash** | |
| Cash | ($76.12) |
| Money Market Funds | $0.00 |
| Interest Earned | $0.00 |
| Margin Balance | $0.00 |
| Short Balance | $0.00 |
| **Total** | ($76.12) |
| **Securities*** | |
| Cash Market Value | $1,363.00 |
| Margin Market Value | $0.00 |
| Short Market Value | $0.00 |
| **Total** | $1,363.00 |
| **Money Locked by Open/Pending Orders** | |
| Cash | $0.00 |
| Margin | $0.00 |

* Does not include options.


Account Balances Case 1:09-cv-01775 Document 120 Filed 12/07/09 Page 35 of 78 Page 1 of 1

AEGIS CAPITAL CORP.

**Investor**
- Account Balances
- Account Positions
- Account History
- Portfolios
- Realized Gains/Losses
- E-Documents

**Trading**
- Open Orders
- Today's Activity

**Markets**
- Watch List
- Quotes

- Logoff
- Main Menu
- User Settings
- Help

## Select Account

Active Currency U$ >>

## Account Balances

NUTMEG/PATRIOT FUND (57010143)

Monday, November 30, 2009 11:48:43 AM EST

637 NEW MESSAGES

| Account Balance Details | Balances |
|---|---|
| **Total Account Equity*** | $10,401.20 |
| **Funds available for cash trades** | $1,122.49 |
| **Funds available for margin trades** | $0.00 |
| **Cash** | |
| Cash | $0.00 |
| Money Market Funds | $1,122.49 |
| Interest Earned | $0.00 |
| Margin Balance | $0.00 |
| Short Balance | $0.00 |
| **Total** | $1,122.49 |
| **Securities*** | |
| Cash Market Value | $9,278.71 |
| Margin Market Value | $0.00 |
| Short Market Value | $0.00 |
| **Total** | $9,278.71 |
| **Money Locked by Open/Pending Orders** | |
| Cash | $0.00 |
| Margin | $0.00 |

* Does not include options.

https://trading.fast-trade.com/aegis/balances.do 11/30/2009

**Investor**

- Account Balances
- Account Positions
- Account History
- Portfolios
- Realized Gains/Losses
- E-Documents

**Trading**

- Open Orders
- Today's Activity

**Markets**

- Watch List
- Quotes

- Logoff
- Main Menu
- User Settings
- Help

## Select Account

Active Currency U$ >>

## Account Balances

637 NEW MESSAGES

NUTMEG MINI FUND LLLP (57010174)

Monday, November 30, 2009 11:49:33 AM EST

| Account Balance Details | Balances |
|---|---|
| **Total Account Equity*** | $46,527.19 |
| **Funds available for cash trades** | $3,519.89 |
| **Funds available for margin trades** | $0.00 |
| **Cash** | |
| Cash | $0.00 |
| Money Market Funds | $3,519.89 |
| Interest Earned | $0.00 |
| Margin Balance | $0.00 |
| Short Balance | $0.00 |
| **Total** | $3,519.89 |
| **Securities*** | |
| Cash Market Value | $43,007.30 |
| Margin Market Value | $0.00 |
| Short Market Value | $0.00 |
| **Total** | $43,007.30 |
| **Money Locked by Open/Pending Orders** | |
| Cash | $0.00 |
| Margin | $0.00 |

* Does not include options.



Account Balances Case 1:09-cv-01775 Document 120 Filed 12/07/09 Page 37 of 78 Page 1 of 1

**Investor**
- Account Balances
- Account Positions
- Account History
- Portfolios
- Realized Gains/Losses
- E-Documents

**Trading**
- Open Orders
- Today's Activity

**Markets**
- Watch List
- Quotes

- Logoff
- Main Menu
- User Settings
- Help

## Select Account

Active Currency U$ >>

## Account Balances

NUTMEG MINI FUND II LLLP (57010175)

Monday, November 30, 2009 11:49:44 AM EST

637 NEW MESSAGES

| Account Balance Details | Balances |
|---|---|
| **Total Account Equity*** | $4,668.07 |
| **Funds available for cash trades** | $0.00 |
| **Funds available for margin trades** | $0.00 |
| **Cash** | |
| Cash | ($1.40) |
| Money Market Funds | $0.00 |
| Interest Earned | $0.00 |
| Margin Balance | $0.00 |
| Short Balance | $0.00 |
| **Total** | ($1.40) |
| **Securities*** | |
| Cash Market Value | $4,669.47 |
| Margin Market Value | $0.00 |
| Short Market Value | $0.00 |
| **Total** | $4,669.47 |
| **Money Locked by Open/Pending Orders** | |
| Cash | $0.00 |
| Margin | $0.00 |

* Does not include options.

https://trading.fast-trade.com/aegis/balances.do 11/30/2009



Account Balances Case 1:09-cv-01775 Document 120 Filed 12/07/09 Page 38 of 78 Page 1 of 1

**Investor**
- Account Balances
- Account Positions
- Account History
- Portfolios
- Realized Gains/Losses
- E-Documents

**Trading**
- Open Orders
- Today's Activity

**Markets**
- Watch List
- Quotes

- Logoff
- Main Menu
- User Settings
- Help

## Select Account

Active Currency U$ >>

## Account Balances

NUTMEG OCTOBER (57010206)

Monday, November 30, 2009 11:50:04 AM EST

637 NEW MESSAGES

| Account Balance Details | Balances |
|---|---|
| **Total Account Equity*** | $3,067.71 |
| **Funds available for cash trades** | $3,067.71 |
| **Funds available for margin trades** | $0.00 |
| **Cash** | |
| Cash | $0.00 |
| Money Market Funds | $3,067.71 |
| Interest Earned | $0.00 |
| Margin Balance | $0.00 |
| Short Balance | $0.00 |
| **Total** | $3,067.71 |
| **Securities*** | |
| Cash Market Value | $0.00 |
| Margin Market Value | $0.00 |
| Short Market Value | $0.00 |
| **Total** | $0.00 |
| **Money Locked by Open/Pending Orders** | |
| Cash | $0.00 |
| Margin | $0.00 |

* Does not include options.

https://trading.fast-trade.com/aegis/balances.do 11/30/2009



**Investor**

- Account Balances
- Account Positions
- Account History
- Portfolios
- Realized Gains/Losses
- E-Documents

**Trading**

- Open Orders
- Today's Activity

**Markets**

- Watch List
- Quotes

- Logoff
- Main Menu
- User Settings
- Help

## Select Account

Active Currency U$ >>

## Account Balances

637 NEW MESSAGES

NUTMEG #2 (57010291)

Monday, November 30, 2009 11:51:48 AM EST

| Account Balance Details | Balances |
|---|---|
| **Total Account Equity*** | $208.35 |
| **Funds available for cash trades** | $0.00 |
| **Funds available for margin trades** | $0.00 |
| **Cash** | |
| Cash | $0.00 |
| Money Market Funds | $0.00 |
| Interest Earned | $0.00 |
| Margin Balance | $0.00 |
| Short Balance | $0.00 |
| **Total** | $0.00 |
| **Securities*** | |
| Cash Market Value | $208.35 |
| Margin Market Value | $0.00 |
| Short Market Value | $0.00 |
| **Total** | $208.35 |
| **Money Locked by Open/Pending Orders** | |
| Cash | $0.00 |
| Margin | $0.00 |

* Does not include options.

# EXHIBIT B

BARNES & THORNBURG LLP

Suite 4400
One North Wacker Drive
Chicago, IL 60606-2833 U.S.A.
(312) 357-1313
Fax (312) 759-5646

www.btlaw.com

Leslie J. Weiss
(312) 214-4864
lweiss@btlaw.com

November 16, 2009

Re: *Securities and Exchange Commission (Plaintiff) v. The Nutmeg Group, LLC, Randall Goulding, David Goulding, (Defendants), David Goulding, Inc., David Samuel, LLC, Financial Alchemy, LLC, Philly Financial, LLC, Sam Wayne and Eric Irrgang (Relief Defendants)*

Dear Investor:

As you are aware, on August 6, 2009, Judge William J. Hibbler of the United States District Court for the Northern District of Illinois (the "Court") appointed me as Receiver for The Nutmeg Group LLC ("Nutmeg"). In such capacity the Court has directed that I oversee all aspects of Nutmeg's operations and business, which include, serving as general partner and investment adviser to Nutmeg/AdZone, LP, Nutmeg/Tropical, LP, Nutmeg/Startech II, LP, Nutmeg/Image Globe, LP, Nutmeg/Nanobac, LP, Nutmeg/MiniFund LLLP, Nutmeg/MiniFund II, LLLP, Nutmeg Lightning Fund I, LLLP, Nutmeg October 2005, LLLP, Nutmeg/Michael Fund, LP, Nutmeg Fortuna Fund, LLLP, Nutmeg/Patriot Fund, LLLP, and Nutmeg/Mercury Fund LLLP (collectively, the "Funds" or individually, a "Fund"). The Court has also given me the right to collect, take custody, control, possession of and to preserve, recover, marshal and take charge of all funds, assets, and other property of Nutmeg and the Funds and the power to sue, foreclose, sell liquidate, collect, receive and take possession of such property.

On October 8, 2009, I filed a report with the Court advising the Court on my activities to date. The report also included a summary of the assets of Nutmeg and the various Funds that the Receiver has in her possession or has documentation evidencing the Funds' ownership. A copy of that report is enclosed.

As I stated in my earlier letter to investors, the Court appointed Crowe Horwath LLP ("Crowe") as the accountant for Nutmeg and the Funds. Crowe has performed a forensic review of the Nutmeg/ Mercury Fund LLP and its affiliate has performed some valuation work with respect to this matter, however, Crowe's analysis has not been completed. Because of the lack of liquidity, Crowe's work has slowed; however, the goal is to have Crowe continue their investigation, including performing a forensic analysis of the other Funds.

