UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) | |
| Plaintiff, | ) ) | Case No. 09-CV-1775 |
| v. | ) ) | Judge William J. Hibbler |
| THE NUTMEG GROUP, LLC, RANDALL GOULDING, DAVID GOLDING, | ) ) ) | Magistrate Judge Ashman |
| Defendants, | ) ) | |
| DAVID GOULDING, INC., DAVID SAMUEL, LLC, FINANCIAL ALCHEMY, LLC, PHILLY FINANCIAL, LLC, SAM WAYNE, and ERIC IRRGANG, | ) ) ) ) ) | |
| Relief Defendants. | ) | |

**RECEIVER'S MOTION FOR A RULE TO
SHOW CAUSE AGAINST RANDALL GOULDING**

Leslie J. Weiss, not individually, but as court-appointed Receiver (the "Receiver") files this motion (the "Motion") asking that a rule to show cause issue against Defendant Randall Goulding for violating the Court's August 6, 2009 Order appointing the Receiver. As explained more fully below, Goulding has repeatedly refused to cooperate with Receiver in her administration of the Nutmeg estate. In support of the Motion, Receiver states as follows:

**Introduction**

1. On August 6, 2009, at the request of the U.S. Securities and Exchange Commission (the "SEC"), this Court entered an Order Appointing Receiver (the "Order") over The Nutmeg Group, LLC. (the "Nutmeg") in which the Receiver was appointed as receiver for Nutmeg and its funds (the "Funds"). The Order provided that the Receiver should oversee all

aspects of Nutmeg's operations and business which includes, but is not limited to, managing the Funds.

2. The Order requires the Receiver to take control of all the Funds and to take control, possession of and preserve all funds, assets and collateral of the Funds, to sell or liquidate any assets, property, holdings or positions of the Funds as is prudent under the circumstances, to investigate other assets belonging to Nutmeg and take control of them.

3. The Order further states that Goulding, as a Defendant, is "required to assist the Receiver in fulfilling her duties and obligations. As such, [he] must respond promptly and truthfully to all requests for information and documents from the Receiver." Order, ¶J.

4. The Order also requires that Goulding provide access to and control of any "assets, collateral, books, records, papers or other property of Nutmeg and the Funds" in his "custody, possession or control" to the Receiver. Order, ¶I.

5. Since the Receiver was appointed, she has reviewed the assets purported to be in each Fund and owned by Nutmeg, reviewed certain litigation in which Nutmeg or the Funds are involved, investigated other claims allegedly belonging to Nutmeg and the Funds. However, Goulding has repeatedly and systematically refused to cooperate with the Receiver, and, in some instances appears to be withholding Nutmeg books and records from the Receiver in the following areas of investigation.

**Real American Brands**

6. One asset the Receiver has been investigating is Nutmeg and/or the Funds investment in Real American Brands ("RAB") or its predecessors. Based on certain promissory notes (the "RAB Notes") in the Receiver's possession, Nutmeg and/or the Funds invested approximately $440,000 in RAB. However, while admitting that Nutmeg and/or the Funds

hold approximately 9 million shares of RAB, RAB has denied that Goulding funded the entire $440,000 indicated by the RAB Notes.

7. The Receiver has repeatedly sought Goulding's assistance to rectify and clarify the status of Nutmeg and/or the Funds' investment or position in RAB. For instance, on March 3, 2010, Receiver sent Goulding an email requesting documentation on the amount actually invested in RAB. A copy of this email is attached hereto as <u>Exhibit A</u>. Goulding was apparently holding a spreadsheet listing the amount of the RAB investments which he refused to turn over to the Receiver. Goulding refused to cooperate with the Receiver, and while he did supply a spreadsheet purporting to outline the RAB investment, the spreadsheet was unintelligible.

8. Goulding's refusal to cooperate with the Receiver in providing information on the RAB investments violates Paragraph J of the Order. Goulding's refusal to provide any books or records or information on the RAB investments violates Paragraph I of the Order.

9. As a remedy, the Receiver asks that Goulding be found in contempt and required to (1) cooperate with the Receiver on the RAB investments including sitting for an interview with the Receiver on this issue; (2) provide any books or records or information in his possession, custody or control pertaining to RAB; and (3) pay the Receiver, for the benefit of this estate, the fees and costs associated with bringing this Motion and exacting Goulding's compliance with the issues raised in this Motion.

