```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   SECURITIES AND EXCHANGE          )   Docket No. 09 C 1775
     COMMISSION,                      )
 4                                    )
                         Plaintiff,   )
 5                                    )
            v.                        )   Chicago, Illinois
 6                                    )   January 19, 2010
     THE NUTMEG GROUP, LLC., et al.,  )   10:00 o'clock a.m.
 7                                    )
                        Defendants,   )
 8                                    )
     DAVID GOULDING, INC., et al.,    )
 9                                    )
                  Relief Defendants.)
10
                  TRANSCRIPT OF PROCEEDINGS - MOTIONS
11            BEFORE THE HONORABLE WILLIAM J. HIBBLER

12   APPEARANCES:

13   For the Plaintiff:          U.S. SECURITIES & EXCHANGE
                                 COMMISSION, by
14                               MR. ROBERT MacDONALD MOYE
                                 MR. ANDREW CHARLES SHOENTHAL
15                               175 West Jackson Boulevard
                                 Suite 900
16                               Chicago, Illinois 60604

17   For Defendant R. Goulding:  MR. RANDALL GOULDING, pro se
                                 1333 Sprucewood
18                               Suite 10
                                 Deerfield, Illinois 60015
19
     For Defendant D. Goulding   KOPECKY SCHUMACHER & BLEAKLEY, by
20                               MR. JAMES L. KOPECKY
                                 190 South LaSalle Street
21                               Suite 850-A
                                 Chicago, Illinois 60603
22

23                  ALEXANDRA ROTH, CSR, RPR
                      Official Court Reporter
24                  219 South Dearborn Street
                           Room 1224
25                   Chicago, Illinois 60604
                        (312) 408-5038
```

```
 1       (Proceedings had in open court:)
 2              THE CLERK:  09 C 1775, SEC versus the Nutmeg Group, et
 3  al.  Ruling.
 4              MR. MOYE:  Good morning, your Honor.  Robert Moye,
 5  Andrew Shoenthal for the SEC.
 6              MR. SHOENTHAL:  Good morning.
 7              MR. GOULDING:  Good morning, your Honor.  Randall
 8  Goulding, pro se.
 9              MR. KOPECKY:  Good morning.  Jim Kopecky on behalf of
10  David Goulding.
11              THE COURT:  Good morning.
12          We are here today for the Court to rule on the SEC's
13  motion for rule to show cause against the defendant Randall
14  Goulding.
15              MR. MOYE:  That's right, your Honor.
16              THE COURT:  Okay.  After the Court has carefully
17  reviewed the petition for the rule, also considered the
18  response and reply thereto, the Court finds as follows:  That
19  Mr. Goulding's actions have effectively vested control of
20  INverso in Mr. Hartman, Bonnie Hartman, his wife, and his
21  daughter Heidi Carl as directors of INverso just prior to his
22  resignation.
23          Now, that action has been rescinded by recent actions.
24  But it was an accomplished fact that that in fact occurred.
25  That occurred shortly after the receiver had indicated an
```

1  unwillingness for Nu-Find, Inc., to complete a transaction
2  whereby they would become the owner of INverso by some process
3  of an exchange. And it was Mr. Goulding's position that that
4  would enure to the benefit of INverso.
5      However, at that point the Court had appointed the
6  receiver, and it was the receiver's decision and not Mr.
7  Goulding's decision as to whether or not such a transaction
8  should take place. After the Court had a hearing, was advised
9  by the receiver that that was not prudent action in the
10 receiver's mind, the Court approved the receiver's decision for
11 that acquisition not to take place.
12     The Court finds that Mr. Goulding, with intent to make
13 an end run around the receiver's objection and the Court's
14 acquiescence in the receiver's decision, he conducted this
15 process by which -- or I should say engaged in these
16 shenanigans by which Mr. Hartman, Ms. Hartman and the child
17 took control of the company, issued more than 3,700,000 shares
18 of preferred stock, and in fact took over the ownership in the
19 controlling interest in INverso with the spaded intent to do an
20 end run around that ruling and to complete this transaction
21 which the Court had quite specifically indicated should not
22 take place based upon the receiver's suggestion.
23     This was not the first and only time that there was
24 action by Mr. Goulding which the Court found were designed to
25 in some manner get around the ruling of this Court. There is

