## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) Case No. 09-CV-1775 ) |
| v. | ) Judge William J. Hibbler ) |
| THE NUTMEG GROUP, LLC RANDALL GOULDING, DAVID GOULDING, | ) Magistrate Judge Ashman ) ) ) |
| Defendants, | ) ) |
| DAVID GOULDING, INC., DAVID SAMUEL, LLC, FINANCIAL ALCHEMY LLC, PHILLY FINANCIAL, LLC, SAM WAYNE, and ERIC IRRGANG, | ) ) ) ) ) ) |
| Relief Defendants. | ) ) |

### DEFENDANT RANDALL GOULDING'S RESPONSE TO THE RECEIVER'S MOTION FOR A RULE TO SHOW CAUSE (DOCKET 180)

NOW COMES Defendant Randall S. Goulding, by and through counsel, and prays that this Honorable Court will deny The Receiver's Motion For A Rule To Show Cause, and in support thereof, states as follows:

### INTRODUCTION

It is unfortunate that the Receiver has chosen to move forward with her unnecessary, second, Motion for a Rule to Show Cause Against Randall Goulding (the "Motion"), her first having been denied on December 9, 2009 (Docket 118). While the matters at issue have already been resolved, for whatever reason, the Receiver refuses to withdraw the Motion and has, instead, chosen a course of action that will result in the unnecessary use of judicial resources,

Randall's resources and Nutmeg's resources. As discussed below, the fault here does not lie with Randall. As counter-intuitive as it may seem, the fault lies squarely with Weiss.

At its core, Weiss's Motion asks for two things: (a) that Randall sit for an interview with her and answer questions; and (b) that Randall turn over all relevant documents in his possession. Unequivocally, Randall has already complied with both requests. Goulding Decl. at ¶ 3-13; Ex B14-17.[1] On May 20, 2010, a five-hour meeting was held at Weiss's law firm attended by Randall, his counsel, David Goulding and his counsel, the SEC and Weiss and her counsel. During this meeting, Weiss went through only six of the 11 topics in her Motion, tacitly admitting that the other five were either unfounded or resolved as a consequence of Randall's post-filing letters General Exhibits 1-2. Weiss also asked other questions unrelated to those topics. She conducted the meeting, slowly and systematically, moving on to the next topic only once satisfied she had of all the answers she was looking for.

When she was done, all matters covered by the Motion appeared to have been resolved. For whatever reason, Weiss chose not to withdraw her Motion. Instead, she asked that Randall follow up with extra information as to two of the 11 topics. Since that time, Randall has responded to each additional question/request. Goulding Decl. at ¶ 11; Ex Wilbur and Salamon 14-17. But Weiss does not seem to like the answers. Apparently unsatisfied with what the answers are (rather than whether the answers have been provided), Weiss has forced Randall to expend his resources responding to a Motion that should have been withdrawn long ago.

## ARGUMENT

---

[1] Except for Randall's post-filing letters (General Exhibits 1-2), the letter of the exhibit is in reference to the section below, which corresponds to the order of the items complained of in Weiss's Motion.

2

The below sections demonstrate (1) that Randall has provided Weiss with all the requested documents and information, (2) why her refusal to withdraw the Motion is both inexplicable and inexcusable, and (3) why it should never been filed in the first place. There are two crucial points to consider when ruling upon the Motion.

First, while Randall answered all Weiss's questions at the recent meeting, and has continued to do so since, he has not supplied one single document that she did not already possess. Weiss's complaints that she has not been provided with necessary documents are simply not true. In answering Weiss's questions at the meeting, Randall and David Goulding either pointed her to documents already in her possession or verbally answered her questions – questions she would not have had to ask had she reviewed the documents in her office. Weiss's Motion was not necessitated by Randall's refusal to provide Weiss with documents, but was the consequence of her unwillingness to review the documents she has had since September 2, 2009.

