UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) | |
| Plaintiff, | ) ) | Case No. 09-CV-1775 |
| v. | ) ) ) | Judge William J. Hibbler |
| THE NUTMEG GROUP, LLC, RANDALL GOULDING, DAVID GOLDING, | ) ) ) | |
| Defendants, | ) ) | |
| DAVID GOULDING, INC., DAVID SAMUEL, LLC, FINANCIAL ALCHEMY, LLC, PHILLY FINANCIAL, LLC, SAM WAYNE, and ERIC IRRGANG, | ) ) ) ) ) | |
| Relief Defendants. | ) | |

**RECEIVER'S REPLY IN SUPPORT OF HER MOTION FOR A RULE TO SHOW CAUSE AGAINST RANDALL GOULDING**

Leslie J. Weiss, not individually, but as court-appointed Receiver (the "Receiver") files this reply (the "Reply") in support of her Motion asking that a rule to show cause issue against Defendant Randall Goulding for violating the Court's August 6, 2009 Order appointing the Receiver.

**Introduction**

1. The Motion was filed on April 9, 2010, asking that this Court issue a Rule to Show Cause against Randall Goulding for failing to abide with the August 6, 2009 Receiver Order in connection with the following areas (as defined by the Motion): RAB, Morgan Wilbur/Howard Salamon, Sanswire, Carried Interest, AccessKey/Hot Web, Legal Representation Issues, Physicians Healthcare, Dan Rivers, Artfield Investments, Offering Documents/Partnership Agreements and Accounting Issues.

2. On May 20, 2010, after the Motion was filed, Randall Goulding did sit for a meeting with the Receiver and did provide some documentation.

3. From the Receiver's perspective, Mr. Goulding cooperated fully for some issues and not as fully for others, but cooperated such that the Receiver no longer seeks a Rule against Mr. Goulding in the following areas identified in the Motion: RAB, Sanswire, AccessKey/Hot Web, Legal Representation Issues, Physicians Healthcare, Dan Rivers, Artfield Investments, Offering Documents/Partnership Agreements and Accounting Issues. Therefore, the Receiver withdraws, without prejudice, her request for a Rule in these areas.

4. However, the Receiver still seeks a rule in the following two (2) areas: Morgan Wilbur[1] and Carried Interest.

5. The Receiver had communicated to Randall Goulding and counsel that she only sought a rule in these limited 2 areas (see, e.g., email sent to Counsel on June 22, 2010 (attached hereto as Exhibit A)) but Mr. Goulding's June 25, 2010 response,[2] for some reason, still addresses all of the issues raised in the original Motion. This Reply only addresses those areas in which the Receiver still seeks a rule.

**Morgan Wilbur**

6. As set forth in the Motion, the Receiver had unsuccessfully sought Mr. Goulding's assistance in obtaining information on deals with Morgan Wilbur. Of particular interest to the Receiver is that Mr. Goulding has repeatedly asserted that his own funds, as opposed to investor money, were used in the Morgan Wilbur deals. For instance, in Mr. Goulding's Response to the Motion (on page 4 of Exhibit B (Part 1)) he states that any Morgan

---

[1] The Receiver is no longer seeking a rule on the Howard Salamon issues.

[2] David Goulding, Randall Goulding's son, had asked and obtained leave to file a response to the Motion but chose not to file any response.

2

Wilbur deal was "done by myself, funded and allocated to me personally" and "not one penny of fees came from the investors' share." Mr. Golding also stated that Mr. Wilbur did not invest any monies in these deals, but received a substantial portion of the profits from the deals.

7. It appears that over $3.2 million was invested in these deals and that profits of over $1.5 million were realized from these deals. See Exhibit B (spreadsheet supplied by Mr. Goulding).

8. The source of funding for these deals – Mr. Goulding's personal funds, or investor funds – is of pivotal importance to the Receiver. The records available to her show that the funds used for these deals came from Nutmeg accounts. Mr. Goulding co-mingled and held the investors' monies contributed to the various funds in Nutmeg accounts. There is no evidence that those funds were Mr. Goulding's personal funds and not investor funds. Likewise, the Receiver's accountant Crowe Horwath has indicated that they find no support for the proposition that Mr. Goulding's personal funds were used to seed these deals, but have not reached a definitive conclusion as to the source of those funds.

9. As shown by the June 22 Email, all the Receiver is asking from Mr. Goulding on this issue is evidence that his personal funds, not investor money, were used in the deals.

