# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | ) | |
| COMMISSION | ) | |
| Plaintiff | ) | Case No. 09-CV-1775 |
| | ) | |
| v. | ) | Judge William J. Hibbler |
| | ) | |
| THE NUTMEG GROUP, LLC, | ) | Magistrate Judge Ashman |
| RANDALL GOULDING, | ) | |
| DAVID GOULDING, | ) | |
| Defendants, | ) | |
| | ) | |
| DAVID GOULDING, INC., | ) | |
| DAVID SAMUEL, LLC, | ) | |
| FINANCIAL ALCHEMY, LLC, | ) | |
| PHILLY FINANCIAL, LLC, | ) | |
| SAM WAYNE, and ERIC IRRANG, | ) | |
| Relief Defendants. | ) | |

## Report to Leslie Weiss, as Court-Appointed Receiver for the Defendant

## Dated November 16, 2010

In this Report, Crowe Horwath LLP ("Crowe" or "we" or "our") provide to you, as court-appointed Receiver of Defendant, a summary of our findings related to the thirteen Funds for which The Nutmeg Group, LLC had served as general partner and investment advisor. These thirteen Funds include Nutmeg/Adzone, LP, Nutmeg/Tropical, LP, Nutmeg/Startech II, LP, Nutmeg/Image Globe, LP, Nutmeg/Nanobac, LP, Nutmeg/MiniFund LLLP, Nutmeg MiniFund II LLLP, Nutmeg Lightning Fund I, LLLP, Nutmeg October 2005, LLLP, Nutmeg/Michael Fund, LLLP, Nutmeg/Fortuna Fund, LLLP, Nutmeg/Patriot Fund, LLLP and Nutmeg/Mercury Fund, LLLP (collectively, the "Funds"). We have previously provided you a report (dated October 20, 2010) in connection with our findings related to Nutmeg/Mercury Fund. The findings presented in the October 20th Report are incorporated in this Report.

## 1  Background

The Complaint filed by the Securities and Exchange Commission (the "Commission") on March 23, 2009 alleged that Nutmeg had failed to maintain the required books and records, failed to properly document and safeguard the Funds' investments, failed to accurately value the Funds' holdings, and overstated the performances of the Funds to investors. The Complaint identified 15 unregistered Funds for which Nutmeg had acted as investment advisor and/or general partner. 13 (as listed above) of the 15 Funds are within the scope of our analysis.

The cash of the twelve Funds opened before Nutmeg/Mercury Fund was commingled with the bank accounts and brokerage accounts of Nutmeg, the other Defendants, and Relief Defendants.

Although Nutmeg opened bank and brokerage accounts for Nutmeg/Mercury Fund after its inception, during our analysis of Nutmeg/Mercury Fund's activity, we found significant commingling of Nutmeg/Mercury Fund's cash in Nutmeg's bank account.

The objectives of our analysis were to account for the Funds' activity and determine the followings for each Fund:

1. Total contributions (including cash contributions and rollover proceeds contributions);

2. Total payments for investments which were attributed or allocated to Funds by Nutmeg;

3. Total shares purchased and/or converted and proceeds realized from share sales;

4. Other proceeds (loan repayments or settlement proceeds) realized;

5. Total cash distributions made by Nutmeg;

6. Total fees (both management fees and incentive fees) recorded by Nutmeg and whether the fees charged can be substantiated.

## 2. Relevant Period

The relevant time frame for the findings in this Report includes the period from January 1, 2004 through March 31, 2009. The beginning point of our analysis of the Funds' activity is January 2004. Nutmeg/Adzone, LP was one of the first Funds within our scope of analysis. Although Nutmeg/Adzone, LP's offering document indicated an offering date of August 10, 2004, we noted that in May 2004 Nutmeg received investor contributions which were recorded in the General Ledger as contributions to Nutmeg/Adzone, LP. In addition to the timing of the receipt of investor contributions, the first payment recorded as investment funding for Nutmeg/Adzone, LP was also made in May 2004.

Furthermore, we identified in Nutmeg's 2004 General Ledger additional pooled investments (Nutmeg/Circle, Nutmeg/Uniphyd, Paradigm/STHK85, Nutmeg/Senticore, and Nutmeg/Startech I) which were established before the 13 Funds within our scope. Nutmeg/Circle Group and Paradigm/STHK85 were established prior to the year 2004. Based on the entries posted to Nutmeg's General Ledger accounts for these two Funds, it appears Nutmeg continued to receive investor cash contributions in 2004, and proceeds were realized in 2004 from selling investments of Nutmeg/Circle and Paradigm/STHK85. In certain cases rather than distributing sales proceeds to the investors, the proceeds were rolled over to a newly established Fund as the investors' capital contributions. After considering the objectives of this analysis and cost/benefit of potentially expanding the analysis, we believe that January 1, 2004 is a reasonable date to begin the analysis.

