## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SECURITIES AND
EXCHANGE COMMISSION,

                          Plaintiff,                  Case No.:  09-CV-1775

                          v.                  Judge William J. Hibbler

THE NUTMEG GROUP, LLC,               Magistrate Judge Ashman
RANDALL GOULDING,
DAVID GOULDING,

                    Defendants,

DAVID GOULDING, INC., DAVID SAMUEL, LLC,
FINANCIAL ALCHEMY, LLC, PHILLY FINANCIAL, LLC,
and ERIC IRRGANG

                    Relief Defendants.

## AMENDED COMPLAINT

Plaintiff United States Securities and Exchange Commission (the "Commission") alleges as follows:

## NATURE OF THE ACTION

1.    This case involves the misappropriation of client assets, improper valuation of client investments, assessment of inflated management and performance fees, misrepresentation of account values to investors, and failure to maintain required books and records by The Nutmeg Group, LLC ("Nutmeg"), by Randall Goulding, Nutmeg's owner and managing member, and by David Goulding, Nutmeg's Chief Compliance Officer.  Until 2009, Nutmeg was an investment adviser to 15 unregistered investment vehicles ("the Funds"), and invested fund assets almost exclusively in private

investments in public equity ("PIPE") transactions. As the general partner and investment adviser for the Funds, Nutmeg claimed to have assets under management of at least $32 million as of September 2009.

2. However, the Commission's compliance examiners determined that Nutmeg improperly had commingled investor and fund assets, and was holding the Funds' investments in its own name. Nutmeg also had abdicated its responsibilities as an investment adviser and general partner to the Funds by: (1) failing to appropriately document the Funds' investments; (2) not maintaining the required books and records for itself and the Funds; and (3) not following appropriate guidelines for valuing the Funds' investments. As a result, Nutmeg could not accurately value the Funds' holdings and overstated the performances of its Funds to investors, misstated investors' cash holdings.

3. In addition, Defendants had misappropriated investor assets. Since 2005, Nutmeg had transferred over $2.8 million in fund assets to the custody and ownership of third parties, and had used the Funds' money to make undisclosed payments of at least $90,000 to these individuals and entities. Randall Goulding and Nutmeg also diverted over $2.3 million from the Funds to themselves – including nearly $1 million from Nutmeg's second largest investment pool, the Nutmeg/Mercury Fund, LLLP ("Mercury"). Randall Goulding and Nutmeg perpetrated this fraud by taking cash from the Funds, either in the form of inflated fees, or by exchanging them for other, overvalued and highly-illiquid investments.

4. Randall Goulding and Nutmeg also misappropriated investor funds to pay for personal and business expenses unrelated to the Funds' operations. Randall Goulding personally took over $160,000 from the Funds to pay for restaurants, groceries, gasoline,

medical services, entertainment (such as amusement parks and movie tickets), automobile repairs, and for trips to Florida, Las Vegas, Montana, and skiing in Colorado. In addition, Randall Goulding used investor money to purchase a $33,000 automobile and to make payments towards his home equity line of credit. Instead of fulfilling Nutmeg's obligations to investors, Randall Goulding treated the Funds as his own personal assets and used investor money to support himself, his family, and his friends.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to Sections 209(d) and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d) and 80b-14], and 28 U.S.C. § 1331. This Court has personal jurisdiction over the Defendants, and venue is proper in this Court, because all of the Defendants reside in this District and the acts, transactions, practices and course of conduct giving rise to the violations alleged in this Complaint occurred in this District. In addition, this Court may order disgorgement from the Relief Defendants because they possess illegally-obtained assets and have no legitimate claim to them.

## DEFENDANTS

6.    The Nutmeg Group, LLC is a Minnesota limited liability company whose office was located in Northbrook, Illinois. Randall Goulding was Nutmeg's owner and managing member since 2006 until 2009. Nutmeg became registered with the Commission as an investment adviser in June 2007. Until 2009, Nutmeg provided discretionary portfolio management services to 15 unregistered investment pools ("the Funds"), structured as either limited liability partnerships or limited liability limited

partnerships, and acts as their investment adviser. Nutmeg also served as the general partner for 13 of these funds.

7.     Randall Goulding, 60, is the owner and was managing member of Nutmeg. He is also an attorney licensed and practicing in the State of Illinois. In 1992, Randall Goulding was convicted of conspiracy to defraud the United States, mail fraud, and illegal transportation of currency in connection with a tax evasion and money laundering scheme. His conviction was affirmed by the Court of Appeals of the Seventh Circuit. He served six months in prison, received five years of probation, and was suspended from the practice of law for four years.

8.     David Goulding, 39, is Randall Goulding's son and was Nutmeg's Chief Compliance Officer from approximately 2008 until 2009. He is also the owner of David Goulding, Inc. and David Samuel, LLC, companies which did business and shared office space with Nutmeg.

**RELIEF DEFENDANTS**

9.     David Goulding, Inc. is a Minnesota corporation and its principal office was in Northbrook, Illinois. The company was founded in 2006 by Randall Goulding for the sole purpose of holding the assets of investment partnerships created by Nutmeg. David Goulding is the company's owner.

10.     David Samuel, LLC is a Minnesota limited liability corporation and its principal office was in Northbrook, Illinois. The company was founded in 2006 by Randall Goulding for the sole purpose of holding the assets of investment partnerships created by Nutmeg. David Goulding is the company's owner.

11.    Financial Alchemy, LLC ("Financial Alchemy") is a Minnesota limited liability corporation and its principal office was in Northbrook, Illinois. The company was founded by Randall Goulding for the sole purpose of holding the assets of investment partnerships created by Nutmeg. Randall Goulding's son, Ryan Goulding, is the company's owner.

12.    Philly Financial, LLC ("Philly Financial") is a Minnesota limited liability corporation and its principal office was in Northbrook, Illinois. Randall Goulding's son, Brandon Goulding, is the company's owner. Philly Financial was created to hold the assets of investment partnerships advised by Nutmeg.

13.    Eric Irrgang, 33, is a nephew of Randall Goulding and lives in Austin, Texas. At Randall Gouldling's request and direction, Eric Irrgang has entered into PIPE transactions, purportedly on behalf of Nutmeg's funds, using fund assets.

