**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) Case No. 09-CV -1775 ) |
| v. | ) Judge William J. Hibbler ) |
| THE NUTMEG GROUP, LLC, RANDALL GOULDING, DAVID GOULDING, | ) Magistrate Judge Ashman ) ) ) |
| Defendants, | ) ) |
| DAVID GOULDING, INC., DAVID SAMUEL, LLC, FINANCIAL ALCHEMY LLC, PHILLY FINANCIAL, LLC, SAM WAYNE, and ERIC IRRGANG, | ) ) ) ) ) ) |
| Relief Defendants. | ) ) |

**SECOND MOTION FOR DEEMED ADMISSIONS AND FOR OTHER RELIEF**

**NOW COMES** the Defendant, Randall Goulding ("Randall"), *pro se*, and respectfully

requests that this Honorable Court determine that Plaintiff has not acted in good faith, has not

complied with its obligations pursuant to either Rule 36 or Rule 37 of the Federal Rules of Civil

Procedure, and determine that Plaintiff is deemed to have admitted the December 22, 2011

Request for Admission of Facts, and require full compliance with that discovery request, stating

as follows:

I.    Defendant's Subject Discovery Requests (December 22, 2011)

1.      Nutmeg's books and records show that all investor/Funds sales were distributed to investor/Funds, or reinvested for such investor/Funds, except for fees calculated by Nutmeg. In particular, its records show that:

> the sum of all sales of investor securities (that is, securities which Nutmeg ascribed to its investors) does not exceed: the sum of (1) distributions to Nutmeg's investors plus (2) re-investments by Nutmeg's investors plus (3) carried interest fees as calculated by Nutmeg plus (4) management fees on the reinvestments by Nutmeg's investors.

2.      In other words, Nutmeg's books and records show that there was no misappropriation of sales proceeds.[1]

3.      The December 22, 2011 request to admit (Exhibit A), sought to establish that all investor/Funds sales were distributed to investor/Funds, except for fees calculated by Nutmeg and reinvestments. In particular, the request was as follows:

> That the sum of all sales of investor securities (that is, securities which Nutmeg ascribed to its investors) does not exceed: the sum of (1) distributions to Nutmeg's investors plus (2) re-investments by Nutmeg's investors plus (3) carried interest fees as calculated by Nutmeg plus (4) management fees on the reinvestments by Nutmeg's investors.

4.      In the alternative, and if denied, the December 22, 2011 discovery request included an interrogatory to establish why the SEC would not admit the request and requested that the SEC "explain by what amount it calculated an excess of such sales of investor securities (defined as securities which Nutmeg ascribed to its investors) over

> the sum of (1) distributions to Nutmeg's investors plus (2) re-investments by Nutmeg's investors plus (3) carried interest fees as calculated by Nutmeg plus (4) management fees on the reinvestments by Nutmeg's investors.

---

[1] Nutmeg's books and records also show that the total amount collected by Nutmeg from investors does not exceed the sum of 1) the amount of investments ascribed by Nutmeg to the investors and 2) Management Fees as calculated by Nutmeg. In other words, the books and records demonstrate that there was no misappropriation of invested amounts either.

The interrogatory further requested that the SEC provide details of its calculations and determinations.

II.     Argument.

5.      Randall painstakingly attempted to clarify the issue on the sales/distribution side (having previously attempted to do so, on the investment side in the November 4, 2011 discovery request), isolating issues concerning valuation. In so doing, he specifically requested that the SEC respond based on Nutmeg's fee calculations (the propriety of which he did not ask the SEC to concede, but merely to exclude the valuation issue and the fee calculations issue from this equation).

6.      On January 23, 2012, the SEC responded, by objecting and essentially refusing to admit to the request and further refusing to provide the requested information. The SEC refused to specify how and for what reasons the request is not accurate. (Exhibit B)

7.      The SEC objected, alleging that "this request is not reasonably calculated to lead to the discovery of admissible evidence".

8.      Needless to say, this information is critical to the defense and extremely relevant to many of the allegations of the amended complaint. Indeed, it is difficult to imagine what might be more relevant to a claim of misappropriation of Funds, than this request (which sought to establish that there was no misappropriation of sales proceeds) and the November 4, 2011 request (which sought to establish that there was no misappropriation of amounts collected from investors (docket number 456)).

9.      Each inquiry (the November 4, 2011 request (docket number 456) and the December 12, 2011 request) was carefully designed to isolate the portion of the alleged amount due from Nutmeg to the Funds, which is not attributable to the valuation issues. Each was designed to isolate the alleged missing money issue, from the valuation issue. (Exhibit C)

10.      Contrary to the SEC's excuses for not responding, these discovery requests did not ask the SEC to concede the valuation issues.  The requests only asked that that the SEC ignore them for this purpose. The SEC's disagreements on the valuation issue do not relieve it from its responsibilities to comply with these discovery requests. (Exhibit C)

11.      Also specious was the SEC's claim that the term "Nutmeg's investors" is "vague and ambiguous". The SEC used this term three different times in the amended complaint (paragraph 55, 87 and 95). It also referred to Nutmeg investors throughout the amended complaint. The SEC's suggestion that "the term could refer to either the limited partners in each of Nutmeg's investment advisory clients (the "Funds") or to the Funds", is both irrelevant and a clear attempt to avoid responding to discovery. Moreover, it should be evident, at least in this context, whether it is interpreted one way or the other is irrelevant. Additionally, as pointed out in Randall's letter (Exhibit C), if its answer differed depending upon how it interpreted its own term, it should have provided both answers, or at the very least, responded based on how the SEC used the term in the amended complaint. See Exhibit C.

