## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | ) | |
| COMMISSION, | ) | |
| Plaintiff, | ) | Case No. 09-CV-1775 |
| | ) | |
| v. | ) | Judge Martin C. Ashman |
| | ) | |
| THE NUTMEG GROUP, LLC, | ) | |
| RANDALL GOULDING, | ) | |
| DAVID GOULDING, | ) | |
| Defendants, | ) | |
| | ) | |
| DAVID GOULDING, INC., | ) | |
| DAVID SAMUEL, LLC, | ) | |
| FINANCIAL ALCHEMY, LLC, | ) | |
| PHILLY FINANCIAL, LLC, | ) | |
| SAM WAYNE, and ERIC IRRGANG, | ) | |
| Relief Defendants. | ) | |

### RECEIVER'S TWENTY-THIRD INTERIM FEE APPLICATION

Leslie J. Weiss, not individually, but as court-appointed Receiver ("Weiss" or the "Receiver") of Defendant, The Nutmeg Group, LLC ("Nutmeg") by her attorneys files this Twenty-Third Interim Fee Application and hereby requests that this Court enter an Order allowing and approving: (i) $12,557.50 in compensation for the Receiver and her counsel's services from September 1, 2011 through February 29, 2012 (the "Application Period"), and (ii) $25.09 as reimbursement for costs and expenses incurred by the Receiver during the Application Period. In support of this Application, Receiver states as follows:

### Introduction

1.    On August 6, 2009, at the request of the U.S. Securities and Exchange Commission (the "SEC"), this Court entered an Order appointing Receiver over The Nutmeg Group, LLC (the "Order"), in which the Receiver was appointed as receiver for Nutmeg and its

funds. The Order provided that the Receiver should oversee all aspects of Nutmeg's operations and business which includes, but is not limited to, serving as general partner and investment adviser to Nutmeg/AdZone, LP, Nutmeg/Tropical, LP, Nutmeg/Startech II, LP, Nutmeg/Image Globe, LP, Nutmeg/Nanobac, LP, Nutmeg/MiniFund LLLP, Nutmeg/MiniFund II LLLP, Nutmeg Lightning Fund I, LLLP, Nutmeg October 2005, LLLP, Nutmeg/Michael Fund, LP, Nutmeg Fortuna Fund, LLLP, Nutmeg/Patriot Fund, LLLP and Nutmeg/Mercury Fund, LLLP (collectively, the "Funds").

2.      The Order required the Receiver to take control of all the Funds and to liquidate or manage them as was prudent under the circumstances, to investigate other assets belonging to Nutmeg and take control of them. The Order also required the Receiver to determine the identity of all of the Funds' limited partners, amounts invested by the limited partners and to determine the payouts to limited partners and communicate, as necessary, with the limited partners. To carry out these tasks, the Receiver was authorized to obtain information gathered and analysis performed by Crowe Horwath LLP ("Crowe"), to retain the law firm of Barnes & Thornburg LLP ("B&T"), a litigation attorney[1], McClendon Morrison & Partners LLC ("MMP"), a broker-dealer and advisory firm, and Alan D. Lasko & Associates P.C. ("AL"), an accounting firm to assist in carrying out her duties. The Receiver has filed a motion to engage another law firm on a contingency basis to pursue another claim of the Receivership Estate.

3.      In the thirty-two months since the Receiver was appointed, she has reviewed the assets purported to be in each Fund and in Nutmeg, reviewed certain litigation in which Nutmeg or the Funds were involved, investigated other claims allegedly belonging to Nutmeg and the Funds, sent out demand letters to certain parties relating to some of those claims, taken control of all known bank and brokerage accounts, opened new bank accounts in the name of the Receiver,

---

[1] This attorney was engaged on a contingency basis. He is no longer providing services to the Receiver.

