UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) |
|     Plaintiff, | ) Case No. 09-CV-1775 |
| v. | ) |
| THE NUTMEG GROUP, LLC, RANDALL GOULDING, | ) Judge Sharon J. Coleman ) |
| DAVID GOULDING, | ) Magistrate Judge Gilbert |
|     Defendants, | ) |
| DAVID GOULDING, INC., DAVID SAMUEL, LLC, FINANCIAL ALCHEMY LLC, PHILLY FINANCIAL, LLC, SAM WAYNE, and ERIC IRRGANG, | ) ) ) ) ) |
|     Relief Defendants. | ) |

**MOTION TO COMPEL COMPLIANCE WITH DEFENDANT'S REQUESTS FOR PRODUCTION OF DOCUMENTS**

    **NOW COMES** the Defendant, Randall Goulding, *pro se*, and respectfully requests this Honorable Court to compel the Plaintiff to comply with nine Requests For Production of Documents, pursuant to Rule 34 of the Federal Rules of Civil Procedure, stating as follows:

    1.    Suit in this matter was filed Monday, March 23, 2009. In the spirit of cooperation and proceeding in a manner which best protects the interests of the investors, Defendants immediately agreed to the entry of a Temporary Restraining Order, which was entered shortly thereafter as an agreed order.

    2.    On September 16, 2009, at Defendant's suggestion, this Honorable Court entered a scheduling order pursuant to Rules 16 and 26 of the Federal Rules of Civil Procedure (FRCP).

    3.    This Process has been extremely burdensome. All of the Defendants are committed to proving their innocence, and establishing that there was no intentional wrongdoing by any of them. Defendants are extremely committed to protecting the investors.

1

4.  The Plaintiff and the Receiver, Leslie Weiss (the "Receiver"), were each served with Defendant's First Request For Production of Documents on October 5, 2009.

5.  However, in both instances, the request was not signed by Defendant, as required by FRCP 26(g)(2).

6.  On November 5, 2009, Defendant contacted both the Receiver and Plaintiff to determine why they had not yet complied.

7.  Only at that time did the Plaintiff bother to call to Defendant's attention the deficiency and the consequent non-conformity of Exhibit A to FRCP 26(g)(2).

8.  Defendant immediately, on the same day, re-served both the Receiver and Plaintiff with the respective Defendant's First Request For Production of Documents on November 5, 2009 (the one issued to the Plaintiff is attached hereto as Exhibit A).

9.  However, plaintiff did not respond until January 21, 2010, despite repeated promises to do so. The e-mail string is attached hereto as Exhibit T. Nor did the plaintiff make any objections within the time prescribed by Rule 34 of the Federal Rules of Civil Procedure.

10. This became a pattern by plaintiff of not timely responding and not timely objecting to discovery requests.

11. Plaintiff was tardy on 7 of the 9 production requests (and the SEC was tardy, or has failed to respond altogether, to 8 of the 12 other discovery requests, request to admit and/or interrogatories), as follows:

| Number of Request | Date of Request | Date of Response | Tardy or Timely | |
|---|---|---|---|---|
| 1 | 5-Nov-09 | 21-Jan-10 | Tardy | Exhibits A and B |
| 2 | 15-Mar-10 | 19-Apr-10 | Timely | Exhibits C and D |
| 3 | 2-Jul-10 | 2-Aug-10 | Timely | Exhibits E and F |
| 4 | 24-Jan-12 | 26-Jul-12 | Tardy | Exhibits G and H |
| 5 | 11-Mar-12 | 23-Aug-12 | Tardy | Exhibits I and J |
| 6 | 15-Mar-12 | 23-Aug-12 | Tardy | Exhibits K and L |
| 7 | 15-Mar-12 | 28-Aug-12 | Tardy | Exhibits M and N |
| 8 | 29-Apr-12 | 26-Jul-12 | Tardy | Exhibits O and P |
| 9 | 21-Jun-12 | 24-Aug-12 | Tardy | Exhibits Q and R |

12. Accordingly, with respect to the 7 sets of untimely responses, the SEC waived its rights to object. Rule 34(b)(2) of the Federal Rule of Civil Procedure; *Perry v. Golub*, 74 F.R.D. 360 (N.D. Ala. 1976); *United States v. 58.16 Acres of Land*, 66 F.R.D. 570, 572 (E.D.Ill.1975) (even "an objection that the information sought is privileged, is waived by a failure to make it within the proper time limits").

