UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND<br>EXCHANGE COMMISSION, | | |
| | Plaintiff, | Case No.: 09-CV-1775 |
| | v. | Judge Sharon Coleman |
| THE NUTMEG GROUP, LLC,<br>RANDALL GOULDING,<br>DAVID GOULDING, | | Magistrate Judge Gilbert |
| | Defendants, | |
| DAVID GOULDING, INC., DAVID SAMUEL, LLC,<br>FINANCIAL ALCHEMY, LLC, PHILLY FINANCIAL, LLC,<br>and ERIC IRRGANG | | |
| | Relief Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT RANDALL GOULDING'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Plaintiff, U.S. Securities and Exchange Commission, for its response to Defendant Randall Goulding's "Motion to Compel Compliance with Defendant's Requests for Production of Documents" (Docket No. 555), states as follows:

**Preliminary Statement**

This case arose out of the SEC's May 2008 compliance examination of Defendant the Nutmeg Group, LLC ("Nutmeg"), a registered investment which provided portfolio management services to fifteen investment funds structured as limited partnerships ("the Funds"). (Docket No. 9, Todd Bielskis Declaration at ¶¶ 3, 9-10) At Nutmeg's direction, the Funds invested primarily in small public companies through private investments in public equity ("PIPE")

transactions through which the Funds obtained convertible equity or debt at a discount from the market price of the company stock. (*Id.* at ¶¶ 11-12) Although Nutmeg claimed to have $32.3 million in assets under management, the SEC's compliance examiners found that only about $1 million of the Funds' investments were held in a bank or brokerage account. (*Id*. at ¶ 13, 20-22)

In addition, the SEC's examiners learned that the Funds' assets were commingled, that eleven (11) of Nutmeg's Funds shared a single bank account and that Nutmeg held assets in its own name instead of in the name of the individual Funds. (*Id.* at ¶ 16) Nutmeg could not provide the examiners with accounting records and financial statements for each of the Funds, and Nutmeg had not maintained general ledgers, trial balances or income and expense statements for the Funds. (*Id.* at ¶ 17) Nutmeg's and the Funds' main financial records were Excel spreadsheets maintained by Defendant David Goulding, based on information provided by his father, Defendant Randall Goulding. (*Id.*) The Funds had never been audited. (*Id.* at ¶ 18)

Nutmeg's lack of financial records and commingling of Fund investments rendered it impossible for the SEC's compliance examiners to verify that the Funds' holdings were accurately valued or existed at all. (*Id.* at ¶ 30) In addition, Defendants admitted that in many instances, instead of making required distributions from the Funds to Nutmeg's investors, they merely had "rolled over" the investor funds and used those monies to purchase securities in Nutmeg's name. (*Id.* at 33) All of Nutmeg's attempts to substantiate the Funds' holdings and valuations for the SEC's examiners were unsuccessful due to incomplete and missing financial records, investments which were not properly allocated among the Funds, the extensive commingling of assets and Nutmeg's own errors in valuation methodology. (*Id.* at ¶¶ 31-35) Due to these same problems, the quarterly account statements which Nutmeg sent to the Funds' investors contained information which was false, inaccurate and misleading. (*Id.* at ¶¶ 37-38)

Finally, the SEC's compliance examiners also learned that Randall Goulding had transferred more than $4 million of the Funds' assets to family friends and entities owned by members of his family ("the Relief Defendants"), who participated in PIPE transactions and traded securities on behalf of the Funds. (Docket No. 9 at ¶¶ 24-26) Although Randall Goulding explained that these transfers allowed the Funds to obtain freely-tradable shares in certain companies, each of the Relief Defendants was in fact the legal owner of the Funds' assets, and kept a percentage of the sale proceeds from Fund assets. (*Id.* at ¶¶ 28-29) None of these facts had been disclosed to any of Nutmeg's investors.

