# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 09-cv-1775 |
| v. | ) ) | Jeffrey T. Gilbert |
| THE NUTMEG GROUP, LLC, RANDALL GOULDING, and DAVID GOULDING, | ) ) ) | Magistrate Judge |
| Defendants, | ) ) | |
| DAVID GOULDING, INC., DAVID SAMUEL, LLC, FINANCIAL ALCHEMY, LLC, PHILLY FINANCIAL, LLC, and ERIC IRRGANG, | ) ) ) ) ) | |
| Relief Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On February 18, 2016, the Court granted in part and denied in part the motion for partial

summary judgment filed by the Securities and Exchange Commission ("the SEC"). [ECF No.

795]; *SEC v. Nutmeg Grp., LLC*, 2016 WL 690930 (N.D. Ill. Feb. 18, 2016). The Court also

denied in its entirety the motion for partial summary judgment filed by Defendants Randall

Goulding ("Randall") and David Goulding. Randall has now moved for reconsideration of the

Court's decision to grant in part the SEC's motion. [ECF No. 818.] For the reasons explained

below, Randall's Motion to Reconsider is denied.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) permits a court to revise non-final orders,

including partial summary judgment rulings. *Starks v. City of Waukegan*, 946 F. Supp. 2d 780,

800 (N.D. Ill. 2013), *on reconsideration in part* (Aug. 16, 2013); *Lock Realty Corp. IX v. U.S.*

*Health, LP*, 2010 WL 148296, at \*1 (N.D. Ind. Jan. 13, 2010), *aff'd*, 707 F.3d 764 (7th Cir. 2013); *see also Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012). But motions to reconsider "serve a limited function . . . ." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). Under Rule 54, such motions may be granted where the court made a manifest error of fact or law, the court misunderstood a party's argument, the law or facts significantly changed after the court's initial ruling, or the initial ruling reached an issue not properly before the court. *Janusz v. City of Chicago*, 78 F. Supp. 3d 782, 787 (N.D. Ill. 2015); *Caine v. Burge*, 897 F. Supp. 2d 714, 716 (N.D. Ill. 2012). Motions to reconsider cannot be used to present new evidence or theories that the moving party could have presented earlier. *Lock Realty Corp. IX v. U.S. Health, LP*, 2010 WL 148296, at \*1 (N.D. Ind. Jan. 13, 2010), *aff'd*, 707 F.3d 764 (7th Cir. 2013). Parties also cannot use these motions to rehash arguments already rejected by the court. *Id.* "[P]roblems" sufficient to justify the granting of a motion to reconsider "rarely arise . . . ." *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 757 (N.D. Ill. 2005) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). Thus, "[t]he party moving for reconsideration bears a heavy burden." *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, 2013 WL 3834744, at \*2 (N.D. Ind. July 24, 2013).

## II. DISCUSSION

Randall raises four arguments in support of his Motion to Reconsider. Randall first contends the misrepresentations and omissions that Nutmeg and he made were not material because Nutmeg's funds were closed-end. The closest Randall came to touching on this point when he responded to the SEC's summary judgment motion was at pages 8 and 11 of his initial brief, where he stated, "Additionally, the offering materials in which this type of arrangement and strategy would otherwise have been disclosed, preceded the particular transactions. All of

the offerings were of 'blind pools'. The investments had not been made at the time of the offering memorandum." [ECF No. 726, at 8, 11.]

Even if this were enough to raise the nuanced argument regarding materiality that Randall is now asserting, he still would be precluded from now relying on that contention in support of a motion for reconsideration. Parties are required to develop and support the arguments they raise. *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999). Their failure to do so results in waiver. *Id.* The three sentences quoted above were not further developed, either factually or logically, in Randall's previously-filed briefs. They also were not supported by even a single citation to authority. Therefore, even if Randall's summary judgement briefs somehow raised the materiality argument discussed in this Opinion, he still would have waived it because of the lack of development and support. *See Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004) ("Arguments raised for the first time in connection with a motion for reconsideration, however, are generally deemed to be waived.").

The Court will, however, address Randall's argument on the merits. Randall argues the SEC is required to show that Nutmeg's and his fraudulent statements and omissions were made "'in connection with' the purchase and sale of securities or at least some other investment decision." [ECF No. 838, at 9.] In support of this argument, Randall cites many cases involving Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b). While the "in connection with" requirement is an essential element of a Section 10(b) claim, it is not an element of the Investment Advisers Act claims involved in this case. *SEC v. Lauer*, 2008 WL 4372896, at *24 (S.D. Fla. Sept. 24, 2008), *aff'd*, 478 F. App'x 550 (11th Cir. 2012); *SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1308 (S.D. Fla. 2007). The "extent of conduct subject to liability under the Advisers Act is broad." *SEC v. Treadway*, 430 F. Supp. 2d 293, 338 (S.D.N.Y. 2006); *see*

*also Sec. & Exch. Comm'n v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92 (1963).

