IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) No. 09-cv-1775 ) |
| v. | ) Jeffrey T. Gilbert ) Magistrate Judge |
| THE NUTMEG GROUP, LLC, RANDALL GOULDING, and DAVID GOULDING, | ) ) ) |
| Defendants, | ) ) |
| DAVID GOULDING, INC., DAVID SAMUEL, LLC, FINANCIAL ALCHEMY, LLC, PHILLY FINANCIAL, LLC, and ERIC IRRGANG, | ) ) ) ) |
| Relief Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is now before the Court on motions *in limine* filed by Plaintiff Securities and Exchange Commission (the "SEC"). Plaintiff's Motions *in Limine* (the "SEC's Motions"), [ECF No. 885]. For the reasons stated below, the SEC's Motions *in Limine* [ECF No. 885] are granted in part and denied in part.

### I. LEGAL STANDARD

The district court has the inherent authority to manage the course of a trial. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The court may exercise this power by issuing an evidentiary ruling in advance of trial. *Id.* A party may seek such a ruling by filing a motion *in limine*, which requests the court's guidance on what evidence will (or will not) be admitted at trial. *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). Prudent motions *in limine* serve a gatekeeping function by allowing the judge "to eliminate from further

consideration evidentiary submissions that clearly ought not be presented to the jury." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). By defining the evidentiary boundaries, motions *in limine* both permit "the parties to focus their preparation on those matters that will be considered by the jury," *id.*, and help ensure "that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

As with all evidentiary matters, the court has broad discretion when ruling on motions *in limine*. *United States v. Ajayi*, 808 F.3d 1113, 1121 (7th Cir. 2015); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Moreover, the court can change its ruling at trial, "even if nothing unexpected happens." *Luce*, 469 U.S. at 41. Rulings *in limine* are speculative in effect; essentially, they are advisory opinions. *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) (Coffey, J., concurring in part and dissenting in part).

The court will grant a motion *in limine* to bar evidence only where that evidence is clearly inadmissible for any purpose. *Taylor v. Union Pac. R. Co.*, 2010 WL 5421298, at *1 (S.D. Ill. Dec. 27, 2010). This is a high standard. *Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1087 (N.D. Ill. 2007). The moving party bears the burden of establishing clear inadmissibility. *Euroholdings Capital & Inv. Corp. v. Harris Trust & Sav. Bank*, 602 F. Supp. 2d 928, 934 (N.D. Ill. 2009). If the moving party cannot satisfy her burden, the evidentiary ruling should be deferred until trial. *Green v. Goodyear Dunlop Tires N. Am., Ltd.*, 2010 WL 747501, at *1 (S.D. Ill. Mar. 2, 2010). That is because, at trial, the court will have the benefit of understanding "the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Casares v. Bernal*, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011).

## II. DISCUSSION

The SEC has filed five motions *in limine*. Defendants Randall Goulding ("Randall") and David Goulding ("David") filed a joint response brief in opposition to the SEC's Motions. Defendants' Opposition to the SEC's Miscellaneous Motions *in Limine* ("Defendants' Response"), [ECF No. 890]. In addition, David filed a separate response brief addressing one of the SEC's Motions. Supplemental Response of Defendant David Goulding in Opposition to the SEC's Miscellaneous Motions *in Limine* – Concerning Advice of Counsel Defense ("David's Response"), [ECF No. 889]. Relief Defendants Financial Alchemy, LLC; Philly Financial, LLC; and Eric Irrgang (collectively, "Relief Defendants") joined Randall's and David's briefs, but also filed a separate response brief raising a new argument that should be addressed before turning to the merits of the SEC's Motions. Reply Brief Pertaining to Relief Defendants' Motion *in Limine* to Bar Any Admission of Evidence of Various Other Items – Regarding Leslie Weiss, and Response in Opposition to the SEC's Miscellaneous Motions *in Limine* ("Relief Defendants' Response"), [ECF No. 892], at 1.

