IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>THE NUTMEG GROUP, LLC; RANDALL GOULDING; and DAVID GOULDING,<br><br>Defendants,<br><br>DAVID GOULDING, INC.; DAVID SAMUEL, LLC; FINANCIAL ALCHEMY, LLC; PHILLY FINANCIAL, LLC; and ERIC IRRGANG,<br><br>Relief Defendants. | ) | No. 09 C 1775<br><br>Jeffrey T. Gilbert<br>Magistrate Judge |

## ORDER

Plaintiff's Motion to Reconsider Order Barring Mari Reidy from Offering Opinion Testimony on Certain Accounting Matters ("Motion to Reconsider") [ECF No. 910] is denied. See Statement below for further details.

## STATEMENT

1. On April 28, 2017, the Court issued a Memorandum Opinion and Order [ECF No. 880] in which it ruled on Defendants' and Relief Defendants' Motion in Limine to Bar the Testimony of Mari Reidy and Peter Hickey and the Admission of Their Respective Reports ("Defendants' Motion to Bar") [ECF No. 852]. The Court held that portions of the testimony the SEC intended to elicit at trial from Mari Reidy ("Reidy"), an employee of the accounting firm Crowe Horwath LLP ("Crowe Horwath"), was expert testimony that could not be presented as such because the SEC had not disclosed Reidy as a testifying expert under Rule 26(a)(2) of the Federal Rules of Civil Procedure. Exclusion of undisclosed expert testimony is automatic and mandatory under Rule 37(c)(1) of the Federal Rules of Civil Procedure unless the nondisclosure was substantially justified or is harmless. The SEC bore the burden of showing its failure to disclose Reidy as a testifying expert was substantially justified or is harmless. The SEC did not address either issue in its response to Defendants' Motion to Bar, and the Court did not make any explicit findings with respect to justification or harm in its Opinion. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (noting a district court need not make explicit findings). The Court ultimately barred Reidy from offering expert testimony in this case for the reasons

discussed in its Opinion and Order [ECF No. 880] but did not constrain her from testifying about facts and opinions that are within the permissible scope of lay testimony under the Federal Rules of Evidence.[1]

2. The SEC now has moved for reconsideration of the Court's decision limiting Reidy's testimony in this case. The SEC does not contend that the Court erred in distinguishing between the portions of Reidy's proposed testimony that would constitute expert opinion and the portions that could be admissible as lay fact or opinion testimony. Instead, the SEC asserts Reidy should be allowed to offer expert testimony in this case because, as the Court understands the SEC's arguments: (1) Reidy is an expert witness within the meaning of Rule 26(a)(2)(C) and the SEC either should be allowed to disclose her as such now, on the eve of trial, or its prior references during discovery and pretrial proceedings to matters about which Reidy was expected to testify and to the reports generated by Crowe Horwath should be deemed to be an effective Rule 26(a)(2)(C) disclosure, and (2) the SEC's failure to disclose Reidy expressly as a Rule 26(a)(2)(C) testifying expert earlier in this case was substantially justified or is harmless.

I.

3. A motion to reconsider cannot be used to make new arguments that could have been but were not raised before. *Birdo v. Dave Gomez*, 214 F. Supp. 3d 709, 714 (N.D. Ill. 2016); *SEC v. Nutmeg Grp., LLC*, 2016 WL 3023291, at *4 (N.D. Ill. May 24, 2016); *Geraty v. Vill. of Antioch*, 2015 WL 127917, at *3 (N.D. Ill. Jan. 8, 2015). In their Motion to Bar and the supporting briefs, Defendants and Relief Defendants (collectively, "Defendants") argued in part that the Court should bar Reidy from testifying because the SEC did not disclose her as a testifying expert. Defendants' Motion to Bar, [ECF No. 852], ¶¶ 2–3, 6, 24, 51; Defendants' Reply in Support of their Motion to Bar, [ECF No. 864], at 13; Defendant Randall Goulding's Reply in Support of Defendants' Motion to Bar ("Randall's Reply"), [ECF No. 865]. In its brief in opposition to the Motion to Bar, the SEC explicitly recognized that Defendants raised this argument. Plaintiff's Response to Defendants' Motion to Exclude the Testimony of Mari Reidy and Peter Hickey ("The SEC's Response"), [ECF No. 859], at 8. The SEC also concedes as much in its Motion to Reconsider. Motion to Reconsider, [ECF No. 910], at 4. In response to Defendants' Motion to Bar, though, the SEC did not engage with Defendants' argument that it had not properly disclosed Reidy as a testifying expert in accordance with Rule 26(a)(2). Instead, the SEC argued that Reidy qualified as a court-appointed expert under Federal Rule of Evidence 706 and should be allowed to testify in that capacity. The Court rejected this argument on the merits, holding that Reidy did not meet the requirements of a Rule 706 expert. The SEC did not argue that it had previously or properly disclosed Reidy as a testifying expert under Rule 26(a)(2)(B) or (C), or that it should be allowed to do so now. To the contrary, the SEC conceded Reidy "was never . . . disclosed as an expert witness by the SEC." The SEC's Response, [ECF No. 859], at 6. As already noted, the SEC also did not address whether its admitted failure to disclose Reidy was substantially justified or is harmless. The SEC did not make these arguments even though it acknowledged that one of the bases of Defendants' Motion to Bar was that Reidy

