IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,

v.

THE NUTMEG GROUP, LLC, *et. al.*

Defendants,

DAVID GOULDING, INC., *et. al.*

Relief Defendants.

Case No. 09-cv-01775 (JTG)

Hon. Jeffrey T. Gilbert

**DEFENDANT RANDALL GOULDINGS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A REVISED FINDING OF FACT, REVISED CONCLUSIONS OF LAW AND AN AMENDED JUDGMENT**

Dated: December 10, 2019

Respectfully submitted,

FREDRICK R. HARBECKE LAW OFFICE
53 WEST JACKSON BOULEVARD
CHICAGO, ILLINOIS 60604
312-443-9505
fredrharbecke@gmail.com

BERRY LAW PLC
745 FIFTH AVENUE, 5TH FLOOR
NEW YORK, NEW YORK 10151
212-355-0777
berrylawpllc@gmail.com

*Attorneys for defendant Randall S. Goulding*

# **Table of Contents**

**Page**

Table of Authorities.................................................................................................... ii

A. The Findings of Fact and Conclusions of Law..................................................... 1

B. The Nature of this Motion.................................................................................... 2

C. Argument............................................................................................................... 6

Point I
The SEC's Own Trial Exhibits Concede that Nutmeg and Goulding Were Entitled to $869,749.99 in Non-Contingent Compensation in the Form of Management Fees.......................................... 6

Point II
The Non-Contingent Management Fees Based on Amounts Raised in the Offering Are Not Properly Subject to Disgorgement Because they Did Not Result from Any Adjudicated Misconduct.............................................. 9

Point III
Properly Adjusted, PX43 Shows that Goulding Did Not Receive any Ill-Gotten Gains ............................................... 11

Point IV
PX68 and Nutmeg's Statement from LaSalle Bank Should Be Included in the Trial Record............................................... 13

Point V
Under Kokesh, Disgorgement is an Impermissible Penal Remedy......................................................... 14

Point VI
The Penalty Should Be Eliminated................................................................ 15

D. Conclusion.......................................................................................................... 15

# **Table of Authorities**


| **Case** | **Page(s)** |
|---|---|
| *In re Dixon*, 535 B.R. 450 (Bankr., N.D. Ga. 2015)....................................... | 6, 8 |
| *First Fed. Sav. & Loan v. Oppenheim, Appel, Dixon* 629 F. Supp. 427 (S.D.N.Y. 1986)................................................................. | 10 |
| *Freschi v. Grand Coal Venture*, 551 F.Supp. 1220 (S.D.N.Y. 1982)............ | 10 |
| *FTC v. AMG Capital Mgmt.*, LLC, 910 F.3d 417 (9th Cir. 2018).................... | 14 |
| *Kokesh v. SEC*, 137 S. Ct. 1635 (2017)......................................................... | 5, 14-15 |
| *Liu v. SEC*, 2019 WL 5659111 (Sup. Ct., Nov. 1, 2019)............................. | 5, 14 |
| *Planned Parenthood of Wisconsin, Inc. v. Van Hollen* 94 F.Supp.3d 949 (W.D. Wis. 2015)............................................................. | 13 |
| *Romo v. United States*, 2015 WL 11182027 (D. Ariz., July 22, 2015)........... | 13 |
| *Saad v. SEC*, 873 F.3d 297 (D.C. Cir. 2017).................................................. | 14 |
| *SEC v. Collins*, 2003 WL 21196236 (N.D. Ill., May 21, 2003).................... | 8, 11 |
| *SEC v. Commonwealth Chemical Securities, Inc.* 574 F.2d 90 (2d Cir. 1978)................................................................................ | 12 |
| *SEC v. Ferrone*, 188 F.Supp.3d 709 (N.D. Ill. 2015)...................................... | 9 |
| *SEC v. First City Fin. Corp.*, 890 F.2d 1215 (D.C. Cir.1989)......................... | 9 |
| *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir.1996).......................... | 11 |
| *SEC v. Liu*, 754 Fed.Appx. 505 (9th Cir. 2018)............................................. | 15 |
| *SEC v. Maxxon*, 465 F.3d 1174 (10th Cir. 2006)............................................. | 11 |
| *SEC v. Onyx Capital*, 2014 WL 354491 (E.D. Mich., Jan. 31, 2014)............. | 6, 8 |
| *SEC. v. Patel*, 61 F.3d 137(2d Cir.1995)......................................................... | 9 |
| *SEC v. Pattison*, 2011 WL 723600 (N.D. Cal., Feb. 23, 2011)...................... | 10 |

