**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> RANDALL GOULDING and DAVID GOULDING, <br><br> Defendants. | No. 09-cv-1775 <br><br> Jeffrey T. Gilbert <br> Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

On October 25, 2019, the Court entered its post-trial Findings of Fact and Conclusions of Law in this case. [ECF No. 1085]. On November 12, 2019, the Court entered Final Judgment as to Defendant Randall Goulding ("Randall") and ordered, among other things, that he disgorge $642,222 in ill-gotten gains as a result of multiple violations of the Investment Advisers Act ("Advisers Act"), 18 U.S.C. § 206. [ECF No. 1094]. On December 10, 2019, Randall filed a Motion for a Revised Finding of Fact, Revised Conclusions of Law, and an Amended Judgement, as well as a Memorandum in Support ("Randall's Motion"). [ECF Nos. 1096, 1097]. Shortly thereafter, Randall *sua sponte* filed a notice withdrawing one of the arguments made in his Motion. [ECF No. 1100]. The Securities and Exchange Commission ("SEC") responded to Randall's Motion, [ECF No. 1104], and the Motion is now fully briefed.

As explained below, the Court finds that as a matter of procedure, Randall's Motion is not proper under Rule 59(e) because Randall has not articulated any manifest error of law or fact, or cited to any newly discovered evidence, that would have prevented the Court from entering

judgment on November 12, 2019. Randall simply rehashes arguments he made in his original post-trial briefs or presents slightly revised arguments not previously made in the way they are being made now but to the same effect as his earlier submissions. Randall's Motion also fails on the merits because his basic premise that he cannot be required to disgorge money Nutmeg paid him that might have come from management fees Nutmeg received from original securities offerings to investors in funds managed by Nutmeg is flawed on the facts and law applicable to this case. Further, Randall's attempt to reopen the record for a limited purpose is unsupportable and the Court again declines to accept his argument that the Supreme Court has foreclosed the SEC from seeking disgorgement of ill-gotten gains in a case like this. As a result, Randall's Motion is denied in its entirety.

## I. Federal Rules of Civil Procedure 59(a)(2) and 59(e)

Randall cites Federal Rules of Civil Procedure 59(a)(2) and 59(e) in support of his Motion. [ECF No. 1097] at 5. Rule 59(a)(2) applies to a motion for a new trial: "[a]fter a nonjury trial, the court may, *on motion for a new trial,* open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." FED.R.CIV.P 59(a)(2) (emphasis added). Rule 59(e), by contrast, simply states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED.R.CIV.P 59(e). As the added emphasis to the language of Rule 59(a)(2) should suggest, Randall's Motion is not well-taken under Rule 59(a)(2). Randall has not requested a new trial, either in form or in substance.[1] The Court therefore will consider the arguments advanced in

---

[1] Randall specifically disclaims any argument that the Court should reopen the judgment against him. [ECF No. 1097] at 6-7.

Randall's Motion, both procedurally and substantively, only under the standard of review provided by Rule 59(e).[2]

A motion to alter or amend judgment under Rule 59(e) asks the Court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whitney*, 489 U.S. 169, 174 (1989). A party seeking an altered or amended judgment must "clearly establish" that the court committed a manifest error of law or fact or that newly discovered evidence precluded entry of judgment. *Harrington v. City of Chi.,* 433 F.3d 542, 546 (7th Cir. 2006) (citing *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000)). Manifest error is more than mere disappointment of the losing party: it is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Newly discovered evidence is limited to evidence that, even with reasonable diligence, could not have been discovered and produced prior to the judgment. *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.,* 90 F.3d 1264, 1269 (7th Cir. 1996).