I have reviewed most of the paper files that I received from Nutmeg and have found that the organization and content of many of those files to be problematic. Until sometime after the Securities and Exchange Commission ("SEC") conducted its investment adviser

November 16, 2009

examination of Nutmeg, the capital investors contributed to the various Funds was co-mingled and held together with the assets of Nutmeg. To further complicate matters, a substantial portion of the Funds' assets was held by separate entities and account operated/held by family members and associates of Randall Goulding. These entities and account holders are relief defendants in the SEC's case. Nutmeg did not maintain accurate financial books and records dating from the inception of the Funds. There are no primary back-up documents evidencing for the investments made by Nutmeg and the Funds, such as copies of checks, wire transfer receipts for investments and copies of stock certificates. There are, however, copies of many convertible notes and some warrants in the files. In some cases there are subscription documents and deal term sheets; however, many of these investments were made in traunches and it is difficult to determine from the documents in the file exactly how much was invested in each company. The only records of the investments are charts and spreadsheets prepared by Randall Goulding, which are not in and of themselves sufficient to verify the investment histories of the Funds. The SEC has ordered copies of many of the primary documents needed to verify the transactions from the bank and brokerage firms at which Nutmeg and the relief defendants held the Funds' assets, which the SEC will share with the Receiver. While I expect such documents to permit verification of monies in and out of the accounts of Nutmeg and others, this process will be lengthy.

The majority of the assets of Nutmeg and the Funds are in the form of convertible notes and to a lesser extent non-marketable Series B Preferred Stock. A substantial portion of the notes are in default and the majority of the issuers do not appear to be financially stable companies. I am in the process of trying to find a third party to assist in the valuation of these assets and the determination of how to maximize their value. I am not looking to engage any persons that were working with Nutmeg or Randall Goulding previously because of obvious conflicts of interest. I may send default notices to these companies or may seek to negotiate directly with the issuers or both.

Some of the Funds have stock held in brokerage accounts. Some of the stock is publicly traded; however, the prices for these securities are very low and the markets for these securities are generally thin. Some of the stock in the brokerage accounts is restricted and cannot be sold until the restrictions are removed. I am in the process of freeing up whatever stock I can so it can be sold. Some shares cannot be freed up now because the requisite holding periods have not been satisfied. For the foregoing reasons, the values set forth in the brokerage statements for the Funds cannot be relied upon as the fair market value of those assets. I have sold most of the stock held by the Funds that is liquid.

My experience dealing with the CEO's of some of the portfolio companies has not been particularly fruitful. The CEO's I have called appear to be operating out of their homes; do not respond to phone calls or requests for information in a timely manner. The SEC has assisted by urging these individuals to cooperate with me. I believe that the multiple lawsuits and other claims made by Randall Goulding against many of the portfolio

November 16, 2009

companies for breaching their obligations constitute ample evidence of the types of people I am dealing with. Nevertheless, I have made progress in this regard and will continue to contact such individuals as necessary.

I have identified certain claims that I believe Nutmeg and the Funds have against third parties that, if pursued successfully, would increase the value of the assets of Nutmeg and/or the Funds. I expect that some of those claims will be litigated and other will be settled. I intend to seek approval of the Court to engage an attorney on a contingency arrangement to pursue those claims that, in my best judgment, are supported by admissible evidence and that are likely to generate a recovery in excess of what they will cost. Other claims may materialize as Crowe, my attorneys and I continue our investigation.

I have heard from less than 50% of the investors so far. I have requested information about each investor's investment in the Funds, distributions received from the Funds and information about each investor's introduction to the Funds. If you have not already responded, I need this information from you. You may have additional information that would be helpful to my investigation and the discovery of assets. I would welcome disclosure of any information you think may be helpful to me in my role as receiver. I have attached to this letter the same form I circulated to investors with my September letter.

My next report to the Court is due on December 8, 2009. I also expect to file a fee petition for the Court to consider soon and will send copies of that petition and the report to investors.

As noted in my prior letter, any disbursement of funds to investors will be subject to future court orders.

I have set up a special email address for the receivership. It is Leslie.Weiss-Receiver@btlaw.com.

Please forward any questions and information by letter or email.

Thank-you.

Very truly yours,

Leslie J. Weiss

Leslie J. Weiss,
Receiver for The Nutmeg Group, LLC

Enc.

# INVESTOR INFORMATION FORM FOR FUNDS ORGANIZED BY THE NUTMEG GROUP LLC

Name: ________________________________

Address: ________________________________

________________________________

Email Address: ________________________________

Fax #: ________________________________

Telephone Number: ________________________________

Contact Person: ________________________________

Name of Fund: ____________________(the "Fund")

**Return completed claim form to Leslie J. Weiss, Temporary Receiver for The Nutmeg Group LLC**

**Barnes & Thornburg LLP, 1 North Wacker Drive, Suite 4400, Chicago, IL 60606**

Amount and Date of Initial Investment with Copies of Initial Check or Wire Transfers:

________________________________________________________________

Amounts and Dates of Subsequent Investments:

________________________________________________________________

________________________________________________________________

List each distribution, interest payment, redemption payments or other amounts you received from the Fund, the date received and the amount received on each date. Please indicate the type of payment:

________________________________________________________________

________________________________________________________________

________________________________________________________________

Copies of all investor statements you received from The Nutmeg Group LLC and the Fund.

Copies of all correspondence from you to the Fund, including, without limitation, redemption requests, consents to partnership agreement amendments and general correspondence.

How did you find out about the Fund?

______________________________________________________________________

______________________________________________________________________

______________________________________________________________________

______________________________________________________________________

______________________________________________________________________

______________________________________________________________________

Were you introduced to the Fund through a brokerage firm or a finder? If yes, please identify:

______________________________________________________________________

______________________________________________________________________

If you have any other information that you believe may be helpful to the Receiver, please provide:

______________________________________________________________________

______________________________________________________________________

# EXHIBIT C

 Date: August 31, 2009

To: Leslie J. Weiss, Receiver for the Nutmeg Group, LLC

From: Mari Reidy, Crowe Horwath LLP

Subject: Project Status Update – SEC v. The Nutmeg Group LLC

---

The purpose of this memo is to provide the Receiver a summary of our preliminary findings from our examination of records provided by the Nutmeg Group, LLC ("Nutmeg") related to Nutmeg/ Mercury Fund, LLP ("Mercury Fund"). In this memo, we also outlined the source documents we require to complete our analysis of Mercury Fund and the other Funds (Nutmeg/AdZone, LP, Nutmeg/Tropical, LP, Nutmeg/Startech II, LP, Nutmeg/MiniFund II LLLP, Nutmeg Lightning Fund I, LLP, Nutmeg October 2004, LLLP, Nutmeg/Michael Fund, LP, Nutmeg Fortuna Fund, LLLP, Nutmeg/Patriot Fund, LLLP).

**BACKGROUND**

We selected Mercury Fund to begin our analysis. First, the fund has its own National City bank account and brokerage accounts, and thus the sources and uses of the Fund's capital was expected to be easier to trace, as compared with some of the other Funds for which funds were commingled with Nutmeg's bank account. Second, Mercury Fund is one of the largest funds with assets valued by Nutmeg at approximately $5.4 million as of March 31, 2009, making it a material subject for analysis. Third, the Mercury Fund impacts other funds as several larger investments held by Mercury Fund are also held by other Funds. Therefore, the results of valuation performed on those investments in Mercury Fund may introduce efficiency as the analysis may also be used in the analyses of other Funds.

Nutmeg provided us with the following source documents to assist our analyses:

- The Nutmeg/ Mercury Fund, LLLP offering documents (January 2007 offering and August 2007 offering) and related partnership agreements
- Mercury Fund investor subscription documents

- Mercury Fund and The Nutmeg Group general ledger in QuickBooks prepared by Ryan Goulding (from January 1, 2007 to May 26, 2009)
- Historical and current legal agreements for investments made for Mercury Fund (gathered and organized by Randall Goulding for Mercury Fund)
- Mercury Fund investor statements prepared by Randall Goulding and David Goulding for the period ended December 31, 2009 (statement date, January 1, 2009)
- Mercury Fund's National City (#984509706) bank statements from January 2007 to April 2009
- Nutmeg's National City (#984510651) bank statements from January 2007 to May 2009
- Brokerage statements for accounts in the name of Mercury Fund, Nutmeg, and other related parties (note: a complete list of brokerage accounts under the name of the Relief Defendants has not been provided to us as of the date of this memo)
- Mercury Fund carried interest calculations prepared by David Goulding
- Mercury Fund valuations prepared by David Goulding for the period ended March 31, 2009

At the outset of the analysis, we requested Nutmeg to obtain from National City Bank the depository information and copy of cancelled checks and wires to identify the source of deposits and actual recipients of disbursements. We have not been provided with bank records to validate transactions recorded in Mercury Fund's general ledger. As a result, our findings described below are limited to the source documents made available to us by Nutmeg to date, and are subject to change after we examine the bank provided records.

## PRELIMINARY FINDINGS

### 1. Overview of Mercury Fund Capital

Mercury Fund was established on January 4, 2007 to accept $5.5 million in investor contributions. Initial investor contributions totaled $5,446,237.75. The balance, $53,762.25, was recorded as "due from Nutmeg" as a contribution on behalf of the Randall S. Goulding Trust. In August 2007, Nutmeg sought an investor vote for changing the fund structure to a perpetual fund. Pursuant to the August 2, 2007 Disclosure Memorandum, Mercury Fund's investment limit was increased to $7.5 million. To date, Nutmeg has not provided us with the signed acknowledgement from investors per our request, indicating approval of the conversion

and the amended partnership agreement. The table below summarizes our preliminary findings of sources and uses of Mercury Fund's investor capital.

**Table 1 Mercury Fund Capital Analysis**

| | |
|---|---|
| Sources of Capital: | |
| Total contributions | $6,158,031 |
| Total sales proceeds & repayments by borrowers | 3,252,113 |
| | $9,410,144 |
| Uses of Capital: | |
| Total investment funding - Mercury Fund | ($5,626,684) |
| Total investment funding - Nutmeg | (501,705) |
| Total investor distributions - Mercury Fund | (1,254,900) |
| Total investor distributions - Nutmeg | (653,024) |
| Total fund expenses (excluding mgmt fees and carried interest) | (38,247) |
| | ($8,074,560) |
| Sources less Uses | $1,335,584 |
| Mercury Fund Cash Balance as of May 31, 2009 | ($1,517) |
| Mercury Fund Capital Before Mgmt Fees and Carried Interest | $1,337,101 |
| Management Fees Recognized by Nutmeg | (369,002) |
| Carried Interest Recognized by Nutmeg | (743,031) |
| Total Fund Compenstations to Nutmeg | ($1,112,033) |
| Mercury Fund Capital After Mgmt Fees and Carried Interest | $225,068 |

In Table 1 above, we summarized the total sources of funds (i.e. investor contributions and proceeds from sale of investments) and total uses of funds (i.e. purchase of investments, distributions to investors, and non-management fee fund expenses such as broker fees). The total sources less total pre-management fees uses is about $1.3 million. At the end of May 2009, Mercury Fund has no cash left in its bank account.