**Morgan Wilbur/Howard Salamon**

10. Another area of the Receiver's investigation has been payments made by Nutmeg and/or the Funds to Morgan Wilbur ("Wilbur") and Howard Salamon ("Salamon").

11. Wilbur and Salamon were, apparently, "finders" who would locate and present investment opportunities to Goulding. In return, they would receive payment. Wilbur apparently received 40% of any profit from a deal. Salamon also received a finder's fee, though the Receiver is uncertain of how much he was paid.

12. Goulding has indicated that neither Wilbur nor Salamon were paid directly with monies of Nutmeg and/or the Funds. For Wilbur, Goulding indicated that his fees were paid, personally, by Goulding. For Salamon, Goulding indicated that his fees were paid by the companies he identified for Nutmeg investment.

13. Despite Goulding's statements that Wilbur and Salamon were not paid with monies from Nutmeg and/or the Funds, the Receiver has 1099-MISC Forms (Miscellaneous Income) showing that Nutmeg paid over $500,000 to Wilbur and over $220,000 to Salamon.

14. Goulding refused to provide any detail on the amounts paid to Wilbur or Salamon, nor has he provided any detail as to the deals that either brought to Goulding.

15. Goulding has not demonstrated how the amounts paid to Wilbur and Salamon were Goulding's personal funds or funds belonging to the portfolio companies, respectively.

16. Goulding's refusal to cooperate with the Receiver in providing information on his dealings with Wilbur and Salamon violates Paragraph J of the Order. To the extent he is withholding any books or records or information on the arrangements with or payments to Wilbur and Salamon, Goulding's actions violate Paragraph I of the Order.

17. As a remedy, the Receiver asks that Goulding be found in contempt and required to (1) cooperate with the Receiver in explaining and documenting the arrangements with or payments to Wilbur and Salamon and sit for an interview with the Receiver on this issue; (2) provide any books or records or information in his possession, custody or control pertaining to

Wilbur and Salamon; and (3) pay the Receiver, for the benefit of this estate, the fees and costs associated with bringing this Motion and exacting Goulding's compliance with the issues raised in this Motion.

**Sanswire**

18. Another asset the Receiver has been investigating is Nutmeg and/or the Funds investment in Sanswire Corporation ("Sanswire"). The Receiver believes that Nutmeg and/or the Funds hold a convertible note executed by Sanswire (the "Sanswire Note"). However, Sanswire has indicated to the Receiver that the Sanswire Note converted in full and that 50,795 of shares were issued in June, 2007 and 2,625,542 shares were issued in July, 2008. According to the Sanswire representative, these shares were put in the name of an entity named "Fortuna."

19. Goulding told the Receiver that Nutmeg Fortuna Fund LLLP has claims against Sanswire and, in fact, prepared a draft complaint against Sanswire which he never filed.

20. The Receiver has repeatedly sought Goulding's assistance to rectify and clarify the status of Nutmeg and/or the Funds' investment or position in Sanswire and to determine who holds any of the Sanswire shares. Goulding was apparently holding a spreadsheet listing the amount of the Sanswire investment which he refused to turn over to the Receiver.

21. A copy of an email dated March 4, 2010 from Receiver to Goulding asking for clarification on this issue is attached hereto as Exhibit B.

22. Goulding's refusal to cooperate with the Receiver in providing information on the Sanswire investment violates Paragraph J of the Order. Goulding's refusal to provide any books or records on the Sanswire investments violates Paragraph I of the Order.

23. As a remedy, the Receiver asks that Goulding be found in contempt and required to (1) cooperate with the Receiver on the Sanswire investment and sit for an interview with the

Receiver on this issue; (2) provide any books or records or information in his possession, custody or control pertaining to Sanswire; and (3) pay the Receiver, for the benefit of this estate, the fees and costs associated with bringing this Motion and exacting Goulding's compliance with the issues raised in this Motion.

**The Carried Interest Increase to Investors**

24. Another area of the Receiver's investigation has been a modification purportedly undertaken by Goulding to modify the operating agreement for the Nutmeg/Mercury LLP fund which had the effect of increasing the carried interest charged to investors ("Mercury Increase", and another increase in the carried interest for all Nutmeg investors from 20% to 25% (the "Carried Interest Increase"). A copy of information sent to unknown investors discussing the Mercury Increase Carried Interest Increase is attached hereto as Exhibit C (the "Carried Interest Increase Letter").