1  no other way that the actions of Mr. Goulding can be
2  characterized.
3        Now, I am gratified to hear that, as I said, the
4  transaction has been rescinded. And the investors are now back
5  in control of that particular company. But the Court is not
6  pleased that these actions have taken place. This has been an
7  ongoing problem. I understand that Mr. Goulding has a great
8  deal of time and energy and money invested in these companies.
9  He wants to see them progress as best they can.
10        But that decision, sir, is now out of your hands. The
11 Court was quite specific in telling you that, whether it be the
12 e-mails that you sent to investors, whether it be this whole
13 thing with the automobiles that was not available when the
14 Court said it should be available, or whether it is this
15 process by which you try and do an end run around the Court's
16 decision as to whether or not there should be this transaction
17 between Nu-Find and INverso.
18        Therefore, the Court grants the SEC's motion for a
19 rule to show cause. As a result of that rule, the Court also
20 orders that you cease any solicitations of Nutmeg investors
21 regarding the INverso offering. Also, the Court also requires
22 that you not interfere in any fashion with any decision made by
23 the receiver in this case, and that you take no action with
24 regards to this entire proceeding without receiving prior
25 approval of the receiver.

```
 1              Now, the SEC, because they have been restored with
 2   regards to INverso, is not seeking any further penalties
 3   against you.  But I want to put you on full notice that the
 4   Court finds that your actions in this case have been somewhat
 5   contemptuous.  If there is any future action such as these with
 6   regards to this case in the future, the Court will not be
 7   considering a monetary penalty.  The Court will be considering
 8   a period of time in custody.
 9              So you are warned not to do anything that you do not
10   get approval, either from the Court or from the receiver, with
11   regards to these ongoing concerns until this case is resolved.
12   That's the Court's order.
13              MR. GOULDING:  Your Honor?
14              THE COURT:  Yes, sir.
15              MR. GOULDING:  If I could make one comment.  Maybe I
16   didn't make this totally clear.  I knew that the receiver was
17   against the transaction that was outlined with regard to
18   Nu-Find.  And, therefore, I knew that I would -- could not do
19   anything with regard to that.  And that's why I chose to
20   resign.  And I thought that it would be a very benign action to
21   appoint successor -- a successor.  And I gave advance notice to
22   the receiver and asked, if you have an objection please let me
23   know.  Otherwise this is what I intend to do.
24              THE COURT:  Let me stop you, Mr. Goulding, because I
25   am not going to require you answer these questions.  But I will
```

1  pose a question that I posed to myself in arriving at my
2  decision.
3            When you did that, when you transferred ownership of
4  this company to Mr. Hartman, whom there was some financial
5  dealings between you and he where you owed certain debts to him
6  before you did that.  In order to buy your story, the Court
7  then would have to believe that you had no idea, none
8  whatsoever, you didn't pull the string, to have Mr. Hartman
9  then do exactly what you wanted to have done in the first
10 place; that is, to complete this transaction between INverso
11 and Nu-Find.
12           I don't believe it, sir.  So I can understand and I
13 give lawyers as lot of credit as being able to make strong
14 arguments with regards to their position.  But the facts speak
15 louder.  And it happens often time will lawyers, the facts
16 carry the day, not the lawyer's assertion as to what the facts
17 should mean.
18           So the Court's ruling stands.  I think everyone is
19 clear that at this point you do not run those companies any
20 further.  And if you continue to engage in these activities,
21 you won't be going out that door, sir.
22           Do you understand that?
23           MR. GOULDING:  I certainly understand.  And I just
24 have to say that I think that this was a terribly
25 misunderstanding.  But I do understand.

```
 1              THE COURT:  Okay.  And just in terms of a final
 2   comment, I have been giving you the benefit of the doubt.  I
 3   have been trying to bend over backwards understanding your
 4   passion for these companies.  I understand that.  But at some
 5   point, you know, it's like being married.  At some point your
 6   wife divorces you and you have to get used to somebody else
 7   opening the door for her, taking her to lunch, and doing all
 8   those other things.
 9              And that's what's happening with the company now.
10   Someone else is taking the company to lunch and directing the
11   company.  And until the Court rules differently, that's
12   something you have to get accustomed to.
13              MR. GOULDING:  And I think I have, your Honor.
14              THE COURT:  Okay.
15              MR. GOULDING:  But I'm sorry.  I really apologize for
16   the misunderstanding.  But I can only say that I really never
17   intended to violate your court order.
18              THE COURT:  Okay.  Do we have a pending status date
19   or --
20              MR. MOYE:  We do, which probably is no longer
21   necessary since the discovery period has been extended.  We may
22   want to push that out a while longer.  And I think Mr. Kopecky
23   would be very happy if we did.
24              MR. KOPECKY:  Yes.
25              THE COURT:  What are you folks suggesting then?
```

1          MR. MOYE:  I don't think we had a date suggested.  I
2    think the prior date was the 29th.  And we could go out another
3    three weeks or so beyond that easily.
4          THE COURT:  Okay.
5          MR. GOULDING:  I think it was the 27th.
6          MR. KOPECKY:  The 27th, yes.
7          THE COURT:  Okay.  Then the pending status of 1/27 is
8    stricken.  Let's go to late February, Jackie.
9          THE CLERK:  February 24, that's a Wednesday, is that
10   okay?  9:30?
11         MR. MOYE:  Yes.
12         MR. SHOENTHAL:  Yes.
13         THE COURT:  Okay.
14         MR. MOYE:  Thank you, your Honor.
15         MR. KOPECKY:  Thank you.
16         MR. GOULDING:  Thank you, your Honor.
17      (Which were all the proceedings had at the hearing of the
18         within cause on the day and date hereof.)
19                           CERTIFICATE
20         I HEREBY CERTIFY that the foregoing is a true, correct
     and complete transcript of the proceedings had at the hearing
21   of the aforementioned cause on the day and date hereof.
22    /s/Alexandra Roth                                  2/5/2010
     _____    _____
23    Official Court Reporter                              Date
      U.S. District Court
24    Northern District of Illinois
      Eastern Division
25