Second, Weiss's apparent inability to locate relevant documents might be explained by the fact that she has repeatedly given these documents away without retaining copies. First, Weiss gave all the documents she obtained to the SEC **without keeping a copy**. When the SEC returned these documents, they had been reformatted and Weiss claimed to be unable to open them. So, Randall provided another copy of all these documents to Weiss at his own expense (by way of a back-up hard drive). Once she obtained the second copy of these documents from Randall, she gave them away again, this time to the accountant – **again without keeping a copy**. Without questioning the prudence of these actions, Randall has repeatedly offered to copy for Weiss all documents on his personal hard drive to another hard drive, so that she would have another electronic version of all such records. However, Weiss has repeatedly refused this offer. Goulding Decl. at ¶ 6-9. Illustrative of her pattern of blaming Randall for her own inability to

3

understand the records is the e-mail string attached as Ex K13. Judging by the Motion, it appears that Weiss did not properly review these documents even when they were in her possession. If she had, the questions in her Motion would have been answered, and there would have been no need to bring it in the first place.

One last point bears mentioning. Since the meeting, Weiss has continued to ask questions, and Randall has continued to answer each one. Moreover, Randall has made clear that he will continue to cooperate with Weiss and will answer, to the best of his abilities, any question she may pose. But it is simply not proper for her to continue to press a Motion that: (a) was caused by her own lack of diligence in reviewing documents that were in her possession; (b) was moot, and is now clearly moot; and (c) will only result in Randall and Nutmeg having to bear unnecessary legal costs. In short, the Motion is unfounded and should be denied.

**A.      Randall has turned over all his documents.**

Randall did not violate any Court Order. He consistently cooperated with Weiss and assisted with her requests. Randall sent her more than 500 e-mails and has spent nearly 400 hours and approximately $10,000 in out-of-pocket expenses (which Weiss will not reimburse) in aiding her efforts. He has acted in good faith at all times. Weiss's allegation that "Goulding has repeatedly refused to cooperate with Receiver in her administration of the Nutmeg estate" is false. As demonstrated below, in many instances, she neglected to provide the Court with Randall's response, falsely intimating or specifically claiming that there was no response. See Ex K1-12; Goulding Decl. at ¶ 3-5.

Randall fulfilled his obligations in assisting "the Receiver in fulfilling her duties and obligations. [He responded] promptly and truthfully to all requests for information and documents from the Receiver," thus complying with the Court's August 6, 2009 Order

appointing the Receiver. On September 2, 2009, at Weiss's request, Randall relinquished control of all "assets, collateral, books, records, papers or other property of Nutmeg and the Funds" in his "custody, possession or control" to the Receiver. Yet, Weiss claims to have no such records, repeatedly requesting such records from Randall. Since September 2, 2009, however, Randall has had no "assets, collateral, books, records, papers or other property of Nutmeg and the Funds." In order to be able to assist Weiss, before the electronic records were turned over, Randall purchased, at his own expense, an external hard drive and copied the electronic files. Since then, Randall has had no physical records of Nutmeg and the Funds, and has no electronic records which Weiss does not also have. Goulding Decl. at ¶ 3-6.

**B.      Randall has continually offered to assist the Receiver.**

Even when threatened with the Motion, Randall explained his preference to rectify any item Weiss felt had not been resolved. See Ex K11-12. Rather than telling Randall what she felt was an incomplete explanation or what she did not understand, she ignored Randall's requests to provide her with any clarifying information, and instead chose to file the Motion. In particular, in Randall's letters of April 7 and April 8, 2010 specifically offered her additional assistance. He also offered to direct Weiss to the portion of the server containing the information she sought, and once again to walk her through the organization of the records. Those offers were rebuffed.

Randall further requested that Weiss furnish her "list of apparent grievances," offering to work with her to answer any questions she still had and to resolve any unfinished items. He also offered, again, to teach her how to use Excel spreadsheets. He made it abundantly clear that while he had no other records other than what she already had on the server, and even though he believed he had already complied with every request for documents or other assistance, he would, nevertheless, do his best to get what she wanted. He stated his preference to resolve these

matters without Court involvement, again urging her to identify any items that she felt that she still needed, instead of filing a motion. He further offered, rather than going back and forth with e-mail communications, that she telephone him so they could discuss it. He concluded each letter by stating "As always, if there is anything else I can do, I am happy to do so." Ex K11-12; Goulding Decl. at ¶ 12-13.

Even after the Motion was filed, Randall purchased, at his own expense, a new external hard drive and physically reloaded the Nutmeg electronic files to this new drive and had it delivered to Weiss. On May 20, 2010, at considerable expense, Randall and his attorney traveled to Weiss's office to answer any further questions she might have. He was joined by David Goulding and his attorney, who traveled from Madison, Wisconsin, to answer any further questions and specifically to explain to her the organization of the Nutmeg electronic files.