10. What the Receiver expected to be a simple question, one that could be answered by bank statements, cancelled checks, investment statements or documents that would show that Mr. Goulding's personal funds were used in these deals has not been simple for Mr. Goulding to answer. Mr. Goulding has refused to provide any evidence that he personally funded these deals, other than a letter that dances around the source of funding for these deals and a claim by him that he took out a $265,000 mortgage on his home around the time these deals were funded. deals. See pages 2-5 of Exhibit B (Part 2) to Mr. Goulding's Response. Crowe has told the

Receiver that the amount invested in the first deal was $400,000, which is substantially more than $265,000 than would have been realized by the mortgage taken out by Mr. Goulding.

11. For all of Mr. Goulding's claimed business acumen and record keeping ability, the Receiver is troubled that he cannot produce a single piece of hard evidence to show that his personal funds were invested in these deals.[3] The Receiver is even willing to subpoena third parties to gather the necessary information on this issue, but absent a modicum of cooperation from Mr. Goulding, she is unable to do so.

**The Carried Interest Increase to Investors**

12. Another area of the Receiver's investigation has been a modification purportedly undertaken by Goulding to the operating agreement for the Nutmeg/Mercury LLP fund which had the effect of increasing the carried interest charged to investors ("Mercury Increase", and another increase in the carried interest for all Nutmeg investors from 20% to 25% (the "Carried Interest Increase") for other existing funds. See Carried Interest Increase Letter, attached hereto as Exhibit C.

13. Neither the Receiver nor Crowe Horwath found any indication that the Mercury Increase or the Carried Interest Increase had been approved by investors in the manner required by the applicable operating agreements. The Mercury Increase and the Carried Interest Increase Letter seemingly indicates that the increase was being undertaken without the approval of the investors required in the operating agreement in the case of the Mercury Increase and without any approval by the investors in the case of the Carried Interest Increase, which the Receiver and Crowe Horvath believe may have been required by that funds' operating agreements.

14. In response to the Motion, Goulding states the investors did vote on this issue and

---

[3] If the funds were his own, then the Receiver queries if Mr. Goulding breached a fiduciary duty to his investors or somehow usurped an investment opportunity by keeping this investment for himself.

4

that Randi White, a Nutmeg employee, gathered the necessary votes by email. However, neither the Receiver nor Crowe Horwath have been able to locate these emails or any documentation that the increased compensation paid to Nutmeg was approved by the investors.

### A Rule to Show Cause Should Issue Against Goulding

15. Procedurally, the Receiver is only asking that a Rule issue to have hearing to see if Mr. Goulding should be held in contempt. The purpose of such a motion is to persuade the court that there should be a hearing at which the fact finder will ultimately evaluate whether a finding of contempt is appropriate on the evidence presented. See Commodity Futures Trading Com'n v. Velazquez, 2007 WL 1673218, *2 (N.D.Ill.2007)(Filip, J.). For the Rule to be issued, "[t]he factual determination that sets the [contempt] proceedings in motion is perhaps best described as a preliminary assessment that the facts presented implicate defendants in violation of the court's order." Id., citing Central States v. Transcon Lines, No. 90 C 1853, 1993 U.S. Dist. LEXIS 12427, at *7 (N.D.Ill. Sept. 7, 1993).

16. Here, the Receiver has met this standard. As shown above, Goulding has refused and continues to refuse to cooperate with the Receiver on her investigations into Morgan Wilbur and the Carried Interest issues.

17. Based on these simple facts, Goulding has violated the Order and this Court should issue a rule to show cause requiring Goulding to show why he should not be held in contempt for failure to comply with the Order. The Receiver asks for her fees and costs in bringing this Motion. See Tranzact Technologies, Inc. v. 1Source Worldsite, 406 F.3d 851, 856 (7th Cir. 2005) (holding that civil contempt sanctions are designed for the dual purpose of compelling compliance with a court order and compensating the complainant for losses caused by the contemptuous actions).

5

WHEREFORE, Leslie J. Weiss, Temporary Receiver, requests that this Court:

a) Issue a rule to show cause requiring Defendant Randall Goulding to show why he should not be held in contempt for failing to comply with the August 6, 2009 Order;

b) Order that Randall Goulding fully cooperate with the Receiver on the Morgan Wilbur and Carried Interest Issues;

c) Order that Randall Goulding produce any documents in his possession, custody or control on Morgan Wilbur and Carried Interest Issues;

d) Order Randall Goulding to pay the Receiver's attorneys' fees and costs in connection with bringing the Motion; and

e) For such other and further relief as this Court deems appropriate and just.

Dated: August 6, 2010

Respectfully submitted,

Leslie J. Weiss, Temporary
Receiver for The Nutmeg Group, LLP

By: /s/ Kevin C. Driscoll, Jr.
    One of her attorneys

Deborah L. Thorne (ARDC # 6186482)
Kevin C. Driscoll, Jr. (ARDC # 6272159)
BARNES & THORNBURG LLP
1 North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Tel: (312) 357-1313
Fax: (312) 759-5646

CHDS01 613046v1