The last date of entry in the General Ledgers of the Funds provided by Nutmeg was March 31, 2009. We analyzed the Funds' transactions through March 31, 2009. For some Funds, we received bank and/or brokerage statements through April 30, 2009. We incorporated in our analysis the bank and brokerage activity through the latest available statements.

### 3. Information Considered and the Limitations of the Information

Exhibit 1 contains a list of information we considered in performing our work. The list includes, but is not limited to, available bank and brokerage statements, along with available transaction images, for accounts held in the names of Nutmeg, Randall Goulding, David Goulding, the Relief Defendants, and the Funds. In addition, we utilized available Funds' offering documents, partnership agreements, and copies of letters from Nutmeg to Funds' investors. Our analysis of the documents provided foundation for the analyses covered in this Report.

To the extent possible, we relied upon documents generated by third party sources; however, the availability of such information was limited. We noted that support for certain banking transactions was not included in the bank productions and statements for a number of brokerage accounts were not available. Further, with the exception of Nutmeg/Mercury Fund, investment contracts supporting the amounts paid by the Defendants and Relief Defendants for the Funds' investments, investor subscription documents, and investor statements were either incomplete or unavailable. To supplement information provided by third party sources, we also utilized a number of spreadsheets and General Ledger files provided by Nutmeg as listed in **Exhibit 1**.

As of the date of this report, we have identified 166 bank and brokerage accounts:

- 163 accounts in the names of Defendants, Relief Defendant, Funds, other related parties, and portfolio companies controlled by Nutmeg and its principals.
- 3 bank accounts of portfolio companies which were held at the same financial institution as an account of Nutmeg's. We noted that funds were directly transferred to these companies from Nutmeg's bank accounts.

Of the 163 accounts held in the names of Defendants, Relief Defendants, the Funds, and related parties, we have analyzed 110 accounts (refer to **Exhibit 1**). Statement or transaction support for 36 of the 163 accounts was substantially incomplete or unavailable. Ten of the 36 accounts are bank and brokerage accounts in the name of Nutmeg. To compensate for the missing support, in our analysis, we relied on the entries in Nutmeg's General Ledger cash accounts and brokerage accounts. Should we receive additional information, our report may be updated accordingly. With respect to the remaining 17 accounts, we scanned the activities and determined that no further review was necessary.

Page 5

## 4. Procedures Performed

To determine and account for the Funds' activity, we performed the following procedures:

- Validated investor cash contributions and distributions by tracing cash contributions and distributions to the bank accounts of the Funds, Nutmeg, and Randall Goulding;

- Verified payments of investments recorded in Nutmeg's and the Funds' General Ledgers against disbursements from the bank accounts of Nutmeg, the other Defendants, and the Relief Defendants;

- Analyzed investments allocated or assigned by Nutmeg to the Funds;

- Identified and traced investment sales proceeds and loan repayments in the brokerage and bank accounts of the Funds, Nutmeg, the other Defendants, and the Relief Defendants;

- Analyzed related party transactions recorded in Nutmeg's and the Funds' General Ledger accounts;

- Reviewed management fees and incentive fees charged by Nutmeg to the Funds and assessed the reasonableness of fees.

## 5. Summary of Findings

Based on our analysis, an amount of $2,334,838.17 is due from Nutmeg to the Funds' investors. This amount is inclusive of the findings presented in Crowe's Report dated October 20, 2010; however, does not include amounts that may be due to the investors based on findings presented in Crowe's Report dated September 28, 2010. In **Table 1**, we summarized the Funds' activity from January 1, 2004 through March 31, 2009. The summary of activity by Fund is presented in **Exhibit 2 Summary of Funds Schedule**. In the **Notes to Exhibit 2**, we provided key assumptions used to prepare the Summary of Funds Schedule.

**Table 1** shows that on a combined basis, Nutmeg received total capital contribution of $23,726,695.23 during the Relevant Period. After deducting Nutmeg's management fees of $869,749.99, the Funds had total cash of $22,856,945.24 available for investing. We identified payments for investments totaling $21,832,892.25 which were either made in the name of the Funds or attributed to the Funds by Nutmeg.

Total realized proceeds of $20,594,143.17 were identified through the examination of statements of available brokerage statements or when broker statements were not available, through the transactions recorded by Nutmeg in its General Ledger. To calculate the Net Distributable Proceeds, the realized proceeds were reduced by proceeds reinvested by Nutmeg totaling $375,958.20, costs of investments totaling $1,744,634.39 subsequently allocated by Nutmeg to the Funds, the return of borrowed capital by Nutmeg/Tropical in the amount of $263,000.00, and cash used by Nutmeg/Mercury Fund's operating activity in the amount of $11,075.23.