## RELATED PARTIES

14.    Law Offices of Randall S. Goulding & Associates, P.C. ("Goulding & Associates") is a law firm that was located in Northbrook, Illinois and shared office space with Nutmeg. Randall Goulding is the owner of Goulding & Associates. The law firm provided legal services to Nutmeg and the Funds.

15.    Nutmeg/AdZone, LP ("AdZone") is an unregistered investment pool and an Illinois limited partnership. Nutmeg serves as AdZone's general partner and investment adviser. AdZone opened in November 2004 and invested in the common stock of AdZone Research, a nanocap company.

16.    Nutmeg/Tropical, LP ("Tropical") is an unregistered investment pool and an Illinois limited partnership. Nutmeg serves as Tropical's general partner and

investment adviser. Tropical opened in November 2004 and invested in the common stock of Tropical Beverage, Inc., a nanocap company.

17. <u>Nutmeg/Startech II, LP</u> ("Startech") is an unregistered investment pool and an Illinois limited partnership. Nutmeg serves as Startech's general partner and investment adviser. Startech opened in November 2004 and invested in the common stock of Startech Environmental Corporation, a nanocap company.

18. <u>Nutmeg/Image Globe, LP</u> ("Image Globe") is an unregistered investment pool and purportedly is an Illinois limited partnership. Nutmeg serves as Image Globe's general partner and investment adviser. Image Globe opened in November 2004 and invested in the common stock of Image Globe Solutions, a nanocap company.

19. <u>Nutmeg/Nanobac, LP</u> ("Nanobac") is an unregistered investment pool and an Illinois limited partnership. Nutmeg serves as Nanobac's general partner and investment adviser. Nanobac opened in November 2004 and invested in the common stock of Nanobac Pharmaceuticals, Inc., a nanocap company.

20. <u>Nutmeg/MiniFund LLLP</u> ("MiniFund") is an unregistered investment pool and purportedly an Illinois limited liability limited partnership. Nutmeg serves as MiniFund's general partner and investment adviser. MiniFund opened in February 2005 and invested in the common stock of five nanocap companies.

21. <u>Nutmeg/MiniFund II LLLP</u> ("MiniFund II") is an unregistered investment pool and a Minnesota limited liability limited partnership. Nutmeg serves as MiniFund II's general partner and investment adviser. MiniFund II opened in May 2005 and invested in the common stock of seven nanocap companies.

22.     Nutmeg Lightning Fund I, LLLP ("Lightning") is an unregistered investment pool and purportedly an Illinois limited liability limited partnership. Nutmeg serves as Lightning's general partner and investment adviser. Lightning opened in August 2005 and invested in the common stock of numerous nanocap companies.

23.     Nutmeg October 2005, LLLP ("October") is an unregistered investment pool and purportedly an Illinois limited partnership. Nutmeg serves as October's general partner and investment adviser. October opened in December 2005 and invested in the common stock of numerous nanocap companies.

24.     Nutmeg/Michael Fund, LP ("Michael") is an unregistered investment pool and an Illinois limited partnership. Nutmeg serves as Michael's general partner and investment adviser. Michael opened in April 2006 and invested in the common stock of numerous nanocap companies.

25.     Nutmeg Fortuna Fund, LLLP ("Fortuna") is an unregistered investment pool and an Illinois limited liability limited partnership. Nutmeg serves as Fortuna's general partner and investment adviser. Fortuna opened in June 2006 and invested in the common stock of numerous nanocap companies.

26.     Nutmeg/Patriot Fund, LLLP ("Patriot") is an unregistered investment pool and an Illinois limited liability limited partnership. Nutmeg serves as Patriot's general partner and investment adviser. Patriot opened in September 2006 and invested in the common stock of numerous nanocap companies.

27.     Nutmeg/Mercury Fund, LLLP ("Mercury") is an unregistered investment pool and a Minnesota limited liability limited partnership. Nutmeg serves as Mercury's

general partner and investment adviser. Mercury opened in January 2007 and invested in the common stock of numerous nanocap companies.

28. Micro Pipe Fund I, LLC ("Micro Pipe") is an unregistered investment pool and a Minnesota limited liability corporation. Nutmeg serves as Micro Pipe's investment adviser and Micro PIPE Capital Management, LLC, a Wyoming limited liability company, is the general partner. Micro Pipe opened in August 2007 and invested in the common stock of numerous nanocap companies.

29. The Stealth Fund, LLLP ("Stealth") is an unregistered investment pool and a Minnesota limited liability limited partnership. Stealth opened in December 2007 and invests in the common stock of numerous nanocap companies. Nutmeg served as Stealth's investment adviser and Wealth Strategy Partners LLP ("Wealth Strategy"), a Florida limited liability partnership located in Sarasota, Florida, is the general partner. As of September 30, 2008, Nutmeg purportedly ceased to act as Stealth's investment adviser. However, Nutmeg performed administrative work, made investment decisions, and prepared and disseminated quarterly investor account statements for the fund through at least December 2008.

## FACTS

### A.  Nutmeg and Its Funds.

30. As a general partner, Nutmeg was responsible for providing potential investors with offering documents (such as Private Placement Memoranda), sending investors their quarterly account statements, maintaining "full and accurate records and books of account" for all of its transactions, and executing portfolio transactions on behalf of the Funds. Nutmeg, as investment adviser, also directed the Funds' investment strategy.

31.    Nutmeg's duties as the Funds' general partner and investment adviser were principally carried out by Randall Goulding and David Goulding. Brandon Goulding, Ryan Goulding, as well as administrative staff (who included spouses and friends of the Gouldings) assisted Nutmeg, Randall and David Goulding in operating the Funds. Although he received assistance from his sons David and Brandon, Randall Goulding was responsible for valuing the Funds and their investments.

32.    As of April 1, 2008, Nutmeg claimed to have assets under management of approximately $32.3 million. As of the same date, the Funds had a total of 328 investors, all of whom were limited partners. Four of the Funds – Stealth, Mercury, Michael, and Fortuna – held the majority of assets under management. As of April 1, 2008, Stealth had 19 investors and purportedly had assets worth $10,376,294; Mercury had 100 investors and had assets purportedly worth $8,074,009; Michael had 86 investors and had assets purportedly worth $2,439,985; and Fortuna had 89 investors and had assets purportedly worth $1,982,435.