12.      Also specious was the SEC's claim that the term "as calculated by Nutmeg", is vague. The term clearly is in reference to the way Nutmeg calculated it. While the SEC improperly avoided the issue by launching into a discussion as to why it determined that Nutmeg did not properly calculate its fees, that discussion and those objections are totally irrelevant.

Consistent with the discussion above, this discovery request was designed to isolate the portion of the alleged amount due which was not attributable to the fee calculation issues. It was designed to isolate the alleged missing money issue, in each instance (the November 4, 2011 request (docket number 456) and the December 12, 2011 request), from the fee calculation issue. The SEC's disagreements on the valuation issue, do not relieve it from its responsibilities to comply with discovery requests.[2] Nor does the implicit assumption, for this purpose that the limited partners in the Mercury Fund approved the fee increase, relieve it from its responsibilities to comply with the requests and appropriately respond. Put another way, even if we are to assume, arguendo, that the SEC is correct concerning the valuations and fee calculations, this inquiry becomes no less "calculated to lead to the discovery of admissible information". Integral to the defense and to its discussions with defense experts and its pursuits of expert testimony is establishing what portion of the $2,334,838.17 which the SEC alleges in the amended complaint to be due from Nutmeg to the Funds, is attributable to each of the eight categories indicated in the complaint, including alleged overstatement of management

---

[2] The SEC's persistence that the "Receiver, Crowe Horwath LLP, and the Commission did not find any indication which could be verified that the limited partners in the Mercury Fund approved the increase in fees", is as irrelevant to this inquiry as it is false. First, the fees never did change. The new structure merely provided a mechanism whereby investors could reinvest sales proceeds (which is what nearly all desired), or to receive the sales proceeds, at their option, at the same fee level as in the original offering. In essence, it gave them the option to convert into a perpetual fund, or, receive sales proceeds as contemplated in the original offering. The official electronic record of the results of this vote, kept in the ordinary course of business, has been produced and made available to the SEC, to the Receiver and Crowe Horwath, each of whom had access to this since September 2, 2009. Exhibit E. Moreover, hard copies of these records of the actual votes, were destroyed by the landlord after the Receiver abandoned the records, without notice to the Defendants (and presumably without notice to the SEC, although the SEC has consistently avoided admitting as much). Why is the SEC so complacent with this tortious misconduct by the Receiver? Nor does it appear that anyone actually make an effort to find the actual votes, before or after the Receiver abandon them.

fees, the alleged overstatement of performance fees, as well as any actual misappropriation of amounts received from investors (as sought by the November 4, 2011 request) or any misappropriation of investor sales proceeds (as sought by the December 12, 2011 request).

13.     Nor does "the Commission['s reliance] upon the testimony of a third-party witness, whom would be subject to cross examination," relieve the Commission from its obligation to furnish this information, to have known this information before it made the allegation in the amended complaint. Nor does it relieve the Commission of its obligation to admit (as sought by the November 4, 2011 request, and the June 16, 2011 request), that it does not have this information. Nor does it relieve the Commission of its obligation to admit that it lacks the ability to breakdown this alleged amount due among the categories set forth in the amended complaint.

14.     Finally, Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure, requires a Plaintiff, even without discovery, to furnish:

> "a computation of each category of damages claimed by the disclosing party —
> who must also make available for inspection and copying as under Rule 34 the
> documents or other evidentiary material, unless privileged or protected from
> disclosure, on which each computation is based, including materials bearing on
> the nature and extent of injuries suffered."

15.     The SEC violated Rule 26(a)(1)(A)(iii). Even worse, the SEC admitted that the Commission does not have this information. As the runaround continued, it suggested, in open Court, and in response to the last three discovery requests that Mari Reidy has this information. Unfortunately, while that obligation should not have fallen upon the defendants, she too was unable to break this down among those eight categories. Pages 54 through 57 of her deposition.

6

16.     Moreover, the SEC has repeatedly failed and refused to furnish this information, despite repeated requests for this critical information (which the SEC speciously claimed, repeatedly, that is not even reasonably calculated to lead to the discovery of admissible evidence), even though Rule 26(a)(1)(A)(iii) requires a plaintiff to provide such information, without a discovery request.