has sold the liquid securities belonging to the receivership estate (the "Receivership Estate" or "Estate"), and has liquidated the assets she believes can be economically liquidated and has reduced certain claims of the Fund to judgments. The Receiver has engaged and met with AL in connection with the preparation of the Funds' and Nutmeg's tax returns and the distribution of K-1s to the investors, which has been completed for the tax years 2009 and 2010. Tax returns need to be completed for the tax year 2011. During the receivership, the Receiver has had multiple discussions and meetings with Crowe and has reviewed reports prepared by Crowe in connection with Crowe's forensic accounting investigation of Nutmeg and the Funds. The Receiver has responded to numerous motions and correspondence filed by Randall Goulding in this matter, which has consumed a considerable amount of the Receiver's time and most recently has been involved in a lawsuit filed against the Receiver by Mr. Goulding and multiple other motions, including motions for discovery that have been previously denied by Judge Hibbler. The Receiver has sent letters to the investors in the Funds, has responded to email inquiries by many investors and has spoken to many investors, personally. The Receiver also has reviewed documents and correspondence regarding Nutmeg and the Funds. The Receiver sent final claim forms to the investors. The final deadline for completing the forms was 5:00 p.m. cst on March 9, 2011. The Receiver has reviewed those claim forms and has filed a motion with the United Stated Federal District Court seeking approval to distribute the assets of the Estate using the methodology outlined in said motion. The Receiver has created a spreadsheet with the tentative claims of each investor that filed claim forms and what percentage of the total Estate each such investor would be entitled to receive. However, as indicated in correspondence sent to the investors who filed claims, the Receiver has withdrawn the motion for the distribution of funds, because of the lawsuit Randall Goulding filed against the Receiver and a request to certain

Nutmeg investors to file a lawsuit against the Receiver. Randall Gouldings' lawsuit has been dismissed by the Court; however, he filed a motion to reconsider. The legal expenses arising out of those filings are likely to consume all the remaining funds of the Receivership Estate.

4.     The Receiver has consulted and followed the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (hereafter the "Billing Instructions").

5.     The Receiver previously attached as Exhibit A to her First Fee Application, the SEC's Standardized Fund Accounting Report submitted by the Receiver for the quarter ending September 30, 2009. Billing Instructions Requirement, ¶C.4.

**Information About the Applicant and the Application**

6.     As discussed above, the time period covered by this Application is September 1, 2011 through February 29, 2012. Billing Instructions Requirement, ¶C.1.(a).

7.     The Receiver was appointed on August 6, 2009.

8.     The Receiver previously submitted the Receiver's First Fee Application for the period from June 10, 2009 through September 30, 2009, the Receiver's Second Fee Application for the period from October 1, 2009 through October 31, 2009, the Receiver's Third Fee Application for the period from November 1, 2009 through November 30, 2009, the Receiver's Fourth Fee Application for the period from December 1, 2009 through December 31, 2009, the Receiver's Fifth Fee Application for the period from January 1, 2010 through January 31, 2010, the Receiver's Sixth Fee Application for the period from February 1, 2010 through February 28, 2010, the Receiver's Seventh Fee Application for the period from March 1, 2010 through March 31, 2010, the Receiver's Eighth Fee Application for the period from April 1, 2010 through April 30, 2010, the Receiver's Ninth Fee Application for the period from May 1, 2010 through May

31, 2010, the Receiver's Tenth Fee Application for the period from June 1, 2010 through June 30, 2010, the Receiver's Eleventh Fee Application for the period from July 1, 2010 through July 31, 2010, the Receiver's Twelfth Fee Application for the period from August 1, 2010 through August 31, 2010, the Receiver's Thirteenth Fee Application for the period from September 1, 2010 through September 30, 2010, the Receiver's Fourteenth Fee Application for the period from October 1, 2010 through October 31, 2010, the Receiver's Fifteenth Fee Application for the period from November 1, 2010 through November 30, 2010, the Receiver's Sixteenth Fee Application for the period from December 1, 2010 through December 31, 2010, the Receiver's Seventeenth Fee Application for the period from January 1, 2011 through January 31, 2011, the Receiver's Eighteenth Fee Application for the period from February 1, 2011 through February 28, 2011, the Receiver's Nineteenth Fee Application for the period from March 1, 2011 through March 31, 2011, the Receiver's Twentieth Fee Application for the period from April 1, 2011 through April 30, 2011, the Receiver's Twenty-First Fee Application for the period from May 1, 2011 through June 30, 2011, and the Receiver's Twenty-Second Fee Application for the period from July 1, 2011 through August 31, 2011.

9.      The names and hourly rates of all the Receiver's professionals and paraprofessionals who billed time during the months of September 2011 through February 2012 are set forth in Paragraphs 19 and 41 below. Billing Instructions Requirement, ¶C.1.(c).