13. As indicated in *S.E.C. v. Collins & Aikman Corp*, 256 F.R.D. 403, 413, Fed. Sec. L. Rep. P 95,045 (2009) held: "Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action."

14. Accordingly, Randall has a legal entitlement at this point to even privileged communications. Yet, Randall suggested to Mr. Moye that if he were to otherwise comply with the requests, to which he was obligated pursuant to the Federal Rules of Civil Procedure, and otherwise comply with his obligations under Rule 34 of the Federal Rules of Civil Procedure, Randall would not pursue the privileged communications. However, Randall made it clear that he wanted Mr. Moye's full compliance, at least with Randall's first production request. Yet, Mr. Moye refused. See Exhibit S.

15. The SEC should comply with all such requests without withholding any documents, whatever those documents may be, particularly given the waiver.

16. Nonetheless, in each tardy response to a production request, the SEC made a series of objections stating that subject to those objections it will provide documents.

17. However, there is no specification as to what documents were withheld. Instead, the SEC has made a classic document dump providing electronically a number of documents, sometimes mixed with other unrelated documents and often furnishing documents have nothing having nothing whatsoever to do with this matter or even these parties. Nor is there any

indication of which document is responsive to which request, as required by the requests to produce and by Rule 34 of the Federal Rules of Civil Procedure.

18. With regard to each numbered request, it was requested that the SEC specify which documents pertain to that request. As indicated in paragraph 10 of the "GENERAL INSTRUCTIONS AND DEFINITIONS", it was requested that plaintiff specify the reasons behind any redaction, and to otherwise fully comply with the October 5, 2009 (which plaintiff may continue to argue was not effective until November 5, 2009) First Request For Production Of Documents and with the Federal Rules of Civil Procedure.

19. Defendants also need to know, if plaintiff withheld documents pursuant to some of its objections, what was withheld. It does not suffice to merely object to every single request and then turn over some of the documents, without identifying the documents withheld.

20. Compliance means not only all documents, but, in many instances, consistent with many Requests for Production of Documents and with the Federal Rules of Civil Procedure, an indication of what documents were relied upon for specific allegations. It also means a log of, and a specification of all documents that exist but will not be sent and the reason they will not be sent.

21. Plaintiff promised to redraft its January 21, 2010 written response to Randall's October 5, 2009 Production Request, but it did not. Plaintiff also failed and refused to respond to points regarding its failure to supplement its Rule 26(a) disclosure in a timely manner, including regarding the various individuals involved in the forensic process. Apparently, that refusal also applies to the forensic work of those engaged by the Receiver, with fund assets, which she similarly refuses to provide.

22. Moye alleges in its February 3, 2010 letter that

> "The SEC follows the Federal Rules of Civil Procedure and is not required to follow instructions and directions that depart from these rules (*e.g.,* your demand to organize documents by discovery request)",

4

even though that objection, as unfounded as it is, has also been waived, by reason of the SEC's failure to timely object.

23. Clearly, the SEC has not followed the Federal Rules of Civil Procedure, with regard to these requests, or otherwise in this case, and Defendants have encountered similar deficiencies with regard to the SEC's subsequent 'responses' to other discovery requests, including failure to timely respond and failure to provide meaningful responses]

24. While the SEC refuses to play by the rules, hypocritically, number 15 of Plaintiff's Definitions And Instructions in Plaintiff's Second Set Of Document Requests To Randall Goulding, requires that:

> "documents produced in response to these requests shall be organized in a manner that complies with Rule 34 of the Federal Rules of Civil Procedure, which provides that a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the requests."

25. Yet, the SEC refuses to abide by its own interpretation of rule 34.

26. Since all of the documents the SEC secured were for purposes of this litigation and thus not "kept in the usual course of business", by its own statement (the one on March 5, 2010 versus its own statement on February 3, 2010), "documents produced in response to [production] requests shall be organized … and label[ed] to correspond to the categories in the requests." See Rule 34 of the Federal Rules of Civil Procedure.