Shortly after the SEC's compliance examiners visited Nutmeg, the SEC's Division of Enforcement began an investigation which involved additional review and analysis of Nutmeg's books and records. (Docket No. 7, Ann Tushaus Declaration at ¶¶ 3-5) The SEC did not issue any subpoenas for documents or bank or brokerage records, and did not take sworn testimony from any witnesses. However, the SEC's investigators met several times with Defendants Randall and David Goulding, along with other Nutmeg personnel, communicated with Nutmeg's counsel, and reviewed many additional pages of documents which Nutmeg produced at the SEC's request. (*Id* at ¶¶ 4-5) The SEC's investigators worked with Defendants for six months on a variety of compliance issues, including the account valuation problems and the Relief Defendants' attempts to transfer assets back to the Funds. (*See Id.* at ¶¶ 6-9, 12-21)

Unfortunately, Defendants were not able to cure all of Nutmeg's systemic problems or satisfy all the concerns of the SEC's investigators. (*Id.*) Moreover, the SEC learned that Nutmeg was preparing to offer a new fund to investors, and that it had "updated" the balance shown on account statements sent to investors without explaining the reason for the changes or the nature of the firm's problems. (*Id.* at ¶¶ 22-23)

On March 23, 2009 the SEC filed a complaint alleging that Nutmeg and Randall and David directly and indirectly violated the Investment Advisers Act and various rules promulgated thereunder, and alleged that the Relief Defendants had been unjustly enriched by receiving transfers of Fund assets and receiving improper compensation. (Docket No. 1 at ¶¶ 85-108, 109-111). The SEC also filed a request for a Temporary Restraining Order (Docket Nos. 5-6), along with two lengthy supporting declarations and numerous exhibits (Docket Nos. 8-9), all of which were documents obtained from Nutmeg during the SEC's compliance examination or Division of Enforcement investigation. On April 2, 2009, the Defendants and Relief Defendants all agreed to the entry of a Preliminary Injunction Order, which was entered by the District Court on August 11, 2009. (*See* Docket Nos. 17, 68)

Subsequently, the SEC requested (Docket No. 30), and the District Court appointed (Docket No. 38), the Crowe Horwath firm to conduct a forensic accounting and professional valuation of Nutmeg and its Funds. Crowe Horwath filed its reports with the District Court on October 6 and December 8, 2010 (Docket No. 239, 261), and was discharged on December 16, 2010. (Docket No. 269) The SEC also requested (Docket No. 38), and the District Court appointed (Docket Nos. 65, 66), Leslie J. Weiss of Barnes & Thornburg as a Receiver over Nutmeg to marshal Nutmeg's and the Funds' assets, oversee the accountant's work and manage Nutmeg's activities and the Funds' investments.

On September 10, 2009 the parties jointly filed a proposed discovery plan (Docket No. 72), wherein Randall Goulding stated that he would need discovery on the following subjects:

(1) The SEC's claims and its grounds in support thereof;

(2) The basis for the SEC's contentions and allegations;

(3) The details as to what occurred and when to prompt the SEC's decision to prosecute this matter;

>   (4) The decision-making process to prosecute this matter;
>
>   (5) The SEC's internal procedures and all reports, worksheets and like docs; and
>
>   (6) The evidence supporting the SEC's allegations that the Relief Defendants still hold fund assets.

(*See* Docket 72 at § 3(c)(ii))  He never suggested that he would need discovery of the SEC's communications with the Receiver, investors or portfolio companies.  However, the SEC objected to Defendants' intent to seek discovery into its internal processes, categories 3 through 5, and specifically noted that it did not intend to waive the protections of the attorney-client and investigative privileges, or the work-product doctrine.  (*Id.* at 4 n.2)