And the requirements for liability under Section 206 of the Advisers Act are less stringent than

the requirements for liability under Section 10(b) of the Exchange Act and Section 17(a) of the

Securities Act. *K.W. Brown*, 555 F. Supp. 2d at 1309.

This determination follows from the broad language of the specific provisions of the

Advisers Act at issue in this case. For instance, Section 206(2) prohibits an investment adviser

from engaging "in any transaction, practice, or course of business which operates as a fraud or

deceit upon any client or prospective client." 15 U.S.C. § 80b-6(2). *See SEC v. Moran*, 922 F.

Supp. 867, 896 (S.D.N.Y. 1996) (emphasizing the importance of the use of "any" in Section

206). Likewise, Section 206(4) prohibits an investment adviser from engaging "in any act,

practice, or course of business which is fraudulent, deceptive, or manipulative." 15 U.S.C. §

80b-6(4). The expansive provisions of the Advisers Act create a commensurately expansive

fiduciary duty, which always requires "investment advisers to act for the benefit of their clients"

by exercising the utmost good faith in dealing with clients, disclosing all material facts, and

employing reasonable care to avoid misleading clients. *Moran*, 922 F. Supp. at 895-96. As the

Court illustrated in the summary judgment ruling in this case, the Advisers Act may be violated

by a wide range of fraudulent conduct, including commingling assets, transferring fund assets to

third parties, and paying third parties for receiving such transfers. In explaining this decision, the

Court identified the significant body of case law reaching the same conclusion.

Further, there are specific facts in this case related to Randall's and Nutmeg's conduct as

investment advisers that would have been material to a reasonable new, later investor or a

reinvestor. All Nutmeg funds used a similar type of investment method (PIPE transactions) to

buy similar assets (convertible equity, convertible debt, and warrants in small companies).

Nutmeg was an investment adviser to all the funds, and it was a general partner in most of the funds. Randall was Nutmeg's owner and managing partner. That means both the earlier-formed and later-formed funds were advised by the same firm and person, and were designed to make the same types of investments through the same mechanisms. Given these similarities, a reasonable investor would have found it important when considering whether to invest in a later-formed fund that Nutmeg and Randall were transferring and commingling the assets of the earlier-formed funds and paying Relief Defendants for accepting those transfers. If a reasonable investor knew about this fraud in the earlier-formed funds, he would have been less likely to decide to invest in a later-formed fund. That means an investment adviser's conduct in the past can be and often is material and must be disclosed to investors who decide to invest after the conduct has occurred.

Randall's factual premise – that none of the Investors[1] did or could make any investment decision after the misconduct began – is undermined by the record. Randall never asserts that every investor in a Nutmeg fund decided to invest before the material misconduct occurred. Indeed, it is clear that the formation of at least some funds post-dated the beginning of at least some of the misconduct. For instance, the commingling "must have begun before 2006," [ECF No. 795, at 13], and the same appears to be true of the asset transfers and payments to Relief Defendants, [ECF No. 699-25, at 131:10-132:9]. Several Nutmeg funds opened during or after 2006. [ECF No. 699-21, ¶¶ 24-29.] It also is indisputable that some of the Investors decided to reinvest in new, subsequent Nutmeg funds. [ECF No. 795, at 37; ECF No. 726-1, ¶¶ 103, 104; ECF No. 726-3, ¶ 69.]

---

[1] Certain words and phrases that appear in this Opinion, including "the Investors," "the Funds," and "Relief Defendants," were defined in the Court's earlier Memorandum Opinion and Order ruling on the parties' summary judgment motions. [ECF No. 795.] In this Opinion, those words and phrases retain the meanings assigned to them in the summary judgment opinion.

In light of these facts, Randall's argument amounts to an attempt to make the materiality of his conduct both fund-specific and investor-specific. In other words, Randall believes his conduct in operating one of Nutmeg's earlier-formed funds would be immaterial both to a new investor's decision to invest in a later-formed Nutmeg fund, and to an existing investor's decision to reinvest in a later-formed Nutmeg fund. This cannot be correct. If it were, an investment adviser who sets up multiple closed-end, blind pool funds could steal all of his investors' money (and, to be clear, the Court is not saying that occurred in this case) and simultaneously tell them their money was invested in safe, blue-chip stocks. No matter how many times the investment adviser repeated this cycle, he never would make a material misrepresentation or omission that violated the Investment Advisors Act. Essentially, Randall's theory, if adopted, would make Section 206's anti-fraud provisions entirely inapplicable to closed-end, blind pool funds.