Relief Defendants assert in their response brief that the SEC's claims against them in this case should be dismissed because "it is unfathomable that the SEC can prove any disgorgement damages in this matter, so as to implicate the Relief Defendants." *Id.* ¶ 1. There are multiple flaws with the procedural vehicle Relief Defendants have chosen to present this argument to the Court. Relief Defendants did not file a motion seeking to dismiss the claims against them; rather, they seek that relief in a brief responding to motions *in limine* that do not raise the issue of whether the SEC can prove disgorgement damages. Relatedly, Relief Defendants are seeking dispositive relief predicated on a summary judgment-type argument. A motion *in limine* is not the proper way to present such arguments to the court for resolution. *See Louzon v. Ford Motor*

3

*Company*, 718 F.3d 556 (6th Cir. 2013). Finally, Relief Defendants' brief is a short filing devoid of any citations to the record or legal authority. Such undeveloped and unsupported arguments are waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("Moreover, 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).'") (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). For these reasons, Relief Defendants have not properly put before the Court their request to dismiss the claims against them.

### 1. The SEC's Motion *in Limine* No. 1

The SEC's Motion *in Limine* No. 1 relates to whether and, if so, how the jury will be informed of the Court's ruling on the parties' motions for summary judgment in this case. *See SEC v. Nutmeg Grp., LLC*, 162 F. Supp. 3d 754 (N.D. Ill. 2016). In that ruling, the Court granted summary judgment in favor of the SEC with respect to several alleged primary violations of the Investment Advisers Act ("Advisers Act") committed by Randall and the Nutmeg Group, LLC ("Nutmeg"). Specifically, the Court found (1) Nutmeg did not maintain proper books and records; (2) Nutmeg improperly commingled assets; (3) Nutmeg did not conduct a required surprise examination or audit; (4) Nutmeg and Randall did not disclose material facts related to asset transfers, payments to Relief Defendants, and commingling; and (5) Nutmeg and Randall made false or misleading statements in investors' account statements and Nutmeg's Form ADVs. *Id.* at 772–82. The SEC did not seek summary judgment on its claims that Randall and Nutmeg misvalued and misappropriated assets. *Id.* at 761. The Court denied summary judgment with respect to the SEC's aiding and abetting claims alleged against Randall and David. *Id.* at 782–86.

The SEC asserts the Court should tell the jury about the summary judgment ruling and permit the SEC to describe the ruling during its opening statement, closing argument, and witness examinations. The SEC focuses most of its attention on the argument that the primary violations found at summary judgment satisfy the first element of aiding and abetting liability, which requires a primary violation of the Advisers Act. *See id.* at 782. In response, Defendants contend none of the aiding and abetting claims predicated on the primary violations found at summary judgment will be before the jury. Thus, Defendants say, the Court's summary judgment ruling is irrelevant to the issues to be decided by the jury and admitting evidence of the ruling would be unfairly prejudicial.

The parties' dispute turns largely on the nature of the claims that will be before the jury. Judge Hibbler addressed that issue in his ruling on the SEC's Motion to Strike Defendants' Jury Demand, which was issued in October 2011. Order and Statement Dated October 19, 2011, [ECF No. 390]; *see also* Minute Entry Dated December 21, 2011, [ECF No. 451]. As Judge Hibbler explained, the SEC and Defendants did not demand a jury trial in the original complaint and answers filed in this case. *Id.* at 1. But Defendants requested a jury trial when they answered the SEC's Amended Complaint. *Id.* The SEC then moved to strike Defendants' jury demand. *Id.* The Court determined Defendants' jury demand was untimely with respect to the factual matters alleged in the original complaint. The Court therefore concluded those matters would be resolved in a bench trial. The Court held that only the new matters raised in paragraphs 62 to 68, 77 to 82, and 83 to 88 of the Amended Complaint would be resolved in a jury trial. *Id.* at 2. In those paragraphs, the SEC alleges: (1) Defendants used assets owned by Nutmeg's funds (the "Funds") to pay for personal expenses and other expenses unrelated to the Funds' operations; (2) Defendants misvalued the Funds' securities by inadequately discounting

them, and (3) Defendants misappropriated over $2.3 million from the Funds by inflating fees and exchanging overvalued securities. *Id.* at 1-2. Only aiding and abetting claims related to these factual allegations will be decided by a jury.[1]