[1] The Court also identified portions of Reidy's testimony that may not have been admissible under Federal Rules of Evidence 401, 403, and 702 even if the SEC had properly disclosed Reidy as a testifying expert.

was offering what amounted to expert testimony without having been disclosed as a testifying expert.[2]

4. Because the SEC did not previously make the arguments it is now advancing in its Motion to Reconsider, it cannot raise them now on "reconsideration" under the cases cited above. This is a sufficient basis upon which to deny the SEC's Motion to Reconsider. The Court, however, will not rely solely on the SEC's failure to make these arguments in response to Defendants' Motion to Bar as a basis to deny the SEC's Motion to Reconsider. Rather it will go on also to address the merits of the arguments the SEC now is making.

II.

5. The SEC argues either that it should be deemed to have previously disclosed Reidy as a testifying expert under Rule 26(a)(2)(C) or it should be allowed to do so now because its failure to do so earlier was substantially justified or is harmless. To be clear, the SEC never expressly disclosed Reidy as a Rule 26(a)(2)(C) expert. Likewise, it has been clear for years that the SEC was relying upon Reidy's work as a forensic accountant for Crowe Horwath, which was hired by Defendant The Nutmeg Group, LLC ("Nutmeg") at the SEC's behest early in the gestation of this long-running lawsuit, to help support aspects of the SEC's case against Defendants including its claim that certain Defendants should be made to disgorge alleged economic benefits they received improperly from Nutmeg or the Funds.[3] Defendants also have argued, using several different procedural vehicles, that the SEC should not be allowed to rely on Reidy because they disagreed with what Reidy had to say, as far as they understood it, and also because they did not think the SEC had provided them with enough information about what

---

[2] In its Motion to Reconsider, the SEC says Defendants, who are *pro se*, and Relief Defendants did not cite Rule 37 in their Motion to Bar and the Court proceeded to limit Reidy's testimony without giving the SEC a chance to respond on the issue of whether Reidy's testimony should be barred as a sanction for its failure to disclose her as a testifying expert. The Court disagrees. Defendants argued that Reidy should be barred from testifying at trial because she was not disclosed as a testifying expert, and the SEC recognized Defendants were making that argument. Rule 37 clearly controls when a party does not make a proper expert disclosure. *See* FED. R. CIV. P. 37 (Failure to Make Disclosures or to Cooperate in Discovery; Sanctions). Moreover, Defendant Randall Goulding cited Rule 37 in his separate reply brief in support of the Motion to Bar and quoted case law describing the standard for excluding evidence under Rule 37. Randall's Reply, [ECF No. 865], at 5–6. If the SEC believed Randall was raising a new issue, as opposed to expanding upon an argument previously made, it could have sought leave to file a sur-response brief or otherwise brought the matter to the Court's attention. The SEC did not do so, presumably because it already knew Defendants' initial arguments invoked Rule 37 including the sanction of barring an undisclosed expert witness from testifying at trial. Therefore, in the Court's view, the issue of whether Reidy's testimony should be barred as a sanction for the SEC's failure to disclose her as a testifying expert was properly before the Court in the context of Defendants' Motion to Bar. There is no reason the SEC could not have made the arguments it is now making when it responded to Defendants' Motion to Bar if it wanted to make them.

[3] Nutmeg hired Crowe Horwath at the Court's direction in March 2009. Minute Entry Dated May 7, 2009, [ECF No. 40]; *see also* Receiver's Motion to Discharge Crowe Horwath from Further Duties as Accountant, [ECF No. 264], ¶ 2. In July of that year, the Court appointed Leslie Weiss as the Receiver over Nutmeg and, from that point on, Crowe Horwath reported to the Receiver.

Reidy would say to defend adequately against it. Defendants also repeatedly argued that Reidy was not qualified to offer opinions about certain aspects of her work if the SEC intended to offer those opinions at trial. For whatever reason, however, the SEC never expressly disclosed Reidy as a testifying expert witness in this case in accordance with the Federal Rules of Civil Procedure.

6. In fact, the SEC repeatedly has avoided identifying Reidy as its expert. For example, during a status hearing on May 26, 2016, two weeks before it submitted its Preliminary Witness List for trial [ECF No. 845], the SEC's counsel said of Reidy, "she's not our expert, but she will be a witness." Transcript of May 26, 2016 Status Hearing, [ECF No. 929], at 21. The SEC's counsel recognized that Defendants would be filing motions and arguing that Reidy's testimony should not be allowed at trial but said "I don't know if that's technically a Daubert issue," which appeared to be an indication that Reidy was not being offered as an expert witness subject to challenge under the *Daubert* line of cases. *Id.* At no point, did the SEC characterize Reidy as a Rule 26(a)(2)(B) or (C) expert. Further, as noted above, in response to Defendants' Motion to Bar, the SEC argued that Reidy could provide the testimony it intended for her to provide as a court-appointed expert under Federal Rule of Evidence 706, not because she had been disclosed as an expert under Rule 26(a)(2). In fact, as already noted, the SEC conceded in briefing the Motion to Bar that Reidy "was never . . . disclosed as an expert witness by the SEC." The SEC's Response, [ECF No. 859], at 6.