**Table of Authorities (con'd)**


| **Case** | **Page(s)** |
| --- | --- |
| *SEC v. Razmilovic*, 822 F. Supp. 2d 234 (S.D.N.Y. 2011)............................ | 11 |
| *SEC v. Resnick*, 604 F.Supp.2d 773 (E.D.N.Y. 2009).................................. | 10 |
| *SEC v. Trabulse*, 526 F. Supp. 2d 1008 (N.D. Cal. 2007)............................... | 1 |
| *Swartz v. New York Central R. Co.*, 323 F.2d 713 (7th Cir. 1963)................... | 13 |
| *United States v. Miller*, 2010 WL 235034 (D. Kansas, Jan. 15, 2010).......... | 13n.6 |
| *Zenith Radio Corp. v. Hazeltine Research, Inc.* 401 U.S. 321, 91 S.Ct. 795 (1971)................................................................ | 13 |


**United States Code**


| | |
| --- | --- |
| 15 U.S.C. §80b-9(e)(2)........................................................................ | 1 |
| 28 U.S.C. §2462................................................................................ | 14 |


**Federal Rules of Civil Procedure**


| | |
| --- | --- |
| Fed. R. Civ. P. 59(a)(2)...................................................................... | 1, 13 |
| Fed. R. Civ. P. 59(e)........................................................................... | 1 |


**Federal Rules of Evidence**


| | |
| --- | --- |
| Federal Rule of Evidence 1006.......................................................... | 1, 13n.6 |


**Miscellaneous**


| | |
| --- | --- |
| Arnold S. Jacobs, *Disclosures & Remedies Under the Securities Laws* §20:109 (2005).................................................... | 11 |
| Havard Law Review Blog, "Supreme Court: The Statistics," (November 10, 2017)......................................................................... | 15 |

Defendant Randall S. Goulding respectfully submits this memorandum of law in support of his motion pursuant to Federal Rules of Civil Procedure 59(a)(2) and 59(e) for a revised Finding of Fact, revised Conclusions of Law, an amended Judgment and an order that two additional exhibits – one previously proposed by plaintiff the Securities and Exchange Commission and the other subpoenaed by the SEC from Bank of America – be included in the trial record. The substantive relief Goulding requests does not depend on including these two additional documents in the trial record. However, they do, beyond any doubt, confirm that the motion is meritorious.

## A. THE FINDINGS OF FACT AND CONCLUSIONS OF LAW

On October 25, 2019 this Court filed its post-trial Findings of Fact and Conclusions of Law. (ECF No. 1085.) Under the Court's ruling, Goulding is required to disgorge $642,422. (ECF No. 1085, p. 57 at ¶59.) The Court also imposed a penalty in that same amount pursuant to Investment Advisors Act, §209(e)(2), 15 U.S.C. §80b-9(e)(2). (ECF No. 1085, p. 59 at ¶70.)

The outcome was based on Trial Exhibit PX43, a summary admitted pursuant to Federal Rule of Evidence 1006. The Court determined that PX43 establishes that Goulding received $642,422 more in transfers from The Nutmeg Group, LLC than he made in transfers to Nutmeg during the relevant period. (ECF No. 1085, p. 36 at ¶276.) The Court also held that:

> In similar cases, courts have rejected arguments remarkably like those made by Randall that sound good but are built on air. An investment manager who commingled his own money with investor assets, overstated the value of funds under management, and used the commingled accounts essentially as his own piggy bank was enjoined from continuing to withdraw money for anything other than legitimate and reasonable business expenses in the absence of evidence that the money paid out to the investment manager was his to withdraw and use for his own purposes.