A party has a heavy burden to show that a court should reverse its prior judgment. *Scott v. Bender,* 948 F.Supp.2d 859, 865 (N.D. Ill. 2013). Motions pursuant to Rule 59(e) are granted only in rare circumstances, as court rulings "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). Nor does Rule 59(e) allow parties to relitigate previously rejected arguments or argue "matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole,* 90 F.3d at 1270*; see also, Brown v. Univ. of Illinois,* 2014 WL 1477412, at *1 (N.D. Ill. 2014) ("Plaintiff *cannot* seek to relitigate his disparate pay

---

[2] The Court notes that Randall does not contest this point, as raised by the SEC, in his Reply. [ECF No. 1110].

3

claim by *now* alleging a different theory for the same harm.") (emphasis original). Rather, motions for an altered or amended judgment are reserved for circumstances where the moving party has shown "good reason" to set the judgment aside in the interest of justice. *Hecker v. Deere & Co.,* 556 F.3d 575 (7th Cir. 2009). As discussed below, Randall has not done so here.

> II. **Procedurally, Randall Merely Rehashes Previously Rejected Arguments or Makes Those Same Arguments in a Slightly Different Way, and He Therefore Fails to Demonstrate "Good Reason" to Set Aside the Court's Judgment Under Rule 59(e)**

Randall's Motion raises three issues[3] with the Court's Findings of Fact and Conclusions of Law. First, Randall urges the Court to conclude that because the management fees Nutmeg received from money it raised from investors in its investment funds was not tainted by any fraud in connection with those securities offerings and, in total, those management fees exceed the money or benefits the Court concluded Randall received from Nutmeg as ill-gotten gains, Randall cannot be required to disgorge any amount of money in this case. In other words, Randall's argument seems to be that since money is fungible and there was enough "clean" money in Nutmeg's coffers at some point in time to cover the total amount the Court has ordered him to disgorge, Randall is entitled to keep everything he was paid by Nutmeg and should disgorge nothing despite his violations of the Advisers Act. [ECF No. 1097] at 10-15. Second, Randall asks the Court to reopen the evidence so that two documents – PX 68 and Nutmeg's Statement from LaSalle Bank – may be added to the trial record, presumably pursuant to Rule 59(a)(2). [ECF No. 1097] at 17. Finally, Randall argues that the Supreme Court's decision in *Kokesh v. SEC,* 137 S. Ct. 1635 (2017), and grant of certiorari in *SEC v. Liu,* 754 Fed. Appx. 505 (9th Cir. 2018), should

---

[3] Randall withdrew a fourth argument, [ECF No. 1097] at 15-17, disputing whether he received any "ill-gotten gains" at all from Nutmeg based on his interpretation of PX 43. [ECF No. 1100].

cause the Court to hold that disgorgement of ill-gotten gains is not a remedy available to the SEC in this case.

None of Randall's arguments demonstrate any mistake of law or fact, or present any newly discovered evidence, that would entitle him to an altered or amended judgment under Rule 59(e). Rather, Randall simply rehashes arguments that were previously raised and rejected at or after trial, or he repackages those arguments in slightly different wrapping paper, in an effort to convince the Court now to rule differently than it did earlier. In either case, the result is the same; Randall's Motion is not well-taken. *Caisse Nationale de Credit Agricole,* 90 F.3d at 1270 (Rule 59(e) does not permit parties to argue "matters that could have been heard during the pendency of the previous motion"); *Brown,* 2014 WL 1477412, at *1.

Randall argued at trial and in his original post-trial briefs that Nutmeg had enough money untainted by any wrongdoing to cover distributions it made to him or benefits it provided to him so that he received no ill-gotten gains. Randall's Second Amended Post-Trial Brief [ECF No. 1048] at 13-15; Randall's Post-Trial Reply [ECF No. 1058] at 10-12. At that time, Randall focused primarily on money he says was his own personal property from the so-called Morgan Wilbur deals that was deposited into Nutmeg's commingled accounts. But he also referenced money Nutmeg received in performance and management fees that he said was untainted by any wrongdoing and, therefore, was properly paid to him by Nutmeg. *Id.* Randall specifically mentioned management fees Nutmeg received from Mercury Fund offerings, [ECF No. 1058] at 12, an argument he repeats in his current Motion. While Randall earlier argued the Mercury management fees amounted to $369,002, based on less than all the securities offerings he focuses on in his current Motion, [ECF No. 1058] at 13, he now pegs that number at $568,139. [ECF No. 1097] at 8. Together with other management fees he did not focus on in his original post-trial

5

briefs, Randall now says the total amount of management fees Nutmeg received was $869,749.99, more than sufficient to cover the $642,422 he was required to disgorge. [ECF No. 1097] at 6. The Court previously rejected this argument, if not expressly, then certainly by implication.