*Questions for Analysis*

How was the excess of $1.33 million above used?

Mercury Fund's general ledger reflects management fees about $369K and carried interest of about $743K, totaling $1.1 million in compensation to Nutmeg. Nutmeg attempted to account

for the remaining $225K funds capital through assignment of investments which are briefly discussed later in this memo.

What is the timing and amounts of payment of management fees and carried interests to Nutmeg?

By February 14, 2007, 100% (or $1.8 million) of capital contributed by investors, which was originally deposited in Mercury Fund's bank account up to that time, was transferred to Nutmeg's bank account. The purpose of the transfer was unclear. However, the amount transferred was $700K higher than the total management fees and carried interests calculated by Nutmeg for the entire period from January 1, 2007 to March 31, 2009. It appears that Nutmeg obtained funds from Mercury Fund in advance (within two months from the Fund's inception) and later attempted to account for those transferred funds through the recognition of management fees, carried interests, and the assignment of investments.

**2. Investor Contributions and Distributions**

Although separate bank account and broker accounts were set up for Mercury Fund, we identified commingling of Mercury Fund investor contributions in Nutmeg's bank account. The table below presents the amount and the associated account of initial and subsequent deposits. Some of the rollover proceeds from other Funds (about 13% of the total investor contributions) are recorded as "Due From Nutmeg" and therefore do not constitute actual cash contributions.

**Table 2  Mercury Fund Capital Contributions**

| Initial & Subsequent Contributions | Cash Cont. deposited in Mercury Fund Bank Account | Cash Cont. deposited in Nutmeg or other Bank Account | Rollover Proceeds (noncash contributions) | RSG Noncash Contribution | Total Contributions |
|---|---|---|---|---|---|
| **Initial Contributions** | 4,188,573 | 877,759 | 379,906 | 53,762 | 5,500,000 |
| **Subsequent Contributions** | 314,156 | | 343,875 | | 658,031 |
| Total | $4,502,729 | $877,759 | $723,781 | $53,762 | $6,158,031 |
| % of Total Contributions | *73%* | *14%* | *12%* | *1%* | *100%* |
| Total cash contributions | | $5,380,488 | 87% | | |
| Total noncash contributions | | $777,544 | 13% | | |
| Total contributions | | $6,158,031 | 100% | | |

- Mercury Fund's National City bank account (#984509706) was opened on January 24, 2007. Approximately $4.2 million of the $5.4 million in initial contributions were deposited in Mercury Fund's bank account. Approximately $878K was deposited in accounts other than that of Mercury Fund's. We traced approximately $700K in initial investor contributions to Nutmeg's bank statements by matching amounts and approximate deposit dates with the investor statements. Of the $660K in subsequent contributions, we traced approximately $314K to Mercury Fund's bank statements. In total, about 73% of the total investor contributions ($6.16 million), or $4.5 million, was deposited (by check, wire, or online transfer) into Mercury Fund's bank account. The remaining 27% of the contributions, or $1.66 million, whether in actual cash contributions or investment sales proceeds rolled over from other Funds were recorded as an amount due from Nutmeg.

- By February 14, 2007, about $1.8 million in Mercury Fund investor contributions was deposited Mercury's bank account. During the same time frame, about $1.8 million of Mercury's funds was transferred from Mercury Fund's bank account to Nutmeg's bank account, leaving Mercury's bank account balance at $50,500 as of February 14, 2007.

- By July 31, 2007, about $2.3 million in investor's contributions, or 45% of the total initial cash contributions of $5.1 million, were either deposited or moved to Nutmeg's bank account. According to Mercury Fund's general ledger, Nutmeg funded about

$355K in investments for Mercury Fund by July 2007. During the same period, Nutmeg made distributions on behalf of Mercury Fund in the amount of approximately $346K out of the investment sales proceeds of $307K. Those sales were transacted through Nutmeg's broker accounts. After considering the net disbursements made by Nutmeg on behalf of Mercury, there is about $1.9 million Mercury Fund's capital in Nutmeg's bank account by July 31, 2007. We need to examine the bank support for Nutmeg's bank account(s) to understand the uses of the $1.9 million.

- Of the total cash distributions of $1.9 million to Mercury Fund's investors, approximately $650K (or 34%) was disbursed from Nutmeg's National City bank statements, and a total amount of $1.25 million (or 66%) was disbursed from Mercury Fund's National City bank account. We need copies of the checks or wire reports to validate the actual payees.

**3. Fund Investments**

Similar to the issues identified in capital contributions and distributions, there is no clear segregation in the uses of Mercury Fund's investor contributions in funding investments. Mercury Fund has invested in more than 40 companies. The investments typically assume the form of block stock purchase, loan, or convertible notes. According to Mercury Fund's general ledger, total cost of investments made for Mercury Fund is about $6.5 million. We traced about $5.6 million in disbursements from Mercury Fund's bank account to purchase investments. Another $907K in cost of investments recorded in Mercury Fund's investment account consists of reallocation or reassignment of investments by Nutmeg. Those investments were initially funded from Nutmeg's bank account and broker accounts. Some of those investments were sold through Nutmeg's broker accounts and the realized gains or losses were later assigned to Mercury Fund with the sales proceeds recorded as a "Due From Nutmeg." The assignment of Nutmeg or Randall Goulding's personal interests in investments to Mercury Fund raises questions as to whether those investments were initially made on behalf of Mercury Fund. Examples include but are not limited to:

- Assignment of Nutmeg's partnership interest in Nutmeg/Tropical LP (which was valued based on claims filed by Nutmeg against Vivicell/ Tropical in the US Bankruptcy Court in March 2006) in the amount of $141,836. This assignment was recorded in Mercury Fund's general ledger on December 31, 2008.

- Assignment of Randall Goulding's personal interests in Spooz in the amount of $18,200. A note with face amount of $58,250 was negotiated based on the October 31, 2008 Settlement Agreement between Spooz and Nutmeg/Mercury Fund. The face amount of the note consists of $18,200 in past loan advancement by Randall Goulding plus interest accrued, and $39,100 in compensation for the delay in the issuance of 8.5 million shares less the current value of the 8.5 million shares received.

- Assignment of investment in Taj Systems (A/K/A Integrative Health Technologies, Inc.) at $64,333. The amount was advanced by Nutmeg to purchase shares in Taj Systems. However, according to Randall Goulding, the shares were never delivered and he has prepared (but not yet filed) a complaint against Integrative Health Technologies, Inc.

- Multiple entries recorded in Mercury Fund's general ledger to adjust for Mercury Fund's investment in AccessKey, resulting in a net increase of $180K in investment in AccessKey.

In examining some of the investments recorded in Mercury Fund's general ledger, we could not match the investment agreement with the amount funded through the Fund's bank account. Some investments, according to Nutmeg's allocation schedules, were funded by Nutmeg and the Relief Defendants, held in the name of Nutmeg and/ or the Relief Defendants, and later assigned or allocated by Nutmeg to the Funds. For such investments, we require bank support documents for Nutmeg's bank accounts as well as the bank accounts of the Relief Defendants. Additional bank documentation and support will allow an analysis of which amounts were used to transact investments for the Funds in order to determine the amount of Funds' capital transferred to the Nutmeg and the Relief Defendants. Additional bank information will also establish the uses of those funds, the location of the investments purchased using those funds, and the related proceeds from sale of investments.

**Table 4 Funding to AccessKey**

| Entity | Amount Funded |
| --- | --- |
| Mercury | 699,700 |
| Nutmeg | 2,482,677 |
| Philly Financial | 160,037 |
| Financial Alchemy | 355,124 |
| RSG | 70,000 |
| Total Funding | $3,767,538 |
| Nutmeg Fees | 29,336 |
| Total Amount Allocated | $3,796,873 |

AccessKey is an example of an investment funded through multiple parties and later assigned and allocated to the Funds. Table 4 above provides for a breakdown of funding sources of investment in AccessKey. In August 2007, Nutmeg sent a letter to Mercury Fund investors describing the investments made for Mercury Fund. In the letter, Nutmeg indicated that total funding to AccessKey from Mercury Fund was $500,000 and the investment was in the form of a Note. However, there was no Note executed between Mercury Fund and AccessKey as of the date of the investor communication letter. By September 14, 2007, Mercury Fund had made payments to AccessKey totaling $699,700. The Convertible Note between Nutmeg/Mercury Fund and AccessKey on September 14, 2007, however, has a face amount of $585,607.

In his allocation of AccessKey investments performed around April and May 2008, prior to the allocation of $1.4 million to all Funds, Randall Goulding assigned $840,100 of the $3.8 million in total funding to Mercury Fund. The assigned amount is $140,400 higher than the amount of AccessKey investment funded through Mercury Fund's bank account. The reason for the assignment is unexplained.

**4. Management Fees and Carried Interests**

The initial Mercury Fund offering document issued in January 2007 provides that the limited partners will be charged a one-time 4% fee based on the amount of the funds raised. The 4% fee was to compensate for organization, accounting, and other administrative types of fees of the Fund. The January 2007 offering memorandum also provides for the method of allocating profits and losses among partners. Section 7.02 of the January 2007 offering memorandum states that the cash flow and profits shall be allocated to the Limited Partners until their entire investments have been returned, and thereafter, 75% to the Limited Partners, and 25% to the General Partner; in the case of new investors, the allocation would be 70% to the Limited Partners, and 30% to the General Partner.

In August 2007, Mercury Fund converted into a perpetual fund where investment sales proceeds can be reinvested into the Fund. In the August 2, 2007 letter from Nutmeg to investors (calling for investor votes on the conversion), Nutmeg stated that when the Fund is transformed into a perpetual fund, there will be no one time 4% charge on the funds raised in addition to the $5.5 million initial contribution. Instead, there will be a 2.5% annual management fee payable monthly based on end of period net asset value.