25. Neither the Receiver nor Crowe Horwath found any indication that the Mercury Increase or the Carried Interest Increase had been approved by investors. The Mercury Increase and the Carried Interest Increase Letter seemingly indicates that the increase was being undertaken without any approval by the investors which the Receiver and Crowe Horvath believe may have been required by that funds' operating agreement.

26. The Receiver has asked Goulding for information regarding the Carried Interest Increase. *See* Exhibit C.

27. Goulding refused to provide any detail or further information on the Carried Interest Increase.

28. Goulding's refusal to cooperate with the Receiver in providing information on the Carried Interest Increase violates Paragraph J of the Order. To the extent he is withholding any

6

books or records on the Carried Interest Increase, Goulding's actions violate Paragraph I of the Order.

29. As a remedy, the Receiver asks that Goulding be found in contempt and required to (1) cooperate with the Receiver in explaining and documenting the Carried Interest Increase; (2) provide any books or records in his possession, custody or control pertaining to the Carried Interest Increase; and (3) pay the Receiver, for the benefit of this estate, the fees and costs associated with bringing this Motion and exacting Goulding's compliance with the issues raised in this Motion.

**AccessKey/Hot Web**

30. Another issue the Receiver has been investigating is the investment by Nutmeg and/or the Funds investment in AccessKey IP ("AccessKey"). At various times, Nutmeg and/or the Funds held over 191 million shares of AccessKey. However, Goulding apparently transferred 10 million AccessKey shares to Hot Web, Inc. ("Hot Web") in exchange for promissory notes to Nutmeg and/or the Funds.

31. The Receiver has repeatedly sought Goulding's assistance to rectify and clarify the status of Nutmeg and/or the Funds' investment or position in AccessKey and Hot Web. A copy of an email dated October 30, 2009 from Receiver to Goulding asking for clarification on this issue is attached hereto as <u>Exhibit D</u>.

32. Goulding's refusal to cooperate with the Receiver in providing information on the AccessKey and Hot Web investment violates Paragraph J of the Order. To the extent he is withholding any books or records on AccessKey and Hot Web, Goulding's actions violate Paragraph I of the Order.

33. As a remedy, the Receiver asks that Goulding be found in contempt and required

to (1) cooperate with the Receiver on the AccessKey and Hot Web investment and sit for an interview with the Receiver on this issue; (2) provide any books or records in his possession, custody or control pertaining to AccessKey and Hot Web; and (3) pay the Receiver, for the benefit of this estate, the fees and costs associated with bringing this Motion and exacting Goulding's compliance with the issues raised in this Motion.

**Legal Representation Issues**

34. Another issue the Receiver has been investigating is to what extent Goulding, a lawyer, provided legal services to Nutmeg, the Funds, the Relief Defendants and/or any of the companies invested in by Nutmeg and/or the Funds ("Legal Representation Issues"). Goulding has admitted that "[t]here were many [companies] that I provided equal services for [but] did not charge." Exact information on the Legal Representation Issues is needed by the Receiver so that she may better understand the dynamics of the deals that Goulding invested in, any conflicts of issues in these deals, and whether Goulding violated any fiduciary duties to the investors.

35. The Receiver has repeatedly asked Goulding to state those entities which received Goulding's legal services. A copy of an email dated November 10, 2009 from Receiver to Goulding asking for clarification on this issue is attached hereto as <u>Exhibit E</u>. Goulding has refused to provide any such information.

36. Goulding's refusal to cooperate with the Receiver in providing information on the Legal Representation Issues violates Paragraph J of the Order. To the extent he is withholding any books or records on the Legal Representation Issues, Goulding's actions violate Paragraph I of the Order.

37. As a remedy, the Receiver asks that Goulding be found in contempt and required to (1) cooperate with the Receiver on the Legal Representation Issues and sit for an interview

with the Receiver on this issue; (2) provide any books or records in his possession, custody or control pertaining to Legal Representation Issues; and (3) pay the Receiver, for the benefit of this estate, the fees and costs associated with bringing this Motion and exacting Goulding's compliance with the issues raised in this Motion.

**Physicians Healthcare**

38. Another investment the Receiver has been investigating is the investment by Nutmeg and/or the Funds investment in Physicians Healthcare Management Group, Inc. ("Physicians Healthcare"). Goulding's brother Richard Goulding is (or was) the Director of Physicians Healthcare which was, perhaps ostensibly, involved in the formation of community-based health care organizations ("HMOs"). However, based on financial statements in the Receiver's possession, Physicians Healthcare either abandoned or augmented its HMO-formation business model and began to invest in some of the same companies that Nutmeg and/or the Funds invested in. For instance, Physicians Healthcare invested $640,000 in AccessKey.