### C. The Receiver cannot carry her burden.

In a Motion For A Rule To Show Cause, the movant bears the burden of demonstrating that they did everything reasonable to gain compliance before bringing the motion. Here, by contrast, it is clear from Ex K11-12 and Gen. Exhibits 1-2 that it was Randall who attempted to do everything possible to avoid the Motion.

1.    *Real American Brands.*  Randall has not "[withheld] a spreadsheet listing the amount of the RAB investments [yet refusing] to turn over to the Receiver." Nor did he ever "refuse to cooperate with the Receiver [in any regard, including supplying] a spreadsheet." Weiss has all spreadsheets and other materials. Randall has no records belonging to Nutmeg. He only has copies of Nutmeg's hard drive as it existed on September 2, 2009, when he delivered it to Weiss. Randall has no Nutmeg materials which Weiss does not also have. Additionally, on March 8, 2010, prior to the filing of this Motion, Randall again offered to Weiss, in the e-mail

6

attached hereto as Ex A1 (although not disclosed by her to the Court), to "once again download the files for you [on a blank external hard drive and], consistent with Jim Kopecky's suggestion to which you never responded." Weiss again refused the offer. Even worse, Exhibit A to her Motion is her March 3, 2010 e-mail to Randall, falsely suggesting that Randall never replied thereto. Yet, Randall responded on March 4, and March 8, 2010, and had previously furnished the information to her on September 10, 2009. See Ex A1-3. Moreover, the spreadsheet was not "unintelligible"; she simply was not able to understand the spreadsheet. This spreadsheet, attached to Exhibits A1 and 3 (and also on the hard drive collected by Receiver on September 2, 2009, and again delivered to Weiss immediately after she filed this Motion), was an amortization schedule. It calculates and reflects all the information, which Randall thought would help her. It reflects the fund that made the investment, the amount of the investment, the amount and date of each installment, the dates and amounts of all sales, the balance of the amount due from time to time (including all advances, interest charges, constructive payments or 75% of sales, conforming to the terms of the convertible note, and consistent with the sales reflected therein). Moreover, the Motion was the first notice to Randall that Weiss was unable to understand this schedule. Goulding Decl. at ¶ 14-15.

Also absent from the Motion is the series of emails in which Weiss scheduled a telephone conference with Randall to discuss Real American Brands, the 2008 tax returns, Sanswire, MIKP and other items. However, Weiss broke appointment after appointment with Randall. She never telephoned Randall, despite her repeated promises to do so. Ex A4-5. Goulding Decl. at ¶ 16.

Exhibit A6 is an excerpt of transactional entries in the Internal Rate of Return spreadsheet which reflects all payments to Real American Brands, by fund. Exhibit A7 is a spreadsheet prepared by Ryan Goulding and Brandon Goulding, simplifying the information for Weiss. They

secured this information from the master spreadsheets, which are maintained by fund. By way of illustration, these spreadsheets are attached as Exhibit A8-9, from which they derived the data to prepare Exhibit A7. All such information has been readily available to Weiss. Further illustrating additional ways for Weiss to access the information, attached as Exhibit A10 is the spreadsheet reflecting the investments, sales etc., relating to the Fortuna fund investment in Billy Martin, the predecessor to Real American Brands. Goulding Decl. at ¶ 16-18. To further aid in Weiss's understanding of how the Excel spreadsheets are linked to ensure that each fund, and ultimately each investor, got credit for all proceeds earned from sales is Goulding Decl. at ¶ 19.

B.     *Morgan Wilbur/Howard Salamon* - As evidenced in the attached Exhibit B1-3, not identified in the Motion, the claim that Randall "refus[ed] to cooperate" and "refused to provide" information is not true. Randall specifically disclosed all information that he believed Weiss was seeking. It is simply not apparent what additional information Weiss could possibly want. Contrary to her representations to the Court, Randall sent three separate communications to Weiss (one of which was transmitted by Stephen Nagler), attached as Exhibit B1-3. As indicia of good faith, since it was not clear what Weiss sought, Randall sent her an additional e-mail to make sure he covered everything. Ex B4. These communications fully responded to her inquiry and then some. Defendants provided details concerning payments to Wilbur and Salamon and more. Weiss never requested any information beyond what is set forth in the responses constituting Exhibit B1-3. Since it does not appear that she ever responded to Exhibit B1-3, Randall could only assume that Weiss was not interested in any further information. Moreover, this was one of the reasons for Randall's letters of April 7 and April 8, 2010 (Ex K11-12) to clear up such misunderstandings and to provide Weiss with information that she may have felt she still needed. In particular, in Randall's April 7, 2010 letter, he specifically made an open and unlimited