The calculated Net Distributable Proceeds before Nutmeg's incentive fees and Randall Goulding's share of distributions is $19,223,528.35. Based on our understanding of the Funds' fee structure described in Funds' offering documents, we recalculated Nutmeg's incentive fees. We also recalculated Randall Goulding's share of Net Distributable Proceeds based on his proportionate interest in each Fund. Based on our calculation, the Net Distributable Proceeds to other Funds' investors before rollover contribution is $17,435,136.56. Our analysis of the investors' capital for each Fund identified total rollover contributions of $5,343,968.94. The rollover contributions reduce investors' Net Distributable Proceeds to $12,091,167.62.

Cash distributions to Funds' investors totaling $9,857,166.80 were made from Nutmeg's and the Funds' bank accounts. Based on the Funds' tax worksheets prepared by Nutmeg, some

investors of the Funds had liquidated their partnership interest. Their partnership capital was transferred to Randall Goulding (or Randall Goulding Trust). We assumed that the liquidating distributions to those investors are part of the total investor cash distributions identified. And the cash ($100,837.35) used to pay out the liquidating distributions should have come from capital contributions from Randall Goulding to the Funds. Therefore, the buyout amount of $100,837.35 is netted against the total investor cash distribution of $9,857,166.80 to calculate Net Cash Distributions.

By deducting the Net Cash Distributions from the investors' Net Distributable Proceeds, we calculated the remaining Net Distributable Proceeds due to Funds' investors in the amount of $2,334,838.17.

The Net Distributable Proceeds represents proceeds realized by March 31, 2009. It does not reflect sale of Funds' assets, Funds' expenses, and other Funds' activity after March 31, 2009.

[The remainder of this page is left blank intentionally.]

**Table 1 Proceeds due to Funds' Investors**

| | | Amount |
|---|---|---|
| Total investor cash contributions | | $ 15,970,481.54 |
| Rollover proceeds contributions | | $ 5,343,968.94 |
| Rollover proceeds contributions due from Randall Goulding | | $ 299,541.89 |
| Randall Goulding's share of capital contributions | | $ 1,799,552.86 |
| Other capital contributions due from Randall Goudling | | $ 150.00 |
| "Loan" to Nutmeg/Tropical LP | | $ 263,000.00 |
| Contributions from another Fund | | $ 50,000.00 |
| Total capital contributions | [1] | $ 23,726,695.23 |
| | | |
| Nutmeg's fees | [2] | $ (869,749.99) |
| Total capital contributions less Nutmeg's fees | [3]=[1]+[2] | $ 22,856,945.24 |
| | | |
| Payments for investment | [4] | $ (21,832,892.25) |
| Total amount available for investing less payments for investment | [5]=[3]+[4] | $ 1,024,052.99 |
| | | |
| Total proceeds realized | | $ 20,594,143.17 |
| Additional payments for investment | | $ (375,958.20) |
| Allocated costs of investment | | $ (1,744,634.39) |
| Repayment of "Loan" to Nutmeg/Tropical LP | | $ (263,000.00) |
| Fund's dividend and interest less Fund expenses | | $ (11,075.23) |
| Net proceeds | [6] | $ 18,199,475.35 |
| | | |
| Net distributable proceeds | [7]=[5]+[6] | $ 19,223,528.35 |
| | | |
| Nutmeg's incentive fees (recalculated) | [8] | $ (318,601.53) |
| Randall Goulding's share of distributable proceeds (recalculated) | [9] | $ (1,469,790.25) |
| | | |
| Investors' Net Distributable Proceeds | [10]=[7]+[8]+[9] | $ 17,435,136.56 |
| | | |
| Rollover proceeds contributions | [11] | $ (5,343,968.94) |
| Distributable proceeds to other investors after rollover contributions | [12]=[10]+[11] | $ 12,091,167.62 |
| | | |
| Randall Goulding's buyout of other investors' interest | [13] | $ 100,837.35 |
| Total investor cash distributions | [14] | $ (9,857,166.80) |
| Net cash distributions | [15]=[13]+[14] | $ (9,756,329.45) |
| Remaining distributable proceeds due from Nutmeg to investors | [16]=[12]+[15] | $ 2,334,838.17 |

*Refer to Exhibit 2 Summary of Funds for the summary by Fund*

Based on the calculation presented in **Table 1**, as of March 31, 2009, $2,334,838.17 is due from Nutmeg to the Funds' investors. However, the Funds' General Ledgers do not reflect any amount due from Nutmeg to the Funds. Over 88% of the calculated remaining distributable proceeds due to the Funds' investors can be explained by two factors, which are shown separately in **Table 2** and **Table 3**.