33.    The Funds all invested in relatively small companies, usually nanocaps, through PIPE transactions. Randall Goulding selected and monitored these investments, and drafted and negotiated the supporting documentation. The Funds' PIPE investments acquired convertible equity, convertible debt, or warrants of nanocap companies at a discount. These investments typically permitted Nutmeg to convert the equity or debt into common stock and exercise the warrants. The resulting securities (known as "entitled shares") typically had a six to nine month restriction period, after which the issuers were required to register the shares.

34.     At first, Nutmeg used PIPE transactions to invest fund assets in a single nanocap company.  Investors in Adzone, Tropical, Startech, Image Globe, and Nanobac only received distributions when the underlying securities were sold, and investors could not withdraw their capital contributions until liquidation.

35.     However, beginning in 2005, Nutmeg opened funds that invested in numerous nanocap companies through PIPEs.  These funds included MiniFund, MiniFund II, Lightning, October, Patriot, Michael, and Fortuna.  As with Nutmeg's initial funds, investors only received distributions upon the sale of the Fund's holdings and investors could not withdraw their initial investment until liquidation.  Nutmeg described all of the foregoing funds as "non-perpetual" funds.

36.     In 2007, Nutmeg created additional private investment companies: Mercury, Stealth, and Micro Pipe.  These funds also invested in numerous nanocap companies through PIPEs.  However, unlike Nutmeg's earlier funds, Nutmeg had the discretion to make quarterly distributions and investors could withdraw their capital contributions with two months notice.

37.     Adzone, Tropical, Startech, Image Globe, Nanobac, MiniFund, MiniFund II, Lightning, October, Michael, and Fortuna all shared one bank account and several brokerage accounts.  Assets of these funds were commingled and Nutmeg held their assets in its own name, not in the name of a specific fund.  Mercury and Stealth had separate bank and brokerage accounts, but these accounts also were in Nutmeg's name.

38.     Under written agreements with the Funds, Nutmeg was entitled to collect both administrative and performance fees.  For Adzone, Tropical, Startech, Image Globe, Nanobac, MiniFund, MiniFund II, Lightning, October, Michael, Fortuna, and Patriot,

Nutmeg could collect a one-time four percent administrative fee deducted from the investor's original investment. Performance fees also were assessed for these funds and ranged from 20% to 30% of profits.

39. For Mercury, Nutmeg collected an annual administrative fee of 2.5%, paid monthly, of the fund's net asset value. The performance fee for Mercury was at least 25% of profits.

40. For Stealth, Nutmeg charged an annual administrative fee of 2.5%, paid monthly, based on Stealth's net asset value. Nutmeg's performance fee for Stealth was 15% of profits; however, in the event Stealth's annualized profits exceed 50%, Nutmeg collects an additional 25%.

41. Nutmeg sent quarterly account statements by email or U.S. Mail to all of its investors. Between approximately 2007 and 2009, these statements were prepared by David Goulding based on information provided by Randall Goulding.

42. Nutmeg used two different formats for its quarterly statements. The statements for AdZone, Tropical, Startech, Image Globe, Nanobac, MiniFund, Lightning, October, Patriot, Michael, and Fortuna were combined in one statement. For these funds, Nutmeg reported, among other things, an investor's proceeds from the sale of securities ("Sales Proceeds Earned") and the value of their portion of unsold securities ("Value of Remaining Securities"). Nutmeg also reported the performance fee paid by an investor ("Carried Interest to Nutmeg") and a "Current Cash Position" for all funds.

43. The statements for Mercury, MiniFund II, and Stealth contained an investor's "Previous NAV," which purportedly was the net asset value of the investment from the previous quarter, and "Current NAV," which purportedly was the investment's

11

current net asset value. Both figures included deductions for Nutmeg's administrative fee. Nutmeg's performance fee ("Carried Interest") and the value of an investor's interest in the fund net all fees ("Total NAV") were also reported.

**B. Nutmeg Has Failed to Keep Required Books and Records and Safeguard Investments.**

44.     From May through September 2008, the Commission conducted a compliance examination of Nutmeg. Through the examination, the Commission staff learned that Nutmeg had not prepared financial statements for its own operations and did not maintain supporting financial documentation. More specifically, Nutmeg had no general or auxiliary ledgers, trial balances, or income and expense statements. Nutmeg did not have complete records of the Funds' investments or their purchase and sale of entitled shares. Besides some receipts and copies of disbursements, the only financial record maintained by Nutmeg was an electronic check registry which purportedly recorded money received from and distributed to investors.

45.     The books and records of the Funds were also in disarray. The only financial records maintained for the Funds were bank and brokerage statements and Excel spreadsheets which supposedly tracked the assets and balances of the Funds. These spreadsheets were prepared by David Goulding, with assistance from Brandon Goulding, based on information received from Randall Goulding.

46.     Many of the notes and other documents reflecting the Funds' investments in PIPEs were not signed or were missing. Some investment documents were signed by Nutmeg, but not in the name of a specific fund. For example, an August 2007 $600,000 convertible note is payable to "The Nutmeg Group, LLC" from Physicians Healthcare Management Group, Inc. But no fund is identified.

47.     Randall Goulding told the staff that at least one of the Funds' PIPE investments was oral and undocumented.  He also admitted that PIPEs were frequently renegotiated, and that he sometimes forgot to update a fund's balance sheet to reflect revised terms.

48.     The Commission's exam staff also discovered that Nutmeg had no internal administrative controls to prevent investment adviser violations.  At the time, Nutmeg had no code of ethics and had not disseminated any policies or procedures to ensure compliance with the securities laws.

49.     Nutmeg also maintained custody of Fund assets and securities, and did not adequately segregate those assets or hold them all through a "qualified custodian" such as a broker-dealer or bank.  Of the $32.3 million Nutmeg claimed to hold in purported Fund assets, approximately $1 million was held in the custody of a bank or brokerage firm. The remaining Fund assets consisted of documents, including of PIPE agreements, convertible notes, warrants, and stock certificates – which were kept at Nutmeg's offices.

50.     No audits, independent or otherwise, have ever been conducted of the Funds and there are no internal audit papers.

51.     Because the majority of the Funds' holdings were illiquid, and their ownership of assets was not properly documented, it was impossible to confirm that Nutmeg actually held and managed the remaining $31.3 million in Fund assets.