17.     On February 1, 2012, given the inadequacy, Randall wrote to the SEC attorneys, in an attempt to avoid Court involvement and to resolve these discovery disputes and others.[3] (Exhibit C)

18.     While Mr. Moye promised to respond on February 3, 2012, he did not. (Exhibit D)

19.     Pursuant to Local Rule 37.2, Randall made good faith efforts to resolve the discovery issues, repeatedly attempting to contact Plaintiff's counsel to schedule a date to discuss

---

[3] This letter specifically attempted to indicate why this information was so important to the defense and why it was unfair for the SEC to not comply, explaining as follows:

By comparison to the December 22, 2011 requests which related to the sales/distribution side, the November 4, 2011 request #2, related to the collection/investment side. In particular, with regard to the November 4, 2011 requests, I painstakingly attempted to clarify the issue on the collection/investment side, isolating issues concerning valuation. In so doing, I specifically requested that you would admit that if Nutmeg's valuations and fee calculations were proper (which I did not ask you to concede, but merely to exclude the valuation issue and the fee calculations issue from this equation), the amounts received from investors were invested, but for the fees calculated by Nutmeg. In other words, and in such pursuit, in order to isolate and take out of the equation the fee calculation issues, the November 4, 2011 requests asked you to admit:

"That the total amount collected by Nutmeg from investors does not exceed the sum of 1) the amount of investments ascribed by Nutmeg to the investors and 2) Management Fees as calculated by Nutmeg."

where to secure something more responsive.  This effort complies with Randall's obligations pursuant to FRCP Rule 37(a)(1) and 38(d)(1)(B).

20.     There is no good or justifiable reason for the Plaintiff to not comply with the discovery requests.

21.     Rule 36(a)(4) provides:

If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

22.     Rule 36(a)(6) provides:

On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served. The court may defer its final decision until a pretrial conference or a specified time before trial. Rule 37(a)(5) applies to an award of expenses.

23.     As a result of Plaintiff's evasiveness, which has delayed this proceeding and threatens to further delay this proceeding, Randall respectfully submits that Plaintiff should be deemed to have admitted the requests to admit in Defendant's Requests for Admission of Facts and Interrogatory (Exhibit A), and to otherwise the sanctioned.

24.     This Process has been extremely burdensome.  The Defendants are committed to proving their innocence, and establishing that there was no intentional wrongdoing by any of them and that there is no money due from Nutmeg to any of the Funds, by way of misappropriation or otherwise.

25.     There is no good or justifiable reason for the Plaintiff to not comply with the discovery requests.

26.     If the Plaintiff responded had truthfully, completely and non-evasively to the discovery requests, as required by the Federal Rules of Civil Procedure, this case could have been materially advanced, the issues narrowed, and the parties could have been focusing on the true issues. Indeed, the SEC has frustrated Randall's repeated requests in this regard since his June 16, 2011 discovery requests.

27.     Defendants want to be able to prove to the Court, as soon as possible, there was no intentional wrongdoing, that all funds invested by the Relief Defendants for the Funds was for the benefit of the Funds, that the Funds received 100% credit for all sales on their behalf and for all investments on their behalf.

28.     The foregoing information sought in Defendant's Requests for Admission of Facts and Interrogatory (Exhibit A) and the previous requests identified herein, is necessary to mount a proper defense, to establish that there are no missing assets, and is also necessary to consult with his experts in order to determine the necessity of rebuttal/supplemental expert reports and the scope thereof.

## Conclusion

The SEC's January 23, 2012 "response" is a farce. The refusal to be responsive and to provide definitive information in response to the discovery requests is a systematic attempt to frustrate the very purpose of discovery.  It borders on the absurd and its obstructionist conduct frustrates the purpose of the entire discovery process, undermining its efficacy, prolonging this entire

proceeding and implicating Rule 11 of the Federal Rules of Civil Procedure. This entire exercise, as well as that of the November 4, 2011 requests and June 16, 2011 requests, was to isolate the valuation/fee calculation issues from the accounting issues. That is why each request was based on Nutmeg's calculations. There was no attempt to get the SEC to concede that Nutmeg's calculations were correct, even though they are correct. Instead, only by isolating that facet can we determine what portion of any adverse SEC determination can be attributed to accounting issues versus valuation issues. By parsing and refusing to subscribe to the conditions or premises underlying these requests, the SEC has, by design, frustrated the entire purpose of the request.

Wherefore, it is respectfully request and this Honorable Court grant this motion, and

enter an order that Plaintiff is deemed to have admitted the December 22, 2011 Requests for Admission of Facts and Interrogatory, and require full compliance with outstanding discovery relative to Exhibits A and C; and

provide to Defendant such other and further relief to which Defendant Randall Goulding may be justly entitled to under the circumstances.

February 3, 2012

Respectfully submitted,

 /s/ Randall S. Goulding, *pro se*

1333 Sprucewood
Deerfield, IL 60015
(847) 948-5431
Attorney No. 53811

10

## CERTIFICATE OF SERVICE

This is to certify that I, an attorney, hereby caused a copy of the foregoing, and attachments, to be served on counsel of record via the Unites States ECF case management system on February 3, 2012.

/s/Randall S. Goulding