10.     This Application is an interim application. Billing Instructions Requirement, ¶C.1.(d).

**Case Status (Narrative)**

11.     The amount of cash on hand in the Estate is $137,888.88. The amount and nature of unpaid administrative expenses is zero, excluding claims for amounts accrued prior to the

commencement of the receivership. In addition, the IRS has assessed penalties and interest as of February 8, 2010 of $900 against The Nutmeg Group, LLC and $40,500 against Nutmeg/Michael Fund, LP for 2008 tax returns that Randall Goulding filed after the October 15, 2009 deadline. Mr. Goulding filed the returns after being ordered to do so by Judge Hibbler. It is the Receiver's position that Mr. Goulding should be held personally liable for such amounts. Mr. Goulding was responsible for filing those tax returns and filed them after the deadline. The amounts assessed by the IRS are accruing interest. The Receiver has communicated her position to Mr. Goulding on numerous occasions and to her knowledge, Mr. Goulding has made no attempt to pay the amounts assessed and interest has been accruing on these amounts. Amounts previously due totaling $973,756.05, which included $321,742.15 paid to Crowe Horwath LLP for forensic accounting, $14,220.80 to Elijah Technologies for forensic computer consulting, legal fees and expense reimbursements to Barnes & Thornburg LLP of $452,812.24, legal fees and expense reimbursements to Novak & Macey of $98,452.80, advisory fees of $36,562.50 to McClendon, Morrison & Partners, LLC, $31,187.68 paid to Alan D. Lasko & Associates P.C. for 2009 tax returns and K-1s[2], other legal fees for Rule 144 opinions of $900, $3,748.91 for various 2009 income tax related expenses, $11,515.22 for publishing the bar date for claims in the Wall Street Journal, and miscellaneous expenses of $2,613.75 were paid by the Receiver[3]. The first four amounts were approved by the Court. The amount of unencumbered funds (excluding invoices for services allegedly provided by third parties prior to the inception of the receivership) in the Estate is believed to be $137,888.88. Billing Instructions Requirement, ¶C.2.(a).

12. Summary of the administration of the case, including all funds received and disbursed, per Billing Instructions Requirement, ¶C.2.(c):

---

[2] The Receiver has not received an invoice from Mr. Lasko for the preparation of the Funds' and Nutmeg's 2010 tax returns and K-1s.
[3] Aggregate fees since inception of the Receivership.

- *See* Receiver's First Interim Report at pages 3 – 12, Receiver's Second Interim Report at pages 2 – 21, Receiver's Third Interim Report at pages 5 – 13 and Receiver's Fourth Interim Report at pages 5 – 9. Billing Instructions Requirement, ¶C.2.(b).

13. Summary of Creditor Claims Proceedings, per Billing Instructions Requirement, ¶C.2.(c):

- The Receiver has sent formal notice and claim forms to the investors. The form of notice was approved by the Federal District Court. The bar date for the submission of claims was March 9, 2011. The Receiver caused notice of the formal claims procedure and the bar date to be published in the Wall Street Journal on January 12, 2011 and February 9, 2011. The Receiver has received formal claims from approximately 160 investors. The Receiver has reviewed the completed claim forms and has created a spreadsheet with the tentative claims of each investor that filed claim forms and what percentage of the total Estate each such investor would be entitled to receive. The Receiver has filed a motion with the United States Federal District Court seeking approval for the distribution of the Estate to the investors. The Receiver withdrew that motion pending the resolution of a lawsuit Randall Goulding has filed against the Receiver and pending resolution of a motion certain Nutmeg investors have filed for leave to sue the Receiver. Randall Gouldings' lawsuit has been dismissed by the Court; however, he filed a motion to reconsider. The legal expenses arising out of those filings are like to consume all the remaining funds of the Receivership Estate. No funds have been disbursed. The Receiver does not know when or whether the

motion will be refilled or whether any funds will be available for disbursement to investors.

14.     Description of assets in the Receivership Estate, including approximate or actual valuations, anticipated or proposed dispositions and reason for retaining assets where no disposition is intended, per Billing Instructions Requirement, ¶C.2.(d):

- The Receiver has bank accounts in her possession that she believes contain $65,841.50. *See* Bank Account Statements, attached.

- The Receiver has various brokerage accounts in her possession which has been disclosed in the First Interim Report, page 6. To date, the Receiver has received approximately $696,266.97 from the sale of these securities held in these brokerage accounts since the inception of the receivership. During the period covered by this report, the Receiver has received $0.00 from the sale of securities. After payment of various expenses, the cash balance of the Aegis Capital accounts is $72,047.38 and the cash balance of the Westpark Capital accounts is $0.00. *See* attached Aegis Capital brokerage statements, attached. There are no additional securities in the Westpark account and very few securities left in the Aegis account. The Receiver believes that value of the securities remaining in the Aegis brokerage accounts is minimal, and those securities may not have any value at all. *See* descriptions on pages 6 – 7 of the Receiver's Fourth Interim Report.