27. Rule 34 of the Federal Rules of Civil Procedure provides a party with up to two options for the production of documents in response to a discovery request, if the responding litigant qualifies for both. Such a qualifying litigant may either produce documents "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed.R.Civ.P. 34(b)(2)(E)(ii). The Advisory Committee Note states that the purpose of this new rule language added in 1980 was to eliminate this very practice perpetuated by the SEC, of: " 'deliberately [mixing] critical documents with others in the hope of

5

obscuring significance.' " Fed.R.Civ.P. 34 1980 Advisory Committee Note (quoting Section of Litigation, Am. Bar Ass'n, Report of the Special Committee for the Study of Discovery Abuse, at 22 (1977), reprinted in 92 F.R.D. 149 (1982)). Allowing the production of documents as they "are actually kept in the usual course of business" was intended to minimize the burden of production while maintaining the "internal logic reflecting business use." Report of the Special Committee for the Study of Discovery Abuse, 92 F.R.D. at 177. *Accord CooperVision, Inc. v. CIBA Vision Corp.*, No. 06 Civ. 149, 2007 WL 2264848, at 4 (E.D.Tex. Aug. 6, 2007) determining "Clearly, the underlying assumption was that production of records as kept in the usual course of business ordinarily will make their significance pellucid."

28. Rule 34 does not elaborate on the term "usual course of business." A party choosing to produce documents as maintained in the ordinary course of business "bears the burden of demonstrating that the documents made available were in fact produced consistent with that mandate." *Pass & Seymour, Inc. v. Hubbell Inc.*, No. 5:07 Civ. 945, 2008 WL 4240490 (N.D.N.Y. Sept. 12, 2008) (citing, *inter alia, Johnson v. Kraft Foods N. Am.*, 236 F.R.D. 535, 540-41 (D.Kan.2006)). In most cases, documents produced pursuant to Rule 34 will be organized by subject matter or category. See, *e.g., Estate of Townes Van Zandt v. Eggers*, No. 05 Civ. 10661, 2007 WL 3145097, at *2 (S.D.N.Y. Oct. 26, 2007); *Morgan v. City of New York*, No. 00 Civ. 9172, 2002 WL 1808233, at *4 (S.D.N.Y. Aug.6, 2002). The provision prohibits "simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought" 8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice & Procedure, § 2213 (2008) (citing Rothman v. Emory Univ., 123 F.3d 446 (7th Cir.1997)), as the SEC has done here.

29. The lack of merit in the SEC's position is made particularly evident in the case of *S.E.C. v. Collins & Aikman Corp*, 256 F.R.D. 403, Fed. Sec. L. Rep. P 95,045 (2009) which

6

addresses the identical contention which the SEC here advances in order to avoid its obligations under the Federal Rules of Civil Procedure:

> In order to determine what constitutes an appropriate production of records as they are kept in the "usual course of business," it is first necessary to define that term. … not every litigant is a business or functions in the manner of a business. … In its final form, Rule 803(6) defines business as any "business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." Fed.R.Evid. 803(6).
>
> Where a producing party's activities are not "routine and repetitive" such as to require a well-organized record-keeping system-in other words when the records do not result from an "ordinary course of business"-the party must produce documents according to the sole remaining option under Rule 34: "organize[d] and label[ed] ... to correspond to the categories in the request." Fed.R.Civ.P. 34(b)(2)(E)(i).

*S.E.C. v. Collins & Aikman Corp*, 256 F.R.D. 403, 412, 413, Fed. Sec. L. Rep. P 95,045 (2009) held:

> The logic of Rule 34 supports this limitation. When records do not result from "routine and repetitive" activity, there is no incentive to organize them in a predictable system. The purpose of the Rule is to facilitate production of records in a useful manner and to minimize discovery costs; thus it is reasonable to require litigants who do not create and/or maintain records in a "routine and repetitive" manner to organize the records in a usable (Cf. Fed.R.Civ.P. 34(b)(2)(E)(ii)[55] fashion prior to producing them.
>
>> [55] "[A] party must produce [electronically stored information] in a form ... in which it is ordinarily maintained or in a reasonably usable form ....".
>
> … **However, conducting an investigation-which is by its very nature not routine or repetitive-cannot fall within the scope of the "usual course of business.** [Emphasis added.]" While the SEC routinely collects and maintains regulatory submissions such 10-K reports, in its investigative capacity the agency conducts tailored probes of a company or an industry, requiring the gathering of records from diverse sources. Many if not most of the 1.7 million documents in the SEC production here were likely collected in the agency's investigatory role. Thus it is no surprise that the complete collection is maintained as it was collected in large disorderly databases. The documents can only be provided in a useful manner if the agency organizes or labels them to correspond to each demand. Based on the SEC's submission, it appears that this has already been done through the lead litigation attorney's creation of the 175 plus file folders at issue.
>
> Therefore, the SEC must respond to Stockman's request for production by providing him with the documents that respond to those requests.
>
> … Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action.[65]
>
>> [65]The calculus might differ where the Government must defend against allegations that may have little merit but can be enormously expensive to litigate.