As described in defendant's motion to compel production, Randall Goulding properly served his first request for production on the SEC on November 5, 2009.  (*See* Docket No. 555 at ¶¶ 4-8)  The SEC concedes that it served its written responses to these requests more than two months later, on January 21, 2010.  (*See* Exhibit 1, SEC's Jan. 21, 2010 discovery responses) However, any suggestion that the SEC ignored its discovery obligations, and failed advance this case, is incorrect.  The fact is that in early December of 2009, well before serving its written responses, the SEC already had begun providing defendants with electronic copies of approximately thirteen (13) boxes of documents from the SEC's compliance examination and Enforcement investigation, containing over 43,000 pages of material.[1]  (*See* Exhibit 2, SEC's Feb. 3, 2010 letter at 1)  Most of these documents were Nutmeg documents obtained from the defendants during the compliance examination or the SEC's investigation.  On December 13,

---

[1] On December 11, 2009, the SEC filed a motion for a rule to show cause against Randall Goulding, and filed a reply brief on January 5, 2010. (Docket Nos. 129, 151)  That motion was granted following a January 19, 2010 hearing before the District Court.  (Docket No. 163)  The SEC also deposed Eric Irrgang, one of the Relief Defendants, on December 18, 2009, and filed a joint motion to modify the discovery schedule on January 11, 2010 (Docket No. 156).

2009 Randall Goulding filed a motion to compel compliance by the SEC and the Receiver with his first request for production of documents.[2] (*See* Docket No. 131) That motion against the SEC was denied because Mr. Goulding had not begun to review any of the documents provided to him. (*See* Docket No. 142)

On January 25, 2010, the SEC provided Mr. Goulding with a log of the very few documents within its production which had been redacted, as well as an explanation for those redactions. (*See* Ex. 3, SEC's Jan. 25, 2010 letter and attachment) On January 27, 2010, following a telephonic discovery conference, the SEC wrote to Mr. Goulding to clarify its positions regarding various discovery issues, and also confirmed that the SEC would provide Mr. Goulding with copies of all of the documents which the SEC obtained by subpoena from third parties. (*See* Exhibit 4, SEC's January 29, 2010 letter at 2) At the time, the SEC believed that the parties were resolving, or at least narrowing, their areas of disagreement. (*See Id.* at 1-2)

However, on February 3, 2010 (while the SEC's lead counsel was on trial in another state), the SEC wrote a response to a somewhat combative letter from Mr. Goulding regarding his document requests, which appeared designed to precipitate another motion to compel, noting that:

- The SEC already had produced over 43,000 pages of responsive documents;

- The documents were produced as they were maintained by the SEC, and the SEC was not required to reorganize them to correspond to Goulding's discovery requests;

- The SEC was not withholding any documents from production based on general objections;

---

[2] In addition, between November 18, 2009 and January 21, 2010, Randall Goulding filed five other motions to compel against the Receiver (Docket Nos. 102, 105, 107, 109, 133), as well as a motion to quash certain subpoenas issued by the SEC (Docket Nos. 111). During this same time, the Receiver filed a motion for a rule to show cause against Randall Goulding. (Docket No.118)

- The SEC had not automatically waived any of its objections, including a privilege objection, by an untimely written response;

- Goulding had not explained how he had been prejudiced by any delay in receiving the SEC's written responses; and

- The SEC was providing Goulding with a description of the categories of privileged documents withheld as the parties had agreed.

(*See* Ex. 2 at 1-2 and attached document)

On February 23, 2010, the SEC's counsel wrote an email to Mr. Goulding stating that:

- The SEC had fully complied with his requests for documents;

- The SEC disagreed with his views regarding the relevance of the SEC's communications with the Receiver, the need to identify any individual documents which the SEC had not produced and the form required for a privilege log;

- The SEC noted that Rule 34 does not purport to require a presumptive waiver of any objection not raised within 30 days, let alone a privilege waiver; and

- Since the parties were set in their respective positions on these issues the SEC did not think it was productive to exchange any additional written communications on this subject.