There is one final factual problem with Randall's argument. There is no support in the record for the idea that, after their initial decision to invest, the Investors were powerless to make any subsequent decision that affected their investments. Randall concedes that at least one fund was open-ended during a time period when this Court found him to be concealing fraudulent conduct. [ECF No. 819, at 5.] With respect to the other funds, if Randall disclosed more transparently what Nutmeg and he were doing, the Investors "might have tried to persuade" Nutmeg and Randall "to conform the firm's investments to the . . . policy they had represented." *Abrahamson v. Fleschner*, 568 F.2d 862, 877 (2d Cir. 1977). The Investors "might have mobilized" others involved in the process, such as Relief Defendants, to help unwind the non-conforming state of affairs. *Id.* In other words, withdrawing their funds is "only one" of the potential remedies that the Investors may have chosen. *Id.* at 878. Thus, the concealment of

6

Randall's and Nutmeg's conduct may have "deprived" the Investors "of numerous means of controlling" Randall's and Nutmeg's conduct and management of their investments. *Id.* The Court recognizes that Randall argues he did not conceal anything from the Investors, but the Court found otherwise and it need not repeat that analysis here.

For all these reasons, Randall's first argument in support of his Motion to Reconsider is of no avail.

Randall's second contention is that Nutmeg did not violate Rule 206(4)-2 by failing to undergo a surprise examination or annual audit. Randall attempts to reargue what "annual audit" means and whether it is an ambiguous phrase. He again contends that the phrase is "at least equally susceptible" to his proffered interpretation. This issue was extensively briefed at the summary judgment stage, and the Court's Opinion addressed this requirement at length. The Court explained why Randall's argument not only was contrary to the clear text of the relevant statute and regulation, but also did not make sense. Randall's Motion to Reconsider cannot be used to rehash these old arguments. *Caisse Nationale*, 90 F.3d at 1270.[2]

Randall also contends the allotted time period to provide audited statements did not lapse until after Nutmeg shutdown. This argument was not, but could have been, raised by Randall in his summary judgment briefs. Thus, it is not appropriate to raise the argument for the first time in connection with a motion to reconsider. *Id.* Regardless, the 120-day clock to distribute audited financial statements did not expire on April 30, 2009, as Randall contends. [ECF No.

---

[2] Although the merits of Randall's reargument need not be addressed, one point should be made clear. Randall contends that it is absurd to require a firm that registers as an investment adviser at the end of its fiscal year to provide audited financial statements for at least the post-registration portion of that year. [ECF No. 819, at 10.] Essentially, Randall is arguing that such a requirement is unduly burdensome. However, an investment adviser can control the number of clients it has, and, therefore, when the registration requirement is triggered. Moreover, an investment adviser is only required to register when it has fifteen clients, which means it likely will have at least some meaningful resources at the time of registration. The Court also provided additional reasons in its summary judgment opinion that explain why this contention is of no avail.

819, at 7.] Rather, as detailed in the earlier Opinion, Nutmeg was required to distribute audited financial statements for at least the post-registration period of 2007 within 120 days of the end of the 2007 fiscal year. *Nutmeg Grp.*, 2016 WL 690930, at \*14-15.

Randall's third argument is that Nutmeg's books and records complied with the requirements of the Advisers Act and the rules promulgated thereunder. Randall has not identified a factual or legal error in the Court's prior ruling. Moreover, Randall fails to improve upon the slim showing he made at summary judgment concerning the state of Nutmeg's actual books and records. As the Court previously noted, summary judgment is a "put up or shut up" moment that requires a party to put forth the evidence that supports its case. *Nutmeg Grp.*, 2016 WL 690930, at \*12. Randall has not produced any new books or records. Instead, he continues to rely on the exact same documentation this Court already found to be inadequate.

Randall does raise one new argument related to the books and records issue. He asserts the time for delivering financial statements to the Investors did not expire before Nutmeg shutdown. Again, because this argument was not raised during summary judgment briefing, it was waived. *Mungo*, 355 F.3d at 978. Moreover, the Court decided on summary judgment that Nutmeg failed to *maintain* the required books and records. Nothing in the Court's opinion turned on when or whether Nutmeg *delivered* the financial statements to the Investors.

Randall's fourth and final assertion is that the Court failed to apply the Rule of Lenity. That Rule only applies when interpreting ambiguous text. Here, the Court found the relevant statutory provisions and rules were unambiguous. Therefore, the Rule does not apply.

## IV. CONCLUSION

For all of the reasons stated above, Randall's Motion to Reconsider [ECF No. 818] is

denied.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 24, 2016