In the summary judgment ruling, the Court did not find any defendant liable for misvaluing or misappropriating assets. The SEC did not seek summary judgment on these claims, and the Court denied Defendants' motion for summary judgment on them. In light of the Court's rulings on Defendants' jury demand and at summary judgment, the jury in this case will not decide any aiding and abetting claim predicated on the primary violations the Court held a Defendant committed in its summary judgment ruling. Therefore, the SEC's main argument – that a jury should be informed of the existence of a primary violation as a predicate for aiding and abetting claims the jury will decide – does not hold water. To the extent the SEC wants to tell the jury that Defendants were held liable for primary violations that are not the predicate for the aiding and abetting claims the jury will be asked to decide, the Court agrees with Defendants that any probative value that evidence could have on the issues properly before the jury is outweighed by the prejudicial effect it could have upon Defendants.

The SEC also contends it should be allowed to "confront Defendants" with the summary judgment ruling if they "argue that they believed they were acting properly while helping Nutmeg to do things that already have been deemed to be violations of the [Advisers] Act." Plaintiff's Reply in Support of Its Motions *in Limine* ("The SEC's Reply"), [ECF No. 893], at 3. As a threshold matter, in ruling on the summary judgment motions, the Court did not make any findings about whether Defendants *believed* they were acting properly. Indeed, the Court denied the SEC's motion with respect to the aiding and abetting claims because the SEC failed to show

---

[1] The original complaint alleged Randall and David aided and abetted the primary violations alleged in that Complaint. *See* Complaint, [ECF No. 1, ¶¶ 94–102, 106–108].

6

that, based on the undisputed facts then before the Court, "any reasonable jury would find Defendants had a general awareness of illegality and impropriety." *Nutmeg*, 162 F. Supp. 3d at 785–86; *see also id.* at 783–86. Nonetheless, the Court agrees with the SEC that depending upon what arguments Defendants make or evidence they attempt to introduce at trial, it may be that one or more of the Court's summary judgment rulings will be relevant, probative, and admissible for a particular purpose. The Court cannot predict now the circumstances under which that might occur and the parties' briefs are not specific enough to allow the Court to make those judgments. But the parties are on notice that there may be circumstances under which the Court could decide that the jury should be informed of one or more of the Court's rulings on the motions for summary judgment.

In summary, the jury in this case will not be tasked with deciding all of the primary violations and aiding and abetting claims alleged by the SEC. Most of those claims have been or will be decided by the Court through summary judgment and a bench trial. All of the aiding and abetting claims predicated on the primary violations found at summary judgment will be resolved in a bench trial. The Court's ruling on summary judgment did not resolve any of the primary violations on which Defendants properly requested a jury trial. Therefore, subject to the caveat in the preceding paragraph, the Court will not inform the jury about the summary judgment ruling and the parties will be precluded from referencing the ruling during the trial.[2]

---

[2] As noted, the Court can revisit this ruling if Defendants open the door during the trial. For instance, if Defendants testify or argue that Randall never violated the Investment Advisers Act in any manner, the SEC may be permitted to reference the summary judgment ruling. Defendants essentially concede as much. *See* Defendants' Response, [ECF No. 890], at 3 ("On the other hand, if the defense argues that there was no such Advisers Act violation, that is a different story and should be dispelled accordingly."). And there may be other circumstances under which the Court's summary judgment rulings could be relevant, probative, and admissible.