7. In its Preliminary Witness List filed on June 9, 2016 [ECF No. 845], two weeks after the May 2016 hearing referenced above, the SEC described Reidy in different terms than it described the witness it properly had disclosed as a testifying expert. For instance, the SEC said it "expected" Peter Hickey, a properly disclosed Rule 26(a)(2)(B) witness for the SEC, "to testify as an expert witness regarding the opinions expressed in his Expert Report." *Id.* at 3. The SEC did not use the same kind of language when it described Reidy in the immediately subsequent paragraph. Rather, the SEC characterized Reidy as "an accountant . . . expected to testify regarding the retention of Crowe Horwath LLP by the Receiver to provide a forensic accounting of Nutmeg and the Funds; the work performed by herself and her team; her Reports of September 28, October 20 and November 16, 2010 which summarize her work – including the conclusions which she drew based upon her accounting expertise and her work on this matter – all of which are expected to be consistent with her deposition testimonies." *Id.* Absent from this description is any designation of Reidy as an expert witness *per se*. Although the SEC does say that some of Reidy's anticipated testimony would include conclusions "based upon her accounting expertise and her work on this matter," the disclosure is otherwise opaque and, again, substantially different both from the way in which the SEC characterized the expert testimony it expected to elicit from Peter Hickey and from what would have been required for a disclosed testifying expert witness under Rules 26(a)(2)(B) or (C).

8. The theory that the SEC is now advancing appears to be that it effectively satisfied Rule 26(a)(2)(C)'s expert disclosure requirement by referencing the work Reidy and Crowe Horwath did for the Receiver when it made and supplemented its Rule 26(a)(1)(A) disclosures, identifying Reidy as a potential witness on forensic accounting matters, and referencing the reports prepared by Crowe Horwath for the court-appointed Receiver, Leslie Weiss. This is a new theory, never before articulated by the SEC. It surfaced only after the

Court issued its ruling on Defendants' Motion to Bar. The Court is unwilling to view the SEC's prior references to Reidy as some sort of a stealth disclosure that she was a Rule 26(a)(2)(C) witness for the SEC. The Court also does not believe the SEC intended those references to be construed as such. Under Rule 26(a)(2)(C), a party must serve a disclosure that states "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 703; and (ii) a summary of facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). To comply with the second requirement, the disclosure must include "a brief account of the [expert's] main opinions," including the expert's "view or judgment regarding a matter that affects the outcome of the case," and a brief account in summary form of the main facts directly related to the disclosed opinions. *Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, 2015 WL 1105840, at *9 (S.D. Ohio Mar. 11, 2015). No such disclosure was made in this case, at least expressly, by the SEC.

9. The SEC essentially is arguing that a sufficient expert disclosure for Reidy now can be inferentially cobbled together from its Rule 26(a)(1)(A)(i) disclosure, its Rule 26(a)(1)(A)(iii) disclosure that it would seek to recover (or disgorge) monies from certain Defendants based on work Reidy and Crowe Horwath had done for the Receiver, its written discovery responses to the same effect, its repeated references to Crowe Horwath's reports to the Receiver, and the production of those reports to Defendants. That does not work. Even if the Federal Rules of Civil Procedure allowed a party to make an expert witness disclosure in this kind of a Rube Goldberg-like fashion,[4] nowhere does the SEC succinctly identify the discrete opinions Reidy is expected to give or summarize the main facts related to those opinions, as Rule 26(a)(2)(C) requires. Instead, the SEC identified certain conclusions the SEC understood Reidy and Crowe Horwath had reached in its Rule 26(a)(1)(A)(iii) disclosures and interrogatory answers and then referred Defendants to Crowe Horwath's three reports, which even the SEC admitted it had so much difficulty deciphering that it needed to take Reidy's deposition to figure out all of what she and Crowe Horwath were saying. *See* Plaintiff's Motion for Leave to Depose Mari Reidy, [ECF No. 641]; Minute Entry Dated May 6, 2013, [ECF No. 650]; *see also* Plaintiff's Motion for an Extension of Time to Amend or Supplement Interrogatory Answers, [ECF No. 617]; Written Opinion Dated June 7, 2013, [ECF No. 656].