*Id.*, pp. 54-55 at ¶53 (citing *SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1017 (N.D. Cal. 2007)).

**B. THE NATURE OF THIS MOTION**

At the outset, the Court should note what this motion does *not* challenge.

The SEC tried the case based on the premise that, since the limited partners' capital contributions were received into Nutmeg's account (rather than a separate, stand-alone, account for each Fund), any net amount that Goulding received in transfers from Nutmeg over his transfers to Nutmeg would be a misappropriation from the Funds. That assumption underlies PX43 and likewise the Court's Findings and Conclusions. This motion is *not* disputing the assumption.[1] Instead, this motion will assume that, if the SEC had actually proved that Goulding received net compensation from Nutmeg in excess of what Nutmeg was entitled to receive under its agreements with the Funds (and pass through to Goulding as Nutmeg's 99 percent owner), then, based on the premise underlying PX43, Goulding could be required to disgorge that amount. However, as shown below, the SEC did not prove that; indeed, PX43 itself shows otherwise.

Also, this motion is *not* attempting to contest the Court's finding that Nutmeg was not entitled to any carried interest (incentive-, performance-, or valuation-based compensation). The Court found that Nutmeg's valuation of the Funds' assets was wrongly inflated, not in accordance with FASB guidance, and not a proper basis for calculating carried interest. Likewise, this motion does not seek to challenge the Court's finding that the profits Goulding earned on the Morgan Wilbur deal could not be properly credited to Goulding's capital account at Nutmeg. The valuation and Morgan Wilbur issues were hotly contested, the subject of competing expert (or expert-type) testimony, and the SEC prevailed on both sets of issues and

[1]Goulding, of course, is not waiving any appellate arguments.

Goulding is not looking to overturn that outcome now.[2] Instead, this motion is based on the following four circumstances:

First, PX43 does not purport to consider Nutmeg's right to compensation from the various investor pools (*e.g.*, Mercury Fund, Fortuna Fund, Michael Fund, *etc.*) for which it acted as general partner and Investment Advisor. As SEC accountant Ann Tushaus, CPA, who prepared PX43, testified:

> Q . . . [On] PX43, you see that you show a total benefit of $2.5 million and change to Randall Goulding; isn't that correct?
> A. Yes.
> Q. *Okay. Now, did you ever yourself conduct any analysis of what [Nutmeg] was entitled to receive under its agreements with the various investment funds?*
> *A. No.*
> Q. Okay. So you yourself -- *you don't have any view one way or another as to whether the amount that Nutmeg was entitled to receive under its agreements with the investment funds was more or less than $2.5 million?*
> *A. I do not have an opinion.*

Trial Transcript ("Tr.") 1144:19-1145:9 (emphasis added).

Second, as the SEC's own Trial Exhibits expressly acknowledge, Nutmeg had not only the contractual right to performance-, incentive- and/or valuation-based compensation in the form of carried interest (if properly earned), but also the separate and distinct contractual right to *non-contingent* compensation identified as "management fees." These management fees were based on a percentage – typically 3 to 4 percent – of the amounts raised in the securities offerings undertaken by Nutmeg (*e.g.*, the sale of limited partnership interests in Mercury, Fortuna, *etc.*) These management fees were due and payable to Nutmeg (and could pass through to Goulding) when Nutmeg started making investments on behalf of the Funds. The

[2] *See* note 1, *infra*.

SEC's own Trial Exhibits further acknowledge that Nutmeg received – *separate and apart from carried interest* – non-contingent management fees of $869,749.99. However, as Tushaus acknowledged, PX43 does not account for any entitlement Nutmeg had to compensation from the Funds. Thus, requiring Goulding to pay the SEC the $642,422 amount by which PX43 indicates that Goulding's transfers from Nutmeg exceeded his transfers to Nutmeg means he will be disgorging compensation contractually due to Nutmeg, and which Nutmeg could properly pass through to Goulding as its owner. (Point I, *infra*.)