Randall also argued previously that disgorgement is not an available remedy in SEC proceedings like this one after the Supreme Court's decision in *Kokesh*. Randall's Second Amended Post-Trial Brief [ECF No. 1048] at 27. Similarly, the Court implicitly rejected that argument, made in the last paragraph of Randall's post-trial brief and not at all in his post-trial reply brief, with its detailed ruling on why disgorgement is an appropriate remedy here. Conclusions of Law [ECF No. 1085] at ¶¶ 44-59.

Randall's current Motion reflects nothing more than mere "disappointment" that the Court did not agree with him, particularly regarding the amount of money the Court ordered him to disgorge as ill-gotten gains. That is not enough to establish a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto,* 224 F.3d at 606. The Court heard, understood, and rejected Randall's post-trial arguments that he now is either raising again or repackaging. Randall therefore cannot meet the requirements he must under Rule 59(e). Accordingly, the Court finds as a threshold matter that Randall has not met his heavy burden of proof under Rule 59(e) and his Motion is denied on procedural grounds.

### III. On the Merits, Randall Raises Nothing to Indicate the Court Committed a Manifest Error of Law or Fact

Although Randall's Motion is not procedurally well-taken under Rule 59(e), in the interest of a complete record, the Court will nevertheless briefly address the substance of Randall's arguments. For the reasons discussed below, Randall's Motion also is denied on the merits.

6

### A. Randall is not Entitled to a Set-Off in the Amount of the Management Fees Purportedly Received by Nutmeg and Paid to Him, Nor Are Such Fees Immune From Disgorgement as Part of Randall's Compensation From Nutmeg

As discussed above, Randall argues that Nutmeg received management fees from investors in its investment funds that he says were untainted by any fraud. Because the total amount of those "untainted" fees supposedly paid to Nutmeg exceeds the amount of the ill-gotten gains the Court found Randall had received from Nutmeg, Randall believes he should not be required to disgorge a penny despite his violations of the Advisers Act. This is a classic straw-person argument. The Court found Randall violated Section 206 of the Advisers Act, that his violations were pervasive, ongoing, and material, and therefore he was required to disgorge the profits, fees, and other compensation he received from Nutmeg as a result of his wrongdoing. Conclusions of Law [ECF No. 1085] at ¶¶ 31-59.

In its Conclusions of Law, the Court found that Randall violated Section 206 of the Advisers Act, [ECF No. 1085] at ¶¶ 31-33, for his conduct related, but not limited, to Nutmeg's unwieldy and flawed valuation system, rampant commingling of assets, assessment of fees based on overstated asset valuations, misappropriation of client and investor assets from Nutmeg's commingled bank accounts, and the dissemination of investor statements with inflated performance values. The Court further concluded that those violations were material. *Id.* at ¶¶ 34-37. Based on these and other findings, the Court held that "money obtained or misappropriated from investors should be considered ill-gotten gains and disgorged accordingly." Conclusions of Law [ECF No. 1085] at ¶ 48 (citing *SEC v. Brown,* 79 F.Supp.2d 1228, 1245 (D. Minn. 2008)). The Court approximated the amount of these ill-gotten gains paid to Randall or for his benefit to be $642,222 (at the low end). Conclusions of Law [ECF No. 1085] at ¶¶ 45, 46 (citing *SEC v. Michel,* 521 F.Supp.2d 795, 830-31 (N.D. Ill. 2007), and other cases). This approximation is

particularly reasonable in a "case such as this one in which Randall commingled the money in Nutmeg's accounts" to such a degree that it was "nearly impossible to trace dollars that belonged to Randall, Nutmeg, or the Funds or their investors at any point in time." Conclusions of Law [ECF No. 1085] at ¶ 46.