In August 2007, a Disclosure Memorandum for the converted Fund was issued. Mercury Fund had up to $7.5 million in partnership interest. According to the definitions contained in paragraph 3.8 of the Amended and Restated Operating Agreement (dated August 2, 2007, Exhibit A to the August 2007 Disclosure Memorandum), the 2.5% annual management fee is to compensate the General Partner for services only (and therefore does not cover accounting and other administrative type of fees).

The August 2007 Disclosure Memorandum also states that 25% net profit shall be allocated to the General Partner. In no event will reallocations for previous fiscal periods be reimbursed if subsequent Net Losses occur. Prior to the General Partner receiving a special incentive allocation, any Net Losses in previous fiscal periods must be recovered through subsequent Net Profits. The August 2007 Disclosure Memorandum is silent as to whether a performance threshold has to be met or whether the Limited Partners' initial investments ($5.44 million) have to be returned prior to the reallocation of net profits. It appears that allocation of net profits and loss shall be performed on the last day of each fiscal year based on each partner's proportionate

interest in the partnership. After the allocation, if net profits exist in the Limited Partners account, then the "allocable net profits" will be reallocated 25% to the General Partner and 75% to the Limited Partners. The "net allocable profit" is not defined in the August 2007 Disclosure Memorandum.

When questioned about the differences in the allocation method for carried interest between the January 2007 and August 2007 offering documents, Randall Goulding indicated that the allocation method described in the January 2007 which requires a return of initial investment before the triggering of reallocation of net profits was not his intention. He stated that the carried interest calculation method used by David Goulding should have properly reflected the terms contained in the August 2007 offering document. However, when we tried to clarify the definition of allocable net profit with him, Randall Goulding could not provide an explanation for the lack of definition in the offering document, as well as the attached partnership agreement.

**Nutmeg's Calculations – Management Fees**

From January 2007 to March 2009, based on the recordings in Mercury Fund's general ledger, a total of $369,001 was charged by Nutmeg as management fees. To date, Nutmeg has not provided its basis for management fee calculations. It appears from G/L entries that management fees were determined for the period ended July 31, 2007, and then each quarter thereafter. The management fees for the first seven months were calculated by applying the 2.5% rate to the initial investment limit of $5.5 million and the subsequent fees were calculated by multiplying quarter end Gross Asset Value (GAV) by 2.5%. This method deviates from the terms in the August 2007 Disclosure which states that management fees shall be calculated based on Net Asset Value (NAV).

Table 5 below recalculates the management fees for July 31, 2007, as calculated by Nutmeg, based on the initial investment limit and the subsequent periods based on end of period GAV (valuation prepared by David Goulding), and compares the recalculated fees with the amount recorded in Mercury Fund's general ledger. The difference between our recalculated amount and the amount of fees recorded is $457.

**Table 5 Nutmeg's Calculation of Management Fees** Rate: 2.50%

| Date | Basis | Amount | Calculated Fees | Amount of Fees Recorded | Difference |
|---|---|---|---|---|---|
| 7/31/2007 | Initial Limit | $5,500,000 | $80,208 | $80,208 | - |
| 9/30/2007 | GAV | $7,659,644 | $31,915 | $31,915 | - |
| 12/31/2007 | GAV | $7,482,241 | $46,764 | $46,764 | - |
| 3/31/2008 | GAV | $8,748,073 | $54,675 | $54,675 | - |
| 6/30/2008 | GAV | $7,269,540 | $45,435 | $45,435 | - |
| 9/30/2008 | GAV | $5,888,176 | $36,801 | $36,801 | - |
| 12/31/2008 | GAV | $6,271,652 | $39,198 | $39,444 | $247 |
| 3/31/2009 | GAV | $5,367,631 | $33,548 | $33,759 | $211 |
| Total Fees | | | $368,544 | $369,002 | $457 |

In addition to the methodological discrepancies between the terms in the January 2007 and August 2007 offering agreements and the method of calculation used by Nutmeg, the amount of management fees was determined based on assets valued by Nutmeg without any independent third party corroboration. Our preliminary assessment of valuation of Mercury Fund investments as of May 2009 indicates that some of the assets were significantly overvalued by Nutmeg. As a result, to calculate management fees and carried interest based on the terms in the partnership agreements, we would require independent valuations of investments at the end of each period. This process can be done, but it may be time consuming and costly. Alternatively, to remove uncertainties associated with valuation in a more efficient and cost effective manner for the Receiver, we propose two methods of calculating management fees based on available factual information.

Method 1 in the table below calculates the fees by applying 4% to the total amount of Mercury Fund capital contributions in accordance with the January 2007 offering in effect on July 31, 2007. Method 2 applies 4% one time fees to the initial $5.5 million capital contributions for the first layer of fees and 2.5% annual fees to the subsequent additional contributions of $658K (prorated by 20 months from August 2007 to March 2009) for the second layer of fees. Under Method 2, we calculated the amount of management fees to be $247,418, about $1,000 higher

than the fees calculated under Method 1, and about $120K lower than the fees calculated by Nutmeg.

**Table 6 Proposed Methods of Calculating Management Fees without Valuation**

| | Total Contributions | Rate | Calculated Management Fees |
|---|---|---|---|
| Method 1 | $6,158,031 | 4% | $246,321 |
| Method 2 | $5,500,000 | 4% | $220,000 |
| | $658,031 | 2.5% | $27,418 |
| | | | $247,418 |

**Nutmeg's Calculations – Carried Interest**

Nutmeg calculated accrued carried interest for periods ended July 31, 2007 and each quarter thereafter up to March 31, 2009. The accrued carried interest is calculated based on the change in Gross Asset Value (ending GAV less beginning GAV) multiplied by the carried interest percentages for each investor. For each period, Nutmeg records realized carried interests (i.e. payable to Nutmeg) based on disbursements (distributions and redemptions) to the investors. The unrealized portion of the accrued carried interests was carried forward to the next period until December 31, 2008, and then the entire unrealized portion was recognized by a one time recording of carried interest due to Nutmeg in the amount of $439,271. The total amount of carried interest recognized by Nutmeg is $743,031.

It is unclear which methodology Nutmeg followed in calculating carried interests. Based on the pre-August 2008 method, the reallocation of profits (25% to GP and 75% to LP) happens after the initial investments are returned to the limited partners. It appears that Nutmeg's method of calculations did not follow that method. Based on the post-August 2008 methodology, a 25% carried interest on net profit applies to all investors. However, Nutmeg used different percentages for existing investors (25%) vs. new investors (30%). In addition, the earned carried interest calculated by Nutmeg is largely dependent on Nutmeg's valuation of assets as of July 31, 2007 which was $8.4 million, a more than 50% increase from the initial $5.4 million in investor contributions. When we requested the support for the July 31, 2007 asset valuations, David Goulding responded by indicating that he was unable to provide us with the valuation support.

We performed a calculation of carried interest based on Nutmeg's period end asset valuations and also applying the following methodology:

- For the period from January to July 2007, realized carried interests are calculated using tax basis income in accordance with the January 2007 offering in effect on July 31, 2007. Carried interest is thus realized only when investments are sold and gain realized.
- For the periods subsequent to July 31, 2007, the 25% carried interest percentage is applied to the increase in GAV during each quarter pursuant to the August 2007 offering. If GAV decreases, then no carried interests are recognized (assumed that change in NAV equals the change in GAV).
- It is important to note that GAV is based on Nutmeg's valuations which may be overstated.

The Table 6 below presents the Nutmeg's calculated carried interest amount. The calculated carried interest based on Nutmeg's valuation is about $310K less than the amount of carried interests paid by Mercury Fund.

**Table 6 Recalculation of Carried Interests** Carried Interest 25%

| Period End | Beg GAV | End GAV | Change in GAV | Total Sales Proceeds | Realized CI |
|---|---|---|---|---|---|
| 7/31/2007 | 5,500,000 | 8,382,563 | 2,882,563 | $1,331,571 | $114,474 |
| 9/30/2007 | 7,502,123 | 7,659,644 | 157,520 | | $39,380 |
| 12/31/2007 | 7,611,289 | 7,482,241 | (129,048) | | - |
| 3/31/2008 | 7,630,597 | 8,748,073 | 1,117,476 | | $279,369 |
| 6/30/2008 | 8,475,800 | 7,269,540 | (1,206,260) | | - |
| 9/30/2008 | 7,084,819 | 6,531,160 | (553,660) | | - |
| 12/31/2008 | 5,907,840 | 6,338,371 | 430,530 | | - |
| 3/31/2009 | 5,794,990 | 5,420,301 | (374,689) | | - |
| | | | | | $433,223 |
| | | Carried interests paid by Mercury Fund | | | $743,031 |
| | | Difference | | | ($309,809) |

**Table 7 below is a summary of Preliminary Findings to date**

| Item | Descriptions | Amount |
|---|---|---|
| 1 | Initial investor contributions deposited directly in Nutmeg's bank account. | $878K |
| 2 | Investor contributions deposited in Mercury Fund's bank account through February 14, 2007 totaling $1.8 million was transferred to Nutmeg's bank account. | $1.8 million |
| 3 | About $907K recorded in Mercury Fund's General Ledger investment account | $907K |

| | | |
|---|---|---|
| | were investments funded by Nutmeg or Relief Defendant and later assigned or allocated to Mercury Fund based on valuations performed by Nutmeg. | |
| 4. | From January 2007 through March 2009, Nutmeg charged management fees totaling $369K and carried interests totaling $743K. The methods of calculations were not supported by the January and August 2007 partnership agreements. The language for the terms in both agreements is unclear. We request assistance from the Receiver to clarify the terms and determine the appropriate methods to calculate management fees and carried interests. Based on our preliminary calculations using Nutmeg's valuation, management fees and carried interest are potentially overstated by $120K and $310K, respectively. | $1.1 million |

**NEXT STEPS**

To complete our analyses of Mercury Fund and the other 12 Funds, we require additional information. The additional information required to date includes, bank support for the Funds' bank account, Nutmeg's bank account and detailed support (from 2005 to 2009), and the bank accounts of the Relief Defendants where they were involved in related transactions and investments for the Funds. All relevant broker account statements, investment contracts, investment statements and investor communications are also required to complete our analysis.

The table below summarizes the scope of our suggested additional analysis as defined by general ledger period, number of bank accounts and brokerage accounts, and number of investors for each fund under analysis as well as the pertinent information for Nutmeg.