39. The Receiver has repeatedly sought Goulding's assistance to rectify and clarify the status of Nutmeg and/or the Funds' investment or position in Physicians Healthcare. A copy of an email dated March 10, 2010 from Receiver to Goulding asking for clarification on this issue is attached hereto as Exhibit F.

40. Goulding's refusal to cooperate with the Receiver in providing information on Physicians Healthcare violates Paragraph J of the Order. To the extent he is withholding any books or records on Physicians Healthcare, Goulding's actions violate Paragraph I of the Order.

41. As a remedy, the Receiver asks that Goulding be found in contempt and required to (1) cooperate with the Receiver on Physicians Healthcare and sit for an interview with the

Receiver on this issue; (2) provide any books or records in his possession, custody or control pertaining to Physicians Healthcare; and (3) pay the Receiver, for the benefit of this estate, the fees and costs associated with bringing this Motion and exacting Goulding's compliance with the issues raised in this Motion.

**Dave Rivers**

42. Another area of the Receiver's investigation has been payments made by Nutmeg and/or the Funds to Dave Rivers ("Rivers").

43. Rivers was a "finder" who would locate and present investment opportunities to Goulding. He would be paid for these services.

44. 1099-MISC Forms (Miscellaneous Income) for Rivers in Receivers possession do not match the amounts that Nutmeg's ledgers show that Rivers received. A copy of an email dated January 14, 2010 from Receiver to Goulding asking for clarification on this issue is attached hereto as Exhibit G.

45. Goulding refused to provide any detail on the amounts paid to Rivers.

46. Goulding's refusal to cooperate with the Receiver in providing information on his dealings with Rivers violates Paragraph J of the Order. To the extent he is withholding any books or records on the arrangements or payments to Rivers, Goulding's actions violate Paragraph I of the Order.

47. As a remedy, the Receiver asks that Goulding be found in contempt and required to (1) cooperate with the Receiver in explaining and documenting payments made to Rivers; (2) provide any books or records in his possession, custody or control pertaining to Rivers and sit for an interview with the Receiver on this issue; and (3) pay the Receiver, for the benefit of this estate, the fees and costs associated with bringing this Motion and exacting Goulding's

compliance with the issues raised in this Motion.

**Artfield Investments, Inc.**

48. Another area of the Receiver's investigation has been payment made to Artfield Investments, Inc. ("Artfield") by Nutmeg and/or the Funds.

49. The Receiver has been attempting to ascertain the nature, if any, of the Artfield investment. A copy of an email dated February 15, 2010 from Receiver to Goulding asking for clarification on this issue is attached hereto as Exhibit H.

50. Goulding refused to provide any detail on the Artfield investment.

51. Goulding's refusal to cooperate with the Receiver in providing information on Artfield violates Paragraph J of the Order. To the extent he is withholding any books or records on Artfield, Goulding's actions violate Paragraph I of the Order.

52. As a remedy, the Receiver asks that Goulding be found in contempt and required to (1) cooperate with the Receiver in explaining and documenting any investment in Artfield and sit for an interview with the Receiver on this issue; (2) provide any books or records in his possession, custody or control pertaining to Artfield; and (3) pay the Receiver, for the benefit of this estate, the fees and costs associated with bringing this Motion and exacting Goulding's compliance with the issues raised in this Motion.

**Offering Documents/Partnership Agreements**

53. The Receiver requested from Goulding of all of the offering documents and partnership agreements for the Funds (the "Offering Documents/Partnership Agreements").

54. Goulding refused to provide the Offering Documents/Partnership Agreements.

55. Goulding's refusal to cooperate with the Receiver in providing the Offering Documents/Partnership Agreements violates Paragraph J of the Order. To the extent he is

11

withholding any Offering Documents/Partnership Agreements, Goulding's actions violate Paragraph I of the Order.

56. As a remedy, the Receiver asks that Goulding be found in contempt and required to (1) cooperate with the Receiver in explaining and documenting the Offering Documents/Partnership Agreements and sit for an interview with the Receiver on this issue; (2) provide any Offering Documents/Partnership Agreements in his possession, custody or control; and (3) pay the Receiver, for the benefit of this estate, the fees and costs associated with bringing this Motion and exacting Goulding's compliance with the issues raised in this Motion.