8

offer of additional assistance. Once again, Weiss refused Randall's attempts to help. Clearly, the assertion that Randall did not cooperate is not supportable. See Ex B1-4; Ex K11-12.

Finally, for Weiss's further convenience, Defendants prepared additional spreadsheets reflecting payments to Wilbur and Salamon. Ex B5-6. Randall also provided all the evidence he had concerning her requests for information on this and other topics. See Ex B7-17.

     C.    *Sanswire* – It is odd, and misleading, that Weiss alleges "The Receiver *believes* that Nutmeg and/or the Funds hold a convertible note executed by Sanswire" [emphasis added]. She has in her possession the original note (Ex C1) and the original Convertible Note. On September 2, 2009, Randall met with Weiss to furnish her with all Nutmeg records that she desired to take and gave her a key to the premises. On September 10, September 16, and September 22, 2009, and thereafter on May 20, 2010, Randall went to Weiss's office, at her request, to answer questions. On September 8, 2009, among other things, Weiss and Randall reviewed the Sanswire Note and the Assignment Agreement (which were in her possession). Goulding Decl. at ¶ 22.

As evidenced in Exhibit C1-11, Weiss's claim that "Goulding refus[ed] to provide any books or records on the Sanswire investments" and "refused to cooperate with the Receiver in providing information on the Sanswire investment" is false. Randall specifically disclosed all information that he believed Weiss was seeking. Randall sent four separate communications to her, attached as Exhibit C6-9. As indicia of good faith, on March 8, 2010, Randall sent an e-mail inquiring "why don't you send me a blank external hard drive and I will once again download the files for you, consistent with Jim Kopecky's suggestion to which you never responded." She never responded. These communications and attachments (which attachments Weiss already had) fully responded to her inquiry. She already had all books and records on the Sanswire

9

investments, and all other Nutmeg and Fund related books and records. Randall was not "holding a spreadsheet listing the amount of the Sanswire investment which [he] refused to turn over to the Receiver." Clearly, her assertion claiming that Randall did not cooperate is false. See Ex C1-11; Ex K11-12. The details Ms. Weiss alleges to have sought can easily be gleaned from Paragraphs 16 through 18 of the complaint prepared by Randall against Sanswire, which Ms. Weiss had since September 2, 2009. See Goulding Decl. at ¶ 22-27.

D. *The Carried Interest Increase to Investors* - First, there was no "Carried Interest Increase to Investors"; the Carried Interest percentage never increased. Once again, the claim that Randall refused to cooperate, refused to provide information and did not respond is false. Randall fully responded to Weiss's Exhibit C on March 16, 2010, later on the very same day. Nor was there ever any "withholding any books or records." Randall does not have any documents that Weiss does not also have. See Goulding Decl. at ¶ 28-30 and Exhibits.

E. *AccessKey/Hot Web* - Once again, Weiss falsely claims that she asked for information which Randall refused to provide. Randall's response to her Exhibit D was sent later within 24 hours (Ex E1), requesting clarification. Inexplicably, Weiss refused to respond to Randall's request. Additionally, Randall spent a considerable amount of time providing information to clear the shares for trading. There was no "refusal to cooperate with Weiss in providing information on the AccessKey and Hot Web investment." Nor was there ever any "withholding any books or records"; Randall does not have any documents that Weiss does not also have. See Ex E1-5; Goulding Decl. at ¶ 31-33

F. *Legal Representation Issues* - Randall did fully disclose "those entities which received [his] legal services," in Exhibit F1. Weiss's claim that Randall "refus[ed] to cooperate ... [and] refused to provide [such] information" is false. The November 20, 2009 e-mail (Ex F1)

provides: "As best as I can determine, the portfolio companies for which the law offices

provided legal services are: Phyhealth; Nanologix; Apple Rush; American Asia; Inverso."