1) Excess incentive fees charged by Nutmeg to the Funds

2) Investment costs presented in Nutmeg's Summary of Fund's Investment schedule, but cannot be traced to available bank statements, and Nutmeg/Mercury Fund's investment costs assigned by Nutmeg, but excluded in our analysis of Funds' investment costs

[The remainder of this page is left blank intentionally.]

**Table 2 Excess Fees Charged by Nutmeg**

**Fees recorded by Nutmeg**

| | | | |
|---|---|---|---:|
| 1) Nutmeg/Mercury Fund | | | |
| Nutmeg's carried interest | | $ | 743,031.42 |
| Nutmeg's management fees | | $ | 369,001.71 |
| Total fees charges to Nutmeg/Mercury Fund | [1] | $ | 1,112,033.13 |
| | | | |
| Recalculated MCRY management fee - based on 4% | [2] | $ | 246,321.26 |
| Nutmeg/Mercury Fund excess fees | [3]=[2]-[1] | $ | 865,711.87 |
| | | | |
| 2) Other Funds | | | |
| Realized carried interests recorded by Nutmeg | [4] | $ | 929,267.85 |
| | | | |
| Recalculated incentive fees for Nutmeg | | | |
| Nutmeg/Adzone LP | | $ | 98,271.93 |
| Nutmeg/October Fund LLLP | | $ | 59,700.60 |
| Total recalculated incentive fees | [5] | $ | 157,972.53 |
| Excess fees - other Funds | [6]=[4]-[5] | $ | 771,295.32 |
| | | | |
| Excess fees - all Funds | [7]=[3]+[6] | $ | 1,637,007.19 |
| | | | |
| Remaining distributable proceeds due from Nutmeg to investors (Table 1) | [8] | $ | 2,334,838.17 |
| | | | |
| Excess fees as a percentage of Distributable proceeds due to Fund investors | [9]=[7]/[8] | | 70.11% |

[The remainder of this page is left blank intentionally]

**Table 3 Untraced Investment Costs and Excluded Assignment of Costs**

1) Investment costs not traced to bank statements

| | | | |
|---|---|---|---|
| Nutmeg/Mini Fund | | $ | 114,361.99 |
| Nutmeg/Lightning Fund | | $ | 14,213.74 |
| Nutmeg/October Fund | | $ | 15,519.79 |
| Nutmeg/Michael Fund | | $ | 39,331.62 |
| Nutmeg/Fortuna Fund | | $ | (18,521.11) |
| Nutmeg/Patriot Fund | | $ | 19,000.01 |
| Nutmeg/Mercury Fund | | $ | 24,655.79 |
| Total untraced investment costs | [1] | $ | 208,561.84  Note 1 |

2) Costs assigned to Fund but excluded from the Fund total Investments (in the Summary of Funds Schedule)

| | | | |
|---|---|---|---|
| Nutmeg/Fortuna Fund | | $ | 59,982.76 |
| Nutmeg/Mercury Fund | | $ | 160,036.12  Note 2 |
| Total assignment of costs excluded | [2] | $ | 220,018.88 |
| | | | |
| Total | [3]=[1]+[2] | $ | 428,580.72 |
| | | | |
| Remaining distributable proceeds due from Nutmeg to investors (Table 1) | [4] | $ | 2,334,838.17 |
| | | | |
| Untraced investment costs and excluded assigned costs as a percentage of Distributable proceeds due to Fund investors | [5]=[3]/[4] | | 18.36% |

*Note 1 - Refer to Exhibit 3 schedule for each Fund*
*Note 2 - Refer to October 2010 Report on Mercury Fund*

[The remainder of this page is left blank intentionally.]

## 6. Explanations of Key Components of Funds' Activity

### 6.1 Capital Contributions and Distributions

Investor capital contributions by Fund are presented in **Exhibit 2 Summary of Funds Schedule**. Investor capital contributions consist primarily of investor cash contributions, rollover contributions due from Nutmeg, rollover contributions due from Randall Goulding, and Randall Goulding's share of capital contribution. As explained in our October 20, 2010 Report to Receiver in connection with our findings related to Nutmeg/Mercury Fund, rollover contributions were from undistributed investment sale proceeds.

At their inception, the Funds were structured as "close-ended" Funds which did not provide for reinvestment of sales proceeds. Based on the tax worksheets prepared by Nutmeg for the 12 Funds opened before Nutmeg/Mercury Fund, all realized proceeds from investment sales or repayments should have been distributed to investors based on their proportionate interest in the partnership. However, not all realized proceeds were distributed to the Funds' investors. Instead, a large amount of proceeds were "held" by Nutmeg which created a liability of Nutmeg to the Funds' investors. Hence each time a new Fund was opened, a certain amount of undistributed proceeds were rolled over as investors' contribution to the new Fund. Since we were not provided with investor statements for the 12 Funds (before Nutmeg/Mercury Fund), we quantified investor rollover contributions for each Fund by deducting investor cash contributions traced to bank statements from investor total capital contributions stated in the Funds' tax worksheets prepared by Nutmeg.