**C.     Nutmeg Transferred Control of Fund Assets to Third Parties.**

52.     Nutmeg and Randall Goulding allowed third parties to hold, own, and control some of the Funds' assets.  Beginning in at least October 2005, Randall Goulding transferred Nutmeg's Fund investments, including PIPEs, convertible notes, warrants,

and stock certificates, to the custody and record ownership of Relief Defendants Financial Alchemy, David Goulding Inc., David Samuel, Philly Financial, and Eric Irrgang. The Funds' assets were also transferred to accounts bearing the name of Randall Goulding's office assistant and her son's childhood friend.

53.    The Relief Defendants entered into at least 30 PIPE transactions, purportedly on the Funds' behalf, using Fund assets. For example, in October 2005, Financial Alchemy loaned $225,000 in fund assets to RMD Entertainment Group, Inc. ("RMD") and received a $225,000 convertible note in return. Although the note does not refer to any fund, the investment supposedly was for Michael.

54.    Randall Goulding used Relief Defendants Financial Alchemy, David Goulding Inc., David Samuel, Philly Financial, and Eric Irrgang (his college age nephew with no trading experience), in order to obtain freely tradable shares through "Rule 504 transactions." Goulding believed that the Funds could receive freely tradable shares from certain nanocap companies if they were domiciled in the same state as where the shares are registered. However, the Funds were not domiciled in the state where the shares were registered. Accordingly, Goulding decided to simply transfer Fund assets to the Relief Defendants in order to avoid this restriction.

55.    Since 2005, Relief Defendants received at least $2.8 million from the Funds to invest in PIPEs in their own name, and as of March 2009 still held approximately 125,000,000 shares of securities that belong to the Funds. Nutmeg's investors were never advised that Fund assets had been transferred to the custody and ownership of the Relief Defendants.

56.     In addition, Randall Goulding compensated Relief Defendants Financial Alchemy, David Goulding Inc., David Samuel, Philly Financial, and Eric Irrgang for participating in these PIPE transactions on behalf of the Funds.   During the Commission's compliance examination, Randall Goulding advised the Commission staff that Nutmeg had agreed to pay Relief Defendants either 1% or 3% of the *fees* Nutmeg earned from each of the Rule 504 transactions.   Randall Goulding further assured the Commission staff that none of these payments were made using Fund assets.   However, none of these purported agreements was in writing, and the "Cancellation Agreements" which Randall Goulding provided to the Commission, purporting to return the Funds' assets to Nutmeg's custody, indicate that Nutmeg had allowed the Relief Defendants to retain either 1% or 3% of the *proceeds* from the sale of shares owned by the Funds.

57.     Since 2007, the Relief Defendants received at least $90,906 in undisclosed payments from the Funds for investing in PIPEs transactions.   Financial Alchemy was compensated at least $13,113; David Goulding Inc. received at least $3,318; David Samuel took at least $9,769; Philly Financial received at least $38,900; and, Eric Irrgang collected fees of at least $25,806.   These payments – which were paid from the sale of Fund assets – were never disclosed to the Funds or its investors.

58.     During the examination, Randall Goulding told the Commission's compliance examiners that Nutmeg had never authorized the Relief Defendants to sell the Funds' assets.   However, the Cancellation Agreements indicate that, at least until June 2008, the Relief Defendants enjoyed the sole discretion to sell all of the Fund assets in their possession.   Moreover, Ryan Goulding testified that he personally made all investment decisions over the Funds' assets while they were held by Financial Alchemy.

15

59.    Randall Goulding and Nutmeg normally transferred Fund assets to the custody and ownership of the Relief Defendants without any written agreement creating legal obligations between the Relief Defendants and the Funds, or indicating that the Funds remained the beneficial owners of transferred assets.  Further, even in one instance where such an agreement existed, an investment with eWan One, Inc., the agreement did not indicate which of the Funds owned the investments held by Eric Irrgang.

60.    It was improper for the Relief Defendants to have custody of Fund assets, make investment decisions regarding those assets, and receive undisclosed fees from the Funds.  In addition, none of the Relief Defendants were suitable investment advisers.

61.    For example, at the time he received investor assets, Eric Irrgang was a twenty eight years old part-time college student of limited financial means.  He had no financial training or investment experience, and his only qualification for managing the Funds money (besides being Randall Goulding's nephew) was his Texas residency.  At Randall Goulding's direction, Eric Irrgang opened brokerage accounts in his own name, took custody of Fund assets, and traded in the accounts.  The account opening documents signed by Eric Irrgang contained false information regarding his assets and investment experience, which helped conceal the fact he was investing at the direction of Randall Goulding.

D.    **Fund Assets Were Paid for Randall Goulding's Personal Expenses and Expenses Unrelated to the Funds' Operations.**

62.    Randall Goulding and Nutmeg regularly used Fund assets to pay for the personal expenses of Randall Goulding and his family.  From 2007 until 2009, Nutmeg paid at least $104,262.13 in charges on Randall Goulding's and his wife's credit cards.  These expenses include thousands of dollars on restaurants, grocery and convenience

store purchases, hotels, airfare and rental cars at destinations such as Florida, Las Vegas and Montana, gasoline and automobile repairs, department store, toy store, and clothing purchases, and finance charges and monthly interest payments on personal credit cards.

63.     The payment of these credit card charges was inappropriate because these expenses had nothing to do with operating either the Funds or Nutmeg.  Moreover, even if Nutmeg, Randall Goulding, or David Goulding – Nutmeg's Chief Compliance Officer – considered these legitimate business expenses or a distribution, there are no documents supporting these payments.

64.     The Funds' money was also used to pay for Nutmeg's credit card bills for expenses that were unrelated to the business of the Funds or Nutmeg.  From 2007 until 2009, Nutmeg paid at least $56,886.94 of inappropriate charges and expenses.  These expenses include travel and lodging in Newport Beach, California; Jacksonville, Florida; Salem, North Carolina; and airfare to Fort Myers, Florida, dining and grocery store purchase, automobile repairs, and gifts and movie theater tickets.

65.     The payment of these expenses was inappropriate because these expenses are not related to the operations of either the Funds or Nutmeg.  Moreover, even if Nutmeg, Randall Goulding, or David Goulding did consider these to be legitimate business expenses, there are no documents supporting these payments.