15.     The Receiver had various other assets of an unknown value set forth on page 7 of her First Interim Report which includes various judgments resulting from lawsuits in which Nutmeg or an affiliate has brought suit against an obligor who has defaulted on a promissory note owed to Nutmeg. The Receiver has determined that the Estate would not pursue collection

of the judgments because collectability was very uncertain. The Receiver also dismissed a number of lawsuit filed by Nutmeg or its affiliates because she determined that pursuing the lawsuits was not economically feasible. Accordingly, pursuant to the Receiver's instructions, B&T has dismissed those lawsuits. Some of the assets have been sold. Most of the remaining assets are worthless or of minimal and the cost of realizing the value is prohibitive. The Receiver has a judgment against AccessKey IP is in excess of $2.5 million and another judgment against Integrated Freight in excess of $200,000. The Receiver does not believe the Funds are likely to realize the AccessKey IP judgment. The Funds may or may not receive some funds from the Integrated Freight judgment.

16.      Crowe has finished its forensic account work for the Receiver. The primary focus of Crowe's work was to trace the flow of funds into and out of Nutmeg and the Funds from the time of their formation and to determine whether the investors' monies were properly applied to the investments, whether or not payments to third parties were properly made and whether the amounts paid to Nutmeg by the Funds for advisory services were properly calculated and paid. The Receiver has received three final reports from Crowe. Crowe's reports concluded that Randall Goulding owes the funds in excess of $3.7 million in the aggregate. The Receiver has paid Crowe a total of $321,742.15.

17.      Description of liquidated and unliquidated claims held by the Receiver, including the need for forensic and/or investigatory resources; approximate valuation of such claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and (ii) collecting in such judgment), per Billing Instructions Requirement, ¶C.2.(e):

- *See* Paragraph 15 above.

**Current and Previous Billings:**

18.    This Court has previously considered and entered orders on prior applications as

follows, per Billing Instructions Requirement, ¶C.3.(a) and (b):

| Party | Application | Time Period | Fees Awarded | Costs Awarded | Total |
|---|---|---|---|---|---|
| Receiver | 1st | June 10 to Sept. 30, 2009 | $82,140.50 | $383.70 | $82,524.20 |
| Receiver | 2nd | October 1 to October 31, 2009 | $36,685.50 | $11.82 | $36,696.82 |
| Receiver | 3rd | November 1 to November 30, 2009 | $25,741.00 | $423.50 | $26,164.50 |
| Receiver | 4th | December 1 to December 31, 2009 | $19,135.50 | $775.97 | $19,911.47 |
| Receiver | 5th | January 1 to January 31, 2010 | $16,574.50 | $25.38 | $16,599.88 |
| Receiver | 6th | February 1 to February 28, 2010 | $20,647.50 | $56.37 | $20,703.87 |
| Receiver | 7th | March 1 to March 31, 2010 | $20,535.00 | $1,385.37 | $21,920.37 |
| Receiver | 8th | April 1, to April 30, 2010 | $26,658.50 | $689.31 | $27,347.81 |
| Receiver | 9th | May 1, to May 31, 2010 | $22,869.50 | $1,489.24 | $24,358.74 |
| Receiver | 10th | June 1 to June 30, 2010 | $16,056.50 | $474.43 | $16,530.93 |
| Receiver | 11th | July 1 to July 31, 2010 | $23,165.00 | $596.09 | $23,761.09 |
| Receiver | 12th | August 1 to August 31, 2010 | $21,899.00[4] | $591.83 | $22,490.83 |
| Receiver | 13th | September 1 to September 30, 2010 | $12,926.50 | $824.96 | $13,751.46 |
| Receiver | 14th | October 1 to October 31, 2010 | $22,502.00 | $121.74 | $22,623.74 |
| Receiver | 15th | November 1 to November 30, 2010 | $8,634.00 | $3,675.87 | $12,309.87 |
| Receiver | 16th | December 1, to December 31, 2010 | $7,168.50 | $225.29 | $7,393.79 |
| Receiver | 17th | January 1 to January 31, 2011 | $8,869.50 | $1,710.29 | $9,039.79 |
| Receiver | 18th | February 1, to February 28, 2011 | $3,289.50 | $10.91 | $3,300.41 |
| Receiver | 19th | March 1, to March 31, 2011 | $5,163.00 | $109.39 | $5,272.39 |
| Receiver | 20th | April 1, to April 30, 2011 | $10,922.50 | $11.32 | $10,933.32 |