7

30. Similarly, in *AK-CHIN INDIAN COMMUNITY v. UNITED STATES*, 85 Fed.Cl. 397 (2009) at 400, as *in In re Sulfuric Acid Antitrust Litig.* (*In re Sulfuric Acid*), 231 F.R.D. 351, 363 (N.D.Ill.2005), the responding party failed to make the requisite showing of consistency between the manner in which documents are maintained at the agency office and the filing system at the AIRR, a showing which is necessary in order properly to invoke the option of granting the discovering party access to documents under the first clause of RCFC 34(b)(2)(E)(i).

31. See also *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610-11 (D.Neb.2001) ("[P]roducing large amount of documents in no apparent order does not comply with a party's obligation under Rule 34.").

32. Documents stored by federal government in American Indian Records Repository (AIRR) were not maintained in ordinary course of business, and thus the government was required to organize and label documents responsive to Indian tribe's document production requests and interrogatories in action seeking damages for breach of trust obligations, *AK-CHIN INDIAN COMMUNITY v. UNITED STATES*, 85 Fed.Cl. 397 (2009) at 397.

33. See also *Google, Inc. v. American Blind & Wallpaper Factory, Inc.*, Not Reported in F.Supp.2d, 2006 WL 5349265, N.D.Cal.,2006.

> … Rule 34(b) places the obligation on the responding party to 'organize and label' the documents which are produced for inspection." Stiller v. Arnold, 167 F.R.D. 68, 71 (N.D.Ind.1996). As a result, the motion to compel Google to comply with Fed. R. Civ. Pro. 34(b) by organizing and labeling the documents produced to American is granted.
>
> … Google is ordered to review and classify all documents produced to American to correspond with the requirements of the stipulated protective order within thirty (30) days of the date of this order.
>
> … In addition, American's motion to compel Google to comply with Fed. R. Civ. Pro. 34(b) is granted. Google shall provide a written response to American within thirty (30) days of the date of this order linking the documents produced by Google to the requests made by American, including, as appropriate, an indication that no documents are being produced in response to a particular request.

34. Finally, Randall's requests asked for "The affidavit of the responding party stating whether the production is complete in accordance with this request and if not complete, stating with

specificity wherein it is lacking." The SEC responded (albeit untimely and thus waived any right to so object):

> "Response: The Commission objects that this request purports to impose a burden which is not required by the Federal Rules of Civil Procedure. Subject to the foregoing objection, the Commission has produced thousands of pages of non-privileged documents which are responsive to Goulding's document requests, and in that sense is complete, and the Commission will continue to produce responsive documents to Goulding as they are produced by third parties pursuant to subpoena."

The SEC's document dump, extensive as it may be, does not satisfy this obligation or its other obligations under Rule 34 of the Federal Rules of Civil Procedure. Clearly, the defendants are entitled to know what it is that the SEC withheld as a consequence of its objections, even if its objections were not waived.

35. Randall has repeatedly requested that the documents be organized in accordance with his instructions contained within his production requests and in accordance with Rule 34 of the Federal Rules of Civil Procedure. Yet, the SEC refuses. See the letter from Randall to Rob Moye. Exhibit S.

36. Randall has repeatedly requested of the SEC an indication as to which documents have been withheld and a reason specifically why such documents have been withheld.

37. Accordingly, by design, there is no accountability. There is no opportunity for defendants to know what specifically is being withheld and why that specific documents are being withheld. Nor is there is any opportunity afforded to defendants to test the validity of any such SEC objection.

38. The SEC's position is that we must just take its word for it.

39. This SEC tactic is particularly perverse given the pervasive, serial misconduct of the SEC attorneys in this matter, some of which is depicted in defendants' Motion for Sanctions Due to Multiple Frauds on the Court - Concealing Evidence, Creating the Appearance of Nonexistent Evidence, Destroying Evidence and Other Abuses of Process [Dkt 545].

40. In order to remedy this dilemma, defendants have specifically requested with regard to each request a certification, as follows: "The affidavit of the responding party stating whether the production is complete in accordance with this request and if not complete, stating with specificity wherein it is lacking."