(*See* Exhibit 5, SEC's Feb. 23, 2010 email) However, the SEC proposed that the parties have a telephone conference or personal consultation in order to try and make further progress on these discovery issues. (*Id.*) The SEC responded to Randall Goulding's Second Request for the production of documents on April 19, 2010.[3] (*See* Exhibit 6, SEC's April 19, 2010 discovery responses) The SEC responded to Randall Goulding's Third Request for Production of Documents on August 2, 2010. (*See* Ex. 7, SEC's Aug. 2, 2010 discovery responses)

---

[3] Shortly thereafter, in April of 2010, Mr. Goulding obtained the assistance of experienced securities counsel who represented him in this matter for more than one year before withdrawing. (Docket Nos. 187, 202, 397) However, during this time Mr. Goulding continued drafting and serving his own discovery requests and writing his own legal briefs.

On November 15, 2010, after several discussions with Randall Goulding's counsel, the SEC provided defendants with an index of the documents the SEC had produced up to that date.[4] (*See* Docket No. 7.5, SEC's Nov. 15, 2010 email and attachment)  The SEC did so not because it was required by any rule, but in order to address defendants' complaints that they were having difficulty locating documents in the electronic files produced by the SEC for its production. Accordingly, the SEC created a document index which did not previously exist in order to share it with defendants.  A review of that index reveals that the vast majority of the nearly 25,000 pages logged are either Nutmeg or Fund documents, obtained from Nutmeg and the Defendants, and with which Randall Goulding already should have been familiar.  (*See* Ex. 7.5 at attachment)

The discovery schedule in this case has been extended numerous times, for a variety of good reasons.  Usually, the parties proposed an extension by a joint motion.  However, that was not always the case.  After the filing of the SEC's Amended Complaint, the operative discovery cutoff date was December 30, 2011.  (*See* Docket No. 331)  On October 28, 2011, Randall and David Goulding and the Relief Defendants asked the District Court to extend the discovery cutoff date to February 28, 2012.  (Docket No. 395)  That motion was not resolved immediately but was continued by the District Court until December 21, 2011.  (Docket No. 416)  On that date, the motion was not granted but again was continued, this time until February 14, 2012. (Docket No. 451)  However, the SEC was granted leave to depose Defendants Randall and David Goulding within that period of time.  (*Id.*)  By agreement, Randall Goulding deposed the SEC's expert witness on February 17, 2012, and the SEC deposed David Goulding on March 2nd

---

[4] As indicated in the SEC's email, the SEC did *no*t undertake to provide an index of the documents it obtained by subpoena from dozens of third parties, such as banks and brokerages. (Ex. 7.5)  Those documents were obtained at various times after the commencement of this litigation, and were never maintained within the SEC's compliance or investigative files. Accordingly, the SEC simply forwarded copies of those documents to the defendants with the same organization used by the third parties.

and Randall Goulding on April 9, 2012. The SEC did not consent to respond to any additional written discovery requests during that period of time.

On April 17, 2012, this case was reassigned because of the death of District Judge William Hibbler. (Docket No. 493) No other discovery schedule or order was entered until June 1, 2012, when the parties were directed by Judge Coleman to confer and propose a new discovery plan. (Docket No. 506) However, by that time Randall Goulding already had served five new sets of document requests upon the SEC, without obtaining the SEC's consent or prior leave of Court. Counsel for the SEC had advised Mr. Goulding in several telephone conversations that it was not required to respond to discovery requests served after the existing discovery deadline, without its consent or leave of the District Court, but that it would do so after a new schedule was imposed by the Court. (*See* Docket Nos. 505 at 4-5, 522 at 4-5)

After the imposition of a new discovery schedule (Docket No. 523), the SEC was allowed time to serve responses to Randall Goulding's new discovery requests, and did so as follows:

- The SEC served its response to Mr. Goulding's request for documents pertaining to the SEC's expert witness, Peter Hickey, on July 26, 2012 (*See* Exhibit 8, SEC's July 26, 2012 discovery responses);