### 2. The SEC's Motion *in Limine* No. 2

The SEC's Motion *in Limine* No. 2 relates to two consolidated cases against Leslie Weiss, the court-appointed receiver for Nutmeg. The SEC's Motions, [ECF No. 885], at 3–4. In the *Alonso* litigation, as the SEC refers to it, Randall and investors in the Funds have alleged Weiss mismanaged the receivership estate.[3] The SEC seeks to bar not only references to the existence of and developments in the *Alonso* litigation but also any reference to the factual matters raised in the litigation. In response, Defendants contend that they should be permitted to introduce evidence showing Weiss's mismanagement diminished the value of the Funds' securities. It is not clear to the Court whether Defendants are arguing that such evidence is admissible only if the SEC elicits from Weiss testimony about the value of the securities after she became receiver or that such evidence is admissible even if the SEC does not go down this road. Regardless, the Court's analysis is the same.

The first type of evidence covered by the SEC's motion is not complicated. The Court agrees that evidence related to the existence of or developments in the *Alonso* litigation should not be permitted in this case. Defendants do not contend otherwise.

That leaves the issue of evidence related to Weiss's supposed mismanagement after she became the receiver, which may include evidence of the facts alleged in the *Alonso* litigation. In the Court's view, as a general matter, any supposed misconduct by Weiss is not relevant to the claims asserted in this lawsuit. All of the conduct that forms the basis of the SEC's claims in this case occurred months before the Court appointed Weiss. Whether Defendants violated the Advisers Act as alleged by the SEC in this lawsuit does not turn on what Weiss did or did not do as the receiver. Even if Weiss acted improperly, her mismanagement would not excuse any

---

[3] The remaining claims against Weiss in the *Alonso* litigation are for breach of fiduciary duty. *Alonso v. Weiss*, 2015 WL 7008129, at *1 (N.D. Ill. Nov. 12, 2015); *Alonso v. Weiss*, 98 F. Supp. 3d 956, 972 (N.D. Ill. 2015).

violation found to have occurred in this case. In short, this case should not devolve into a trial-within-a-trial focused on Weiss's conduct. Therefore, if the SEC does not open the door, Defendants ordinarily would not be allowed to introduce evidence related to Weiss's mismanagement.

The SEC's briefs, however, give the Court pause. The SEC states it will ask Weiss about "the difficulties she encountered in selling" the Fund's securities. The SEC's Reply, [ECF No. 893], at 4. If the SEC goes down this road, it may open the door, allowing Defendants to attempt to show that Weiss's difficulties in selling certain securities resulted not from their alleged misconduct, but, rather, from Weiss's mismanagement. In a potentially similar vein, the SEC says it intends to elicit testimony from Weiss about "her communications with Goulding about the value of the Funds' securities." *Id.* Because the SEC does not describe the content of these communications, the Court does not know whether these communications relate to the value of the securities after Weiss's appointment or to other issues, such as whether certain funds were uninvested. Similarly, if the SEC elicits testimony about some of Weiss's communications with Randall, that conceivably could open the door to testimony about other communications between them. To the extent the SEC seeks to introduce testimony from Weiss about the value of securities after she was appointed, Defendants also potentially may be entitled to introduce evidence that Weiss's conduct impacted those values. Direct or cross-examination along these lines is not barred by this Order.

For these reasons, the SEC's Motion *in Limine* No. 2 is granted in part and denied in part.

### 3. The SEC's Motion *in Limine* No. 3

The SEC's Motion *in Limine* No. 3 seeks to bar Defendants from referring to any unrelated SEC investigations or enforcement actions, including those involving Bernard Madoff

9

and Allen Stanford. The SEC's Motions, [ECF No. 885], at 4. The SEC argues evidence related to such instances is irrelevant and thus inadmissible under Federal Rule of Evidence 401. *Id.* at 4–5. Defendants do not oppose this motion. Defendants' Response, [ECF No. 890], at 4. Therefore, it is granted.