10. The Court has reviewed carefully the Crowe Horwath reports. They do not satisfy Rule 26(a)(2)(C)'s disclosure requirement because they are lengthy, complicated, convoluted, and in some ways incomplete or at least works in progress that stretch to 96 pages and include 303 pages of exhibits. Crowe Horwath Report Dated September 28, 2010, [ECF No. 239]; Crowe Horwath Report Dated October 20, 2010, [ECF No. 252]; Crowe Horwath Report Dated November 16, 2010, [ECF No. 261]; *see also* The SEC's Response, [ECF No. 859], at 5 (admitting some "of the projects [described in the court-ordered accounting] were never completed due to lack of money"). A party cannot comply with Rule 26(a)(2)(C) by dumping a large volume of documents on an opposing party and leaving it to try to guess what a witness will say about the information contained in the documents. *See Family Christian World, Inc. v. Philadelphia Indem. Ins. Co.*, 2016 WL 3610861, at *2 (N.D. Ind. July 6, 2016) ("However,

---

[4] Rube Goldberg was, among other things, a cartoonist who made drawings "of complex mechanical devices which purported to perform an otherwise simple task through a series of interconnected, complex maneuvers, while the same result could be accomplished in a straightforward, uncomplicated fashion." *In re Davis*, 2014 WL 3497587, at *3 (Bankr. N.D. Ala. July 11, 2014).

the Rule requires the summary of fact to be in the disclosure, not merely contained within materials turned over in discovery."); *see also Cripe*, 318 F.R.D. at 360; *Montana Connection, Inc. v. Moore*, 2015 WL 9307283, at *4 (M.D. Tenn. Dec. 21, 2015); *Little Hocking Water*, 2015 WL 1105840, at *6, 8; *Ibey v. Trinity Universal Ins. Co.*, 2013 WL 4433796, at *2–3 (D. Mont. Aug. 16, 2013); *Kondragunta v. Ace Doran Hauling & Rigging Co.*, 2013 WL 1189493, at *6 (N.D. Ga. Mar. 21, 2013).

11. Neither does the SEC's supplemental Rule 26(a)(1)(A)(iii) disclosure [ECF No. 895-1] supported by a few citations to Reidy's deposition testimony constitute an effective Rule 26(a)(2)(C) disclosure. In the first place, Rule 26(a)(2) expert disclosures are intended to be more detailed and fulsome than Rule 26(a)(1) initial disclosures. *Beauchamp v. City of Dixon*, 2014 WL 901437, at *4 (N.D. Ill. Mar. 7, 2014), *report and recommendation adopted sub nom. Beauchamp v. City of Dixon, Ill.*, 2014 WL 1315403 (N.D. Ill. Mar. 31, 2014) (rejecting an argument that a party "satisfied the disclosure requirements of Rule 26(a)(2)(C) when she (1) disclosed her witnesses under Rule 26(a)(1), and (2) those witnesses revealed their opinions in their medical records or during their depositions); *Vigilant Ins. v. E. Greenwich Oil Co.*, 234 F.R.D. 20, 22 (D.R.I. 2006) ("Thus, Rule 26(a)(1) disclosures are not in lieu of Rule 26(a)(2)(A) disclosures."). Secondly, a goodly portion of the testimony the SEC cites from Reidy's deposition was elicited by the SEC's counsel with leading questions posed to her about the Crowe Horwath reports in an effort to have Reidy clarify and explain the work she did and the conclusions reached in those reports. That is not a substitute for a real Rule 26(a)(2)(C) disclosure delivered before the deposition. It also is not sufficient for the SEC to say, as it now does, that Defendants had the opportunity to depose Reidy about the Crowe Horwath reports which should have been enough to put them on notice of her anticipated expert trial testimony. *See Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1367 (S.D. Ga. 2016) ("Indeed, allowing parties to obviate the need to provide Rule 26(a)(2) disclosures and reports by simply making their experts available to be deposed would render the Rule meaningless."); *Williams v. State*, 2015 WL 5438596, at *5 (M.D. La. Sept. 14, 2015); *Turner v. Speedway LLC*, 2015 WL 4392398, at *5 (S.D.W. Va. July 15, 2015).

12. An after-the-fact deposition is not a substitute for what Rule 26(a)(2)(C) requires before-the-fact as far as an expert witness is concerned. The Rule requires a party to provide its opponent with a summary of what the expert will say and a summary of the main facts related to the expert's opinions. The receiving party then can take the proposed expert's deposition, if it chooses to do so, and probe the matters about which the disclosure put it on notice. Admittedly, a Rule 26(a)(2)(C) disclosure does not need to be as detailed as a disclosure for a retained expert under Rule 26(a)(2)(B). But a party should not have to hunt-and-peck through initial discovery disclosures or interrogatory responses, or a volume of documentary material, some relevant and some perhaps not, to try to piece together the opinions an expert witness will proffer at trial or the basis for those opinions, and then see if he guessed correctly during the expert's deposition. Neither should Defendants in this case be required to cross-examine the SEC's "expert" during a deposition immediately after the SEC has questioned her in a leading fashion to elicit and clarify the opinions it intends for her to offer at trial that were not clearly disclosed before the deposition. None of this cures the problem the SEC created by not properly disclosing Reidy as a testifying expert or magically converts what the SEC did provide into an effective or proper

Rule 26(a)(2)(C) disclosure. For all of these reasons, the Court rejects the SEC's argument that it properly disclosed Reidy as a Rule 26(a)(2)(C) witness, or should be deemed to have done so.