Third, the case law requires a "causal connection" between the adjudicated misconduct and the amount that is to be disgorged. Thus, management fees based on the amounts raised in a securities offering may be disgorged where there was fraud *in the offering*. In that case, the management fee was paid because the investor was fraudulently induced into making his capital contribution. However, the Court's Findings and Conclusions do not address – let alone establish – any allegation that Nutmeg and Goulding committed fraud in the offering of the limited partnership interests in the Funds. Likewise, the SEC's Amended Complaint (ECF No. 314) did not include any allegations that Nutmeg (or Goulding) had committed fraud in the offering or sale of securities. Under the case law, contractually proper compensation is not subject to disgorgement unless it is "causally connected" to the adjudicated misconduct. Here, all the adjudicated misconduct occurred *after* the capital contributions were received, rather than "in connection with" the offerings by which the contributions were solicited. (Point II, *infra*.)

Fourth, under the case law, the disgorgement must approximate the amount wrongly obtained by the defendant or by which the defendant was unjustly enriched. Properly understood, PX43 reveals that Goulding did not obtain a net benefit from Nutmeg. This is

because PX43 reflects two separate transfers from Nutmeg to Goulding (each in the amount $352,017.52, for a total of $704,035.04). However, both these transfers were *immediately* reversed; that is, the money was returned by Goulding to Nutmeg. This means that PX43 attributes $704,035.05 more in net transfers from Nutmeg to Goulding than were actually made. This, again, is established by the SEC's own document, a schedule (ECF No. 1043-3) annexed to Tushaus' March 15, 2018 post-trial declaration, that correctly *omits* these two previously-alleged but actually-rescinded (or returned) transfers from Nutmeg to Goulding. Nutmeg's checking account statement from LaSalle Bank, N.A., for January 2004, annexed as Exhibit A to the accompanying motion, shows that both these $352,017.52 transfers from Nutmeg to Goulding were immediately reversed. (Point III, *infra*.)

Point IV will demonstrate that SEC proposed Trial Exhibit PX68 and Nutmeg's January 2004 statement from LaSalle Bank, NA should be deemed part of the trial record.

Point V shows that *Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017) holds that the sort of disgorgement that the SEC seeks in this case is an impermissible penalty, and that the Court is likely to make that point explicitly when it decides the appeal in *Liu v. SEC* appeal, in which *certiorari* was granted on November 1, 2019.

Point VI shows that the penalty should be eliminated.

## C. ARGUMENT

### Point I

### The SEC's Own Trial Exhibits Concede that Nutmeg and Goulding Were Entitled to $869,749.99 in Non-Contingent Compensation in the Form of Management Fees

*In re Dixon*, 535 B.R. 450 (Bankr., N.D. Ga. 2015), a non-dischargeability case under Chapter 7 of the U.S., Bankruptcy Code summarized the nature of a disgorgement order that had been imposed against the debtor in a prior SEC enforcement proceeding (*SEC v. Onyx Capital*, 2014 WL 354491 (E.D. Mich., Jan. 31, 2014)) as awarding only the difference between the compensation the debtor had received and that he had been entitled to receive.

> OCA, therefore, retained $3,101,239 while only being entitled to management fees of $1,291,667. *This differential is $1,809,572,* which is the basis for the District Court's finding that the Debtor and OCA misappropriated *approximately $1.8 million in excess* management fees.

*In re Dixon*, *supra*, 535 B.R. at 459-460 (emphasis added). The ruling in *SEC v. Onyx* that the *Dixon* decision discussed confirms that the amount of the disgorgement was only the excess management fees, that is, those beyond the defendants' contractual entitlements. (*SEC v. Onyx Capital*, *supra,* 2014 WL 354491 at *3 ("disgorgement" * * * "amount includes $2,063,543 that Dixon and Onyx Capital took in *excess* management fees" (emphasis added)).

In this case, the SEC – while disputing the valuations underlying Nutmeg's claim to receive carried interest – has acknowledged that Nutmeg was entitled to $869,749.99 in non-contingent management fees.