Randall's admitted and systematic commingling of Nutmeg's money with Randall's and investors' money makes it impossible to determine definitively the source of any money Nutmeg paid to Randall. It is simply not feasible to determine whether the money that found its way into Randall's pocket came from Nutmeg's receipt of fees as an investment advisor or other money held in Nutmeg's accounts. Randall has not shown and cannot show that the money he was paid by Nutmeg during the relevant time period came from management fees Nutmeg received as opposed to another source. The Court repeatedly emphasized this point in its Findings of Fact and Conclusions of Law, stating that "the pervasive commingling of monies held in Nutmeg's accounts makes it difficult or impossible to identify whether any legitimate management, performance, or other fees received by Nutmeg are the source of the money that Randall withdrew from that account over the years." Conclusions of Law [ECF No. 1085] at ¶ 52. Indeed, "[i]f there is one thing that is clear in the record, it is that Nutmeg's record keeping and valuation systems, to the extent they existed, were haphazard, cumbersome, not current, and they yielded valuations and other numbers that were inaccurate." Findings of Fact [ECF No. 1085] at ¶ 296. Moreover, "[a]s just one example of the loose link between Nutmeg's books and records and reality, Randall testified that although he calculated the fee that Mercury was to pay Nutmeg in the first quarter of 2008, and it was deducted from the Mercury Fund as an accounting matter, Nutmeg did not actually

8

take that fee and the money stayed in the Nutmeg commingled account. (Tr. 886:17-887:23)." Findings of Fact [ECF No. 1085] at ¶ 287.[4]

Randall's wrongdoing also completely permeated Nutmeg's investment advisory operations for the entire relevant time frame, and as a result, any compensation, money, or other benefit Randall received from Nutmeg during that period was causally connected to his wrongdoing and properly included in the Court's disgorgement calculation. It does not matter whether the money Nutmeg paid to Randall or for his benefit originally came from management fees or some other source. The money was commingled in Nutmeg's accounts and the money Randall pocketed was generated by an investment advisory operation that Randall was operating unlawfully and in complete disregard of relevant legal requirements. These are classic ill-gotten gains in the investment advisory context. *See, e.g., SEC v. Trabluse,* 526 F. Supp. 2d 1008 (N.D. Ca. 2007).

Randall's argument that the management fees Nutmeg received (or supposedly received; *see* Findings of Fact [ECF No. 1085] at ¶ 287) from investment fund offerings was essentially free, clean money that he was entitled to withdraw despite his pervasive violations of the Advisers Act finds no support in the case law, or specifically, in the new cases he cites in his Motion. Randall's citation to cases decided under the Securities Act and the Securities Exchange Act, in particular, does not support the relief he seeks here. As this Court previously explained, the requirements for liability under Section 206 of the Advisers Act are "less stringent than the requirements for liability under Section 10(b) [of the Securities Exchange Act] and Section 17(a) of the Securities Act."

---

[4] As the Court also explained previously, the SEC does not have to identify the money that was misappropriated with particularity. *SEC v. Black*, 2009 WL 1181480 (N.D. Ill. 2009). Once the SEC puts forth "a reasonable approximation of profits causally connected to the violation," the burden then shifts to Randall to show that approximation is inaccurate. *Id.* at *2-3. Randall has not done so here, and the pervasive commingling of money in Nutmeg's accounts makes it nearly impossible for him to do so. Conclusions of Law [ECF No. 1085] at ¶¶ 45-46.