**Table 8 Summary of Scope**

| No. | Entity | QB G/L | No. Bank Account | Cash Analysis Period | Brokerage Accounts * | of Investment 3/31/09 | No. of Investors |
|---|---|---|---|---|---|---|---|
| 1 | Nutmeg | 09/07 - 05/09 QB, 2004 - 2007 - excel download from prior accounting | 1 | 2006 - 2009 | 11 | 29 | |
| 2 | Mercury Fund | 01/07 - 05/09 | 1 | 2007 - 2009 | 7 | 42 | 103 |
| 3 | MiniFund | 01/07 - 05/09 | 1 | 2008 - 2009 | 2 | 26 | 41 |
| 4 | MiniFund II | 01/07 - 05/09 | 1 | 2008 - 2009 | 2 | 29 | 42 |
| 5 | Lightning | 01/07 - 05/09 | 1 | 2008 - 2009 | 2 | 22 | 51 |
| 6 | October | 01/07 - 05/09 | 1 | 2008 - 2009 | 1 | 12 | 68 |
| 7 | Michael | 01/07 - 05/09 | 1 | 2008 - 2009 | 2 | 34 | 86 |
| 8 | Fortuna | 01/07 - 05/09 | 1 | 2008 - 2009 | 2 | 22 | 93 |
| 9 | Patriot | 01/07 - 05/09 | 1 | 2008 - 2009 | 3 | 11 | 93 |
| 10 | Nanobac | 01/07 - 05/09 | 1 | 2008 - 2009 | 0 | | |
| 11 | Image Globe | 01/07 - 05/09 | 1 | 2008 - 2009 | 1 | | |
| 12 | Tropical | *G/L not provided* | | | | | |
| 13 | Adzone | *G/L not provided* | | | | | |
| 14 | Startech II | *G/L not provided* | | | | | |
| | Total | | 11 | | 33 | | |

* Based on the list provided by David Goulding. This list does not include the bank accounts and brokerage accounts associated with the related entities.

 **Date:** September 1, 2009

**To:** The File

**From:** Vincent Covrig and Dan McConaughy

**Re:** Preliminary work on the valuation of securities held by Nutmeg's Mercury Fund

---

We have reviewed various Agreements, 10-Ks or 10-Q filings, company research on Capital IQ, and Nutmeg and Mercury Fund documents and spreadsheets regarding values, ownership and capital raising information. These documents are voluminous. We have two binders of documents for AccessKey alone.

Initially our progress was extremely slow due to the volume of documents and the quality of the Mercury spreadsheets and valuations and the varieties and changes in the agreements and the complexity of the agreements. As we became more familiar with them our progress improved significantly.

Note that these securities are highly illiquid; so any valuation is the opinion of the appraiser. Actual sales of these securities, if they can be sold, likely would be negotiated. Often these securities are valued using complex models, which would be cost prohibitive for the investigation of Nutmeg. We provide an example of our valuation of QPC Lasers which we performed for financial reporting purposes in Appendix C.

Other Appendices:
A – Nutmeg's Valuation Model, from Randy Goulding
B – Access Key Valuation Departure, from Randy Goulding

General Observations Regarding Nutmeg's Valuation Methods and Applications

1. Nutmeg significantly overvalued all of the Notes we reviewed so far by abusing the as-converted in share valuation method. Although the as-converted method often may be reasonable in practice, in this case the method was applied inappropriately to (i) notes that are not convertible at the option of the holder; and (ii) cases when the convertible notes are well out of the money, and therefore the note is, for practical purposes, debt.

2. In cases when the applied as-converted valuation method was appropriate, a restricted and illiquidity discounts were too low or not even applied.

3. The credit/default risk of the Notes was underestimated, and there are cases when the Notes were in quasi default but no compliance discount was applied.

4. We did not have enough information in the received documents to assess all of Nutmeg's valuations. By extrapolating the valuation method used for a note in the previous quarter we were not able to match Nutmeg's values.

Summary of Valuation Findings

| Date | Type | Security | Mercury Value | Crowe Value | $ Difference | % Difference | Total Nutmeg et al. Value for all holdings | Crowe Valuation - assumes all investments like Mercury's | Total Dollar Impact |
|---|---|---|---|---|---|---|---|---|---|
| 3/31/2009 | note | AKYI | $1,667,554 | $583,639 | -$1,083,915 | -65% | $3,507,828 | $1,227,729 | -$2,280,099 |
| 12/31/2008 | | AKYI | $1,200,632 | $383,535 | | | | | |
| 9/30/2008 | | AKYI | $1,306,058 | $252,914 | | | | | |
| 6/30/2008 | | AKYI | $1,274,545 | $245,087 | | | | | |
| 3/31/2008 | | AKYI | $1,248,227 | $312,057 | | | | | |
| 12/31/2007 | | AKYI | $1,213,572 | $606,786 | | | | | |
| 3/31/2009 | note | PHYH | $531,165 | $302,355 | -$228,810 | -43% | $1,252,000 | $712,677 | -$539,323 |
| 12/31/2008 | | PHYH | $510,500 | $290,592 | -$219,908 | -43% | approximate - need more information | | |
| 3/31/2009 | note | HWBI | $533,749 | $102,644 | -$431,105 | -81% | $1,145,362 | $220,262 | -$925,100 |
| 12/31/2008 | | HWBI | $792,592 | $200,308 | -$592,284 | -75% | | | |
| 3/31/2009 | note | QPCI | $47,355 | $0 | -$47,355 | -100% | don't know | | |
| 3/31/2009 | note | NSEH | $202,219 | $50,554 | -$151,665 | -75% | $267,511 | $66,877 | -$200,634 |
| 12/31/2008 | | NSEH | $260,818 | $65,204 | -$195,614 | -75% | | | |
| | | | Matured March 9, 2009 | | | | | | |
| 3/31/2009 | note | VRGN | $183,540 | need more information - preliminary indication is that it isovervalued | | | | | |
| 12/31/2008 | | VRGN | $244,720 | | | | | | |
| 3/31/2009 | R.S. | NIVS | $484,836 | $387,869 | reflects 20% discount - Nutmeg didn't apply any discount | | | | |
| 12/31/2008 | | NIVS | ? | $250,000 | purchase price | | | | |
| 9/30/2008 | | NIVS | ? | $250,000 | | | | | |
| 3/31/2009 | note | ICCW | $80,598 | $20,149 | -$60,449 | -75% | $528,556 | $132,136 | -$396,420 |
| 12/31/2008 | | ICCW | $77,962 | $19,490 | -$58,472 | -75% | | | |

## Valuation of Investments in AccessKey IP (AKYI)

### Characteristics

$1,230,236.5 face value of a Note with embedded derivatives. Maturity September 30, 2010. Interest payable quarterly based on a set of complex conditions tied to AccessKey's share price performance over each quarter. The minimum quarterly interest is 2.5% and the maximum interest benefit, based on the embedded conditions, is 25%.

Total principal value of Nutmeg funds' invested in AccessKey is $3,507,828.73, and we believe that all funds hold the same Convertible Note, but with different principal values.

AccessKey is a nano cap company, with a market capitalization of $3.2 million on August 27, 2009. The Company has a history of defaults and renegotiations in its contracts with Nutmeg funds - our files contain numerous agreements since early 2007. AccessKey's share price and trading volume was very stable in the last two years. From January 1, 2007 to June 30, 2009 the share price traded in a range of $0.003 to $0.023, and daily trading volume averaging 1.2 million shares.

We reviewed Nutmeg's valuations and performed our valuations for the periods 3/2009, 12/2008, 9/2008, 6/2008, 3/2008 and 12/2007.

### Findings:

A. Issues

Although Nutmeg claims that this is a standard Convertible Note, where the Holder of the Note has the right to convert, in reality the Note is an exotic note where the issuer (i.e. AccessKey) has the option to pay the principal in shares (i.e. convert) or in cash. Section 4 Alternative Methods of Payment in the Agreement says " … the Company **may, at its sole option** elect to make such payments of principal and interest under this Note, in freely tradable shares of the Company's common stock."

It is more appropriate to value a note like this as Debt, as the Company will choose to pay the minimum of the Note principal value or as-converted in shares value. The Holder (i.e. Nutmeg funds) will benefit from the potential stock price appreciation because if the stock price increases significantly above the contract's pay-in-kind price the Company will issue stock to other investors, at better terms than the current conversion price, and redeem the Note at the face value. Furthermore, per AccessKey's 10-K, page F-26, " The Company has been actively involved in negotiating new terms and believes that the notes will be revised by March 31, 2009." The whole section that includes the previous section states clearly that the Company never had the intention to pay in shares due to "… onerous terms as written in the New Note documents."

Based on its most recent 10-Q during the first 6 months of 2009, AccessKey issued two loans in March and April 2009 raising $840,000 cash. One, for $640K, was issued to Physicians

Healthcare, which is another portfolio company of Mercury. AccessKey purchased with $500K of the cash raise, at the face value, a $500k portion of an old Note issued to the Stealth Fund. By June 30, 2009, AccessKey defaulted on the obligations towards these two loans. There may be a conflict of interest given that the CEO of AccessKey is an investment advisor for Stealth Fund. Further investigation may be warranted to determine whether there was intent to raise money from related parties and buy defaulted old debt at face value such that the investors can book their investments at face value.

At this time, considering the post 3/31/2009 developments, the Note to Mercury, with a face value of $1,000,526.57 and accumulated interest of at least $500,263 may be close to worthless. A discount of 90% or more may be appropriate, considering that AccessKey defaulted on other loans, and may seek to take advantage of Nutmeg's situation.

**B. Valuation at 3/31/2009**

Nutmeg recorded a value of $1,667,554 at 3/31/09 for Mercury Fund's investment in AccessKey.

We followed Nutmeg's valuation method, as used for the 12/31/2008 valuation of the same Note, and *we were not able to agree to* the $1,667,554 booked by Nutmeg. Following Nutmeg's method we obtained $1,200,631.88 value for the principal of the note and $300,157.97 value for earned interest, for a total of $1,500,789.85. Nutmeg's valuation method considers the Note and earned interest at the face value, assuming that the two can quickly be converted in shares and the shares sold, with no consideration for illiquidity or credit risk.