**Accounting Issues**

57. Finally, the Receiver has requested from Goulding certain accounting records (the "Accounting Records") in connection with the preparation of 2009 tax returns. All the Receiver has in her possession are balance sheets as of March 31, 2009. A copy of an email from Receiver to Goulding asking for the Accounting Records is attached hereto as Exhibit I.

58. Goulding has not provided the Receiver with the requested information.

59. Goulding's refusal to cooperate with the Receiver in providing the Accounting Records violates Paragraph J of the Order. To the extent he is withholding any Accounting Records, Goulding's actions violate Paragraph I of the Order.

60. As a remedy, the Receiver asks that Goulding be found in contempt and required to (1) cooperate with the Receiver in explaining the Accounting Records and sit for an interview with the Receiver on this issue; (2) provide any Accounting Records in his possession, custody or control; and (3) pay the Receiver, for the benefit of this estate, the fees and costs associated with bringing this Motion and exacting Goulding's compliance with the issues raised in this Motion.

**A Rule to Show Cause Should Issue Against Goulding**

61. When determining whether to issue a rule to show cause and to find a party in contempt for violating a court's order, the Court is not required to find that the violation was "willful." Rather the court may find a party in civil contempt if the party has not been reasonably diligent and energetic in attempting to accomplish what was ordered. See Goluba v. School Dist. of Ripon, 45 F.3d 1035, 1037 (7th Circ. 1995). For a civil contempt proceeding, intent is not an issue, but rather, the question is whether a party has complied with the court's order. In re General Motors Corp., 61 F.3d 256, 258 (4th Circ. 1995). Even the presence of good faith on the part of a defendant does not constitute a defense. Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Circ. 1983).

62. As shown above, Goulding has refused to cooperate with the Receiver on her investigations into the RAB, Morgan Wilbur/Howard Salamon, Sanswire, Carried Interest, AccessKey/Hot Web, Legal Representation Issues, Physicians Healthcare, Dan Rivers, Artfield Investments and Offering Documents/Partnership Agreements issues discussed above. In many instances, the Receiver believes that Goulding is not turning over all documents in his possession.

63. Based on these simple facts, Goulding has violated the Order and this Court should issue a rule to show cause requiring Goulding to show why he should not be held in contempt for failure to comply with the Order.

**Goulding Should be Required to Pay the Receiver's Fees and Costs in Bringing this Motion**

64. The Receiver asks for her fees and costs in bringing this Motion. See Tranzact Technologies, Inc. v. 1Source Worldsite, 406 F.3d 851, 856 (7th Cir. 2005) (holding that civil contempt sanctions are designed for the dual purpose of compelling compliance with a court

13

order and compensating the complainant for losses caused by the contemptuous actions).

WHEREFORE, Leslie J. Weiss, Temporary Receiver, requests that this Court:

a) Issue a rule to show cause requiring Defendant Randall Goulding to show why he should not be held in contempt for failing to comply with the August 6, 2009 Order;

b) Order that Randall Goulding fully cooperate with the Receiver on the RAB, Morgan Wilbur/Howard Salamon, Sanswire, Carried Interest, AccessKey/Hot Web, Legal Representation Issues, Physicians Healthcare, Dan Rivers, Artfield Investments, Offering Documents/Partnership Agreements and Accounting Issues and sit for an interview with the Receiver on these areas;

c) Order that Randall Goulding produce any documents in his possession, custody or control on RAB, Morgan Wilbur/Howard Salamon, Sanswire, Carried Interest, AccessKey/Hot Web, Legal Representation Issues, Physicians Healthcare, Dan Rivers, Artfield Investments, Offering Documents/Partnership Agreements and Accounting Issues;

d) Order Randall Goulding to pay the Receiver's attorneys' fees and costs in connection with bringing this Motion; and

e) For such other and further relief as this Court deems appropriate and just.

Dated: April 9, 2010

           Respectfully submitted,

           Leslie J. Weiss, Temporary
           Receiver for The Nutmeg Group, LLP

           By: /s/ Kevin C. Driscoll, Jr.
               One of her attorneys

Deborah L. Thorne (ARDC # 6186482)
Kevin C. Driscoll, Jr. (ARDC # 6272159)
BARNES & THORNBURG LLP
1 North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Tel: (312) 357-1313
Fax: (312) 759-5646
CHDS01 KCD 593546v1