Interestingly, Weiss's definition for this purpose was "payment is not relevant" and

"Exclud[ing only] those for which [Randall had only] a casual conversation regarding legal

matters." What makes this a red hearing is the fact that the purpose of these services was not

really to benefit the funds. There does not even appear to be a single instance in which Randall's

law firm charged portfolio companies for the advice while a fund was investing. Many of these

companies could not afford legal services. Randall's objective was to assure that the funds would

benefit. As stated on the website, Nutmeg tried to be a full-service organization, for the benefit

of the funds. By giving free advice, the funds were more likely to get a deal, and with better

terms. In short, there was never a conflict.

Moreover, Weiss has had all of the communications. She fails to cite a single instance of

any advice to any portfolio company which was contrary to the interests of any fund.

Additionally, as disclosed to Weiss, with rare exceptions, the law firm only had one client,

Nutmeg. It therefore did not carry professional liability insurance. There is simply no

conceivable legitimate purpose or benefit for the funds of this inquiry.[2] See Ex F1-3; Goulding

Decl. at ¶ 34-35

G.    *Physicians Healthcare* - The attached Exhibit G1-2 responded to Weiss's Exhibit

F.  Randall never "refus[ed] to cooperate with the Receiver." Indeed, Randall went out of his

way to provide her with this information (which she already had). She first secured this

information, including all electronic information and paper files from Nutmeg's office on

---

[2] Oddly, it appears that Weiss has adopted the attitude that she is acting for the SEC. Significantly, she did not deny that this inquiry was "really something desired by the SEC."

September 2, 2009. As Randall repeatedly explained, this information is available in several places. Randall also repeatedly attempted to re-supply her with this information. However, she repeatedly refused. As evidenced in the attached Exhibit G1-2, "Goulding never "refus[ed] to cooperate with the Receiver in providing information." Moreover, as noted above, Randall provided a backup hard drive with a duplicate of all of the files. Goulding Decl. at ¶ 36.

Randall spent considerable time preparing an Excel spreadsheet which reflects all of the investments into Phyhealth, by payment, and all of the sales. See Ex G3. In creating this spreadsheet, Randall personally copied and pasted it from the internal rate of return spreadsheet. As previously explained to Weiss repeatedly, this information is available, by fund, on each fund's master spreadsheet. Randall also repeatedly offered to once again teach her how to use Excel spreadsheets. This offer was also refused. Goulding Decl. at ¶ 37.

H.    *Dave Rivers* - Again, Weiss falsely claims that "Goulding refused to provide any detail on the amounts paid to Rivers" and "refus[ed] to cooperate with the Receiver in providing information."  Contrary to her representations, David and Randall Goulding sent her at least six separate communications, and several attachments, most of which are attached as Exhibit F1-7. Hopefully clarifying her confusion, in Randall's November 3, 2009 letter (Ex A11), among other things, he pointed out that

> Most if not all finders were investors first. When you go through the records, you
> need to look at the complete description in the records. Payments to them … were
> undoubtedly for more than just finder's fees. No doubt, some of those payments
> were distributions.

As Randall repeatedly indicated, 1099s for Rivers would not match the amounts that Nutmeg's ledgers show that Rivers received, since only a portion of what he was paid was subject to the IRS's 1099 reporting requirements; the distributions he received as an investor

would not be included in the 1099's. Without disclosing the source of the payments which she

was attempting to compare to the 1099's, there was nothing further Randall could provide.

Finally, as yet a further convenience to Weiss, Randall and his sons prepared an

additional schedule for her breaking down David Rivers' earnings, by investor referred. Ex H8.

Moreover, this was one of the reasons for Randall's letters of April 7 and April 8, 2010 (Ex K11-

12), to clear up such misunderstandings and to provide her with information that she felt was still

needed. While Randall once again specifically offered additional assistance, Weiss refused to

supply him with any further information. Her claim that Randall did not cooperate is false.

Goulding Decl. at ¶ 38-42.

      I.      *Artfield Investments, Inc.* - As evidenced in the attached Exhibit I1, the claims that

Randall "refus[ed] to cooperate with the Receiver in providing information on Artfield" and

"refused to provide any detail on the Artfield investment," are false. Randall did respond, stating

that: "It sounds familiar; I do not recall." "If you have more information or could be more

specific perhaps I could understand what you are seeking.... Do you know when and in what

amounts?" Ex I1. Dave Goulding also responded: "I have never heard of Artfield investments."