From 2004 to 2007, Nutmeg recorded investor cash distributions in a General Ledger liability account (#210 – Proceeds due to investors). When cash distributions were made, the liability account was debited to reduce the account balance. The recording by Nutmeg did not specify

distribution by Fund, nor was a Fund name consistently identified on checks or wire disbursements made by Nutmeg to the investors. As many investors invested in multiple Funds managed by Nutmeg, it is difficult to segregate cash distributions by investor by Fund without the assistance of investor statements for each Fund. We traced investor cash distributions totaling $9,857,166.80 to applicable bank accounts of Nutmeg and the Funds. Of this amount, cash distributions of $1,906,006.74 were made to Nutmeg/Mercury Fund investors and the remaining amount of $7,951,160.06 were made to investors of other Funds.

In our October 20, 2010 Report to Receiver, we calculated a total amount of $972,520.73 due from Nutmeg to Nutmeg/Mercury Fund. This amount is the difference between the total distributable proceeds of $2,878,527.47 and total cash distributions to Nutmeg/Mercury Fund investors in the amount of $1,906,006.74. When we allocate the distributable proceeds to the investors based on their proportionate interest in the partnership at the end of 2007, 2008 and March 31, 2009 and compare the allocated proceeds with actual cash distributions made to the investors, we noted many incidents of over-distribution to some investors to the apparent detriment of the other investors.

The distributions made by Nutmeg to the investors were not made based on the investors' proportionate interest in the Fund, but rather appear to have been made at the discretion of Nutmeg. Some investors received no cash distributions at all while some investors received more than their share of the Funds' distributable proceeds. In addition, in 2008 and 2009, some investors redeemed their entire capital investment in Nutmeg/Mercury Fund. Inappropriate valuations performed by Nutmeg may have resulted in incorrect redemption price. If the over-distribution cannot be returned by certain investors, then the amount of over-distribution may be due from Nutmeg to the other Nutmeg/Mercury Fund investors.

### 6.2 Payment for investments

For the 12 Funds opened before Nutmeg/Mercury Fund, investment contracts or agreements, to a large extent, appear to be unavailable. Without the investment contracts or agreements to support the payments made, we cannot determine in whose name the investments were made and the terms and conditions of the contract, nor can we determine the form of the investment instruments (e.g. loan, convertible note, stock purchase, or others) received by Nutmeg and the other Defendants and Relief Defendants for the funding made, the timing of the receipt, face amount of the instruments, the number of shares acquired under the contract, and the locations or accounts where those investment instruments were held.

The investments appeared to have been made in the name of Nutmeg, the other Defendants, and the Relief Defendants and subsequently attributed or allocated to the Funds. To determine investment payments made for each Fund, we performed the following analyses:

- We verified the payment amount and payee name for the disbursements from the bank accounts of Nutmeg, Randall Goulding, and the Relief Defendants' by inspecting available support in bank productions;

- We established a link between the payments made and the investments attributed to the Funds by comparing bank disbursement activity with the transactions recorded in Nutmeg's General Ledger accounts (the Nutmeg due to/from Funds accounts);

- We reviewed the Summary of Transactions described in the letters from Nutmeg to the Funds' investors and compared the investments described in the letters with the Summary of Investment schedules provided by Nutmeg for the Funds.

The payments for investments by Fund are summarized in **Exhibit 2 Summary of Funds Schedule**. In Exhibit 3, we provided a Summary of Investment schedule for the Funds which

invested in multiple portfolio companies. These schedules reflect the investment costs stated on the Summary of Investments prepared by Nutmeg (refer to schedules in **Exhibit 4**), amount of costs traced to bank disbursements, and additional costs allocated to the Funds by Nutmeg. The additional costs allocated to the Funds were from payments made to or for investments in Accesskey IP, Inc. and Physicians Healthcare Management Group, Inc. Our analysis of allocated costs for these two investments is summarized in *Exhibit 8* and *Exhibit 10* of our October 20, 2010 Report to Receiver.

In **Exhibit 2 Summary of Funds Schedule**, we included investment payments (attributed or allocated to the Funds) which were traced to bank disbursements, but excluded investment costs not supported by bank disbursements as well as certain investment costs assigned by Nutmeg to the Funds.

### 6.3 Realized investment proceeds

Proceeds realized from Funds' investments consist of loan repayments (interest and principal), proceeds from stock sales, and proceeds settlement agreement (in the case of Nutmeg/Adzone, LP). The realized sales proceeds were identified based on the stock sales activity in the available brokerage statements of Nutmeg and the other Defendants and the Relief Defendants. When brokerage statements were unavailable, we used brokerage transactions recorded in Nutmeg's General Ledger accounts as well as the available Sales Logs prepared by Nutmeg for the Funds. The loan repayments and settlement proceeds were traced to the applicable bank accounts.