66.     The Funds also purchased a 2006 Acura automobile for Randall Goulding. Nutmeg wrote a check for $33,743.75 on April 5, 2005 from the Funds commingled bank account.  Although the vehicle was titled in the name of Nutmeg, Randall Goulding viewed the car as his own a personal asset which was part of a "distribution" he was

entitled to receive from Nutmeg. However, there no records or documentation supporting this claim of ownership.

67. Since 2005, Nutmeg also has used at least $663,827.94 in investor assets to make payments towards Randall Goulding's home equity line of credit ("HELOC") on his residence in Deerfield, Illinois. For example, on February 2, 2006, Nutmeg deposited $266,575.48 in Randall Goulding's HELOC. In addition, on March 3, 2006, Nutmeg deposited $266,800.54 into Randall Goulding's HELOC. Finally, on June 30, 2006, Nutmeg deposited 130,451.92 into Randall Goulding's HELOC. Although Randall Goulding contends that these monies were distributions from Nutmeg and the Funds, there are no records or documentation supporting this claim.

68. Randall Goulding and David Goulding also received compensation from Nutmeg during the periods of time that investor funds were at risk and being misappropriated. From 2007 to 2009 David Goulding received at least $40,000 in salary from Nutmeg, and approximately $55,480 which was paid by Nutmeg to David Samuel and another company owned by David Goulding. During this same period, Nutmeg made payment s of at least $228,115 to his law firm, Goulding & Associates. Randall Goulding has acknowledged that the payments to his law firm included his "salary" from Nutmeg.

**E.    Nutmeg Made Undisclosed Loans of Fund Assets to Members of the Goulding Family.**

69. In 2007, Randall Goulding apparently gave $13,862.55 of the Funds' money to Financial Alchemy, his son's company, which then gave the money to GIG Investments ("GIG"). GIG is a real estate partnership owned by Randall Goulding and his sons, Brandon, David, and Ryan Goulding. That same year, Nutmeg transferred

$200,000 through Financial Alchemy to Russell O'Connor ("O'Connor"), Randall Goulding's son-in-law, apparently for use by O'Connor's construction company.

70.     Although Randall Goulding has claimed that these payments were "loans," neither of these transactions was documented that way. There is no interest rate, the length of the "loan" is not fixed, and there is no repayment schedule. Randall Goulding claims that O'Connor paid back Nutmeg $10,000. However, there is no evidence of this payment. Both of these "loans" of Nutmeg investor funds to Randall Goulding's family members are still outstanding, and neither one has been disclosed to investors.

### F.     Nutmeg Has Made Errors in the Valuation of the Funds.

71.     The fact that Nutmeg and the Funds failed to maintain complete and accurate financial records makes it extremely difficult to verify the performance and value of the Funds. The Commission's examination staff asked Nutmeg to substantiate its reported first quarter 2008 performance for its four largest funds – Michael, Fortuna, Mercury and Stealth. After numerous attempts over the course of several weeks, Nutmeg finally provided the Commission staff with documentation listing the purported holdings and valuations of these funds.

72.     However, Randall and David Goulding admitted that this documentation differed from the information on Nutmeg's internal records, as well as the information reported to investors during the first quarter 2008. Randall and David Goulding further admitted that the information they provided to the Commission was probably flawed due to incomplete documentation and the commingling of customer assets. Nutmeg did not disclose any of these problems to its investors until after the Commission filed a lawsuit.

73.     In fact, Nutmeg's valuation of Mercury in the first quarter 2008 was overstated. Nutmeg made several methodological errors in valuing the fund. First, Randall Goulding and David Goulding recorded incorrect stock prices for Mercury's investments in Nutmeg's internal records – by failing to record decreases in the stock prices of at least 10 companies. Second, Randall Goulding and David Goulding overstated the proceeds from the sale of shares in at least three companies. Lastly, Randall Goulding and David Goulding inflated the number of shares Mercury would receive from the fund's investments in at least four companies. Nutmeg advised the Commission that these errors caused the value of Mercury's holdings in the first quarter of 2008 to be overstated by $485,479, or nearly 6%.

74.     Nutmeg also overstated the values for Stealth's holdings in the first quarter 2008, by nearly $578,000 or 5 ½ %, because the Gouldings improperly had valued the fund's investments in four different companies.

75.     Nutmeg's also incorrectly valued the holdings of Michael and Fortuna during the first quarter 2008. However, Nutmeg could not correct its errors because the assets of Michael and Fortuna have been commingled with the assets of AdZone, Tropical, Startech, Image Globe, Nanobac, MiniFund, MiniFund II, Lightning, October and Patriot. These funds already had paid out distributions, and the returns of a number of investors had been rolled over into other Nutmeg offerings.

76.     Instead of allocating these rolled-over distributions to a new fund, Nutmeg simply purchased securities in its own name. Some of these rolled-over investments have been allocated to another fund, but others have not. Consequently, Nutmeg could not,

and still cannot, determine how to allocate from $400,000 to $1 million among the Funds or their investors.

### G. Nutmeg Did Not Adequately Discount the Funds' Investments.

77.     Nutmeg, Randall Goulding, and David Goulding also overvalued the Funds by not accurately discounting the Funds' restricted investments. Nutmeg did not adhere to appropriate valuation standards, including Statement of Financial Accounting Standards No. FAS 157, when valuing these securities. The investments purchased for the Funds were often notes that were convertible into the stock of the issuing company. Since this stock could not be sold in an active and orderly market during a period of time, Nutmeg should have applied significant discounts to these investments. Nutmeg, however, did not take sufficient discounts for these restrictions when valuing these securities. Nutmeg compounded its mistakes by failing to discount for the financial condition of the issuing companies, the liquidity of the market for the common stocks of the issuing companies, and the number of outstanding shares when valuing restricted stock. As a result, the Funds were significantly overvalued from at least 2007 to 2009.

78.     By way of example, Mercury invested in AccessKey IP, Inc. ("AccessKey") in 2007 and 2008 through convertible notes that eventually could be converted into AccessKey shares. However, the shares issuable under these notes were not registered or freely tradable, and Nutmeg's valuation of the AccessKey investment as of August 31, 2007 and March 31, 2009, assumed that all of these shares could be freely traded.