---

[4] The amount represents charges of $23,146, less a credit of $1,247 resulting from an overpayment from the prior period.

| Party | Application | Time Period | Fees Awarded | Costs Awarded | Total |
|-------|-------------|-------------|--------------|---------------|-------|
| Receiver | 21st | May 1, 2011 to June 30, 2011 | $19,489.50 | $614.21 | $20,103.71 |
| Receiver | 22nd | July 1, 2011 to August 31, 2011 | $8,867.00 | $205.76 | $9,072.76 |
| Receiver | 23rd | September 1, 2011 to February 29, 2012 | $12,557.50 | $25.09 | $12,582.569 |

19. Total hours billed and total amounts of billings for each person who billed time during the Application Period, per Billing Instructions Requirement, ¶C.3.(c):

| Professional | Hours | Hourly Rate | Dollar Amount |
|--------------|-------|-------------|---------------|
| Leslie J. Weiss | 4.8 | $495.00 | $2,376.00 |
| | 0.7 | $485.00 | $339.50 |
| Kevin C. Driscoll | 12.9 | $420.00 | $5,418.00 |
| | 0.4 | $395.00 | $158.00 |
| Paul Musser | 3.00 | $290.00 | $870.00 |
| | 1.4 | $270.00 | $378.00 |
| Timothy McFadden | 2.8 | $350.00 | $980.00 |
| Paula Jacobi | 1.0 | $445.00 | $445.00 |
| **Subtotal** | **27.00** | | **$10,500.50** |
| **Professional** | **Hours** | **Hourly Rate** | **Dollar Amount** |
| Cynthia Hendzel | 7.3 | $210.00 | $1,533.00 |
| | 0.3 | $200.00 | $60.00 |
| **Subtotal** | **7.6** | | **$1,593.00** |
| **TOTAL** | **34.60** | | **$12,557.50** |

**Fee and Expense Statement, and Summary of Services Rendered**

20. Copies of the Receiver's statements of fees for this Application are attached hereto as Exhibit A. As shown by these statements, the Receiver seeks $12,557.50 in compensation for the Receiver and the Receiver's counsel's services during the Application Period and $25.09 in costs.

21. The Receiver only used counsel as necessary and has determined that its counsel's fees and expenses are proper and reasonable and that they should be paid.

22.     The statements contain daily time entries describing the time spent by the Receiver and each of the Receiver's professionals during the Application Period.  The Receiver and her counsel's time records are kept contemporaneously with the professional services being rendered.  The Receiver's counsel only charged for actual professional services rendered and has not charged any fees for travel time except to the extent professional services were rendered on behalf of the Receivership Estate during such travel time.

**Summary of Services by Project**

23.     Pursuant to the Billing Instruction, the Receiver has categorized her responsibilities and activities into the following categories: (i) Asset Analysis and Recovery, which involves identification and review of potential assets including causes of action and non-litigation recoveries; (ii) Asset Disposition, which involves sales, leases, abandonment and related transaction work; (iii) Business Operations, which involves issues relating to the operation of an ongoing business; (iv) Case Administration, which involves coordination and compliance activities, including, but not limited to, preparation of reports to the Court and investor inquiries; (v) Claims Administration and Objections, which involves formulating, gaining approval of and administering any claims procedure; and (vi) Employee Benefits/Pension, which involves such issues as severance, retention, 401(k) coverage and continuance of any pension plan.

24.     The Receiver and her counsel have attempted to place time entries in the category that best relates to such services.  However, because certain time entries may relate to professional services in one or more categories, such entries were included in the category for which the bulk of the professional services were rendered with respect to a particular time entry.  Therefore, services pertaining to one category may in fact be included in another category.

12

Pursuant to the Billing Instructions, matters with "block billing" that exceed 1 hour include a notation of the approximate time spent on each activity.

**Subject Matter Categories**

25.     **Category 1:  Asset Analysis and Recovery.**  A break out of the fees and narrative of the work undertaken by the Receiver and her counsel that was incurred in this category is broken out in Paragraph 37 with further detail in the attached Exhibit A.

26.     For this category, the Receiver and the Receiver's counsel seek $3,105.00 in fees for 8.4 hours of work, with further detail in the attached Exhibit A.

27.     **Category 2:  Asset Disposition.**  A break out of the fees and narrative of the work undertaken by the Receiver and her counsel that was incurred in this category is broken out in Paragraph 37.