41. Yet, even in the absence of a timely objection and the consequent waiver, which was in nearly every instance, the SEC refuses to provide such certification.

42. There is no good or justifiable reason for the Plaintiff to not comply, entirely, with the discovery requests and the Federal Rules of Civil Procedure.

43. As admitted in plaintiff's status report, the SEC has not fully responded to Randall's request for 3rd party production. We learned from the in court dance around the exposure of the deceit of Moye and Shoenthal and their attempted cover-up, that at least sometimes, it secured documents in this matter without using subpoenas, which documents were turned over only where the defendants learned of such documents. In court, with regard to the SEC's fraud on the court, as delineated in section 3 of defendant's Motion for Sanctions Due to Multiple Frauds on the Court - Concealing Evidence, Creating the Appearance of Nonexistent Evidence, Destroying Evidence and Other Abuses of Process [Dkt 545], starting at page 10 (see paragraph 38), even after their scheme was exposed, Moye and Shoenthal compounded their fraud (December 9, 2009 TR45:25 –46:25, Exhibit P to that motion). Instead, Moye and Shoenthal admitted that this bank account information was secured, without a subpoena, from Penson Securities, and clearly not from Nutmeg's records as they had represented to the court in opposition to defendants' motion to quash.

44. Accordingly, in Randall's third production request, numbers 2 and 3, Randall sought these third-party records which the SEC obtained without subpoena. The SEC refused. Stating that the request was "nonsensical", the SEC responded that it would only produce records

secured by subpoena. See Exhibit U, Randall's e-mail demand for these third-party records. Mr. Moye ignored the demand.

45. Setting aside the validity of securing records without issuing a subpoena, this is not a valid basis to withhold documents. These documents should be turned over.

46. By contrast, Plaintiff has made several discovery requests of Defendants and Defendants have complied, and comply timely, with all such requests. Defendants have also spent countless hours cooperating with all of the Receiver's requests, including responding promptly to all questions, traveling to her office to meet with her personally at her request, educating her, preparing at least one contract, monitoring investments, contacting portfolio companies at her request, calculating conversions of financial instruments held by the funds, and preparing conversion notices at her request, sending her schedules, often the same one several times, and even reconstructing schedules to conform to her desires (given her rather limited familiarity with the Excel program in Microsoft Office, a program with which all fund managers should be familiar). Defendants also cooperated with all of Plaintiff's requests before the suit was filed.

47. If the SEC responded to the discovery requests, this case could be materially advanced, the issues could be narrowed and the parties can focus on the true issues.

48. Defendants want to be able to prove to the Court, as soon as possible, there was no intentional wrongdoing, that all funds invested by the Relief Defendants for the Funds was for the benefit of the Funds and the Funds received 100% credit for their investments and 100% credit for all sales on their behalf, less management fees and carried interest fees. Defendants and the Relief Defendants acted in good faith at all times.

49. To date, both the Plaintiff and the Receiver completely failed to honor their discovery obligations.

50. The SEC has refused to provide documents and communications exchanged with the Receiver. The Receiver has similarly refused to furnish such documents and communications.

51. These communications should be produced.

52. Plaintiff (and the Receiver) should be obligated to turn over all communications with any portfolio companies.

53. Plaintiff (and the Receiver) should be obligated to turn over all communications with Nutmeg investors.

54. In March 2012, Randall learned that the SEC (Brian T. James, Esquire, Enforcement, Miami Regional Office) is in possession of the valuation reports issued by Fund Administration to The Stealth Fund investors for September 30, 2008. These documents are clearly within the October 5, 2009 request, reissued November 5, 2009 (Exhibit A), and is particularly relevant since this valuation covered some of the same securities and for the same periods at issue in this case. The fact that another fund and an independent valuation group value the same securities for the same period would be relevant in ascertaining whether the defendants acted reasonably or unreasonably in their valuation efforts. Why should only the SEC be availed of this opportunity of having these documents? Why is the SEC refusing to turn these documents over? Why did the SEC not disclose having these documents in the first place? Without such documents, and allowing the SEC and others to withhold such documents, albeit relevant to the issues raised (or at least capable of leading to relevant evidence), provides an unfair advantage to the SEC, promotes the possibility of unfair surprise, and deprives defendants of this evidence for their defense.

55. Accordingly, Randall made a specific request for all such reports issued by Fund Administration. The SEC again refused to turn over these valuations and valuation reports of

Fund Administration. This is clearly at least reasonably calculated to lead to the discovery of admissible evidence.