- The SEC served its response to Mr. Goulding's second request for documents pertaining to the SEC's expert witness, Peter Hickey on the same date, July 26, 2012 (*See* Exhibit 9, SEC's July 26, 2012 discovery responses);

- The SEC served its response to Mr. Goulding's "Third Request" for production of documents on August 23, 2012 (*See* Exhibit 10, SEC's Aug. 23, 2012 discovery responses);

- The SEC served its response to Mr. Goulding's March 15, 2012 request for production of documents on August 23, 2012 (*See* Exhibit 11, SEC's Aug. 23, 2012 discovery responses);

- The SEC served its response to Mr. Goulding's "Ninth Request" for production of documents on August 24, 2012 (*See* Exhibit 12, SEC's Aug. 24, 2012 discovery responses); and

- The SEC served its response to Mr. Goulding's "Second Request for Production of Documents Served on March 15, 2012" on August 24, 2012 (*See* Exhibit 12, SEC's Aug. 28, 2012 discovery responses).

After receiving all of these responses, Randall Goulding filed this motion to compel. The motion is complicated, does not specifically to any of the SEC's responses, except by inference, and only mentions a few of Goulding's own document requests. (*See* Docket No. 555) However, the motion argues generally that all of the SEC's discovery responses were defective because: (1) they were untimely, and therefore the SEC automatically waived all of its objections to Goulding's document requests (Docket No. 555 at ¶¶ 9-15); (2) the SEC failed to identify each and every document it has not produced because of an objection (*Id.* at ¶¶ 17-20, 36-38); (3) the SEC failed to organize its production as Goulding requested, rather than the manner in which the SEC maintained the documents (*Id.* at ¶¶ 22-33); (4) the SEC failed to provide an affidavit of completeness regarding its document production (*Id.* at ¶¶ 34, 40-42); (5) the SEC had no valid objection to producing its communications with the Receiver, portfolio companies and Nutmeg investors (*Id.* at ¶¶ 50-53, 56-57); and (6) the SEC had failed to identify each individual in this case with "potentially discoverable information."[5] As explained below, Randall Goulding's are meritless and his motion should be denied.

## Argument

Under Rule 34 of the Federal Rules of Civil Procedure, a party is only permitted to serve requests for production of documents that fall "within the scope of Rule 26(b)." Fed. R. Civ. Pro. 34(a)(1). Under Rule 26(b)(1), a party is only entitled to obtain discovery of "nonprivileged

---

[5] Goulding also contends that the SEC failed to produce certain documents from a separate SEC investigation involving the Stealth Fund. (Docket No. 555 at ¶¶ 54-55) The SEC does not concede that any documents from that investigation are relevant to this matter. However, the SEC recently produced a copy of the transcript from Mr. Goulding's testimony in the investigation involving the Stealth Fund, as well as a valuation spreadsheet shown to Mr. Goulding during his testimony.

10

matter[s]" that are "relevant to any party's claim or defense." Fed. R. Civ. Pro. 26(b)(1). The information a party seeks must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Determining whether information sought is "relevant to the claims and defenses depends on the circumstances of the pending action." Fed. R. Civ. Pro. Rule 26 Advisory Committee Notes (2000). Accordingly, the U.S. Supreme Court has noted that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." Crawford-El v. Britton, 523 U.S. 574, 598 (1998).

In addition, Rule 26(b) expressly places additional limitations upon the discovery process. Even if the information a party seeks is relevant, a district court may limit any discovery requests which: (1) are unreasonably cumulative or duplicative; (2) can be obtained from another source which is more convenient, less burdensome or less expensive; (3) the requesting party has had sufficient opportunity to discover the information; or (4) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties resources and the importance of the discovery sought and the issues at stake in the litigation. *See* Fed. R. Civ. Pro. 26(b)(2)(C).