### 4. The SEC's Motion *in Limine* No. 4

The SEC's Motion *in Limine* No. 4 seeks to bar Randall and David from asserting an advice of counsel defense. The SEC's Motions, [ECF No. 885], at 5–8. Randall and David each pled this affirmative defense in their respective Answers by stating, "At all times the Defendant acted in good faith and in justifiable reliance on independent advisors and counsel." Randall Goulding's Answer to Amended Complaint, [ECF No. 328], at 42; David Goulding's Answer to Amended Complaint, [ECF No. 328], at 36. To establish an advice of counsel defense, a defendant must show that he (1) "made a complete disclosure to counsel; (2) sought advice from counsel as to the legality of his actions; (3) received advice that his conduct was legal; and (4) relied on such advice in good faith." *In re Reserve Fund Securities and Derivative Litigation*, 2012 WL 4774834, at *2 (S.D.N.Y. Sept. 12, 2012); *see also SEC v. Leffers*, 289 Fed. App'x. 449, 451 (2nd Cir. 2008); *SEC v. Ferrone*, 163 F.Supp.3d 549, 568 (N.D. Ill. 2016).

As noted above, Randall and David filed a joint response brief which addresses the SEC's Motion *in Limine* No. 4. Randall has not filed a separate response brief setting forth any argument specific to his advice of counsel defense. David, however, has filed a separate response addressing this issue. Therefore, the Court first will address Randall's argument, as presented in the joint response brief, and then turn to David's argument.

Defendants' joint response brief offers a conclusory and weak argument that Randall should be permitted to assert an advice of counsel defense at trial. Defendants do not identify in

10

their brief any specific attorney whose advice Randall sought. They do not identify any specific attorney that provided advice. They do not identify any advice provided by an attorney. They do not identify any factual disclosure he made to the attorney providing advice. Defendants also do not cite admissible evidence or case law related to any element of the defense.[4] Instead, Defendants rely in their joint response brief on conclusory assertions that Randall sought, received, and relied upon unspecified legal advice. Defendants' Response, [ECF No. 890], at 4. Further, Defendants seem to concede Randall did not disclose all material facts to the unidentified attorneys who purportedly provided this advice by continually asserting the attorneys "already knew most if not all of the facts." *Id.* This undeveloped and unsupported argument cannot possibly justify allowing Randall to assert an advice of counsel defense at trial. *See Crespo*, 824 F.3d at 674 ("Moreover, 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).'") (quoting *Berkowitz*, 927 F.2d at 1384).

Further, the few pages of the transcript of Randall's deposition filed by the SEC with its motions *in limine* support the conclusion that Randall should be precluded from asserting the defense at trial. During his deposition, Randall testified he relied on the advice of two attorneys, Matt Balson, an associate at Randall's law firm who worked primarily on matters related to Nutmeg, and Carl Duncan, Nutmeg's outside securities counsel. Deposition of Randall Goulding ("Randall's Dep."), [ECF No. 885-3], at 292–93; Affidavit of Carl N. Duncan, [ECF No. 889-1], ¶¶ 1, 3. The testimony, however, provides almost no basis for asserting a reliance of advice of counsel defense with respect to advice provided by Duncan. As in the joint response brief, Randall did not identify any specific legal advice that he asked for or received from

---

[4] Defendants cite one case for the proposition that asserting an advice of counsel defense does not entirely waive the attorney-client privilege. Defendants' Response, [ECF No. 890], at 4.

11

Duncan. Instead, Randall testified, "I guess, in general, both [Balson and Duncan] advised with regard to 40 Act issues. You know, I, basically, just relied on them to make sure that everything we did conformed to the requirements of the 40 Act and 33 Act, 34 Act, whatever." Randall's Dep., [ECF No. 885-3], at 293. Randall also did not testify about what facts he disclosed to Duncan or what facts Duncan learned from other sources.