13. There also is another, more fundamental problem with the SEC's contention that it properly disclosed Reidy as a Rule 26(a)(2)(C) witness or should be deemed to have done so. Reidy became involved in this case only after the SEC sued Defendants. Therefore, if she can be characterized as any sort of testifying expert witness under the Federal Rules of Civil Procedure, she would have to be a Rule 26(a)(2)(B) witness, not a Rule 26(a)(2)(C) witness. A Rule 26(a)(2)(B) witness must provide a much more comprehensive disclosure than is required for a Rule 26(a)(2)(C) witness. The relevant distinction under Rule 26(a)(2) is between experts "who happened to have personal involvement with the events giving rise to litigation [Rule 26(a)(2)(C) experts]" and those "whose only involvement consists of aiding the already-initiated litigation [Rule 26(a)(2)(B) experts]." *Caruso v. Bon Secours Charity Health Sys., Inc.*, --- Fed. App'x. ---, 2017 WL 3638203, at *2 (2d Cir. Aug. 24, 2017); *see also LaShip, L.L.C. v. Hayward Baker, Inc.*, 680 F. App'x 317, 324 (5th Cir. 2017). To put it another way, "a percipient witness" whose "opinion testimony arises . . . from his ground-level involvement in the events giving rise to the litigation" may be disclosed under Rule 26(a)(2)(C). *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011); *see generally Avent, Inc. v. Motio, Inc.*, 2016 WL 927194 (N.D. Ill. Mar. 4, 2016). An expert who is retained or specially employed only after the litigation has begun is more properly characterized as a Rule 26(a)(2)(B) witness with the more demanding disclosure requirements a party must satisfy for those witnesses. *See Brainstorm Interactive, Inc. v. Sch. Specialty, Inc.*, 2014 WL 5817327, at *3 (W.D. Wis. Nov. 10, 2014); *Call v. City of Riverside*, 2014 WL 2048194, at *3–9 (S.D. Ohio May 19, 2014); *Saline River Properties, LLC v. Johnson Controls, Inc.*, 2011 WL 6031943, at *7 (E.D. Mich. Dec. 5, 2011); *Ulbrick v. UPR Prod., Inc.*, 2011 WL 500034, at *4 (E.D. Mich. Feb. 8, 2011). The SEC bears the burden of showing Reidy was not required to submit an expert report under Rule 26(a)(2)(B). *Avnet*, 2016 WL 927194, at *4; *Eagle Oil & Gas Co. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 3744976, at *7 (N.D. Tex. July 30, 2014).

14. Reidy must be characterized as a witness whose involvement in this case began only after the SEC filed suit. All of the "expert" testimony the SEC wants to elicit from Reidy arises from her work after this case began in connection with Crowe Horwath's forensic accounting of Nutmeg. Crowe Horwath and Reidy had no connection to Nutmeg apart from this litigation. Shortly after the start of this lawsuit, the SEC filed a motion asking the Court to order the accounting and advocated for the appointment of Crowe Horwath. The SEC argued in part that the accounting "is necessary to determine the scope of Defendants' violations and the disposition of investor funds." Plaintiff's Motion to Appoint Accountant, [ECF No. 30], ¶ 8; *see also* Plaintiff's Memorandum in Support of Its Motion for a Temporary Restraining Order and Order for Emergency Relief, [ECF No. 6], at 27. After the Court granted the SEC's motion, Crowe Horwath was hired solely to provide services required by the Temporary Restraining Order entered by the Court.[5] *See* Engagement Letter, [ECF No. 39-2]. If this lawsuit had not

[5] In advocating for the appointment of Crowe Horwath, the SEC noted that Crowe Horwath's personnel were familiar with court procedures because, among other reasons, they had experience providing expert testimony. Plaintiff's Motion to Appoint Accountant, [ECF No. 30], ¶ 10. The engagement agreement entered into by Nutmeg and Crowe Horwath addressed many matters, including Crowe Horwath's compensation if its personnel testified as witnesses in the case. Engagement Letter, [ECF No. 39-2], at 5.

been filed, Crowe Horwath never would have performed the forensic accounting work and Reidy would not have acquired the factual knowledge or formed the opinions about which the SEC now wants her to testify.[6]

15. Therefore, if Reidy was to testify at all about her expert opinions or conclusions, she should have been disclosed as a Rule 26(a)(2)(B) witness complete with an expert report concerning those opinions and the basis for them that meets the requirements of that Rule. The Crowe Horwath reports that the SEC repeatedly has referenced throughout this litigation are not reports of that nature or kind. Rather they are reports about a hodge-podge of discrete projects or work that Crowe Horwath did for the Receiver within which there is some information about which the SEC would like Reidy to testify. They do not meet the standard for an expert report required for a Rule 26(a)(2)(B) witness. Reports under that provision must "be so fulsome that they can allow an opposing party to forego expert depositions." *Avent*, 2016 WL 927194 at *4. As discussed above, the SEC moved to take Reidy's deposition because, among other reasons, the Crowe Horwath reports were not sufficient to inform it, let alone Defendants, of the full substance of what the SEC wanted Reidy to testify about. Those reports, then, are not sufficient to satisfy Rule 26(a)(2)(B).