In connection with the 2007 Mercury Fund offering, Crowe Horwath recalculated the management fees so that they would be based on the original partnership agreement, which provided that they would be calculated strictly as four percent (4%) of the amounts raised in the

offering.[3] The SEC's recalculation showed that Nutmeg was entitled to **$246,321** in management fees. PX59 at p. 12 (4 percent fee based on a total of $6,158,031). PX59, of course, was prepared by Crowe Horwath, the accounting firm engaged by the SEC receiver for Nutmeg. The exhibit also makes it clear that Crowe is treating such management fees as distinct from any separate right to carried interest. *Id.* Accord: PX63, at p. 34 (another Crowe analysis, recalculating the management fees based strictly on 4% of the funds raised in the Mercury offering, as $246,321.26).

SEC Trial Exhibit, PX61 is another Crowe analysis proffered by the SEC. It was not admitted during the testimony. However, at the end of trial, the Court ordered to be included in the trial record[4] and required the SEC to file on it the docket, where it appears as ECF No. 1031-1.[5]

PX61/ECF No. 1031-1 shows Nutmeg's non-contingent management fees for 2004 and 2005. It shows that, in 2004, the various funds for which Nutmeg acted as a general partner raised $4,086,242.66 in capital contributions. (PX61/ECF No. 1031-1, at p. 18.) It also shows that Nutmeg received a total of $169,636.24 in 2004 (*id.* at p. 18), based on agreements calculating them "typically [as] a fixed percentage (3%-4%) of the total amount raised" (*id.* at p. 15),

PX61/ECF No. 1031-1 also shows that, for 2005, Nutmeg obtained a total of **$152,182.28** in non-contingent management fees (*id.* at p. 24) based on a total of 4,608,035.93 in capital

---

[3]Under the amended Mercury agreement, which the SEC has contended should not apply, and Crowe assumed should not apply, fees for later quarters would have been valuation based.

[4]January 31, 2018 order, ECF No. 1027.

[5]Filed on February 7, 2018.

contributions received that year (*id.*, at p. 21).

Thus, PX59 and PX61/ECF No. 1031-1 establish that Nutmeg had a contractual entitlement to **$568,139.78** in non-contingent management fees based on the various 2004 and 2005 offerings and the Mercury offering in 2007. ($152,182.28 + $169,636.24 + $246,321.26 = $568,139.78.)

Of course, there were several additional securities offerings in which Nutmeg received non-contingent management fees. SEC proposed Trial Exhibit PX68, yet another Crowe summary, shows that in total, from 2003 through 2009, the various Nutmeg Funds for which Nutmeg acted as general partner and Investment Adviser received at total $869,749.99 in management fees based on $23,726,695.23 in capital contributions received. *Id.* at p. 7. (Though not admitted during trial, PX68 should be considered and ordered to be included in the trial record for the reasons set forth in Point IV, *infra*. )

Thus, the amount of the ordered disgorgement – $642,422 – is based on a summary that does not consider Nutmeg's (and thus Goulding's) entitlement to non-contingent management fees. If PX43 were adjusted to account for Goulding's contractual right to receive these fees (through Nutmeg), it would not show a net debt from Goulding to Nutmeg, but instead a net *debt from Nutmeg to Goulding* in the amount of $227,327.99. If the approach used in *SEC v. Onyx Capital*, *supra* (as elaborated upon *In re Dixon*, *supra*) were adopted, and disgorgement is limited to only the compensation obtained in excess of contractual entitlements, then no disgorgement should be appropriate. *Accord: SEC v. Collins*, 2003 WL 21196236, *4 (N.D. Ill., May 21, 2003) (rejecting disgorgement claim, where: "According to Coppage, the checks evidence that he lent Collins approximately $144,762.00, which means that the repayment of

those loans cannot constitute ill-gotten gains.")

**Point II**

**The Non-Contingent Management Fees Based on Amounts Raised in the Offering Are Not Properly Subject to Disgorgement Because they Did Not Result from Any Adjudicated Misconduct**

In enforcement cases, the SEC can only obtain disgorgement of amounts "causally connected to the violation." *SEC v. Ferrone*, 188 F.Supp.3d 709, 714, 726 (N.D. Ill. 2015) ("[T]he record does not support a finding that McClain Jr.'s receipt of $335,000 from Argyll Equities between April 23, 2007 and January 1, 2009 represented the ill-gotten gains from his insider trading of Immunosyn stock.") *Accord: SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir.1989) ("Since disgorgement primarily serves to prevent unjust enrichment, the court may exercise its equitable power only over property *causally related* to the wrongdoing." (emphasis added, internal citations omitted)); *SEC. v. Patel*, 61 F.3d 137, 139 (2d Cir.1995) ("The amount of disgorgement ordered need only be a reasonable approximation of profits *causally connected to the violation*." (emphasis added, internal citations omitted)).