*SEC v. Nutmeg Group, LLC*, 2016 WL 3023291, at *2 (N.D. Ill. 2016). The Advisers Act establishes a statutory fiduciary duty for investment advisers. *SEC v. Nutmeg Group, LLC*, 162 F.Supp.3d 754, 778 (N.D. Ill. 2016). Investment advisers must act in their clients' best interests, employ reasonable care to avoid misleading clients, and fully and frankly disclose all material facts. *Id.* Randall violated each and every one of these requirements. There is therefore a direct causal relationship between the money and benefits Randall received from Nutmeg, which the Court has ordered him to disgorge, and Randall's wholesale violations of the Advisers Act.

Moreover, as the SEC correctly points out in response to Randall's Motion, to the extent Randall is arguing that the management fees Nutmeg was paid were not obtained from securities offerings that were tainted by fraud, that is irrelevant. The requirement in Section 10(b) cases that the defendant's fraud must occur "in connection with" a purchase or sale of securities does not apply in Advisers Act cases because that Act is designed to address different conduct and wrongdoing than the Securities Exchange Act. *SEC v. Lauer,* 2008 WL 4372896, at *24 (S.D. Fla. 2008), *aff'd*, 478 F. App'x 550 (11th Cir. 2012). This is not the first time the Court has made this point in this case. *See Nutmeg Group, LLC*, 2016 WL 3023291, at *2. So, Randall's argument that no fraud tainted the investment fund offerings in their inception is of no consequence to whether the Court properly ordered him to disgorge compensation and other benefits he received from Nutmeg during the period he was flagrantly violating the Advisers Act.

Randall's argument also belies the facts and the Court's prior rulings in this case on motions for summary judgment. As this Court explained in ruling on an earlier motion to reconsider filed by Randall, "[a] reasonable investor would have found it important when considering whether to invest in a later-formed fund that Nutmeg and Randall were transferring and commingling the assets of the earlier-formed funds and paying Relief Defendants for accepting

10

those transfers. If a reasonable investor knew about this fraud in the earlier-formed funds, he would have been less likely to decide to invest in a later-formed fund. That means an investment adviser's conduct in the past can be and often is material and must be disclosed to investors who decide to invest after the conduct has occurred." *Nutmeg Group, LLC*, 2016 WL 3023291, at *2.

Plainly put, for all these reasons, the Court disagrees with Randall that there is no causal relationship between his wrongdoing and the money the Court has ordered him to disgorge. The Court also therefore disagrees that the cases Randall cites for the unremarkable proposition that there must be a causal connection between a defendant's wrongful conduct and the amount he is required to disgorge mandate a different result in this case.

Finally, Randall's heavy reliance on *SEC v. Onyx Capital Advisers, LLC,* 2014 WL 354491 (E.D. Mich. 2014), a case brought under the Securities Act, is wholly misplaced. Randall points to the fact that the court in that case ordered a defendant to disgorge "excess management fees." *Id.* at *3. But the fact that the SEC asked the court in *Onyx Capital* to order disgorgement measured, in part, by the excess management fees paid to one of the defendants in that case, and that the court awarded disgorgement in that amount, does not mean that a disgorgement award in this case must be measured in the same way. Accordingly, Randall's Motion fails substantively on this point.

### B. Randall May Not Supplement the Record with PX 68 and Nutmeg's Statement from LaSalle Bank Pursuant to Rule 59(e)

Randall next asks to reopen the proofs, presumably pursuant to Rule 59(a)(2), so that two documents – PX 68 and Nutmeg's Statement from LaSalle Bank – may be added to the trial record.[5] [ECF No. 1097] at 17. However, as noted above, Rule 59(a)(2) requires that a motion for

---

[5] The SEC notes that Randall asked to supplement the trial record with the above-described documents in the context of his now-withdrawn argument, and as a result, the SEC considers this argument moot. However, Randall apparently continues to request the Court grant his motion with respect to this issue, which was labeled as Point IV, in his reply brief. [ECF No. 1110] at 10. He further cites to one of the documents he seeks to admit, PX 68, in support of the argument that he is entitled to a set-off based on