The Note should be valued as Debt, as the Company, not the Holder, has the right to convert interest and principal and pay in shares. Considering the Note as Debt, we looked at the Loan discount guidelines in Nutmeg's Memo dated 4/21/2009 (from David Goulding). Considering that the Note was in default and restructured, the appropriate discount based on Nutmeg's guidelines should be 50%. A 50% discount to the $1,500,789.85 principal and earned interest results in a $750, 395 value for the Note.

However, based on the facts that the Note was (i) in default, (ii) renegotiated in August 22, 2008, May 1, 2008, and going back to September 2007, (iii) poor financial and cash position of the AccessKey, and (iv) that AccessKey considered the December agreement onerous and was working to renegotiate it, that the following two approaches and discounts are more appropriate:

i. Apply a 75% discount for the principal value of $1,000,526.57 resulting in a fair value of $250,131.64. A 75% discount was chosen because the Company considers the terms onerous, Nutmeg and Mercury's present situation, and the Company's week financial position. Furthermore, the note has not been renegotiated to our knowledge, suggesting that communications between Nutmeg and Mercury and AccessKey may be poor.

ii. Apply a pay-in-kind method on the accumulated interest of $500,263. In this case, we assume that AccessKey will pay the Interest in shares, based on the formulas in the Agreement. Applying a 50% illiquidity discount, the resulting Fair Value of the accumulated interest is $333,508 – for the calculation; please see our files.

Summing up the two components we obtain **Crowe's Fair Value of $583,639**.

**C. Valuation at 12/31/2008**

Nutmeg recorded a value of $1,200,631.88 at 12/31/08 for Mercury Fund's investment in AccessKey.

We followed Nutmeg's valuation method, and we were able to agree to the $1,200,631.88 value. Nutmeg's valuation method values the Note and earned interest at the face value, assuming that the two can quickly be converted in shares and the shares sold, with no consideration for illiquidity or credit risk. This method is inappropriate.

The Note should be valued as Debt, as the Company, not the Holder, has the right to convert interest and principal and pay in shares. Considering the Note as Debt, we looked at the Loan discount guidelines in Nutmeg's Memo dated 4/21/2009 (from David Goulding). Considering that the Note was in default and restructured, the appropriate discount based on Nutmeg's guidelines should be 50%. A 50% discount to the $1,200,631.88 principal and earned interest results in a $600,316 value for the Note.

However, based on the facts that the Note was (i) in default, (ii) renegotiated in August 22, 2008, May 1, 2008, and going back to September 2007, (iii) poor financial and cash position of the AccessKey, and (iv) that AccessKey considered the December agreement onerous and was working to renegotiate it, we consider that two approaches and discounts are appropriate:

iii. A 75% discount for the principal value of $1,000,526.57 resulting in a fair value of $250,131.64.

iv. A pay-in-king method on the accumulated interest of $200,105.31. In this case, we assume that AccessKey will pay the Interest in shares, based on the formulas in the Agreement, with a 50% illiquidity discount. The resulting Fair Value is $133,403.54.

Summing up the two components we obtain **Crowe's Fair Value of $383,535** .

**D. Valuation at 9/30/2008**

For this quarter, the Note valuation is based on the May 1, 2008 Agreement, which has different contractual features than the December 23, 2008 agreement. The principal valued is $964,494.4, maturing on September 30, 2009. This is a Convertible Note with embedded features where the Holder (i.e. Nutmeg) has the option to convert the Note in shares based on formulas in the agreement.

However, based on Section 5, Optional/Mandatory conversion, Nutmeg does not has the right to consider conversion in the first 6 months, i.e., before 11/1/2008. Furthermore, Section 4A of the Note stipulates that the Company is allowed to pay in-kind only if the average price is greater than $0.05 for 10 consecutive days and average daily volume is at least 15 times the number of shares to be issued. The price milestone was never reached since May 1, 2008. ***Although the Note was not convertible as of September 30, 2008 Nutmeg valued it as converted.***

Nutmeg recorded a value of $1,306,058 at 12/31/08 for Mercury Fund's investment in AccessKey.

We followed Nutmeg's valuation method, and we were able to agree to the $1,306,058 value.

Nutmeg's method assumes that the Holder can and will convert the Note, based on a set of methods set in the agreement, and sell quickly the converted shares. The as-converted number of shares is equal to roughly 70% of shares outstanding, making it impossible to sell in the open market in any reasonable time and at any reasonable price.

Since the Note has a 6 months vesting period, and thus cannot be converted, it should be valued as Debt. The Face Value is $964,494.4 and we calculated the earned interest at $47,162, for a total value of $1,011,656.

Considering the Note as Debt, we looked at the Loan discount guidelines in Nutmeg's Memo dated 4/21/2009 (from David Goulding). Because the Note was in default and restructured, the appropriate discount based on Nutmeg's guidelines should be 50%. A 50% discount to the $1,011,656 principal and earned interest results in a $505,828 value for the Note. However, based on the facts that the Note was (i) in default, (ii) renegotiated in May 1, 2008, and going back to September 2007, (iii) poor financial and cash position of the AccessKey, (iv) AccessKey did not pay in kind (to our knowledge), we consider that a 75% credit and illiquidity discount to be more appropriate, resulting in a **Crowe's Fair Value of $252,914**.

**E. Valuation at 6/30/2008**

For this quarter, the Note valuation is based on the May 1, 2008 Agreement, agreement that has different contractual features than the December 23, 2008 one. The principal valued is $964,494.4, maturing on September 30, 2009. This is a Convertible Note with embedded features where the Holder (i.e. Nutmeg) has the option to convert the Note in shares based on formulas in the agreement.

However, based on Section 5, Optional/Mandatory conversion, Nutmeg does not have the right to consider conversion in the first 6 months, before 11/1/2008. Furthermore, Section 4A of the Note stipulates that the Company is allowed to pay in-kind only if the average price is greater than $0.05 for 10 consecutive days and average daily volume is at least 15 times the number of shares to be issued. The price milestone was never reached since May 1, 2008.
***Although the Note was not convertible as of June 30, 2008, Nutmeg valued it as converted.***

Nutmeg recorded a value of $1,274,545 at 6/30/08. Nutmeg used the incorrect interest rate (10%), instead of the correct 11.742%, in the calculation of the accrued interest. Otherwise, using the 10% rate, we were able to agree to the $1,274,545 value.

Nutmeg's method assumes that the Holder will convert the Note, based on a set of methods set in the agreement, and sell quickly the converted shares. The as-converted number of shares is equal to roughly 40% of shares outstanding, making it impossible to sell open market in any reasonable time and at any reasonable price. Nutmeg did not consider any illiquidity or restricted stock discount.

Since the Note has a 6 months vesting period and thus cannot be converted. Considering the financial position of the Company and the market for the stock, the Note should be valued as Debt. The Face Value is $964,494.4, and we calculated the earned interest at $15,854, for a total value of $980,349.

Considering the Note as Debt, we looked at the Loan discount guidelines in Nutmeg's Memo dated 4/21/2009 (from Dave Goulding). Considering that the Note was in default and

restructured, the discount based on Nutmeg's guidelines would be 50%. Applying a 50% discount to the $980,349 principal and earned interest results in a $490,174.5 value for the Note.

However, based on the facts that the Note was (i) in default, (ii) renegotiated in May 1, 2008, and going back to September 2007, (iii) poor financial and cash position of the AccessKey, (iv) AccessKey did not pay in kind, we consider a75% credit and illiquidity discount to be more appropriate, resulting in a **Crowe's Fair Value of $245,087**.

**F. Valuation at 3/31/2008**

For this quarter, the Note valuation is based on the September 14, 2007 Agreement, which has different contractual features than the May 1, 2008 Agreement. The principal value is $585,607.88, maturing on September 14, 2009. This is a Convertible Note with embedded features where the Holder (i.e. Nutmeg) has the option to convert the Note in shares based on formulas in the agreement. There is a 6 months restriction period that ended on 3/14/2008.

The Note has a pay in kind (shares) feature. However, AccessKey is not allowed to pay in kind unless certain price and volume milestones are reached, which were never reached.

Nutmeg recorded a value of $1,248,227 at 3/31/08.

We followed Nutmeg's valuation method, and we were able to agree to the $1, 248,227 value. Nutmeg's valuation method is based on as-converted basis that results in 156,028,433 shares equivalent, or roughly 45% of the shares outstanding. Though it may be appropriate in some situations to value a note like this one on an as-converted basis, an adequate illiquidity discount for the as converted shares should be used. Nutmeg did not consider any illiquidity discount for the as converted shares even though the block of 156,028,433 shares was 45% of shares outstanding, is extremely illiquid, and very dilutive.

Nutmeg's as converted block of 156,028,433 shares accounts for around 45% of the existing shares outstanding, and at 1% a quarter liquidation restriction it will take close to 45 quarters, or more than 11 years to liquidate. Furthermore, the issuance and sales of these converted shares creates a severe dilution problem that will definitely have a strong negative impact on the share price. Furthermore, the block of shares is on a minority basis.

David Goulding's Valuation Model Memo (dated 4/21/2009) which details the valuation guidelines considers a 35% discount (maximum) illiquidity discount. Such a discount may be reasonable when it takes 18 month to liquidate, as he assumed, but too low, considering an 11 years expected time to liquidate, severe dilution and the financial weakness of the Company.

Considering these factors, a 75% illiquidity discount is more appropriate, resulting in a **Crowe's Fair Value of $312,056.8**.

**G. Valuation at 12/31/2007**

For this quarter, the Note valuation is based on the September 14, 2007, Agreement, which has different contractual features than the May 1, 2008 agreement. The principal value is $585,607.88, maturing on September 14, 2009. This is a Convertible Note with embedded features where the Holder (i.e. Nutmeg) has the option to convert the Note in shares based on

formulas in the agreement. There is a 6 months restriction period that still binding on the valuation date. The Note has a pay in kind (shares) feature that does not allow pay in kind unless certain price and volume milestones are reached. These milestones were never reached.

Nutmeg recorded a value of $1,213,572 at 12/31/07.

Following Nutmeg's valuation method, we were able to agree to the $1,213,572 value. Nutmeg's method assumes that the Holder will convert the Note, based on a set of methods set forth in the agreement, and sell quickly the converted shares. The as-converted number of shares is equal to roughly 70% of the 338 million shares outstanding, making it impossible to sell all of them in the open market in any reasonable time and at any reasonable price. Nutmeg did not consider any illiquidity discount for the as converted shares even though the block of 156,028,433 shares is extremely illiquid and very dilutive.