The truth is that Defendants tried to provide her with information, but she thwarted her own

efforts by refusing to respond to the Gouldings' requests for information. Defendants simply

could not recall what is Artfield Investments. Again, Weiss's claim of non-cooperation was false.

Goulding Decl. at ¶ 43.

      J.      *Offering Documents/Partnership Agreements* - Again, Weiss's claims are false.

First, there is no evidence that she ever requested the Offering Documents and Partnership

Agreements. Certainly, Randall never refused to provide her with that documentation, or for that

matter, any other documentation. Moreover, she already had it. Randall does not have any

13

original Nutmeg or fund documents; Weiss took the Nutmeg fund documents from Nutmeg's offices on September 2, 2009. All other Nutmeg documents were abandoned by Weiss, to the landlord. In addition, the electronic files, which she has had since September 2009, contain these documents, by fund. Randall repeatedly offered to furnish her with a second set of electronic files. Jim Kopecky also made this offer. For some reason, however, she refused. Nonetheless, Randall provided her with a second set of electronic files, on an external hard drive which he purchased and personally loaded for her.

Additionally, upon Randall's review of all e-mails to and from Weiss and/or her partners and associates, the only e-mails or other communications that Randall could locate in which there was a request for offering materials or partnership agreements was her September 11 and September 12, 2009 request, and such documents were immediately provided to her. See Ex J1-2. Finally, on May 20, 2010, when Randall met with her at her office, she had these documents at the meeting. Accordingly, her claims are unfounded. Goulding Decl. at ¶ 44-46.

K.     *Accounting Issues* - Again, the claims are false. Randall never refused to provide Weiss with this documentation, or for that matter, any other documentation. Attached are e-mails and e-mail strings (Ex K1-9) evidencing that Randall was the one encouraging Weiss either to permit him to have the returns filed, or to start the process, to assure compliance with the Internal Revenue Code. Indeed, it does not appear that she even commenced this process with regard to 2009 returns until after Randall's January 8, 2010 letter and January 28, 2010 e-mail (Ex K1-2). Forwarded to her in Randall's January 28, 2010 e-mail was Ryan Goulding's e-mail stating, among other matters: "I fear that Leslie just doesn't care and will again ignore the filing responsibilities. I urge you to contact Leslie one more time and see if you can quickly come to some agreement on how this gets done before it is too late" (Ex K2, which attaches Ex K1).

14

Moreover, she already had it. Randall does not have any original Nutmeg or fund documents. Weiss has them. She took them from Nutmeg's offices on September 2, 2009. Far from "refus[ing] to cooperate with the Receiver in providing the Accounting Records," Randall repeatedly offered to furnish her with a second set of electronic files. Jim Kopecky also made this offer. For some reason, however, she refused. Finally, far from only having "balance sheets as of March 31, 2009," she has had all of Nutmeg's records, both electronic and physical records, since September 2, 2009; she has had all of Ryan Goulding's records pertaining to Nutmeg, both electronic and physical records, since October 30, 2009; Randall personally e-mailed her Nutmeg's tax return for 2008 and Michael Fund's tax return for 2008 (Ex K4-5). See also Ryan Goulding's April 22, 2010 letter, Exhibit Accounting Records 10. She now has yet another copy of all such documents, which she previously had refused to get from Randall. See Ex K1-12. Goulding Decl. at ¶ 47-49.

WHEREFORE, Defendant prays that this Honorable Court will deny the motion; and grant such further and additional relief as this Honorable Court deems appropriate under the circumstances.

Dated: June 25, 2010

Respectfully submitted,
Randall Goulding,
By: /s/ Alan M. Wolper
One of his attorneys

Alan M. Wolper
LOCKE LORD BISSELL & LIDDELL LLP
111 S. Wacker Drive
Chicago, Illinois 60606
Tel: (312) 443-0610
Fax: (312) 896-6610

15

## CERTIFICATE OF SERVICE

This is to certify that I, an attorney, hereby caused a copy of the foregoing, and attachments, to be served on counsel of record via the United States ECF case management system on June 25, 2010.


/s/ Alan M. Wolper