In the Summary of Investments schedules in **Exhibit 3**, we showed for each investment the difference between total proceeds from sales and loan repayments and the total investment

costs as of March 31, 2009. If the total proceeds are greater than the total investment costs, then the Fund recovered the cost of investment. If the total proceeds are less than the total investment costs, then the Fund has not recovered the investment cost. We did not calculate realized gains and losses by each deal, because the calculation requires a determination of the cost basis of investment instrument purchased and sold. And this determination cannot be made without applicable investment contracts. Except for Nutmeg/Mercury Fund, we did not have sufficient information to determine the remaining investment holdings under the Funds.

### 6.4 Nutmeg's fees

The terms and allocation methods for Nutmeg's management fees and incentive fees were structured in a similar way for the Funds opened before Nutmeg/Mercury Fund as well as Nutmeg/Mercury Fund's January 2007 Offering. Management fees were a fixed percentage (3% - 4%) of the total amount of capital raised. The incentive fees represented Nutmeg's participation of the partnership's realized profits. In terms of allocation of the partnership profits and losses, **Section 7.02 (i)(C)** of the Partnership Agreements of the Funds consistently states that the cash flow and profits shall be allocated 100% to the Limited Partners until their entire investments have been returned, and thereafter, a fixed percentage (70% - 80%) is allocated to the Limited Partners, and the remaining percentage (20%-30%) to the General Partner (Nutmeg).

The allocation method was confirmed by the Tax Worksheets prepared by Nutmeg for the Funds. To perform the partnership allocation, the Funds' net profit or loss was determined annually based on realized gain or loss from investment sales. If net profit existed, a certain percentage of the net profit was allocated to Nutmeg, and the remaining percentage of the net profit was allocated to the Limited Partners based on their proportionate interest in the

Page **17**

partnership. In other words, Nutmeg's participation of the partnership profit was calculated based on the overall partnership's net profit from its investments, rather than on an investment by investment basis. Nutmeg's allocable profits increase its capital basis in the partnership. According to the Tax Worksheets, Nutmeg's allocable profits were fully distributed to Nutmeg annually and therefore keeping Nutmeg's year-end capital basis as zero. And the remaining distributable proceeds were then allocated to the Limited Partnership based on their proportionate interest in the partnership. If in the subsequent year, the partnership incurred a net loss, Nutmeg's allocable share of the net loss would create a negative capital basis. Nutmeg was then to make capital contribution to the partnership to zero out its capital basis and the amount contributed by Nutmeg would be allocated to the Limited Partners. This allocation method supports that a "claw back" provision was applied to Nutmeg on the basis that if the General Partner received distribution in excess of its allocable share of the partnership's cumulative net profit, the excess amount would be returned to the partnership for distribution to the Limited Partners.

In our October 20, 2010 Report to Receiver, we discussed our rationale of recalculation of Nutmeg's fees for Nutmeg/Mercury Fund. For the 12 Funds opened before Nutmeg/Mercury Fund, we verified Nutmeg's calculation of management fees which were a fixed percentage of the total amount raised.

With respect to Nutmeg's incentive fees, we adopted the principle (as explained above) that as of March 31, 2009 if the Fund had not returned the costs of investments to the investors, then the Fund would not have realized gains, and therefore Nutmeg's profit participation in the form of incentive fees would be zero. And, the entire realized and distributable proceeds should have been distributed to the Limited Partners. Based on this principle, the only two Funds

which returned the entire costs of investments are Nutmeg/Adzone and Nutmeg/October Fund. For the other Funds, the amount of realized proceeds is less than the total costs of investments. **Table 4** shows the comparison by Fund.

In **Exhibit 5**, we provided our calculation of Nutmeg's incentive fees (or carried interest). Based on our calculation, Nutmeg's incentive fees are $98,271.93 from Nutmeg/Adzone and $59,700.60 from Nutmeg/October Fund.

[The remainder of this page is left blank intentionally.]