79.     Nutmeg also failed to take into account AccessKey's poor financial condition when valuing Mercury's investment. As of March 31, 2009, Nutmeg valued its AccessKey investment at $1,667,544.28, which at the time was nearly 30% of the fund's value. Nutmeg assumed that the AccessKey note with a face amount of $1,000,526.57 could

be converted into 150,393,718 freely tradeable common shares of AccessKey common stock. However, around the time of this valuation, AccessKey disclosed in its quarterly SEC filing that it had defaulted on the Mercury note, and other outstanding notes, and that AccessKey could "give no assurance that it will be capable of paying these notes." Nutmeg did not apply a substantial discount to the current market price of AccessKey stock when valuing the investment.

80. Nutmeg also overvalued Mercury's investment in Physicians Healthcare Management Group, Inc. ("Phyhealth"). As of March 31, 2008, Mercury's $424,500 investment in Phyhealth was valued by Nutmeg at $760,888 for an unrealized gain of $336,388. This unrealized gain assumed that Mercury could purchase nearly 135 million shares at a 50% discount, immediately doubling the market value of the investment. However, Phyhealth's average daily trading volume from April 1, 2007 through April 1, 2008 was only 290,399 shares, so a liquidation of Mercury's investments in Phyhealth would have resulted in converted shares amounting to over 524 times the company's average daily trading volume. Consequently, Mercury would not have been able to convert and sell their shares into the market at that time. Nutmeg should have applied a liquidity discount to Mercury's Phyhealth investment, but failed to do so.

81. Nutmeg also failed to take into account the restricted nature of the Phyhealth investment. As of March 31, 2009, Nutmeg valued the Phyhealth investment at 4,085,886 shares of preferred stock which equaled to 163,435,440 shares of common stock. This stock had not been registered with the Commission and was equal to the number of shares of the company's existing common stock. Nutmeg should have applied a discount to the Phyhealth investment to take into account the restricted nature of the investment and

therefore could not be traded.  However, no discount was applied.  Consequently, Mercury was overvalued as of March 31, 2009.

82.     Mercury's investment in Global Resources ("GBRC") was also overvalued. Nutmeg's valuation of Mercury's GBRC common stock and warrants from 2007 to 2009 assumed that the investment was not restricted and was fully marketable and therefore was not discounted.  However, Mercury's common stock and warrants in GBRC were restricted, and a discount was necessary.  Moreover, GBRC's SEC filings indicate that in 2007 and 2008 it was a developmental stage company, lacked any operating results, and its auditor expressed substantial doubt that GBRC would continue as a going concern.  Nutmeg therefore should have discounted Mercury's investment in GBRC to take into account the risk in selling these shares.  By not discounting the GBRC investment because of its restrictive nature and the company's bleak financial condition, Nutmeg overvalued Mercury from 2007 to 2009.

**H.     Nutmeg and Randall Goulding Misappropriated Over $2.3 Million From the Funds.**

83.     More recently, the Funds' court-appointed accountant – Crowe Horwath, LLP ("Crowe Horwath") – found that Nutmeg and Randall Goulding misappropriated over $2.3 million from the Funds, including nearly $1 million from Mercury.  As described in Crowe Horwath's October 20, 2010 and November 16, 2010 reports, Nutmeg and Randall Goulding perpetrated this fraud by taking cash from the Funds in the form of inflated fees, or n exchange for other, overvalued securities.

84.     As described in the Crowe reports, Mercury investors from 2007 until 2009 contributed approximately $6.1 million to the fund.  However, only $4.4 million of cash contributions and $19,663 of rollover investments actually were invested in the fund.  Nearly $1.6 million in contributions and rollover investments were diverted from

Mercury and deposited in Nutmeg's and Relief Defendants bank accounts. Despite this shortfall, Nutmeg took an additional $320,000 in cash from Mercury without any justification or explanation. As a result, Mercury, which should have had around $2.1 million in cash (before deducting Nutmeg's fees and costs of investments), had almost no cash as of May 2009.

85.     Nutmeg and Randall Goulding concealed the missing money by allocating and assigning investments at a purported cost of over $1 million to the fund. These investments included AccessKey ($750,400), Phyhealth ($157,035), Spooz, Inc. ($18,299), and Randall Goulding's personal interest in the Tropical fund ($141,836.12). However, Crowe Horwath found that as of March 2009, none of these investments had generated a return for Mercury. Moreover, over $160,000 of investments should never have been allocated to fund as Nutmeg had no proof that Mercury even owned these investments.

86.     Nutmeg and Randall Goulding significantly overvalued the fund's investments in AccessKey, Phyhealth, Spooz Inc., and Tropical. For example, Randall Goulding assigned Mercury his personal investment in Spooz in the form of a $58,250 convertible note dated October 27, 2008. Although Spooz defaulted on Randall Goulding's loan and on a separate agreement with Mercury to transfer 8.5 million shares to the fund, Nutmeg and Randall Goulding valued the convertible note at $64,139.33 – a premium over the face amount of the note – as of March 31, 2009.

87.     These inflated asset values and returns for Mercury resulted in excessive fees charged to Nutmeg's investors. According to Crowe Horwath, from 2007 to 2009, Mercury and its investors paid over $1.1 million in management and incentive fees.

These fees were based on the fund's purported assets under management and the supposed performance of its investments, both of which were overstated as described in the Crowe report.

88.     Nutmeg's and Randall Goulding's misconduct is not confined to Mercury. According to Crowe Horwath's November 16th report, Nutmeg owes Fund investors at least $2,334,838.17 as a result of overstatement of management and performance fees, improper distributions to investors, improperly allocation of investment costs, improper allocation of investment proceeds, improper calculation of partnership profits, Randall Goulding's use of investor funds for his own personal investments, and improper related party transactions.

**I.     Nutmeg Has Provided Investors with False Quarterly Reports.**

89.     The performance figures which Nutmeg reported to investors in the first quarter 2008 were false.  Nutmeg's admitted failure to allocate between $400,000 and $1 million in rolled-over investments to a particular fund makes it impossible to value its non-perpetual funds.  Likewise, the performance figures reported to Mercury and Stealth investors in the first quarter were false as they were based on methodological errors.

90.     Nutmeg's first quarter investor account statements also contained false information about an investor's cash position.  Although Nutmeg regularly advised its investors that a portion of their investment is held in cash ("Current Cash Position"), this representation was false.