28.     No time or charges were incurred in this category.

29.     **Category 3:  Business Operations.**  A break out of the fees and narrative of the work undertaken by the Receiver and her counsel that was incurred in this category is broken out in Paragraph 37.

30.     No time or charges were incurred in this category.

31.     **Category 4:  Case Administration.**  A break out of the fees and narrative of the work undertaken by the Receiver and her counsel that was incurred in this category is broken out in Paragraph 37.

32.     For this category, the Receiver and the Receiver's counsel seek $9,452.50 in fees for 26.2 hours of work, with further detail in the attached Exhibit A.

33.     **Category 5:  Claims Administration and Objections.**  A break out of the fees and narrative of the work undertaken by the Receiver and her counsel that was incurred in this

category is broken out in Paragraph 37.

34.     No time or charges were incurred in this category.

35.     **Category 6: Employee Benefits/Pension.** A break out of the fees and narrative of the work undertaken by the Receiver and her counsel that was incurred in this category is broken out in Paragraph 37.

36.     No time or charges were incurred in this category.

**Summary of Fees**

37.     Thus, B&T's total fees for this Application are as follows:

| Category | Description | Hours | Dollar Amount |
|----------|-------------|-------|---------------|
| 1. | Asset Analysis and Recovery | 8.4 | $3,105.00 |
| 2. | Asset Disposition | 0 | $0 |
| 3. | Business Operations | 0 | $0 |
| 4. | Case Administration | 26.20 | $9,452.50 |
| 5. | Claims Administration and Objections | 0 | $0 |
| 6. | Employee Benefits/Pension | 0 | $0 |
| | **Totals** | **34.60** | **$12,557.50** |

38.     **Expenses.** During the Application Period, B&T incurred and/or advanced the costs set forth on Exhibit A. These costs total $25.09 and were comprised of $0.45 for copying charges and $24.64 for Pacer Court Filing System Charges. In accordance with the factors enumerated by this Court in assessing the reasonableness of fees, the Receiver respectively asserts that the amount of fees requested is fair and reasonable given: (a) the complexity of this case; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; (e) the costs of comparable services; and (f) the delay in receiving compensation.

39.     Likewise, B&T and the Receiver respectfully state that payment of $25.09 in expenses is justified in that the expenses were reasonable, were costs advanced or billed to B&T in this matter, and were reasonably incurred in representing the Receiver.

40.     The Receiver has reviewed this Application and finds the fees requested

appropriate based on the work done and results obtained. The fees detailed in this application were provided to the SEC in advance of the filing of this application.

41. **Certification.** Pursuant to the Billing Regulations, the Receiver hereby certifies:

- That Receiver has read this Application;

- That to the best of Receiver's knowledge, information and belief formed after reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions (with any exceptions being noted here: **NONE** and described in this Application: **NONE**);

- All fees contained in this Application are based on the rates listed in the Applicants Fee Schedule set forth below and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed:

| Professional | Rate(s) |
|---|---|
| L. Weiss | $495.00 - $485.00 |
| K. Driscoll | $420.00 - $395.00 |
| Paul Musser | $290.00 - $270.00 |
| Timothy McFadden | $350.00 |
| Paula Jacobi | $445.00 |
| C. Hendzel | $210.00 - $200.00 |

- The Receiver has not included in the amount for which reimbursement is sought, the amortization of the cost of any investment, equipment or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission); and

- In seeking reimbursement for a service where the Receiver has justifiably purchased or contracted for from a third-party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research or process servers), the Receiver requests reimbursement only for the amount billed to the Receiver by the third-party vendor and paid by the Receiver to such vendor. If such servicers are performed by the Receiver, the Receiver hereby certifies that she is not making a profit on such reimbursable service.

WHEREFORE, Leslie J. Weiss, Receiver, respectfully requests that the Court enter an Order providing that for the Application Period, an allowance be made to Barnes & Thornburg LLP in the sum of $12,557.50 as compensation for actual and necessary professional services rendered and the sum of $25.09 for Barnes & Thornburg LLP's out-of-pocket expenses incurred and for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Leslie J. Weiss, Temporary
Receiver for The Nutmeg Group, LLC

By: /s/Kevin C. Driscoll, Jr.
One of her attorneys

Kevin C. Driscoll, Jr. (ARDC # 6272159)
Deborah L. Thorne (ARDC # 6186482)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
(312) 357-1313

CHDS01 747030v3

16