56.     Additionally, the SEC should produce, for example, Documents relating to portfolio companies and communications with them, as requested in various production requests. Such documents are reasonably calculated to lead to the discovery of admissible evidence for the reasons set forth in Randall's motions for deemed admissions and Randall's motion to compel the Receiver [Dkt 456, 466 and 469]. In particular, at least three reasons make this extremely relevant (or at least capable of leading to relevant evidence):

> 1. Since valuation is an issue, then what happened to the portfolio company and why the Receiver was not able to achieve sales of the securities becomes relevant to Nutmeg's valuation.
>
> 2. Since the SEC is contending that there were defalcations, including an allegation that not all monies collected from investors were invested (even net of fees taken), communications and documents with, pertaining to and involving portfolio companies is relevant to establish whether or not these investments were made.
>
> 3. Without such documents, and allowing the SEC and others to withhold such documents, albeit relevant to the issues raised, provides an unfair advantage to the SEC, promotes the possibility of unfair surprise, and deprives defendants of this evidence for their defense.

57.     Documents and communications received from the Receiver are reasonably calculated to lead to the discovery of admissible evidence for the reasons set forth in the motion to compel her compliance [Dkt 469]. If the SEC's "documents and communications with Leslie J. Weiss are … not reasonably calculated to lead to the discovery of admissible evidence" as the SEC speciously claims, then about what are they communicating? And what could possibly be protected with regard to the Receiver's communications with the SEC, unless the Receiver is really working for the SEC?

58.     Many of the SEC's other objections are untenable. By way of example, illustrating the degree of difficulty inappropriately thrust upon Randall while he attempts to test the efficacy of the SEC's claims is Randall's First Request and the SEC's response, as follows:

13

    1.    All documents and communications bearing upon or related to any allegations, issues, or other matters involved in this litigation.

**Response:** The Commission objects that this request … because it seeks the production of certain matters which are not in controversy, is not reasonably calculated to lead to the discovery of admissible evidence.

    59.    Clearly, as Randall repeatedly indicated to Mr. Moye, it cannot be disputed that "matters involved in this litigation" are both "in controversy" and "reasonably calculated to lead to the discovery of admissible evidence".

    60.    Also, documents and communications requested supporting contentions that the Commission has made, whether true or not, are not overbroad and unduly burdensome, nor subject to any privilege. Otherwise, the Commission would make allegations and hide behind the privilege and never be required to produce any documents supporting contentions, and never be subject to anyone questioning the assertion of the privilege. The Federal Rules of Civil Procedure clearly provide for this independent assessment process, which the SEC has effectively evaded.

    61.    Pursuant to Rule 26, the defendants are entitled to the names, the address and telephone number of each individual potentially with discoverable information, which clearly includes the various individuals involved in this forensic process. Nor does it suffice to merely name a group of individuals and require the defendants to ferret out who among the group may be called as witnesses.

    62.    Pursuant to Local Rule 37.2, Randall conferred with Mr. Moye on August 9, 2012, and on many occasions prior thereto, in a good faith effort to resolve the discovery issues, and prior thereto repeatedly attempted to persuade Mr. Moye to be more responsive to discovery requests. The most recent such request was made in telephonic communication on September 21, 2012 at 2:15 PM. This effort complies with Randall's obligations pursuant to FRCP Rule 37(a)(1) and 38(d)(1)(B).

WHEREFORE, it is respectfully request and this Honorable Court grant this motion, and

      enter an order directing the Plaintiff to produce the documents requested by Randall's nine Requests For Production of Documents, starting on October 5, 2009 (Exhibit A, C, E, G, I, K, M, O and Q);

      enter an order finding that the Plaintiff's failure to comply was not substantially justified and that the circumstances make an award of expenses just and appropriate; and

      provide to Defendant such other and further relief to which Defendant may be justly entitled to under the circumstances.

October 12, 2012                                                                 Respectfully submitted,

                                                                            /s/ Randall S. Goulding, *pro se*

1333 Sprucewood, Deerfield, IL 60015
(847) 948-5431
Attorney No. 53811

## **CERTIFICATE OF SERVICE**

       This is to certify that I, an attorney, hereby caused a copy of the foregoing, and attachments, to be served on counsel of record via the Unites States ECF case management system on October 12, 2012.


       /s/ Randall S. Goulding