Finally, it is well-established that in seeking discovery a party must adhere to the court-imposed discovery deadlines and ensure that all discovery served can be completed by the cutoff date. *See e.g.,* Sofo v. Pan-American Life Ins. Co., 13 F.3d 239, (7th Cir. 1994); Finwall v. City of Chicago, 239 F.R.D. 494, 499 (N.D. Ill. 2006); In re Sulfuric Acid Antitrust Litigation, 230 F.R.D. 527, 531 (N.D. Ill. 2005). The fact that district courts are willing to enter protective orders, or decline to enforce pending discovery requests, when discovery requests are made just prior to a discovery cutoff, demonstrates that a party should never serve discovery requests after the close of discovery, without the agreement of the other party or prior leave of court.

11

1.  Any Delays in Responding to Certain of Defendants' Document
    Requests Does Not Result in an Automatic Waiver of the SEC's Objections.

The cases cited by Mr. Goulding for the proposition that a party may waive its objections to a discovery request through an untimely response are not factually similar to this case, and the holdings are distinguishable.[6] In more recent cases, courts have held that raising objections in a tardy response does not compel a waiver of any objections, let alone of the attorney client privilege. *See e.g.*, Burlington Ins. Co. v. Okie Dokie, Inc., 368 F.Supp.2d 83, 91 (D.D.C. 2005) (declining to find a plaintiff's objections to discovery requests waived by untimely objections). In Burlington, the court noted that the defendant had suffered no prejudice from the delay, and there was no pattern of misconduct. *Id*. *See also* Lawrence E. Jaffe Pension Plan v. Household Intern., Inc., 244 F.R.D. 412, 425 (N.D. Ill. 2006) (three month delay in in asserting attorney-client privilege and work product objections, in case involving inadvertent production within voluminous documents, did not result in wavier).

Here, with regard to Goulding's first request for production of documents, the parties intensive activities in the case between November, 2009 and late January 2010 demonstrate the SEC's first priority in this case had to be motion practice before the Court. The SEC was preparing, and then litigating its own motion for a rule to show cause against Mr. Goulding, which was granted after a January, 2010 hearing. The SEC also was subject to Mr. Goulding's initial motion to compel (which was denied), responded to Goulding' motion to quash subpoenas, deposed a Relief Defendant and jointly moved for an extension of the discovery schedule. The SEC responded to the document requests by January 21, 2010, and later participated in telephone conferences and exchanged correspondence with Mr. Goulding about

---

[6] Moreover, SEC v. Collins & Aikman Corp., 256 F.R.D. 403 (S.D.N.Y. 2009), is inapposite for the proposition that a tardy discovery response automatically waives all objections.

12

his discovery issues, while producing redaction and privilege logs. So the SEC did not ignore Goulding's discovery requests.

With regard to Mr. Goulding's subsequent sets of written discovery, the SEC's responses were not tardy. The SEC responded to the March and July 2010 requests right on schedule. And the remainder of Goulding's discovery requests were served on the SEC after the December 30, 2011 discovery deadline, without the SEC's consent or prior leave of Court. The SEC paid appropriate attention to other matters in this case, including filing various briefs, and participated in three significant depositions by agreement of the parties, during the period where there was no discovery schedule in effect. And the SEC prepared and served responses to Goulding's discovery responses after the Court imposed a new discovery schedule. Mr. Goulding also was aware of the SEC's position that serving discovery requests was improper and that the SEC was not required to respond until a new schedule was put in place.

2. <u>The SEC is not required to identify documents withheld pursuant to an objection</u>.

As an initial matter, there is simply no requirement in the Federal Rules of Civil Procedure or the Local Rules of the Northern District that requires a party to create a log of any documents withheld from production based on an objection -- unless the documents are withheld based upon a privilege or work product objection. Goulding does not cite any such rule, or identify any case applying such a rule, which supports his argument. So the fact that the SEC declined his requests to create such a log does not render the SEC's decision improper.