Randall's testimony about Balson is similarly deficient. Randall did not testify that he made a complete disclosure of facts to Balson. Randall instead said he "didn't have to give [Balson] the facts, because he knew the facts" since he "was there on a day-to-day basis." *Id.* at 294, 296; *see also id.* at 294 ("So I didn't have to tell him what was being done, because he knew."). This conclusory and generalized testimony makes it impossible to assess whether Balson knew the material facts related to any specific legal advice he might have given to Randall. Moreover, Randall's testimony does not identify specific legal advice he received or relied upon. As noted above, Randall essentially testified that he relied upon Balson to advise him that everything he did complied with the securities laws. But, when asked directly to identify on "what issues" about which he relied upon Balson "in a meaningful way," Randall said, "I don't know that it was specific issues, so much as making sure that the filings were done when they had to be done, overseeing the operations, making sure that we were compliant." *Id.* at 295.[5] When asked again if there was any issue relevant to this case about which he sought specific advice from Balson and disclosed the relevant facts, Randall replied only by saying Balson knew all of the facts, without identifying any specific advice. *Id.* at 295–96.[6] Finally,

---

[5] When asked what filings he was referring to Randall, Randall identified Nutmeg's Form ADVs. Randall's Dep., [ECF No. 885-3], at 295.

[6] When questioned about asset transfers, for example, Randall testified Balson would have been willing to tell him the transfers were wrong if Balson thought they were, but Randall did not testify that Balson gave him advice about the transfers. Randall's Dep., [ECF No. 885-3], at 296; *see also id.* at 298–99.

12

Randall testified that, after the SEC's audit, he discussed with Balson how to "best posture the operations to be compliant going forward," including "the creation of accounts and brokerage accounts and bank accounts for each fund, et cetera." *Id.* at 298. Again, none of this can provide the foundation for an advice of counsel defense.

For all of these reasons, Randall cannot assert an advice of counsel defense at trial, and evidence in support of this defense is barred by Federal Rules of Evidence 104(b), 401, and 403.

As noted above, David filed a separate response brief solely addressing his reliance on advice of counsel. In that brief, David contends he relied on advice provided by Duncan, not Balson. David filed one affidavit from Duncan and another from himself. As with Randall, the SEC filed some pages of the transcript of David's deposition testimony. Through his more developed arguments and the supporting evidentiary materials, David identified at least some evidence to support an argument that he sought, received, and relied upon specific legal advice after making a disclosure of material facts.

Sometime in early 2008, David talked with Balson regarding concerns David had about becoming Nutmeg's Chief Compliance Officer ("CCO"). David Goulding's Deposition ("David's Dep."), [ECF No. 885-2], at 145–47. Balson did not give David any advice and, instead, recommended that David speak with Duncan. *Id.* at 147–48. Then, on March 3, 2008, David and Balson spoke with Duncan on the phone. Affidavit of Carl N. Duncan ("Duncan's Affidavit"), [ECF No. 889-1], ¶ 3; Affidavit of David Goulding ("David's Affidavit"), [ECF No. 889-2], ¶ 3. During the call, David told Duncan he wanted to make sure that, if he became CCO, he could not be held responsible for compliance failures that predated his assumption of this role. Duncan's Affidavit, [ECF No. 889-1], ¶ 7; David's Dep., [ECF No. 885-2], at 147–50. David's and Duncan's discussion focused primarily on the asset transfers, although they also discussed