16. For all of the reasons discussed above, the Court will not deem the SEC to have made the disclosures that it was required to make if it intended to use Reidy as a testifying expert witness at trial. Further, as discussed below, the failure to comply with the Rules neither was substantially justified nor is harmless, and the Court, therefore, will not permit the SEC now, on the eve of trial, to submit a proper Rule 26(a)(2) disclosure to rectify the problem it created.

III.

17. "If a party does not make a timely and complete expert-witness disclosure, the expert's testimony ordinarily cannot be presented at trial." *Hassebrock v. Bernhoft*, 815 F.3d 334, 341 (7th Cir. 2016). Under Rule 37(c)(1), the exclusion of undisclosed expert testimony is automatic and mandatory unless the non-disclosure was substantially justified or is harmless. *Novak v. Bd. of Trustees of S. Illinois Univ.*, 777 F.3d 966, 972 (7th Cir. 2015); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004); *David*, 324 F.3d at 857. The SEC bears the burden of showing its failure to disclose Reidy as a testifying expert was substantially justified or is harmless. *Eldridge v. Gordon Bros. Grp., L.L.C.*, 863 F.3d 66, 85 (1st Cir. 2017); *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017); *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011). "[T]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *David*, 324 F.3d at 1363 (quoting *Mid–America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir.1996)).

---

[6] During Reidy's deposition, the SEC asked Reidy whether Crowe Horwath had bid to provide work to Nutmeg "because the SEC had sued Nutmeg . . . and asked the court to order Nutmeg to bring in a person to perform forensic services and valuation services and report back to the court." Transcript of Mari Reidy's May 31, 2013 Deposition, [ECF No. 860-9], at 26. Reidy answered, "That was my understanding." *Id.*

18. Whether a failure to disclose was substantially justified turns in large part on the party's explanation for the nondisclosure, including its ability to timely disclose and the legal basis for believing disclosure was not required. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017); *Bull v. Bd. of Trustees of Ball State Univ.*, 2012 WL 76137, at *2 (S.D. Ind. Jan. 10, 2012). If reasonable people could differ as to whether the nondisclosure was justified, then the evidence should not be excluded. *Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 205 (5th Cir. 2016); *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015). Substantial justification, though, cannot be based on mere inadvertence or a misunderstanding of the law. *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012), *as amended* (Feb. 2, 2012); *Musser*, 356 F.3d at 758; *Bull*, 2012 WL 76137, at *2; *United States v. Shanrie Co.*, 2007 WL 178515, at *1 (S.D. Ill. Jan. 19, 2007).

19. It is not a close question as to whether the SEC's failure to disclose Reidy under Rule 26(a)(2) was substantially justified. This case was filed roughly eight-and-a-half years ago. At any time since Reidy completed her first report for Crowe Horwath more than seven years ago, the SEC could have disclosed her as an expert witness who would testify at trial if it wanted to do so. During the intervening years, the SEC has weighed in repeatedly on the issue of which witnesses would provide what testimony, including expert testimony, at trial. For instance, as discussed above, the SEC disclosed Peter Hickey as a testifying expert witness. The SEC also addressed the issue of Reidy's status as a trial witness at the May 2016 hearing referenced above. Even when responding to Defendants' Motion to Bar, the SEC explicitly recognized it had not disclosed Reidy as a Rule 26(a)(2) testifying expert, without seeking leave to disclose her as such at that time. The SEC's purported belief that Reidy qualified as a court-appointed expert under Federal Rule of Evidence 706 or that its Rule 26(a)(1)(A) disclosures, written discovery responses, and references to the Crowe Horwath's reports obviated the need for a proper Rule 26(a)(2) expert disclosure is premised on an unreasonable reading of the law that cannot prevent exclusion under Rule 37. *See Musser*, 356 F.3d at 759 (explaining that a defendant's ability to obtain undisclosed information "does not provide substantial justification"). The SEC had the ability to make a proper and timely expert witness disclosure and there is no legal basis for believing disclosure was not required if the SEC wanted Reidy to testify as an expert witness. Therefore, the SEC has fallen short of carrying its burden to provide a substantial justification for not disclosing Reidy as a testifying expert witness.

20. The SEC contends its failure to disclose Reidy as a testifying expert is harmless because Defendants always have known the SEC intended to call Reidy as a witness, they know what she will say because it was laid out in Crowe Horwath's reports, they deposed her twice about matters contained in those reports, and they hired two experts of their own to rebut certain matters contained in the Crowe Horwath reports. Courts generally consider four factors when assessing whether a party's failure to disclose a testifying expert is harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble*, 670 F.3d at 760 (quoting *David*, 324 F.3d at 857). Each of these factors is discussed below.