Here, the non-contingent management fees that Nutmeg obtained based on a percentage of total capital contributions (and that Goulding was entitled to receive through Nutmeg) is not causally related to any misconduct. None of the Court's Findings or Conclusions indicate or even suggest that Nutmeg committed any fraud in the securities offerings in which these capital contributions were solicited and received.

Instead, the adjudicated misconduct relates to record-keeping violations, financial reporting, the use of *alter egos* as investment vehicles, and the valuation of the assets that the Funds purchased with the capital contributions. In other words, all adjudicated misconduct

related to the manner in which the capital contributions paid into the Funds were used, maintained, managed and/or invested, and none of it relates to the offerings in which Nutmeg solicited those capital contributions (and obtained the $869,749.99 in non-contingent management fees).

"To meet the 'in connection with' requirement, the 'fraud practiced must have been prior to or contemporaneous with the sale of securities." *First Fed. Sav. & Loan v. Oppenheim, Appel, Dixon*, 629 F. Supp. 427, 439 (S.D.N.Y. 1986) (citation omitted); *Freschi v. Grand Coal Venture*, 551 F.Supp. 1220, 1230 (S.D.N.Y. 1982) ("For Section 10(b) purposes the only investment decision made by Freschi occurred on December 29, 1977. Hence, defendants are correct in their assertion that Freschi can only recover for conduct committed before that date; subsequent conduct would lack the requisite 'in connection with the sale or purchase of any security.'")

Here, the management fees were based solely on the sale and offering of securities, which was not found to be fraudulent. *SEC v. Pattison*, 2011 WL 723600, *4 (N.D. Cal., Feb. 23, 2011) (rejecting the disgorgement amount requested by the SEC because "The entirety of the profit made on the options is not causally connected to the backdating practice herein."); *S.E.C. v. Resnick*, 604 F.Supp.2d 773, 783 (E.D.N.Y. 2009) (". . . [I]t is reasonable to assume that Mr. Kaiser performed various functions of value to the company other than the fraudulent activities which inflated earnings. Accordingly, I cannot conclude, based purely on Mr. Lee's testimony, that Mr. Kaiser's salary was causally linked to his unlawful conduct, and will not order disgorgement.")

Stated another way, none of the adjudicated misconducted infected the securities offerings that Nutmeg conducted, and thus the management fees would have been the same even

absent that adjudicated misconduct. *SEC v. Razmilovic*, 822 F. Supp. 2d 234, 260& n. 22 (S.D.N.Y. 2011) (reducing the SEC's requested disgorgement amount to "the value of the proceeds [defendant] would have otherwise realized absent the fraud"); *see generally*: *SEC v. Maxxon*, 465 F.3d 1174, 1179 (10th Cir. 2006) (finding, in a fraud on the market case, that "some end-date determination is certainly necessary so that the defendant is not required to disgorge profits not 'causally connected to the violation.' (citing Arnold S. Jacobs, *Disclosures & Remedies Under the Securities Laws* §20:109 (2005)).

**Point III**

**Properly Adjusted, PX43 Shows that Goulding Did Not Receive any Ill-Gotten Gains**

Disgorgement cannot exceed the amount obtained by the defendant from the wrongful activity. *SEC v. Collins*, *supra*, 2003 WL 21196236, at *5 ("The cases make clear that the remedy is designed to strip a wrongdoer of his unjust enrichment or illegal profits; the remedy is not designed to punish."); *see generally*: *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1474, 1475 (2d Cir.1996) (disgorgement requires "a defendant to give up the amount by which he was unjustly enriched' and to deprive the wrong doer of "ill-gotten gains.")