11

a new trial be filed, something Randall has chosen not to do. He in fact disclaims any notion that the SEC should not have prevailed on certain issues, stating he is "not looking to overturn that outcome now." [ECF No. 1097] at 7. He merely contests the amount he was ordered to disgorge and, as a separate matter discussed *infra*, whether he should have been ordered to disgorge anything at all given the Supreme Court's decision in *Kokesh*. However, without having moved for new trial, either in form or in substance, Randall cannot invoke the Court's authority to reopen proofs and supplement the trial record with additional testimony or evidence under Rule 59(a)(2). The Court is limited to the authority provided by Rule 59(e), which does not allow the Court to consider evidence or testimony that was, by Randall's own admission here, fully available for use at trial.

The Seventh Circuit has clearly stated that "[a] Rule 59(e) motion cannot be used to present evidence that could and should have been presented prior to the entry of final judgment." *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 867 (7th Cir. 1996). Where a party is made aware that a particular issue will be relevant to its case but fails to produce readily available evidence pertaining to that issue, the party may not introduce the evidence to support a Rule 59(e) motion. *Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 202 n. 5 (7th Cir. 1994). This is precisely what Randall is seeking to do here: introduce documents that both he and the SEC possessed before and during trial simply because he feels disadvantaged by their ultimate exclusion from the trial record. [ECF No. 1097] at 17.

Rather than invoke the standard of review under Rule 59(e), Randall argues that the documents should be admitted because "neither document is prejudicial to the SEC," "the SEC

---

management fees "earned" through Nutmeg. [ECF No. 1097] at 12. Because it is not clear to the Court whether Randall still wants the documents at issue to be added to the trial record or whether this argument has been withdrawn, in an abundance of caution, the Court addresses this argument on the merits.

intended to have PX 68 admitted," and the "January 2004 LaSalle statement has been in the SEC's possession at all relevant times." [ECF No. 1097] at 17. Yet this talismanic invocation of legal concepts and phrases – no prejudice to the opposing party, materiality of the documents, and no surprise in their admission – is of no help to Randall under Rule 59(e). Rule 59(e) provides only for the consideration of "newly discovered" evidence, a characterization that neither document meets here. Both documents were indisputably available to Randall prior to the entry of judgment. In fact, Randall actually objected before trial to the admission of PX 68, which was marked by the SEC as a potential trial exhibit. Plaintiff's Trial Exhibits [ECF No. 934] at 32. And the LaSalle Bank statement was not marked as an exhibit by either party, nor was it offered into evidence. Because a "Rule 59(e) motion cannot be used to present evidence that could and should have been presented prior to the entry of final judgment," *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996), the Court, in the exercise of its discretion, declines to supplement the trial record with PX 68 or the LaSalle Bank Statement. Randall's Motion is therefore denied on this point.

### C. Disgorgement Remains an Available Remedy in SEC Proceedings Post-*Kokesh*

The Court has considered Randall's argument regarding the impact of *Kokesh v. SEC,* 137 S. Ct. 1635 (2017), on at least three occasions: at the pre-trial conference, [ECF No. 956] at ¶ 1, in the context of Randall's Trial Memorandum, [ECF No. 982], and as argued in Randall's Second Amended Post-Trial Brief [ECF No. 1048] at 27. The Court repeatedly has declined to accept that argument. The fourth time is not the charm. The Court again declines to adopt Randall's view that the Supreme Court has precluded the SEC from seeking disgorgement in this case or that there is a "high likelihood that *Liu* will be overturned and equitable disgorgement outlawed" based on Randall's reading of whatever tea leaves may underlie the Supreme Court's grant of certiorari in *Liu.* [ECF No. 1097] at 19.