***Although the Note was not convertible as of December 31, 2007, Nutmeg valued it as converted.***

The Note has a 6 months vesting period ending on 3/14/2008, and thus cannot be converted. Considering illiquidity and volatility of the stock along with the inability to convert to shares, the Note should be valued as debt. The face value is $585,608, and we calculated the earned interest at $21,178, for a total value of $606,786.

Considering the Note as Debt, we looked at the Loan discount guidelines in Nutmeg's Memo dated 4/21/2009 (from Dave Goulding). The Note was issued in exchange for cash on September 14, 2007, with an attractive yield for that time. Since the interest on the Note is accrued and payable at maturity, and that we did not find any evidence of deterioration in the Company's business conditions from September 14 to December 31, 2007, the appropriate discount, based on Nutmeg's guidelines is 0% resulting in a **Crowe's Fair Value of $606,786**.

## Valuation of investments in Physicians Healthcare Management Group (PHYH)

### A. Valuation of the $55,035 and $16,000 Notes, PHYH2

This Note has complex embedded features where the issuer has the right to pay interest or/and principal in-kind, in shares, based on formulas included in the contract. The Interest payments are not fixed, being tied to performance of the underlying share price through complex formulas.

There are two Notes owed to Mercury, with values of $55,035 and $16,000 and a maturity date of September 30, 2010. The Notes were issued or renegotiated on September 30, 2008. These Notes are wrongly described in documents by Mercury to be convertible notes because the Holder does not have the right to convert the Note into shares. These Notes were valued by Nutmeg at 12/31/2008 at $200,000. Nutmeg's valuation method is based on as-converted basis although the Notes are not convertible notes.

**The Convertible Note Redemption Agreement dated December 31, 2008 suggests that the Notes were repurchased by Physicians Healthcare for $100,000 in cash. Thus, we did not calculate any fair value for these Notes.**

### B. Valuation of $424,500 investment at 12/31/2008 and 3/31/2009

We received and reviewed the valuation file from Mercury PHYH1 sh-MCRY latter review (12-31-08).xls. We do not have an Agreement stating the investment value of $424,500 mentioned in the valuation file. An analysis of the valuation file reveals that the $424,500 matches the face value of 4,085,886 preferred B shares, convertible into 40 common shares each. We do not have any document indicating the source of these 4,085,886 preferred B shares. We do have a Purchase Agreement for the Preferred B Series, dated August 11, 2008. However, several important exhibits are missing. Nutmeg/Mercury rollover schedule, dated 3/31/2009 has a line mentioning the 4,085,886 preferred B shares, acquired 12/31/2008, based on an investment of $510,500 with a fair value at 3/31/2009 of $531,165. Based on information in the PHYH1 sh-MCRY latter review (12-31-08).xls file we were able to agree to the 163,435,440 equivalent common shares mentioned in this file and the Nutmeg/Mercury rollover schedule dated 3/31/2009.

We were able to agree to the value of PHYH holdings from Nutmeg/Mercury rollover 3/31/2009 of $531,165, calculated as the equivalent shares of 163,435,440, times stock price that day of $0.005 times the time coefficient of 0.65 (discount of 35%). We consider this valuation methodology, used by Nutmeg, correct. However, we consider the 35% illiquidity discount inadequate. In light of the risks of Physicians Healthcare and the number of equivalent shares of 163,435,440, or roughly 100% of the 156,073,725 shares outstanding, we consider more reasonable an illiquidity discount in the range of 50% to 75%. We need more information, already requested, and research in order to estimate a more precise discount.

## Valuation of investments in Hot Web (HWBI)

As of February 12, 2009 the name of the Company was changed to Gold Coast Mining Corp. (GDSM) and on July 2, its ticker was changed.

> BOSTON, July 1, 2009 (GLOBE NEWSWIRE) -- Hot Web, Inc. (Pink Sheets:HWBI - News) announced today that its previously announced name change with the State of Florida to Gold Coast Mining Corp. has officially been approved by the Financial Industry Regulatory Authority (FINRA). The Company will begin trading as Gold Coast Mining Corp. under its new symbol of GDSM effective Thursday, July 2, 2009.
>
> Jason Cooper, managing Director of Presage Partners LLC and Interim CEO of Hot Web, Inc., commented, "The name and symbol change has been a long time coming and we are pleased to see it completed. We will now be able to move Gold Coast forward under its proper corporate identity. This is one more positive step in rebuilding the Company and value for the shareholders."
>
> The Company currently has 444,887,086 shares issued and outstanding

The Hot Web Convertible Note has complex embedded features where the issuer has the right to pay interest or/and principal in-kind, in shares, based on formulas included in the contract. The face value of the Note is $381,054.07, the Interest Rate is fixed at 10% and the Note matures on June 30, 2009. This Note supersedes previously issued notes, although we did not receive information about the history of the previous notes. We have only an Agreement dated June 30, 2008.

This is a Convertible Note with embedded features where the Holder (i.e. Nutmeg) has the option to convert the Note in shares based on formulas in the agreement. There is a 3 month restriction period that was not binding at the valuation date. The Note has a pay in kind (shares) feature; however, Hotweb is not allowed to pay in kind unless certain price and volume milestones are reached, which were never reached.

### A. Valuation at 3/31/09

**Nutmeg** recorded a Fair Value of $533,749.06 based on Nutmeg/Mercury rollover schedule, dated 3/31/2009.

We followed Nutmeg's valuation method, and we were able to agree to the $533,749.06 value. Nutmeg's method considers that the Holder will convert the Note, based on a set of methods set in the agreement, and sell quickly the converted shares. The as-converted number of shares is equal to roughly 2 billion shares, matching the number in the Rollover document, or roughly 5 times the shares outstanding. This is a staggering number, making it impossible to sell open market in any reasonable time and at any reasonable price. The 35% illiquidity discount is too small for such a large block of shares. In this kind of situation, the conversion choice though technically correct is realistically impracticable, and either (i) a much larger illiquidity discount is warranted, or (ii) the Note should be valued as Debt.

Considering the business situation of Hotweb at that time we consider that the Debt approach is more reasonable, with a 75% discount to $410,576 (principal plus accumulated interest) resulting in a **Fair Value of $102,644.**

**B. Valuation at 12/31/08**

Nutmeg recorded a Fair Value of $792,592 based on the valuation file HWBI1 sh - MCRY adj after the fact (12-31-08).xls.

We followed Nutmeg's valuation method, and we were able to agree to the $792,592 value. Nutmeg's method considers that the Holder will convert the Note, based on a set of methods set in the agreement, and sell quickly the converted shares. The as-converted number of shares is equal to roughly 381 million shares, close to the number of shares outstanding. This is a very large number, making it impossible to sell the shareholdings open market in any reasonable time and at any reasonable price. The 35% illiquidity discount used by Nutmeg is too small for such a large block of shares. In this kind of situation, the conversion choice though technically correct is realistically impracticable, and either (i) a much larger illiquidity discount is warranted, or (ii) the Note should be valued as Debt.

Considering the business situation of Hotweb at that time we consider that the Debt approach is more reasonable, with a 50% discount to the $400,617 (principal plus accumulated interest) resulting in a **Fair Value of $200,308.5.**

## Valuation of investments in QPC Lasers (QPCI)

Convertible Notes with complex embedded features where the issuer has the right to pay interest or/and principal in-kind, in shares, based on formulas included in the contract. The Holder has the right to convert at $1.05. The face values of two identical notes are $55,550 and $111,111.11 for a total of $166,661.11, the Interest Rate is fixed at 10% and the Note matures on May 29, 2009. This Note was an original cash investment. Warrants were issued together with the Note and a purchase document mentions 79,357 warrants received by Nutmeg/Mercury.

Per Nutmeg/Mercury Rollover file dated 3/31/09, Nutmeg valued the Notes at $47,354.72.

Our research shows that QPC was in default, and started liquidation, in the summer of 2008. All of the company's assets were posted as collateral to a $6 million loan from Finisar, and there was no chance for any remaining proceeds from liquidation to go to the remaining creditors. We consider that Nutmeg/Mercury, as an important institutional investor in QPC, should have been aware of these facts, and marked down to zero the value of their QPC notes and warrant holdings.

**Based on the above, the Fair value of these securities at 9/30/08, 12/31/08 and 3/31/09 is zero.**

**See Appendix C regarding the valuation of these notes using complex modeling as required by GAAP and the SEC for financial reporting purposes at the Company level.**

## Valuation of investments in Nustate Energy Holdings (NSEH)

This convertible Note has complex embedded features whereby the Holder has the right to convert in shares at $0.025 per share. The face value of Note is $228,809.61, the Interest Rate is fixed at 14.25% and the Note matures on March 5, 2009.

**A. Valuation at 12/31/08**

Nutmeg recorded a Fair Value of $260,818 at 12/31/08 based on NSEH1 sh - MCRY 12.31.08.xls. We followed Nutmeg's valuation method, and we found that Nutmeg used in calculations a market share price of $0.001 instead of the closing price of $0.0012. Using the $0.001 share price we were able to agree to the $260,818 value.

Nutmeg's method considers that the Holder will convert the Note and sell quickly the converted shares. There is no illiquidity discount considered in this case.

There are two problems with Nutmeg's valuation method:

First, the conversion option is out of the money: the market share price is $0.0012, which is well below the conversation price of $0.025. Although legally Nutmeg has the right to convert at below conversion price, the amount of as-converted shares receives is so large that the conversion sale of the block procedure will most likely create a collapse in the market price of shares.

Second, there are 260,818,000 shares as-converted shares corresponding to the $260,818 principal and interest value, or 81% of the shares outstanding, making it impossible to sell the block open market in any reasonable time and at any reasonable price. Using the as-converted method, at least without any illiquidity discount, always results in a value at or above the face value of the note, masking the potential default of the note or impossibility of selling the as-converted shares.