**Table 4 Comparison of Realized Proceeds with Total Costs of Investments (as of March 31, 2009)**

| No. | Fund Name | Total Cost of Investment | Total Realized Proceeds | Realized Proceeds less Cost of Investments |
|---|---|---|---|---|
| 1 | Nutmeg/Adzone | $ 1,000,000.00 | $ 1,491,359.37 | $ 491,359.37 |
| 2 | Nutmeg/Tropical | $ 1,091,129.10 | $ 252,701.48 | $ (838,427.62) |
| 3 | Nutmeg/Nanobac | $ 650,000.00 | $ 399,027.94 | $ (250,972.06) |
| 4 | Nutmeg/Startech II | $ 600,000.00 | $ 395,532.10 | $ (204,467.90) |
| 5 | Nutmeg/Image Globe | $ 200,000.00 | $ 93,110.58 | $ (106,889.42) |
| 6 | Nutmeg/Mini Fund | $ 770,598.95 | $ 595,937.14 | $ (174,661.81) |
| 7 | Nutmeg/Mini Fund II | $ 904,180.60 | $ 729,893.92 | $ (174,286.68) |
| 8 | Nutmeg/Lightning | $ 1,150,638.11 | $ 925,907.07 | $ (224,731.04) |
| 9 | Nutmeg/October | $ 1,381,467.76 | $ 1,679,970.75 | $ 298,502.99 |
| 10 | Nutmeg/Michael | $ 3,053,828.97 | $ 2,478,434.43 | $ (575,394.54) |
| 11 | Nutmeg/Fortuna | $ 2,804,742.96 | $ 1,868,789.18 | $ (935,953.78) |
| 12 | Nutmeg/Patriot | $ 2,345,758.37 | $ 1,093,834.79 | $ (1,251,923.58) |
| 13 | Nutmeg/Mercury | $ 6,593,321.94 | $ 3,572,944.31 | $ (3,020,377.63) |
| | Total | $ 22,545,666.76 | $ 15,577,443.06 | $ (6,968,223.70) |

## 7. Related Party Transactions

### 7.1 Nutmeg and Randall Goulding

Our inspection of Nutmeg, Randall Goulding, and the other Defendant and Relief Defendants' bank accounts and brokerage accounts identified numerous related party transactions. Investors contributions deposited in Nutmeg's bank accounts were transferred to the related parties' bank accounts where investments were purchased in the name of Nutmeg or the Relief Defendants. The Funds' as well as Nutmeg's investments were held and traded at numerous brokerage accounts of Nutmeg and the Relief Defendants from which proceeds were remitted to the related bank accounts.

In the September 2010 Report to Receiver in connection with our findings related to the Morgan Wilbur Deals (pg.33 Table 6), we discussed certain investments (the Morgan Wilbur Deals) that were funded through Funds' but were classified as Nutmeg or Randall Goulding's investments.

These investments generated substantial return to Nutmeg or Randall Goulding in 2005 and 2006.

In the September 2010 Report, we provided a summary of net amount paid by Nutmeg to or for the benefit of Randall Goulding from 2004 and 2006. The table below extends the summary to October 30, 2009, the latest bank statement period provided in bank productions for Randall Goulding and related accounts. The summary shows that from January 2004 to March 31, 2009, Randall Goulding received approximately $2 million in benefits from Nutmeg in addition to his allocable share of distributions from the Funds. Refer to **Exhibit 6** for a more detailed schedule.

**Table 5 Amount paid by Nutmeg to/for Randall Goulding (2004 – October 30, 2009)**

|  |  | Total |
|---|---|---|
| Transfers from Randall Goulding to Nutmeg's bank accounts |  | $ 3,453,034.61 |
|  |  |  |
| Investors' and RSG's capital contribution due from Randall Goulding |  | $ (2,236,157.59) |
| Payment of amount due to Nutmeg |  | $ (1,574,695.67) |
| Nutmeg/Mercury Fund investor cash contribution deposited in unknown account |  | $ (169,000.00) |
| Net cash transferred from Randall Goulding | [1] | $ (526,818.65) |
|  |  |  |
| Net cash transferred from Nutmeg and Funds to Randall Goulding | [2] | $ (1,760,955.78) |
| Net amount paid by Nutmeg to/for Randall Goulding (before Circle distribution) | [3]=[1]+[2] | $ (2,287,774.43) |
|  |  |  |
| Circle distribution if paid by Funds' 2004 proceeds | [4] | $ 207,123.00 |
| Net amount paid by Nutmeg to/for Randall Goulding | [5]=[3]+[4] | $ (2,080,651.43) |

*Refer to Exhibit 6 for a schedule by year*

## 7.2 *Nutmeg and Relief Defendants*

**Table 7** below provides a summary of our analysis of the Relief Defendants' bank accounts. A more detailed schedule by account is provided in **Exhibit 7**.

The funds transferred from Nutmeg to the Relief Defendants' bank accounts were used to fund investments. Some of the investments were attributed by Nutmeg to the Funds, and the others were classified as Nutmeg, Randall Goulding, or other related party's investments. Based on the transactions recorded in Nutmeg's General Ledger, the Relief Defendants received "commissions" for the investments made for Nutmeg. The commissions were typically a fixed percentage (1-3%) of the sale proceeds realized from the investments. From the analysis of the Relief Defendants and other related party's bank accounts, we identified payments to or for the benefit of the related parties totaling $342,585.08.

[The remainder of this page is left blank intentionally.]