91.     In fact, Randall Goulding and David Goulding advised the Commission's examination staff that an investor's Current Cash Position included investments in securities that had been commingled and are not allocated to a specific fund.  Apparently,

only 30% of an investor's "cash holdings" actually was cash -- and the remainder consisted of illiquid securities.

92.    Nutmeg's second, third, and fourth quarter statements to investors during 2008 also were wrong. Despite the problems discovered during the Commission's compliance examination, Nutmeg had not allocated rolled-over investments and could not value its non-perpetual funds. In addition, the partnership unit values reported to investors in the Mercury fund were not the same for each investor. They varied among investors by as much as several thousand dollars per unit.

**K.    Nutmeg Did Not Remedy the Problems Identified During the Commission's Examination.**

93.    The Commission's compliance examiners sent a letter to Nutmeg on September 30, 2008, documenting the deficiencies discovered as of that date and requesting immediate corrective action. On November 25, 2008 Randall Goulding responded on Nutmeg's behalf. In Goulding's letter, he claimed that until the Commission's examination he had been unaware of the existence of the Investment Advisers Act of 1940, or the duties it imposed upon him and his firm. He advised the Commission that Nutmeg was correcting the Funds' numerous problems. However, some of his claims were false.

94.    First, Randall Goulding claimed that Nutmeg had "engaged an outside accounting firm" to perform surprise exams and audits of the Funds. In fact, Nutmeg had not done so and no audits had been conducted on the Funds.

95.    Second, Randall Goulding reported that Nutmeg was resolving the problem of holding investors' rolled-over securities in the firm's own name. However, instead of determining which securities belonged to each investor, Nutmeg's response

was to allocate the securities purchased by Nutmeg to the funds from which they came. Goulding has admitted that the commingling of Fund assets and accounting shortcomings make "it is impossible to know which specific dollars in an investors' held monies account came from which fund." As a consequence, Nutmeg was never able to determine which investor's money was used to purchase the securities held in the firm's name, and therefore Nutmeg's investors could never receive an accurate record of their investments.

96.     Third, Randall Goulding claimed that Nutmeg sent "revised statements" for the first quarter 2008 to Stealth investors. However, Nutmeg never created new first quarter statements. Instead, Nutmeg simply revised the first quarter balances of Stealth investors on their second quarter statements without an explanation of the problem. Randall Goulding claimed that Nutmeg distributed "revised valuations, along with an explanation" to Stealth investors. But Nutmeg merely advised Stealth investors that its first quarter NAV (net asset value) calculations "were incorrect."

97.     Finally, Randall Goulding assured the Commission's staff that Nutmeg has transferred all assets out of the name of the Relief Defendants and back to each fund. However, documents Nutmeg provided to the Commission on February 2, 2009, did not correspond to the amounts previously invested by the Relief Defendants, nor did they properly transfer all of these holdings back to the Funds.

## COUNT I

### Violations of the Advisers Act Sections 206(1) and 206(2)
### (Against The Nutmeg Group, LLC and Randall Goulding)

98.     Paragraphs 1 through 97 are realleged and incorporated by reference as if fully set forth herein.

99.     Defendants Nutmeg and Randall Goulding, while acting as investment advisers, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, have employed and are employing devices, schemes and artifices to defraud its clients and prospective clients; and have engaged and are engaging in transactions, practices and courses of business which operate as a fraud or deceit upon their clients and prospective clients.

100.     By reason of the foregoing, Defendants Nutmeg and Randall Goulding have violated Sections 206(1) and (2) of the Advisors Act [15 U.S.C. § 80b-6(1) and 80b-6(2)].

## <u>COUNT II</u>

**Violations of the Advisers Act Sections 206(4) and Rule 206(4)-8 Thereunder**
**(Against The Nutmeg Group, LLC and Randall Goulding)**

101.     Paragraphs 1 through 97 are realleged and incorporated by reference as if fully set forth herein.

102.     Defendants Nutmeg and Randall Goulding, while acting as investment advisers to a pooled investment vehicle, have made untrue statements of material fact or omitted to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, to an investor or prospective investor in the pooled investment vehicle or otherwise engaged in acts, practices, or courses of business that are fraudulent, deceptive or manipulative with respect to an investor or prospective investor in the pooled investment vehicle.

103.    By reason of the foregoing, Defendants Nutmeg and Randall Goulding have violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rules 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

### COUNT III
**Violations of the Advisers Act Section 206(4) and Rule 206(4)-2 Thereunder
(Against the Nutmeg Group, LLC)**

104.    Paragraphs 1 through 97 are realleged and reincorporated by reference as if fully set forth herein.

105.    Defendant Nutmeg, while acting as an investment adviser to a pooled investment vehicle, has engaged in acts, practices or courses of business which are fraudulent, deceptive or manipulative with respect to an investor or prospective investor in the pooled investment vehicle, in that Nutmeg maintained custody of client funds or securities without either, engaging a qualified custodian to maintain and segregate those funds or securities; or verifying all of the funds or securities within its custody through an annual, unannounced audit by an independent public accountant.

106.    By reason of the foregoing, Defendant Nutmeg has violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-2 thereunder [17 C.F.R. § 275.206(4)-2].

### COUNT IV

**Aiding and Abetting Violations of the Advisers Act Sections 206(1) and 206(2)
(Against Randall Goulding and David Goulding)**

107.    Paragraphs 1 through 97 are realleged and incorporated by reference as if fully set forth herein.

108.    Defendants Randall Goulding and David Goulding have knowingly provided substantial assistance to a person who, while acting as an investment adviser, by

the use of the means and instrumentalities of interstate commerce and of the mails, directly or indirectly, employs devices, schemes, and artifices to defraud its clients and prospective clients, or engages in transactions, practices, and courses of business which operate as a fraud or deceit upon its clients and prospective clients.

109.    By reason of the foregoing, Defendants Randall Goulding and David Goulding have aided and abetted Nutmeg's violations of Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)].

<u>**COUNT V**</u>

**Aiding and Abetting Violations of the Advisers Act**
**Section 206(4) and Rule 206(4)-8 Thereunder**
**(Against Randall Goulding and David Goulding)**

110.    Paragraphs 1 through 97 are realleged and incorporated by reference as if fully set forth herein.

111.    Defendants Randall Goulding and David Goulding have knowingly provided substantial assistance to a person who, while acting as an investment adviser to a pooled investment vehicle, by the use of the means and instrumentalities of interstate commerce and of the mails, made untrue statements of material fact or omitted to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, to an investor or prospective investor in the pooled investment vehicle or otherwise engaged in acts, practices, or courses of business that are fraudulent, deceptive or manipulative with respect to an investor or prospective investor in the pooled investment vehicle.