Moreover, the SEC already and voluntarily has done much of what Goulding requested. The SEC repeatedly has advised Mr. Goulding that it has not withheld any documents pursuant to general objections. Rather, the SEC has produced all of the non-privileged materials obtained during its compliance examination and its Division of Enforcement investigation, as well as the

13

documents it has obtained by subpoena in this litigation. Where appropriate, the SEC has specifically objected to producing confidential communications protected by the attorney-client and deliberative process privilege, as well as documents which constitute attorney work product. And during the three years since the SEC began producing documents to Mr. Goulding, assisted by the SEC's index of nearly 25,000 documents produced, defendants by now have had ample opportunity to review and discover what is in the SEC's production. A large majority of the documents produced by the SEC are the defendants own documents.

The SEC also has advised Mr. Goulding that because all of its communications with the Receiver post-date the filing of the Complaint, and deal with administering the Nutmeg estate, by definition those communications are not relevant to the SEC's claims or the defendants' defenses in this matter and are extremely unlikely to lead to the discovery of admissible evidence. In addition, identifying each email to the Receiver or letter to a potential witness, when the SEC does not intend to call such an individual as a to testify, would be unreasonably burdensome.

      3.      <u>The SEC is not required to re-organize its document production according to Goulding's numbered requests</u>.

Randall Goulding cannot dispute that under Rule 34 of the Federal Rules of Civil Procedure, that the SEC is permitted to choose between producing documents arranged according to his specific requests, or as the SEC maintained those documents in the ordinary course of business. However, according to Goulding, all of the SEC's documents were obtained "for purposes of litigation" and cannot be considered "in the ordinary course of business." Under the circumstances of this case, Mr. Goulding's view is simply wrong and should be rejected.

First, the Seventh Circuit has identified the main problem which Rule 34 attempts to avoid: a party who mixes unrelated documents in with responsive documents in the hopes of

14

confusing his adversary or increasing his costs. *See e.g.*, Rothman v. Emory Univ., 123 F.3d 446, 455 (7th Cir. 1997) (affirming district court sanction against discrimination plaintiff for mixing unrelated documents in with his responsive production). However, the SEC did not do this. Randall Goulding requested all of the SEC's documents, and the SEC complied by producing all of its files, less privileged documents, in the same way in which they were maintained at the SEC. The SEC also created and produced a document index.

This was not a "classic document dump," as Goulding contends, because the SEC's production was comprised mostly of the defendants' and Nutmeg's own documents, which they gave to the SEC in the compliance examination or investigation, and with which defendants already would have been familiar. The SEC did not include any unrelated documents in its production.

Nothing in any of the cases cited by Goulding is to the contrary, because none of those cases are sufficiently similar to the facts involved in this matter. For example, in SEC v. Collins & Aikan, the SEC provided defendants with more than 10 million pages of documents, most of which they presumably had never seen before, contained in thirty-six (36) different electronic databases with differing metadata protocols, and opined that the defendant and his counsel could easily search them, which the court found implausible. 256 F.R.D. at 406-407. The SEC also unreasonably limited its search for additional, relevant documents requested by the defendant. *Id.* at 407. The district court also found that the SEC failed to show that its investigation was a routine or repetitive activity, and that the SEC already had organized its responsive documents into nearly two hundred (200) separate subject matter files. Accordingly, the court ordered the SEC to organize its responsive documents to correspond with the defendant's requests, and that there was substantial justification to use attorney work-product to assist with that organization.