13

other issues, such as commingling. David's Dep., [ECF No. 885-2], at 151. Duncan already had some familiarity with Nutmeg's operations, because of "a legal audit" he conducted in January 2007. *Id.* at 150–51, 153; *see also* Duncan's Affidavit, [ECF No. 889-1], ¶ 2. In particular, according to David, Duncan knew of the asset transfers and why they were done. David's Dep., [ECF No. 885-2], at 150; *see also id.* at 152 (stating Duncan "was aware of how these third party transactions had been structured"). Still, David told Duncan on the call that the transferred securities were mistitled and that he thought it was done to benefit investors and was not fraudulent. *Id.* at 149–50; Duncan's Affidavit, [ECF No. 889-1], ¶ 11.[7] David also discussed the commingling issue with Duncan and told Duncan about his plans to address the commingling. David's Dep., [ECF No. 885-2], at 151. Ultimately, Duncan "conveyed [the] opinion to David that [he] should have no responsibility for compliance failures that pre-date his becoming Nutmeg's CCO" if "the date of his commencing as CCO was clear" and he "moved forward immediately" to remedy existing compliance deficiencies. Duncan's Affidavit, [ECF No. 889-1], ¶¶ 8, 9.

In response to this evidence, the SEC argues primarily that the advice David received from Duncan is irrelevant to this lawsuit because the SEC is not asserting any claim that attempts to hold David liable for pre-existing compliance failures based solely on his assumption of the role of CCO. The SEC's Reply, [ECF No. 893], at 5–6. At the summary judgment stage, though, the SEC argued that "even if David Goulding were correct that, prior to his becoming CCO, he had legal no [sic] responsibility for anything that Nutmeg and Randall Goulding had done, he still was responsible as CCO . . . for completely remedying whatever problems existed at the time of the SEC's compliance exam." Plaintiff's Reply Memorandum in Support of Its

---

[7] David admitted Duncan was not aware of the day-to-day details of the asset transfers. David's Dep., [ECF No. 885-2], at 150, 153. At least at this stage, however, the Court is not convinced those details are material to the specific advice David sought and received from Duncan.

14

Motion for Summary Judgment, [ECF No. 744], at 7. The SEC went on to contend David "did not fulfill this responsibility" because, among other reasons, he did not act quickly enough to remedy and disclose what had been done in the past. *Id.* The SEC bears the burden of proving David "generally was aware or knew that" his actions in this regard "were part of an overall course of conduct that was improper or illegal." *Monetta Fin. Servs., Inc. v. SEC*, 390 F.3d 952, 956 (7th Cir. 2004). David's understanding of his responsibility for Nutmeg's and Randall's past mistakes, as informed by Duncan's advice, at least could be relevant to this issue. Therefore, the Court believes the SEC's objection goes more to weight than admissibility at this juncture before trial.[8]

For these reasons, the SEC's Motion *in Limine* No. 4 is granted in part and denied in part.

### 5. The SEC's Motion *in Limine* No. 5

The SEC's Motion *in Limine* No. 5 seeks to bar references to Randall's and David's financial condition, including their past bankruptcies and their current financial conditions. The SEC's Motions, [ECF No. 885], at 8–9. According to the SEC, Randall's and David's financial condition is irrelevant to whether Defendants violated the Advisers Act, and evidence related to their financial condition could mislead or confuse the jury. In response, Defendants argue their financial condition is relevant to whether Randall misappropriated assets. Defendants' Response, [ECF No. 890], at 5. Defendants' theory of relevance is that Randall and David are in poor financial condition and that they would not be in that condition if Randall misappropriated assets worth millions of dollars as the SEC alleges happened. Neither the SEC nor Defendants

---

[8] At this stage of the case, the Court obviously is not holding David's advice of counsel defense is meritorious. Instead, the Court only is ruling that David can assert that defense during the trial. The Court can alter this ruling if necessary as the context of the SEC's claims and David's defenses become clearer either before or during trial.