21. Defendants have been prejudiced by the SEC's failure to properly disclose Reidy as an expert witness. Defendants have argued on many occasions that they do not have sufficient

information to understand Reidy's opinions, such as they may be, as reflected in Crowe Horwath's reports. Defendants' assertion is corroborated to some extent by the fact that, as discussed above, the SEC itself has struggled to summarize and explain the facts and opinions contained in Crowe Horwath's reports. As *pro se* litigants, Defendants have tried to use various procedural vehicles first to obtain the underlying basis for the statements, charts, and tables in the Crowe Horwath reports and then to prevent the SEC from using Reidy's testimony at trial. Pressed by Defendants for more information about the bases and support for the Crowe Horwath reports, the SEC said it did not have that information and could not get it from Crowe Horwath other than by taking Reidy's deposition. As discussed in Section II of this Order, that may be an effective way to discover what a third-party fact witness will say but it is a backwards and ineffective way to make an expert witness disclosure.

22. Defendants served written discovery requests on the SEC seeking an explanation of and the bases for the SEC's Rule 26(a)(1)(A)(iii) disclosures and for certain allegations in the SEC's amended complaint, which were based largely on Crowe Horwath's reports. The SEC responded by citing to those reports and admitting it was unable to provide additional information other than what was contained in those reports. *See*, *e.g.*, Plaintiff's Response to Randall Goulding's First Set of Interrogatories, [ECF No. 553-2], at 4; Plaintiff's Response to Defendant Randall Goulding's Interrogatory Served on June 25, 2012, [ECF No. 553-16], at 2; Minute Entry Dated January 18, 2013, [ECF No. 611]; Written Opinion Dated March 1, 2013, [ECF No. 626]; Written Opinion Dated June 7, 2013, [ECF No. 656]. Reidy's first deposition in this case did little to clear up the confusion and even the SEC's counsel conceded it "'was a lost opportunity' because Defendant [Randall Goulding], proceeding *pro se* by that time, did not adequately examine [] Reidy about" Crowe Horwath's reports and the SEC did not itself ask any questions about the reports to clarify matters. Written Opinion Dated March 1, 2013, [ECF No. 626], at 2. Reidy then was deposed a second time, this time at the SEC's behest. Plaintiff's Motion for Leave to Depose Mari Reidy, [ECF No. 641]. The SEC acknowledged after that deposition that Reidy did not explain "fully, and at least in a way that is fully accessible or understandable to the *pro se* defendants, all of the component parts of her $2,334,838.17 number" though she was able to explain, in the SEC's view at least, other bases for the SEC's disgorgement claims. Written Opinion Dated June 7, 2013, [ECF No. 656], at 2. The fact that the SEC needed to depose Reidy to understand her opinions and their factual bases undercuts the notion that Defendants were not harmed by the SEC's failure to provide them with a proper and timely disclosure of the opinions and facts to which Reidy would testify at trial.[7]

[7] The SEC conceded that it was unable to fully disclose Reidy's "anticipated trial testimony" or provide Defendants all of the "information that they need to prepare for trial." Plaintiff's Motion for an Extension of Time to Amend or Supplement Interrogatory Answers, [ECF No. 617], ¶¶ 2, 8. The SEC did not have access to Reidy's notes and work papers. *Id.* ¶ 7. The SEC first proposed to engage Reidy as a consultant so it could obtain the information it needed, *id.* ¶¶ 3–6, and, when that failed, filed a motion for leave to depose her to obtain the information it (and presumably Defendants) needed about her potential trial testimony, Plaintiff's Motion for Leave to Depose Mari Reidy, [ECF No. 641], ¶¶ 1, 3, 6. The SEC moved to depose Reidy not for the purpose of creating or explaining an expert disclosure but because Defendants continued to complain that the SEC's initial disclosures and written discovery responses related to its disgorgement claim were insufficient. Plaintiff's Motion for Leave to Depose Mari Reidy, [ECF No. 641], ¶ 6; *see also* Motion *in Limine* – Disgorgement Damages, [ECF No. 634]; Motion *in Limine* – Disgorgement Damages, [ECF No. 639].

23. While Defendants retained two experts in this case in an attempt to respond to the SEC's claims that it said were based on the Crowe Horwath reports, this also does not get the SEC where it needs to go. Defendants' expert on valuation issues, Anthony Garvy, says in his own expert report that the Crowe Horwath reports do not set forth the analysis, calculations, or assumptions that Crowe Horwath used in making its valuations, and, as a consequence, he could not determine the basis for Crowe Horwath's valuation of the Mercury Fund. Expert Report of Anthony Garvy, [ECF No. 297], at 12 n.7, 16–18. Defendants' other expert, Craig Greene, prepared an expert report to address the SEC's claims that there were un-invested funds. Greene appears to understand to some extent what Crowe Horwath was saying with respect to the investments in the so-called Morgan Wilbur deals. In addressing another aspect of what Crowe Horwath did, however, Greene noted, "Defendants cannot determine the basis" for $139,860 that Crowe Horwath determined was un-invested in the Circle Group transaction. Expert Report of Craig Green, [ECF No. 307], at 22. Therefore, although Defendants and their experts may have some understanding of what Reidy might say from the Crowe Horwath reports, even Defendants' experts do not seem to understand fully some of the main opinions and related facts set forth in the reports.[8]