Following trial, the SEC *sua sponte* filed a March 15, 2018 declaration by Tushaus (ECF No. 1043), which the Court's Findings and Conclusions term a "judicial admission." (ECF No. 1085, p. 55 at ¶55.) Tushaus identifies Exhibit 3 to her post-trial declaration (ECF No. 1043-3) as an "alternative" means of calculating the amount by which Goulding's transfers from Nutmeg allegedly exceeded his transfers to Nutmeg, and pegs that amount at $650,921 – in proximity to the $642,422 indicated by PX43.

However, comparison of PX43 with ECF No. 1043-3 reveals that, in actuality, Goulding

did not receive transfers from Nutmeg in excess of his transfers to Nutmeg. PX43 lists, in January 2004, two separate transfers from Nutmeg to Goulding in the amount of $352,017.52, for a total of $704,035.04. PX43, PDF page 5, at the 1/23/04 and 1/30/04 entries. However, ECF No. 1043-3 does not list any such transfers from Nutmeg to Goulding, *and with good reason*. Both transfers were *immediately* reversed, as indicated by Nutmeg's January 2004 checking account statement from LaSalle Bank, N.A. (annexed as Exhibit A to the accompanying motion.) This means that the itemized list of transactions between Nutmeg and Goulding set forth in PX43 – corrected to exclude the total of $704,035.04 in *alleged but non-existent* transfers from Nutmeg to Goulding – shows that Goulding in fact made $61,613.04 more in transfers to Nutmeg than he received in transfers from Nutmeg. ($642,422 - $703,055.04 = -$61,613.04.) Thus, PX43, properly corrected, defeats the SEC's claim of "ill-gotten gains" or unjust enrichment. Goulding requests that Nutmeg's January 2004 statement from LaSalle Bank – which the SEC subpoenaed in discovery – be included in the trial record. (*See* Point IV, *infra*.) However, that ruling is not necessary for Goulding to prevail on this motion because the SEC's own document (ECF No. 1043-3) itself indicates that $704,035.04 of the alleged transfers from Nutmeg to Goulding that are reflected on PX43 actually did not occur. *Securities and Exchange Commission v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90, 102 (2d Cir. 1978) (remanding disgorgement case to permit "other defendants to present claims of mathematical (but not of theoretical) error")

While ECF No. 1043-3 properly excludes the $704,035.04 amount, it resorts entirely unsupported summaries of quarterly disbursements to Goulding to counteract that adjustment and restore the amount of net transfers allegedly to Goulding to $650,921. As the Court's Findings and Conclusions note with respect to another schedule attached to Tushaus' declaration

(Ex. 1, ECF No. 1043-1): "There is no explanation for these discrepancies and no explanation as to how the SEC arrived at the numbers in its post-trial submission." ECF 1085, p. 39 at ¶281.

**Point IV**

**PX68 and Nutmeg's Statement from LaSalle Bank Should Be Included in the Trial Record**

"[A] motion to reopen to submit additional proof is addressed to [the court's] sound discretion." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331, 91 S.Ct. 795, 802-803 (1971) (citing *Swartz v. New York Central R. Co.*, 323 F.2d 713, 714 (7th Cir. 1963); *see also*: *Planned Parenthood of Wisconsin, Inc. v. Van Hollen*, 94 F.Supp.3d 949, 852 (W.D. Wis. 2015) (granting request to include subpoenaed materials in the record, citing *Zenith* and Fed. R. Civ. P. 59(a)(2)); *see also: Romo v. United States*, 2015 WL 11182027 (D. Ariz., July 22, 2015) (considering tables attached to Rule 59 motion).