In 2017, the Supreme Court in *Kokesh* addressed whether disgorgement in SEC proceedings was a "penalty" under 28 U.S.C. § 2462 and therefore subject to a five-year statute of limitations. 137 S. Ct. 1635. In concluding that disgorgement was a "penalty" in that context, the Supreme Court explicitly noted that its holding was narrow and limited solely to the statute of limitations in 28 U.S.C. § 2462. *Id.* Indeed, it went further to say that "[n]othing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context." *Id.* at 1642 n.3. Notwithstanding this footnote, Randall asks this Court to conclude that the Supreme Court was implicitly doing what it explicitly said it was not: eliminating disgorgement as an available remedy in SEC enforcement proceedings.

Every Circuit that has considered whether disgorgement is an available remedy in SEC proceedings after *Kokesh* has declined to overrule decades of precedent allowing such a remedy to the SEC, particularly when the amount ordered disgorged does not exceed the amount of a defendant's profits from his wrongdoing, as is the case here. *SEC v. de Maison*, 2019 WL 4127328, at *1 (2d Cir. 2019); *SEC v. Gentile*, 939 F.3d 549, 562-63 (3d Cir. 2019); *SEC v. Team Res. Inc.*, 2019 WL 5704525 (5th Cir. 2019) ("We must decide whether *Kokesh* necessarily overruled our established precedent recognizing district courts' authority to order disgorgement in SEC enforcement proceedings. It did not. We recognize that the Supreme Court has recently agreed to review a Ninth Circuit decision addressing whether district courts have disgorgement authority after *Kokesh*. Nonetheless, we have traditionally held that even when the Supreme Court has granted certiorari in a relevant case, we will continue to follow binding precedent.") (internal citations and quotations omitted); *United States v. Dyer*, 908 F.3d 995, 1003 (6th Cir. 2018), cert. denied, 139 S. Ct. 1610 (2019); *Fed. Trade Comm'n v. Credit Bureau Ctr., LLC,* 937 F.3d 764,

793 (7th Cir. 2019); *SEC v. Williky,* 942 F.3d 389 (7th Cir. 2019); *Fed. Trade Comm'n v. Dantuma*, 748 F. App'x 735, 737-38 (9th Cir. 2018) ("Contrary to PBS's argument, *Kokesh* has not abrogated this long-standing precedent. The *Kokesh* Court itself expressly restricted its ruling to whether the SEC's power to seek equitable disgorgement was subject to a five-year statute of limitations and specifically stated that "[n]othing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings.") (internal citations and quotations omitted); *SEC v. Weaver,* 773 F. App'x 354, 356-57 (9th Cir. 2019); *SEC v. Kokesh,* 2019 WL 6652003 (10th Cir. 2019); *SEC v. Hall,* 759 F. App'x 877, 882 (11th Cir. 2019).[6]

Nor does the fact that the Supreme Court heard oral argument in *Liu*, the transcript of which the Court has reviewed,[7] change the Court's mind on this point. Even were this Court to attempt to divine the direction of the Supreme Court's eventual ruling from the Justices' questions at oral argument, as Randall proposes it should do, such an endeavor would yield no more than a "best guess" as to where the Supreme Court might land on the issue, assuming it addresses the merits of the issue at all. Given the wealth of precedent in favor of the continued viability of disgorgement as a remedy in SEC proceedings, including within this Circuit, it is more prudent to "continue to follow binding precedent" even when the Supreme Court has granted certiorari in a potentially relevant case. *See, e.g., United States v. Islas-Saucedo,* 903 F.3d 512, 521 (5th Cir. 2018).

---

[6] This Court also recently rejected the same argument Randall is making here when it was made by his co-defendant, *SEC v. Goulding,* 2020 WL 354454, at *9-10 (N.D. Ill. 2020), and it sees no reason to rule any differently now.

[7] Transcript of Oral Argument, *SEC v. Liu,* (No. 18-1501), https://www.supremecourt.gov/oral_arguments/argument_transcripts/2019/18-1501_8n59.pdf (last accessed March 24, 2020).

## IV. Conclusion

For all the reasons discussed above, Randall's Motion for a Revised Finding of Fact, Revised Conclusions of Law, and an Amended Judgement [ECF No. 1096] is denied in its entirety.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 25, 2020