A more appropriate way is to value the Note as debt, considering the credit risk and using discounts as presented in the section on Loans from Nutmeg's Valuation Guidelines memo dated 4/21/2009. Our research uncovered that the 10K 2008 report mentions the auditors gave an "unqualified opinion expressing doubt that the company can continue as a going concern." Our brief research found that the company was in poor financial and operating condition. Based on these and other facts discovered during our research, the Note appears to be in quasi default, and that at least a 75% discount is warranted. A 75% discount to $260,818 (principal plus accumulated interest) results in a **Fair Value of $65,204.**

**B. Valuation at 3/31/09**

Nutmeg recorded a Value of $202,218.71 at 3/31/09, based on the Nutmeg/Mercury rollover schedule, dated 3/31/2009.

We followed Nutmeg's valuation method, as presented in the valuation file NSEH1 sh - MCRY 12.31.08.xls (see the valuation at 12/31/08 above), and we got very close to Nutmeg's $202,218.71 value.

We described above the valuation method used by Nutmeg to value this Note, and our criticism. Nutmeg's method assumed that the Holder will convert the Note and sell quickly the converted shares, and there is no illiquidity discount considered.

A more appropriate way is to value the Note as debt, taking into account the credit risk and using discounts as presented in the section on Loans from Nutmeg's Valuation Guidelines memo dated 4/21/09. Besides the information presented in 10K/2008 suggesting high probability of default on the Note, we also found a news article dated February 13, 2009 that mentions that Nustate will be delisted from OTCBB. A subsequent news report dated April 17, 2009 mentions that Rentar Environmental Solutions cancelled the acquisition of 51% of Nustate, as previously announced on April 17, 2008, resulting in a share price collapse and extreme drop in the trading volume in the subsequent days.

Based on these and other facts discovered during our research, and based on our experience, we consider that the Note is in quasi default, and that a 75% discount is warranted. We do not consider a 100% discount, and thus zero value to the Note, as we do not know the remaining value of the business. The 75% discount to $202,218.71 (principal plus accumulated interest) results in a **Fair Value of $50,554.67.**

## Valuation of investments in Virogen (VRGN)

This convertible Note has complex embedded features whereby the Holder has the right to convert in shares based on a set of conditions. The December 29, 2008 Agreement gives the face value of Note to be $244,720. However, the Nutmeg/Mercury Rollover 3/31/09 mentions a $95,000 investment value. The valuation file VRGI2 loan - MCRY 12.31.08.xls mentions a remaining value of $244,720. There is no fixed interest mentioned in the Agreement, but there is an amortization schedule of payments, covering the principal and interest. The Note is set to mature on September 1, 2010.

**A. Valuation at 3/31/09**

Nutmeg recorded a value of $183,540, based on the Nutmeg/Mercury rollover schedule, dated 3/31/2009.

The Note covers loans and previously outstanding notes due to Nutmeg. However, we do not have a clear history of the old notes.

We have a letter, dated March 6, 2009, addressed by Randall Goulding to Virogen which specifies that Virogen missed interest and principal payments in the amount of $12,160 due according to this Note. According to Nutmeg's Valuation Guidelines Memo 4/21/09 a compliance discount of 25% should be applied to a Note after two missed payments. Multiplying the face value of $244,720 by 75% (one minus the 25% compliance discount) we get $183,540, agreeing to Nutmeg's valuation. Although we consider that the compliance discount at 25% is low for such a note in default, we find that Nutmeg applied a discount consistent with its valuation guidelines.

**Valuation at 12/31/08**

Because the Note was issued on December 31, 2009 Nutmeg value the Note at 12/31/08 at face value of $244,720.

At the moment, we are still investigating how much cash was paid by Nutmeg to Virogen at the end of December. If found that no or little cash was paid for the Note, suggesting that most or all of the face value resulted from old debt reorganization, then a credit/default compliance discount is warranted.

## Valuation of investments in NIVS Intelimedia (NIV)

Mercury acquired shares in NIVS in a private placement. This is described in the Company's 8-K, dated July 25, 2008. The bold text is our addition to draw attention to certain terms of the private placement.

**THE PRIVATE PLACEMENT**

On July 25, 2008, concurrently with the close of the Share Exchange, we conducted an initial closing of a private placement transaction (the "Private Placement"). Pursuant to Subscription Agreements entered into with the investors, we sold an aggregate of 5,239,460 shares of common stock at $1.80 per share, for gross proceeds of approximately $9.4 million. **We agreed to file a registration statement covering the common stock sold in the private placement within 30 days of the closing of the Share Exchange pursuant to the Subscription Agreement entered into with each investor. The investors in the Private Placement also entered into a lock-up agreement pursuant to which they agreed not to sell their shares until 90 days after our common stock is first listed or quoted on either the New York Stock Exchange, American Stock Exchange, NASDAQ Global Market, NASDAQ Capital Market or the OTC Bulletin Board, at which time one-twelfth of their shares will be released from the lock-up, and after which their shares will automatically be released from the lock-up every thirty (30) days in eleven equal installments.** The placement agent was paid a commission equal to 6.5% of the gross proceeds from the financing, in addition to a $130,000 success fee for the Share Exchange, for an aggregate fee of approximately $743,000.

Some of the controlling stockholders and control persons of the placement agent were also, prior to the completion of the Share Exchange, controlling stockholders and control persons of the Company, including Richard Rappaport, who is the Chief Executive Officer of the placement agent and was the President and a significant stockholder of the Company prior to the Share Exchange, and Anthony C. Pintsopoulos, who is the Chief Financial Officer of the placement agent and was one of the Company's controlling stockholders and an officer and director prior to the Share Exchange. In addition, Debbie Schwartzberg, one of our principal stockholders, is a note holder of the parent company of the placement agent; her note entitles her to a 1.5% interest in the net profits of one of our principal stockholders prior to the Share Exchange, which is also the parent of the placement agent. Mr. Rappaport is the sole owner of the membership interests in the parent of the placement agent. Each of Messrs. Rappaport and Pintsopoulos resigned from all of their executive and director positions with the Company upon the closing of the Share Exchange.

We were unable to locate a purchase agreement in Mercury's files in our possession to ascertain the particulars of Mercury's purchase. Based on the rollforward, the 138,889 shares were acquired July 7, 2008 at $1.80/share for $250,000.

The Company had an IPO on March 12, 2009, and shares began trading on AMEX on the 13th. We assume that this is the event that triggers the listing of the shares as we were unable to get share prices before this date.

**A. March 31, 2009 Valuation**

Ownership of 138,889 restricted shares, based on Nutmeg/Mercury's Rollover 3/31/09.

This block of shares was valued by Nutmeg at $494,836, as unrestricted based on the market share price of $3.80. However the shares were restricted.

The share price was indeed $3.80 on March 31, 2009, but all of the shares were restricted according to the 8-K cited above. The first twelfth of the shares would be free trading approximately June 13th and very 30 days thereafter another twelfth would be released. Based on Nutmeg's valuation model, given an average restriction of 6 months, a 6% discount should have been applied.

Considering that the shares had only been trading for two weeks since the IPO, there was a lot of volatility and uncertainty; so a 6% discount is on the low side, especially in the market environment of March 2009.

**B. December 31 and September 30, 2008**

Given the characteristics of NIVS the values should be carried at book value of $250,000 on these dates.

## Valuation of investments in ICC Worldwide (Torbay Holdings) (ICCW)

There is a May 11, 2007 Agreement for a Convertible Promissory Note, in the amount of $60,000 where the Holder has the right to convert in shares at based on a set of conditions. The Note has a maturity of one month, and pays an annual interest of 18%. From the reviewed documents, ICCW never paid the Note and accrued interest, and the Note was negotiated on September 26, 2007.

There is a First Amendment to September 26, 2007 Superseding Note, dated December 31, 2008, where the parties agreed: (i) extend the maturity of the Note to May 11, 2010; (ii) an interest of 13.5%, (iii) canceled the previously issued warrants to Nutmeg/Mercury, and *(iv) Nutmeg/Mercury waives all the rights to convert the accrued interest and principal of the Note into common stock. Although, based on the above mentioned agreement, the Note is no longer convertible in shares at the option of the Holder; Nutmeg still valued it as of December 31, 2008 on an as-converted basis, masking the high probability of default, and thus low value of the Note.*

**Valuation at 12/31/08**

Nutmeg considered for this quarter a Fair Value of $77,962, corresponding to an investment amount of $77,962 ($60,000 principal value plus accrued interest), based on ICCW1 sh - MCRY 12.31.08.xls.

We followed Nutmeg's valuation method, and we found that Nutmeg used the as-converted method, with no restricted and illiquidity stock discount, to support the fair value of $77,962 equal to the face value. The calculations consider a market share price of $0.0002 and results in 390 million as converted shares. Nutmeg's valuation is incorrect.

First, based on the December 31, 2008 Agreement, Nutmeg/Mercury does not have the option to convert, and thus the Note should not be valued as-converted.

Second, if one considers the as-converted method, the amount of as-converted shares of 390 million shares, or roughly 2 times the number of shares outstanding of 180.3m. This number of shares is so large that the conversion and trying to sell the block procedure will most likely create a collapse in the market price of shares. A significant restricted and illiquidity stock discount would be warranted.

A more appropriate analysis is to value the Note as Debt, assessing the credit risk and using discounts as presented in section Loans from Nutmeg's Valuation Guidelines memo dated 4/21/2009. Considering (i) the fact the Note was in Default and renegotiated for one and half years, (ii) poor financial and operating conditions of ICCW, we consider that the Note is in quasi default, and that a 75% discount is warranted. The 75% discount to $77,962 results in a **Fair Value of $19,490.**

**Valuation at 3/31/09**

Nutmeg considered for this quarter a Fair Value of $80,598.15, corresponding to an investment amount of $60,000 principal value, based on Nutmeg/Mercury Rollover 3/31/09.xls .

We were not able to agree to the 16,119,629 shares equivalent mentioned in Nutmeg/Mercury Rollover 3/31/09.xls .

We consider that the correct way is to value the Note as Debt, assessing the credit risk and using discounts as presented in section Loans from Nutmeg's Valuation Guidelines memo dated 4/21/2009. Considering (i) the fact the Note was in Default and renegotiated for one and half years, (ii) poor financial and operating conditions of ICCW, we consider that the Note is in quasi default, and that a 75% discount is warranted. The 75% discount to $80,598.15 (principal plus accrued interest) results in a **Fair Value of $$20,149.5.**

**Nutmeg's value for all funds holdings of ICCW is $528,556.42**