**Table 7 Bank Activity of the Relief Defendants**

|  |  | Total |
|---|---|---|
| Funds transferred from Nutmeg |  | $ 2,872,779.67 |
| Purchase of investments (attributed to Funds) |  | $ (3,003,964.00) |
| Nutmeg funds less investment purchase for Fund | [1] | $ (131,184.33) |
|  |  |  |
| From related party broker(s) |  | $ 7,179,536.28 |
| To Nutmeg bank or broker(s) |  | $ (4,798,670.41) |
| Broker proceeds less funds transferred to Nutmeg | [2] | $ 2,380,865.87 |
| Net transactions with Nutmeg before unallocated investments | [3]=[1]+[2] | $ 2,249,681.54 |
|  |  |  |
| Total investment related fundings (not allocated to Funds) | [4] | $ (1,890,903.64) |
| Net investment activities | [5]=[3]+[4] | $ 358,777.90 |
|  |  |  |
| Interest/loan repayments - from investments and other deposits |  | $ 22,661.30 |
| Net transfer among relate party bank accounts |  | $ 120,649.52 |
| Other deposits | [6] | $ 143,310.82 |
|  |  |  |
| Net disbursements to or for related parties |  | $ (342,585.08) |
| Payroll or other operating related disbursements |  | $ (155,622.40) |
| Total disbursements | [7] | $ (498,207.48) |
|  |  |  |
| Net activity | [8]=[5]+[6]+[7] | $ 3,881.24 |

[The remainder of this page is left blank intentionally.]

### 7.3 Reasonableness of Benefits received by Randall Goulding and Relief Defendants

Our analysis of available bank and brokerage accounts determined that the total benefit received by Randall Goulding and the Relief Defendants from Nutmeg is approximately $2.4 million. This amount approximates the amount of funds due from Nutmeg to the Funds' investors calculated in **Table 1**. Based on our analysis, the benefit received by Randall Goulding and Relief Defendants does not appear to be reasonable and this further proves the amount due from Nutmeg to the Funds' investors.

**Table 8 Total Benefits Received by Randall Goulding and Relief Defendants**

| | | | |
|---|---|---|---|
| Benefits received by Randall Goulding | | $ | 2,080,651.43 |
| Benefits received by Relief Defendants | | $ | 342,585.08 |
| Total benefit received by Defendants and Relief Defendants | [1] | $ | 2,423,236.51 |
| Calculated total amount due to Funds investors | [2] | $ | 2,334,838.17 |
| | [3]=[2]/[1] | | 96% |

Nutmeg's main source of income was management fees and incentive fees from the Funds. The total management fees and recalculated incentive fees are $1,188,351.52. Nutmeg's operating expenses averages about $200,000 per year. From 2004 to March 31, 2009, Nutmeg's total fees were barely sufficient to pay for operating expenses and therefore would not have generated positive operating cash flows.

The other source of income of Nutmeg was gains from Nutmeg's investments. The table below shows the total payments identified for investments not attributed or allocated to any Fund and total proceeds from Morgan Wilbur Deals. It is apparent that the proceeds generated from those investments are less than the total amount paid for the investments. In fact, Nutmeg

would not have generated positive cash flows to make payment to or for the benefit of Randall Goulding and the Relief Defendants. The benefits received by Randall Goulding and the Relief Defendants were paid from the Funds' cash and therefore should be repaid to the Funds' investors.

**Table 9 Total Payments for Investments (outside a Fund) and Investment Proceeds**

| | | |
|---|---|---|
| Payments made from Randall Goulding's accounts | $ | 112,400.00 |
| Payments made from Relief Defendants' accounts | $ | 1,890,903.64 |
| Payments made from Nutmeg's account | $ | 3,484,971.96 |
| Total payments for investments (not attributed or allocated to Funds)  [1] | $ | 5,375,875.60 |
| | | |
| Proceeds from Morgan Wilbur Deals  [2] | $ | 4,951,613.63 |
| [1]-[2] | $ | 424,261.97 |

Note: we did not identify sigificant sales proceeds from Nutmeg's investments outside Morgan Wilbur Deals.

Refer to **Exhibits 8 and 9** for List of payments made from Nutmeg's bank accounts not attributed or allocated to Funds.

[The remainder of this page was left blank intentionally.]

**F. Other Matters**

This report reflects events and circumstances as they currently exist based upon the information received and the procedures we have performed through the date of this report. Should additional information become available to us, we reserve the right to update our report accordingly. The procedures we performed do not constitute an audit, review, or compilation of financial statements in accordance with generally accepted auditing standards. None of the contents of this report are intended to provide legal advice. We appreciate the opportunity to serve you in this matter. If you have any questions relating to any matter presented herein, please do not hesitate to contact me.


Sincerely,

Mari Reidy

Mari Reidy

Partner

Crowe Horwath LLP