112. By reason of the foregoing, Defendants Randall Goulding and David Goulding have aided and abetted Nutmeg's violations of Sections 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## COUNT VI

### Aiding and Abetting Violations of the Advisers Act
### Section 206(4) and Rule 206(4)-2 Thereunder
### (Against Randall Goulding and David Goulding)

113. Paragraphs 1 through 97 are realleged and incorporated by reference as if fully set forth herein.

114. Defendants Randall Goulding and David Goulding have knowingly provided substantial assistance to a person who, while acting as an investment adviser to a pooled investment vehicle, has engaged in acts, practices or courses of business which are fraudulent, deceptive or manipulative with respect to an investor or prospective investor in the pooled investment vehicle, by maintaining custody of client funds or securities without either, engaging a qualified custodian to maintain and segregate those funds or securities; or verifying all of the funds or securities within its custody through an annual, unannounced audit by an independent public accountant.

115. By reason of the foregoing, Defendant Randall Goulding and David Goulding have aided and abetted Nutmeg's violations of Sections 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-2 thereunder [17 C.F.R. § 275.206(4)-2].

## COUNT VII

### Violations of Section 204 of the Advisers Act and Rule 204-2 Thereunder
### (Against The Nutmeg Group, LLC)

116. Paragraphs 1 through 97 are realleged and incorporated by reference as if fully set forth herein.

117.    Defendant Nutmeg, while acting as an investment adviser who makes use of the mails or any instrumentality of interstate commerce, failed to make and keep true, accurate and current records including, but not limited to, the general ledger and financial statements relating to its business as an investment adviser, the agreements and historical records of PIPE transactions and the purchase and sale of entitled shares, and accurate records of each investor's investment and documenting each fund's performance.

118.    By reason of the foregoing, Defendant Nutmeg violated Section 204 of the Advisers Act [15 U.S.C. § 80b-4] and Rule 204-2 thereunder [17 C.F.R. § 275.204-2].

## COUNT VIII

### Aiding and Abetting Violations of Advisers Act
### Section 204 and Rule 204-2 Thereunder
### (Against Randall Goulding and David Goulding)

119.    Paragraphs 1 through 97 are realleged and incorporated by reference as if fully set forth herein.

120.    Defendants Randall Goulding and David Goulding have knowingly failed to ensure that Nutmeg made and kept true, accurate and current records including, but not limited to, the general ledger and financial statements relating to its business as an investment adviser, the agreements and historical records of PIPE transactions and the purchase and sale of entitled shares, and accurate records of each investor's investment and documenting each fund's performance.

121.    By reason of the foregoing, Defendants Randall Goulding and David Goulding have aided and abetted Nutmeg's violations of Section 204 of the Advisers Act [15 U.S.C. § 80b-4] and Rule 204-2 thereunder [17 C.F.R. § 275.204-2].

## COUNT IX

### (Against Financial Alchemy, LLC, David Goulding, Inc.,
### David Samuel, LLC, Philly Financial, LLC,
### and Eric Irrgang)

122.    Paragraphs 1 through 97 are realleged and incorporated by reference as if fully set forth herein.

123.    Relief Defendants Financial Alchemy, LLC, David Goulding, Inc., David Samuel, LLC, Philly Financial, LLC, and Eric Irrgang knowingly received an improper and illegal transfer of property from Nutmeg of assets belonging to the Funds, even though they held no legitimate ownership interest in those assets, and accepted compensation from Nutmeg and/or the Funds for their willingness to accept such a transfer.

124.    By reason of the foregoing, Relief Defendants Financial Alchemy, LLC, David Goulding, Inc., David Samuel, LLC, Philly Financial, LLC, and Eric Irrgang have been unjustly enriched and may be compelled to return to the Funds any of the Funds' property they still hold, as well as any compensation they received from Nutmeg and/or the Funds for accepting these transfers.

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Find that Defendants Nutmeg, Randall Goulding and David Goulding have committed the violations charged and alleged herein;

### II.

Permanently enjoin Nutmeg and Randall Goulding, and their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them, from violating Sections 206(1), (2) and (4) of the Advisers Act [15 U.S.C. § 80b-6(1)-(2) and (4)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

## III.

Permanently enjoin Nutmeg, and its officers agents, servants, employees, attorneys, and those persons in active concert or participation with it, and each of them, from violating Sections 204 and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-4, 80b-6(4)] and Rules 204-2 and 206(4)-2 thereunder [17 C.F.R. § 275.206(4)-2];

## IV.

Permanently enjoin Randall Goulding and David Goulding, and their agents, servants, employees, attorneys, and those persons in active concert or participation with them, from aiding and abetting the violation of Sections 204 and 206(1), (2) and (4) of the Advisers Act [15 U.S.C. §§ 80b-4 and 80b-6(1)-(2), (4)] and Rules 204-2, 206(4)-2 and 206(4)-8 thereunder [17 C.F.R. §§ 275.204-2, 275.206(4)-2, (4)-8];

## V.

Issue an Order requiring Defendants Nutmeg, Randall Goulding and David Goulding, and Relief Defendants David Goulding, Inc., David Samuel, LLC, Financial Alchemy, LLC, Philly Financial, LLC, and Eric Irrgang, to disgorge all profits or ill-gotten gains that they have received as a result of the wrongful acts, practices and courses of conduct alleged herein, with prejudgment interest.

## VI.

Issue an Order requiring Defendants Nutmeg and Randall Goulding to pay civil penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## VII.

Retain jurisdiction over this action, in accordance with the principals of equity and the Federal Rules of Civil Procedure, in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief, within the jurisdiction of this Court.

## VIII.

Grant such other and further relief as this Court deems necessary and appropriate.


By: __/s/ *Robert M. Moye*_____
      Robert M. Moye
      Andrew Shoenthal
      175 West Jackson Blvd., Suite 900
      Chicago, Illinois  60604
      Telephone: (312) 353-7390
      Facsimile: (312) 353-7398

      *Plaintiff, the United States Securities and*
      *Exchange Commission*