15

This case presents a very different situation. First, neither the SEC's compliance examination nor the Division of Enforcement's investigation was conducted for a litigation purpose. The SEC only filed litigation when it became clear that Nutmeg would not become fully compliant with the requirements of the securities laws before it launched a new fund. Second, the SEC did not dump millions of unrelated documents, which were unfamiliar to the defendants, in unfamiliar databases, and leave the defendants with no way to navigate them. The SEC maintained the documents as they were produced by the defendants themselves, and produced them back in a more searchable form, plus copies of the defendants' own bank and brokerage account statements, which the defendants had never produced. Third, the SEC provided defendants with a document index to help them navigate through the documents, even though such an index might have been considered work product. And fourth, in this case the SEC does not have a set of highly-organized, internal subject matter files to crib from if the Court were to order the SEC to reorganize its production. Accordingly, ordering the SEC to organize its production as Goulding requested it would be unduly burdensome, and needlessly so, because the Defendants have had ample time to review the documents and likely are more familiar with these documents than are the attorneys for the SEC.

    4.        The SEC is not required to provide defendants with an affidavit <u>attesting to the completeness of its production for any particular requests</u>.

Next, Randall Goulding has not identified any rule which would require the SEC to provide an affidavit attesting to the fact that its production on any issue is complete. To the contrary, Rule 26(e) anticipates that a party may not be done producing and may supplement its production as the case moves through discovery. In addition, the SEC has stated objections in connection with each set of discovery requests served by Mr. Goulding. Any certification like would only signify that in the SEC's view, plaintiff has produced all that is required.

     5.     The SEC's communications with the Receiver, portfolio companies and Nutmeg investors are not relevant to its claims against Defendants, <u>and producing them would be unduly burdensome</u>.

Based on his statements in the parties' joint discovery plan, Randall Goulding did not believe that he would need discovery into the SEC's communications with the Receiver, portfolio companies or investors. This stands to reason. The SEC does not need to offer its communications with any such individual into evidence in order to prevail upon its claims, and the Defendants need not introduce any such communications in order to defend themselves against the SEC's claims. Moreover, in his supplemental Rule 26(a) disclosures, Randall Goulding has not even identified the Receiver's or the investors' communications with the SEC as something that he may offer as evidence in defending himself in this case. (*See* Exhibit 14, Goulding's Supplemental Disclosures) Instead, Goulding's request for these communications appears intended to discover evidence in support of his lawsuit against the Receiver of his motion for sanctions against the SEC. The Court should not insist that the SEC produce communications which are extremely unlikely to lead to the discovery of admissible evidence.

     6.     The SEC is not required to provide Randall Goulding with the names and <u>addresses of individuals with potentially discoverable information</u>.

Finally, there is no rule that would require the SEC to respond to a production request (as opposed to an interrogatory) and supply Mr. Goulding with documents containing the names and contact information of each individual with potentially discoverable information about this case. To the contrary, Rule 26(a) of the Federal Rules of Civil Procedure only requires that the SEC identify those individuals that the SEC may call in support of its claims in this matter – and the SEC has done so. The SEC also anticipates that Goulding may disagree strongly with the SEC's views about what is "potentially discoverable" in this matter, and the SEC should not have to guess about what type of production would be required to satisfy defendants.

## **Conclusion**

For all of the foregoing reasons, Plaintiff, U. S. Securities and Exchange Commission respectfully requests that this Court deny Randall Goulding's motion to compel the production of documents (Docket No. 555).

Dated:  December 5, 2012.          By:  **/s/ *Robert M. Moye***

        Robert M. Moye (MoyeR@sec.gov)
        Benjamin J. Hanauer (HanauerB@sec.gov)
        Andrew Shoenthal (ShoenthalA@sec.gov.)
        175 West Jackson Boulevard, Suite 900
        Chicago, IL 60604
        Telephone:  312.353.7390

        *Plaintiff Securities and Exchange Commission*

## CERTIFICATE OF SERVICE

      I hereby certify that, on December 5, 2012, I caused a copy of the foregoing **Plaintiff's Response to Defendant Randall's Goulding Motion to Compel Production of Documents** to be served on all parties and counsel of record by electronically filing the document with the Clerk of Court using the ECF system.


                                          **/s/ *Robert M. Moye***
                                            Robert M. Moye