15

cite case law squarely addressing whether evidence of a defendant's prior bankruptcy or current poor financial condition is relevant to whether the defendant violated the Advisers Act.[9]

This case involves conduct that occurred between 2005 and 2009. Randall's and David's bankruptcies post-date by several years the last conduct at issue in this lawsuit. *See* Agreed Motion to Withdraw Reference, [ECF No. 786], ¶ 1 ("On June 23, 2014, [Randall] . . . filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code."). Randall's and David's current financial condition is even further removed in temporal terms. Defendants' theory of relevance assumes that, during the years following the alleged misappropriation, Randall and David did not spend or transfer the supposedly misappropriated assets. Yet the SEC alleges that, before and during 2009, Defendants spent or transferred to others a substantial amount of the supposedly misappropriated assets. *See, e.g.*, Amended Complaint, [ECF No. 314], 62 (alleging that, between 2007 and 2009, the Funds' assets were used to pay $104,262.13 for Randall's and his wife's personal expenses), 63 (same), 64 (alleging that, between 2007 and 2009, the Funds' assets were used to pay $56,886.94 for Nutmeg's business expenses that were unrelated to the Funds), 65 (same), 66 (alleging that, in 2006, Nutmeg purchased a personal vehicle for Randall with $33,743.75 of the Funds' assets); 67 (alleging that, in 2005 and 2006, Nutmeg used the Funds' assets to pay $663,827.94 towards Randall's home equity line of credit on his personal residence); *see also* Plaintiff's Response to Defendants' *Motion in Limine* to Bar Disgorgement Damages, [ECF No. 895], at 4 (referring to a $213,862 loan to Randall's son-in-law). More importantly, with the exception of roughly $300,000 in salary and other payments to Randall and David, all of the misappropriation claims that remain to be decided in this lawsuit relate to assets that allegedly either were used to pay personal expenses or were transferred to third parties. *See*

---

[9] Defendants did not cite any case law in support of their argument. The SEC cited two cases, but those decisions only address evidence of the hardship imposed by the litigation. *See SEC v. Moran*, 1995 WL 785953, at *1 (S.D.N.Y. Oct. 31, 1995); *SEC v. Saul*, 1991 WL 218061, at *1 (N.D. Ill. Oct. 16, 1991).

16

Plaintiff's Response to Defendants' Motion *in Limine* to Bar Disgorgement Damages, [895], at 4. Therefore, Randall's and David's bankruptcies and current financial condition have, at most, very limited probative value with respect to whether they misappropriated assets.

There are other factors that substantially outweigh the very limited probative value of the evidence Defendants want admitted. If Defendants were allowed to introduce evidence regarding Randall's and David's financial condition to establish they did not misappropriate assets, the SEC could try to rebut that evidence by establishing an alternative explanation for their financial condition. Of course, such a back-and-forth would involve not only evidence of Randall's and David's income but also of their various expenses over many years. In the absence of such a rebuttal by the SEC, the jury could be left to rely solely on speculation to evaluate the significance of Randall's and David's bankruptcies and their current financial condition. The jurors could be left to conclude that, in the absence of evidence showing Randall and David possessed, spent, or transferred away allegedly misappropriated assets, no misappropriation occurred. The jury could do so even though the SEC does not bear the burden of showing what use was made of misappropriated assets to prove a violation of the Advisers Act. Further, Randall's and David's poor financial condition could provoke sympathy by jurors, prompting them potentially to excuse a violation of the law because Randall and David did not benefit from their scheme and already have suffered financial hardship. Accordingly, the very limited probative value (if any) of the financial evidence Randall and David want to introduce is far outweighed by its potential prejudicial effect and the potential that is will confuse and mislead the jury. Therefore, Defendants are barred under Federal Rule of Evidence 403 from introducing evidence of Randall's and David's bankruptcies and current financial conditions.[10]

---

[10] The Court's ruling does not preclude Defendants from, for example, introducing evidence showing Randall used his own assets to pay an expense the SEC alleges was paid with misappropriated assets.

For these reasons, the SEC's Motion *in Limine* No. 5 is granted.

### III. CONCLUSION

For all of the reasons stated above, the SEC's Motions *in Limine* [ECF No. 885] are granted in part and denied in part.

							_____
							Jeffrey T. Gilbert
							United States Magistrate Judge

Dated: August 1, 2017

---

The SEC does not seek in its Motion *in Limine* No. 5 to preclude such evidence, and the parties do not address it in their briefs.