24. The SEC's failure to disclose Reidy as a testifying expert forced Defendants to spend significant time, effort, and money during discovery trying to obtain information that the SEC had an obligation under the Federal Rules of Civil Procedure to provide to Defendants if it wanted Reidy to testify as an expert witness. Defendants had to serve discovery requests and file motions attempting to get information that should have been provided to them in a proper Rule 26(a)(2) disclosure. Defendants had to depose Reidy twice, both times without the benefit of having a proper expert disclosure. Defendants had to pay experts to prepare reports designed to figure out what Reidy and Crowe Horwath were saying even though the deficiencies in Crowe Horwath's reports limited Defendants' experts' ability to do so. Moreover, because the SEC never clearly and succinctly disclosed the opinions and facts it intended to elicit from Reidy, Defendants had to assume that everything in Crowe Horwath's reports (whether understandable or not) was in play. This led Defendants to pursue ultimately irrelevant issues during discovery. For instance, only in preparation for trial did the SEC say it would not elicit testimony from Reidy about the valuation work in Crowe Horwath's reports. If the SEC had made clear to Defendants the opinion(s) it intended to elicit from Reidy in a proper Rule 26(a)(2) disclosure, Defendants could have avoided wasting the time and resources they spent trying to understand and attack certain aspects of Reidy's and Crowe Horwath's work through written discovery requests, Reidy's depositions, and Defendants' Motion to Bar.

25. Furthermore, if the SEC were allowed to disclose Reidy as a testifying expert now, it would require a material alteration to the pretrial and trial schedule set by the Court. The

[8] The SEC has taken an all-or-nothing approach to its purported disclosure of Reidy as a testifying expert and the argument that any failure to disclose her is harmless. The SEC has not met its burden to show Reidy can offer all of the expert testimony that it wants to elicit from her in this case. It also has not attempted to identify any discrete aspects of Reidy's proposed testimony that might be admissible despite its failure to properly disclose her as an expert witness. The Court will neither attempt to parse the record or the Crowe Horwath reports in a more surgical way than the SEC has opted to do, nor give the SEC yet a third bite at the apple to attempt to do so at this late date.

SEC would need time to prepare and serve a proper disclosure under Rule 26(a)(2), assuming it could do so. After that, Defendants may well request leave to depose Reidy again or conduct additional written discovery. At a minimum, Defendants would file a *Daubert* motion, the parties would brief it, and the Court would rule on it.[9] All parties have said during pretrial hearings and conferences that, if the Court were to revisit its April 28, 2017 ruling and allow Reidy to testify as an expert for the SEC, that decision would significantly impact the parties' witness and exhibit lists, and the likely length of the trial. The disruption to the Court's schedule and the work that would have to be redone by the parties also supports a finding that the SEC's failure to disclose Reidy is not harmless. *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008), *as amended* (Sept. 16, 2008) ("Such modifications to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless."); *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) ("Moreover, the district court was forced to devote considerable time and resources to address the matter of the deficient report—time and resources that instead could have been devoted to reaching a speedy resolution of Ciomber's suit."); *Musser*, 356 F.3d at 759 ("But it is not an abuse of discretion to conclude that the additional costs to Gentiva of preparing a new summary judgment motion and further delay in extending the trial date are not harmless.").

26.  The SEC's failure to disclose Reidy as a testifying expert was intentional or willful though not done, in the Court's view, in bad faith. It appears to have been a strategic decision that backfired. But the Court does not need to conclude that the SEC acted in bad faith in order to find that its failure to disclose properly Reidy as a testifying expert in this case is not harmless. *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006); *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Under all of the circumstances described above, the Court does not see how it can reach a conclusion other than that the SEC's failure to disclose Reidy as a testifying expert is not harmless in the context of this case and within the applicable legal framework. *Tribble*, 670 F.3d at 760.

IV.

27.  Accordingly, for all of the reasons discussed above, Plaintiff's Motion to Reconsider Order Barring Mari Reidy from Offering Opinion Testimony on Certain Accounting Matters [ECF No. 910] is denied.[10]

---

[9] *See supra* note 1.

[10] The Court's ruling does not preclude the SEC from pursuing its claims based on Defendants' alleged misappropriation of assets and possibly on some aspects of its claim regarding improper valuation of securities, or from seeking disgorgement of ill-gotten gains. The SEC still can elicit lay testimony in support of these claims from Reidy and other witnesses. And the SEC, as noted above, has properly disclosed an expert witness. What the SEC cannot do is elicit expert testimony from Reidy as an undisclosed expert witness. The SEC's failure to properly disclose Reidy may limit the amount of money the SEC can seek to disgorge from certain Defendants because the SEC says it does not have other evidence to support certain amounts about which it planned to introduce Reidy's testimony. But, according to the SEC, it believes it still has sufficient evidence to prove Defendants and Relief Defendants should disgorge $1,452,499.77 in ill-gotten gains, a not insubstantial amount.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: October 31, 2017