The Court should order that the SEC's proposed Trial Exhibit PX68 and Nutmeg's January 2004 checking account statement from LaSalle Bank be included in the trial record. PX68 was prepared by the accountants retained by the SEC receiver and the LaSalle statement was subpoenaed by the SEC from Bank of America, LaSalle's successor. Accompanying Motion, Ex. A, at Bates Stamping. Neither document is prejudicial to the SEC. The SEC intended to have PX68 admitted. The January 2004 LaSalle statement has been in the SEC's possession at all relevant times. Tushaus either erroneously interpreted it – or overlooked it – in preparing PX43, to Goulding's detriment.[6]

---

[6]At trial, Goulding stipulated to the admissibility of PX43 even though his counsel had not reviewed the underlying materials, which were not in the courtroom. Tr. 1022:3-10. *See United States v. Miller*, 2010 WL 235034, *2 (D. Kansas, Jan. 15, 2010) (applying FRE 1006 to require that the materials underlying the summary to be in the court room). Because the link that the SEC had sent to the file transfer of the underlying material had expired prior to Tushaus testimony, Goulding's counsel has not ever seen the materials underlying the summary. It seems

**Point V**

**Under *Kokesh*, Disgorgement is an Impermissible Penal Remedy**

In *Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017) the Supreme Court examined and rejected the SEC's position that no statute of limitations applied when it sought disgorgement of "ill-gotten gains" in court. In so doing, the Supreme Court unanimously concluded that disgorgement was a penal, not an equitable, remedy, and that the five-year limitations period imposed by 28 U.S.C. §2462 therefore applied. Since the SEC cannot no longer dispute that disgorgement is a penal remedy, no conceivable theoretical basis exists for such claims, as *Kokesh* implicitly recognized. 137 S. Ct. 1642 n.3 ("Nothing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings. . . .") The transcript of the oral argument in *Kokesh*[7] also records comments by four justices indicating their agreement that no authority for such a penal remedy exists.[8] *See also: Saad v. SEC*, 873 F.3d 297, 305 (D.C. Cir. 2017) (Kavanaugh, J., concurring) (*Kokesh* "overturned a line of cases . . . that had concluded that disgorgement was remedial and not punitive."); *FTC v. AMG Capital Mgmt.*, LLC, 910 F.3d 417, 429 (9th Cir. 2018) (O'Scannlain, J., specially concurring) (predicting that *Kokesh* spelled the end of equitable disgorgement).

The Court should note that in *Liu v. SEC*, 2019 WL 5659111 (Sup. Ct., Nov. 1, 2019)

---

unlikely that Tushaus – had she seen the LaSalle statement (accompanying Motion, Ex. A) – could have misinterpreted it.

[7] www.supremecourt.gov/oral_arguments/argument_transcripts/2016/16-529_21p3.pdf (active hyperlink)

[8] Note 7, *supra*, Roberts, Ch. J. (p. 31, lines 16-18); Alito, J. ( p. 53, lines 12-14); Sotomayor, J. (p. 9, lines 5-9); and Kennedy, J. (p.7, line 20 - p. 8, line 2) (active hyperlink).

the Supreme Court granted *certiorari* to review a decision, *SEC v. Liu*, 754 Fed.Appx. 505, 509 (9th Cir. 2018) that upheld the disgorgement remedy based upon pre-*Kokesh* case law. This indicates a high likelihood that *Liu* will be overturned and equitable disgorgement outlawed. *E.g.*, Harvard Law Review Blog, "Supreme Court: The Statistics, at Table II (con'd) (November 10, 2017)[9] (of cases reviewed during 2016 Term, 86.7 percent are reversed or vacated).

**Point VI**

**The Penalty Should Be Eliminated**

Since the SEC has consistently contended that the penalty should be in the same amount as the disgorgement, the penalty should likewise be reduced to zero.

**D. CONCLUSION**

For the foregoing reasons, the motion should be granted in its entirety.

Dated: December 10, 2019

Respectfully submitted,

/s/ Fredrick R. Harbecke
Fredrick R. Harbecke Law Office
53 West Jackson Boulevard, Suite 1510
Chicago, Illinois 60604
312-443-9505
312-443-9506 (fax)
fredrharbecke@gmail.com

Berry Law PLC
/s/ Eric W. Berry
By: ___________________
Eric W. Berry (2069524)
745 Fifth Avenue, 5th Floor
New York, New York 10151
212-355-0777
berrylawpllc@gmail.com

*Attorneys for defendant Randall S. Goulding*

[9] available at https://harvardlawreview.org/2017/11/supreme-court-2016-term-statistics/